1
2
3
4
5
6
7
8

### UNITED STATES DISTRICT COURT

9

### SOUTHERN DISTRICT OF CALIFORNIA

10

11  AURELIO MARTIN SEPULVEDA,
    CDCR #J-76828,
12
                                    Plaintiff,
13

14

15          vs.

16

17  E. GALINDO, Correctional Officer;
    JOHN DOE #1, Correctional Officer; and
18  JOHN DOE #2, Correctional Sergeant,

19                                  Defendants.

20

21

22

Case No.:  3:20-CV-2079 JLS (MDD)

**ORDER: (1) GRANTING MOTION TO PROCEED *IN FORMA PAUPERIS*, (2) DENYING MOTION TO APPOINT COUNSEL, AND (3) DISMISSING COMPLAINT FOR FAILING TO STATE A CLAIM PURSUANT TO 28 U.S.C. §§ 1915(e)(2)(B) AND 1915A(b)**

(ECF Nos. 2, 4, 6, 8)

23          Plaintiff Aurelio Martin Sepulveda ("Plaintiff"), incarcerated at R.J. Donavan
24  Correctional Facility ("RJD") in San Diego, California, is proceeding pro se in this case
25  with a civil rights complaint filed pursuant to 42 U.S.C. § 1983.  *See* ECF No. 1 ("Compl.").
26  / / /
27  / / /
28  / / /

1

Plaintiff has not prepaid the $400[1] civil filing fee required by 28 U.S.C. § 1914(a); instead, he filed a Motion to Proceed *in Forma Pauperis* ("IFP") pursuant to 28 U.S.C. § 1915(a), along with copies of his prison trust account statement.[2]  *See* ECF Nos. 2, 4, 6.  Plaintiff has also filed a Motion for Appointment of Counsel.  *See* ECF No. 8.

## MOTION TO PROCEED *IN FORMA PAUPERIS*

All parties instituting any civil action, suit, or proceeding in a district court of the United States before December 1, 2020, except an application for writ of habeas corpus, must pay a filing fee of $400.[3]  *See* 28 U.S.C. § 1914(a).  The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a).  *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999).  However, a prisoner granted leave to proceed IFP remains obligated to pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, 577 U.S. 82, 85 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), regardless of whether his action is ultimately dismissed.  *See* 28 U.S.C. §§ 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint."  28 U.S.C.

---

[1] On December 1, 2020, after Plaintiff filed his Complaint, the filing fee associated with civil actions was raised from $400 to $402.  *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2020)).  Because Plaintiff filed his Complaint on October 14, 2020, however, the new filing fee does not apply here.

[2] Plaintiff submitted a Trust Account Statement Request form (ECF No. 2) and a copy of his Trust Account Statement (ECF No. 4) on October 19, 2020.  On November 23, 2020, Plaintiff filed a "Motion to Proceed *in Forma Pauperis*," which included another (duplicate) copy of his prison trust account statement.  *See* ECF No. 6.

[3] The $400 filing fee includes the $350 statutory fee plus an administrative fee, which was $50 at the time of filing.  *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. June 1, 2016)).  The administrative fee does not apply to persons granted leave to proceed IFP.  *Id.*

§ 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1); *id.* § 1915(b)(4). The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which the account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See id.* § 1915(b)(2); *Bruce*, 577 U.S. at 85.

In support of his Motion to Proceed IFP, Plaintiff has submitted a copy of his California Department of Corrections and Rehabilitation ("CDCR") Inmate Statement Report, as well as a Prison Certificate completed by an accounting officer at RJD. *See* ECF No. 4 at 1–3; ECF No. 6 at 7; *see also* 28 U.S.C. § 1915(a)(2); S.D. Cal. CivLR 3.2; *Andrews*, 398 F.3d at 1119. These documents show Plaintiff had no available balance at the time of filing. *See, e.g.*, ECF No. 6 at 7.

Therefore, the Court **GRANTS** Plaintiff's Motion to Proceed IFP (ECF Nos. 2, 4, 6); declines to exact any initial filing fee, because Plaintiff's prison certificates indicate he may have "no means to pay it," *Bruce*, 577 U.S. at 85; and directs the Secretary of CDCR, or her designee, to instead collect the entire $350 balance of the filing fee required by 28 U.S.C. § 1914 and forward it to the Clerk of the Court pursuant to the installment payment provisions set forth in 28 U.S.C. § 1915(b)(1).

### SCREENING PURSUANT TO 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b)

**I.   Legal Standard**

Because Plaintiff is a prisoner and is proceeding IFP, his Complaint requires a pre-answer screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b). Under these statutes, the Court must *sua sponte* dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010)

(discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 681 (7th Cir. 2012)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

Finally, in deciding whether Plaintiff has stated a plausible claim for relief, the Court may consider exhibits attached to his Complaint. *See* Fed. R. Civ. R. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citing *Amfac Mortg. Corp. v. Ariz. Mall of Tempe, Inc.*, 583 F.2d 426 (9th Cir. 1978) ("[M]aterial which is properly submitted as part of the complaint may be considered" in ruling on a Rule 12(b)(6) motion to dismiss.)).

/ / /

## II.     Plaintiff's Allegations

In his Complaint, Plaintiff alleges that, while incarcerated at RJD in October 2019, he was admitted to Tri-City Medical Center for two inpatient surgeries.  *See* Compl. at 14. The first procedure took place on October 23, 2019, when a cardiologist performed a "PTCA of [Plaintiff's] proximal left circumflex artery" and "left heart catheterizations and [a] selective coronary angiogram," among other things.[4]  *Id.*  The next day, October 24, 2019, Plaintiff underwent a "left ray amputation" of his fourth and fifth toes, which had become gangrenous as a result of diabetes complications.  *Id.*; *see also id.* Ex. F at 56. Plaintiff's "post-operative plan" included an order to "remain non-weightbearing" until the wound on his left foot was fully healed in "2–6 weeks."[5]  *Id.* at 15; *see also id.* Ex. H at 58.

Plaintiff was discharged from Tri-City Medical Center on October 28, 2019, and transported back to RJD by Defendants Galindo and John Doe #1, both RJD correctional officers.  *See id.* at 14–15.  Plaintiff arrived back at RJD at approximately 8:00 p.m. and was assessed by medical staff at RJD's Triage Treatment Area ("TTA").  An RJD doctor reviewed the medical records prepared by Plaintiff's hospital physicians and Plaintiff was ultimately "medically cleared to be housed." *Id.* at 15.

Defendant John Doe #2, an RJD correctional sergeant, was tasked with determining Plaintiff's housing assignment.  According to Plaintiff, Doe #2 knew of Plaintiff's medical condition and disabilities as a result of his recent surgeries, including that Plaintiff was unable to walk and required a wheelchair.  *See id.* at 16.  Nonetheless, Doe #2 assigned

---

[4] PTCA, which stands for "percutaneous transluminal coronary angioplasty," is a cardiovascular procedure performed to "widen the lumen of a partially or fully occluded blood vessel (as the femoral or coronary artery)" that has been narrowed or blocked by "passing a balloon catheter through the skin and into a blood vessel (as of the groin or arm) to be guided to the site of obstruction," where the balloon catheter is inflated to clear the plaque causing the blockage.  *See* Merriam–Webster Medical Dictionary, https://www.merriam-webster.com/medical/ percutaneous%20transluminal%20angioplasty (visited Feb. 16, 2021).

[5] On December 13, 2019, Plaintiff had a follow-up appointment with a physician at Tri-City Medical Center, who indicated that the wound had healed sufficiently for Plaintiff to "advance to weightbearing as tolerated."  Compl. Ex. G. at 62.

Plaintiff to a cell in "D Facility," which, according to Plaintiff, "did not house inmates with wheelchairs, other than on a temporary basis." *Id.* at 18. Plaintiff claims Doe #2 knew the cell he assigned to Plaintiff recently had been out-of-use because of a broken window and "failed to verify" that the window had been repaired before assigning the cell to Plaintiff. *Id.* at 17.

When Plaintiff learned he was being assigned a cell in D Facility, he objected to Galindo and asked to be placed in "E Facility," where he had been housed prior to his surgery. *Id.* at 18. Galindo told Plaintiff his former cell in E Facility was no longer available. *Id*. Plaintiff told Galindo he would rather stay in a "holding cell" until a bed in E Facility could be found, but his request was denied. *Id.* Galindo told Plaintiff he was being assigned a cell in D Facility because "there was nowhere else to house him because it was late." *Id*. Galindo then handed Plaintiff "dirty, stinky clothes" to change into from his hospital jumpsuit. *Id.* Plaintiff complained, and Galindo told him "there was nowhere else for him to get any more clothes" at that time. *Id.* at 19.

At approximately 11:00 p.m., Galindo and Doe #1 transported Plaintiff by wheelchair to his newly assigned cell in D Facility. *Id.* at 21. Upon arriving, Plaintiff discovered the cell's window had a "softball size hole and cracked back window with shattered glass all over the desk and floor of the cell." *Id.* at 17, 19. Moreover, there were "no sheets, blankets or toilet paper in the cell." *Id.* at 19. Plaintiff claims he asked to be placed somewhere else because of the condition of the cell, but Galindo told him "there was no one there to ask, because it was late." *Id.* Plaintiff "stood off the wheelchair and hopped into the cell as ordered by Galindo, despite being in extreme pain and it being visibly unsafe." *Id.* Plaintiff argues Galindo and Doe #1 "had an opportunity to walk over to the staff restroom and get a roll of toilet paper for Plaintiff," but they ignored his request. *Id.* at 20. Galindo and Doe #1 closed the cell door behind Plaintiff and left. *Id.* at 19.

Plaintiff contends that, due to the hole in the window, he "endured extreme cold temperatures coming from outside through the broken window." *Id.* at 19–20. He states he was forced to lay on the "cold metal bunk" without a mattress, which caused him stress

and elevated his blood pressure.  *Id.* at 20.  During the night, Plaintiff had severe diarrhea and "was forced to humiliate himself and use the toilet without any toilet paper."  *Id.*  He suffered pain when he had to put weight on his left leg to get to the toilet.  *Id.*

At approximately 6:30 a.m. the next morning, October 29, 2019, Plaintiff contacted a correctional staff member and complained about not having a mattress, bedding, and toilet paper.  *Id.* at 21–22.  The broken window of Plaintiff's cell was repaired at some point on October 29, 2019.  *Id.* at 15; *see also id.* Ex. H at 65–66.  Plaintiff also saw a nurse on October 29, 2019 for a follow up.  *Id.* at 18.  The nurse told Plaintiff that Doe #2 had ordered Plaintiff classified as "Temporary Wheelchair Status," instead of a more elevated classification, "DPO," which includes inmates who use a wheelchair more regularly.  *Id.* at 18.  Plaintiff contends Doe #2 did this so that he could facilitate Plaintiff being housed in D Facility, despite Plaintiff needing a wheelchair.  *Id.*  The nurse then referred Plaintiff's case to a doctor, who ultimately "changed [Plaintiff's] status [from] Temporary Status to DPO-Intermittent Wheelchair user, [in order] to secure that Plaintiff be moved off of D Facility."  *Id.*  Plaintiff was later moved to a different cell.[6]

Plaintiff asserts three claims in his Complaint.  He contends that Defendants violated the Eighth Amendment and the American with Disabilities Act ("ADA") when they deprived him of safe and appropriate housing.  *Id.* at 22–23.  Plaintiff further claims Defendants were negligent under California tort law.  *Id.* at 23–24.  Plaintiff seeks both compensatory and punitive damages.  *Id.* at 24.

## III.   Eighth Amendment Claim

Section 1983 is a "vehicle by which plaintiffs can bring federal constitutional and statutory challenges to actions by state and local officials."  *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).  To state a claim under section 1983, Plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States

---

[6] While not clear from the Complaint, in one of the attached exhibits, Plaintiff indicates he was moved to a new cell in "A Facility" on October 30, 2019.  *See* Compl. Ex. D at 47.

was violated, and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Naffe v. Frey*, 789 F.3d 1030, 1035–36 (9th Cir. 2015).

Plaintiff alleges his Eighth Amendment rights were violated by Galindo, Doe #1, and Doe #2. Specifically, he argues Doe #2 "failed to protect his health and safety" when he assigned Plaintiff to a cell that was not suitable for his medical needs and was unsafe because of a broken window. *See* Compl. at 22–23. Plaintiff contends Galindo and Doe #1 violated his Eighth Amendment rights when they locked him in the cell for 7.5 hours, despite the broken window and without "reasonable access to a mattress, bedding and basic personal hygiene materials, such as toilet paper and clean clothing." *Id.* at 23.

### A.   *Legal Standard*

The Eighth Amendment prohibits cruel and unusual punishment of a person convicted of a crime. U.S. Const. amend. VIII. "After incarceration, only the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (ellipsis in original) (internal quotation and citation omitted). While the Eighth Amendment does not mandate that prisons be comfortable, they cannot be inhumane. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). To that end, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotations and citations omitted).

To state an Eighth Amendment claim with regard to prison conditions, a prisoner must satisfy both an objective prong and a subjective one. *Id.* at 834. First, the plaintiff must make an objective showing that the deprivation was "sufficiently serious" and resulted in the denial of the "minimal civilized measure of life's necessities." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (quoting *Rhodes*, 452 U.S. at 347). Second, the plaintiff must adequately allege the prison official subjectively had a "sufficiently culpable state of mind" by showing he or she was "deliberately indifferent" to the inmate's health or safety

in allowing the deprivation to take place. *Farmer,* 511 U.S. at 834; *Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1248 (9th Cir. 2016).   Finally, plaintiffs alleging deliberate indifference must also "demonstrate that the defendants' actions were both an actual and proximate cause of their injuries." *Lemire v. Cal. Dep't Corr. Rehab.*, 726 F.3d 1062, 1082 (9th Cir. 2013).

## B.   *Doe #2*

Plaintiff alleges Doe #2 was deliberately indifferent when he assigned Plaintiff to a cell in D Facility that was (1) not adequately wheelchair accessible and (2) unsafe because of a broken window.  Compl. at 16–17.  He contends Doe #2 was "cognizant of all factors to be considered before rehousing Plaintiff," including his "vulnerability due to his medical conditions and disabilities that included his need for a wheelchair and inability to walk" after his recent toe amputations.  *Id.* at 16.  Specifically, Plaintiff argues Doe #2 "directed" Plaintiff be given "14-day Temporary Wheelchair" status and assigned Plaintiff to a cell in D Facility, which houses inmates who use wheelchairs "on a temporary basis," as opposed to inmates who require a wheelchair long-term.  *Id.* at 18.  Plaintiff asserts Doe #2 failed to give him DPO status[7] so that Doe #2 could place Plaintiff in D Facility that night instead of E Facility, where Plaintiff had previously been housed and where Plaintiff had asked to be rehoused.  *Id.*  He further alleges that Doe #2 assigned him the cell despite knowing it had a broken window.  *Id.* at 17.

First, Plaintiff has not sufficiently alleged that Doe #2 objectively deprived him of something "sufficiently serious" when he assigned him to a cell in D Facility.  *See Foster v. Runnels*, 554 F.3d 807, 812 (9th Cir. 2009).  When considering whether a deprivation is sufficiently serious, courts look to the totality of the conditions of confinement, including

---

[7] DPO status is for "Intermittent Wheelchair Users."  *See Polley v. Davis*, 17-cv-03793-JST, 2018 WL 4352958, at *5 (N.D. Cal. Sept. 11, 2018); *see also* Compl. at 18.  DPO status is for inmates "who do not require a wheelchair full time but are medically prescribed a wheelchair for use outside of the assigned cell."  *See Miller v. Adonis*, 1:12-cv-00353-DAD-EPG-PC, 2019 WL 4076441, at *9 (E.D. Cal. Aug. 29, 2019).

9

the "circumstances, nature, and duration of [the] deprivation." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000).  For instance, a deprivation of a basic necessity that lasts only a few days may rise to the level of an Eighth Amendment violation, while more "modest deprivations can also form the objective basis of a violation, but only if such deprivations are lengthy or ongoing." *Id.* at 731–32 (citing *Keenan v. Hall*, 83 F.3d 1083, 1090–91 (9th Cir. 1996)).

Here, Plaintiff acknowledges that cells in D Facility are used for inmates who, like Plaintiff, need only temporary wheelchair access.  Compl. at 18.  Plaintiff also admits he was only in the cell for 7.5 hours, from 11:00 p.m. to 6:30 a.m., when most inmates would be sleeping.  *Id.* at 17, 20.  While doctors had advised Plaintiff to avoid putting weight on his left foot after having his fourth and fifth toes amputated, Plaintiff was not unable to move without the wheelchair.  He admits he was able to transfer from the wheelchair to the cell bunk.  *Id.* at 19.  The only deprivation Plaintiff points to as a result of being placed in the cell is that he was forced to hop from the wheelchair into the cell, "despite being in extreme pain," and had to put weight on his left foot at one point in order to use the toilet.[8] *Id.* at 20.  Such brief deprivations do not amount to a denial of the "minimal civilized measure of life's necessities."  *Wilson*, 501 U.S. at 298; *see also e.g., Marlin v. Raper*, No. 2:06-cv-0004-SWW/BD, 2007 WL 779710, at *5 (E.D. Ark. Mar. 13, 2007) (stating "lack of special facilities for temporarily wheelchair-bound inmates do not objectively constitute serious deprivation"); *Serrano v. Doe*, No. 3:17-CV-01606 (CSH), 2018 WL 3315580, at *6 (D. Conn. July 5, 2018) (concluding there was no "serious deprivation" when an inmate who injured his ankle was denied a wheelchair and forced to "hop[] to the medical department on his uninjured leg").  While it may well have been more comfortable for Plaintiff to be housed in cell that was fully wheelchair accessible, the Eighth Amendment

---

[8] It is not clear how Plaintiff's having a wheelchair would have eliminated any risk of him having to put weight on his left foot since, presumably, Plaintiff would have still had to stand in order to transfer from the bed to the wheelchair and from the wheelchair to the toilet.

10

does not require prison officials to provide comfortable prisons.  *Farmer*, 511 U.S. at 832.
In sum, Plaintiff has not alleged the type of "extreme deprivation" of the "minimal civilized
measures of life's necessities" required to state a claim against Doe #2 for assigning him
to a cell in D Facility.  *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

Even assuming Plaintiff alleged a sufficiently serious deprivation, however, Plaintiff
nonetheless fails to allege sufficient facts to state a claim because Plaintiff alleges no facts
tending to show that Doe #2 was deliberately indifferent when he made the cell assignment.
As noted above, Plaintiff admits D Facility was used to house inmates with temporary
wheelchair needs.  Compl. at 18.  He also acknowledges that, when he protested his
assignment to D Facility and asked to be housed in E Facility, he was told there was
nowhere else to house him at that time because it was late at night.  *Id.*  There is nothing
alleged in the Complaint from which to infer Doe #2 knew of and disregarded an "excessive
risk" to Plaintiff's safety when he assigned Plaintiff to the cell in D Facility for the night.
*See Farmer*, 511 U.S. at 837.  Thus, Plaintiff fails to satisfy the subjective deliberate
indifference prong and, as such, fails to state an Eight Amendment claim against Doe #2
for assigning him to a cell in D Facility.  *See id.*

Likewise, Plaintiff has failed to allege adequately that Doe #2 violated his Eighth
Amendment rights when he assigned Plaintiff to the cell without first confirming that a
previously broken window in the cell had been repaired.  As discussed above, the
subjective component of deliberate indifference is met when a prison official "knows of
and disregards an excessive risk to inmate health or safety."  *Id.*  As such, a defendant must
be both "aware of the facts from which the inference could be drawn that a substantial risk
of serious harm exists, and he must also draw that inference."  *Id.* at 837, 842.

Plaintiff contends that when Doe #2 assigned him the cell in D Facility, he "knew or
should have known" that the cell window was broken because a work order had been issued
for its repair on the morning of October 28, 2019.  Compl. at 17.  Plaintiff claims Doe #2
"failed to verify" that the repairs had been completed before assigning him to the cell.  *Id.*
But Plaintiff misstates the standard for deliberate indifference.  It is not enough that a

defendant "should have known" of the risk.  The "subjective approach" focuses only "on what a defendant's mental attitude actually was." *Farmer*, 511 U.S. at 839.  "If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Gibson v. Cty. of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002) (citation omitted)).  Plaintiff's allegations are insufficient to show Doe #2 knew the window had been broken and not repaired.  Plaintiff states Doe #2 should have known the window had been broken because a work order had issued for its repair.  Compl. at 17.  But, even assuming Doe #2 knew the window had been broken, there is nothing in the Complaint to suggest Doe #2 knew the ordered repairs had not been completed.  Thus, Plaintiff fails to state a claim of subjective deliberate indifference on Doe #2's part.  *See Toguchi*, 391 F.3d at 1057.

Based on the foregoing, the Court finds Plaintiff has failed to state an Eighth Amendment claim against Doe #2 and, as such, the Court *sua sponte* **DISMISSES** the claim.  *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); *Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121.

### C.    *Galindo and Doe #1*

Plaintiff contends that Galindo and Doe #1 violated his Eighth Amendment rights when they left him in the cell with a broken window without a mattress, bedding, clean clothing, and toilet paper for 7.5 hours—from 11:00 p.m. to 6:30 a.m.  Compl. at 18–23.

Plaintiff's allegations do not amount to "serious deprivations" resulting in the denial of the "minimal civilized measure of life's necessities."  *See Wilson*, 501 U.S. at 298. When considering conditions of confinement, courts must consider the amount of time the prisoner was subjected to the condition.  *See Hearns v. Terhune*, 413 F.3d 1036, 1042 (9th Cir. 2005).  Plaintiff acknowledges he was only subjected to the alleged conditions for 7.5 hours during a single night.  Compl. at 18–22.  The Ninth Circuit has held claims for sleeping without a mattress for one night "insufficient to state an Eighth Amendment violation and no amendment can alter that insufficiency." *Hernandez v. Denton*, 861 F.2d

1421, 1424 (9th Cir. 1988), *vacated on other grounds by Denton v. Hernandez*, 493 U.S. 801 (1989).

Additionally, California district courts have held an inmate's deprivation of toilet paper for a short time is not sufficiently serious to rise to the level of an Eighth Amendment violation. *See Mitchell v. Cate*, No. 2:11-cv-1240-JAM-AC, 2015 WL 5255339, at *6 (E.D. Cal. Sept. 9, 2015) (finding no Eighth Amendment violation when the plaintiff alleged he was denied soap, toilet paper, toothpaste, and a toothbrush for five days); *see also Murillo v. Bueno*, No. 1:12-cv-00095-LJO-DLB (PC), 2013 WL 1731393, at *1–2 (E.D. Cal. Apr. 22, 2013) (concluding a prisoner not provided with toothbrush, toothpaste, soap, toilet paper, or deodorant for approximately five days while housed in holding cell failed to state a claim) (report and recommendation adopted in full May 17, 2013).

Likewise, having to wear unclean clothes for 7.5 hours does not amount to a serious deprivation. *See Bejarano v. Allison*, 1:11-cv-0589-LJO-GBC (PC), 2012 WL 5451810, at *2 (Nov. 7, 2012, E.D. Cal.) ("[B]eing deprived of clean clothes for three days does not amount to an objectively serious deprivation within the meaning of the Eighth Amendment."). Finally, to the extent Plaintiff alleges the broken window in the cell made it unsafe[9] and uncomfortably cold, these types of sort of short-term discomforts do not amount to an Eighth Amendment violation. *See Johnson*, 217 F.3d at 729–32 (finding no serious deprivation when inmates were kept outside overnight in December in 22-degree weather); *Keenan*, 83 F.3d at 1091 (concluding allegation that temperatures were "well above" or "well below" room temperature was not sufficient to support Eighth Amendment claim).

/ / /

---

[9] Plaintiff alleges there was broken glass in the cell, on the desk and floor below the windowsill, which made the cell unsafe. Compl. at 19. He does not allege, however, that Galindo or Doe #1 knew about the broken glass. *See id.* He states only that he told the officers that "the window was broken" and that there was "no mattress . . .sheets, blankets or toilet paper in the cell." *Id.* Thus, Plaintiff also has failed to allege deliberate indifference because there is no indication the defendants in question knew of and disregarded an "excessive risk" to Plaintiff's safety from the alleged broken glass. *See Farmer*, 511 U.S. at 837.

13

Even when considering the purported deprivations as a whole, Plaintiff fails to allege a serious deprivation. *See Hebert v. Moreno*, 2016 WL 1729185, at *4 (C.D. Cal. Mar. 29, 2016), *report and recommendation adopted*, 2016 WL 1733425 (C.D. Cal. Apr. 29, 2016) ("The Ninth Circuit and other federal courts have also found that isolated instances of a prisoner being deprived a bed, mattress, and/or conditions conducive to sleeping for 24 hours or more do not satisfy the objective prong of an Eighth Amendment violation."); *see also Williams v. Delo*, 49 F.3d 442, 444–45 (8th Cir. 1995) (concluding placement in strip cell without water, mattress, a toothbrush, toothpaste, deodorant, soap, sheets, blankets, pillow cases, pillows, the plaintiff's legal mail, and/or the plaintiff's clothing, for a period of four days, did not violate Eighth Amendment).

Based on the above, Plaintiff has failed to allege a "risk so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993); *see also Estelle*, 429 U.S. at 102. Therefore, the Court **DISMISSES** the Eighth Amendment claims against Galindo and Doe #1 *sua sponte* based on Plaintiff's failure to state a claim against them. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); *Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121.

## IV.   ADA Claim

Plaintiff also seeks to hold Galindo, Doe #1, and Doe #2 liable under the Americans with Disabilities Act ("ADA"). The ADA applies in the prison context. *See* 42 U.S.C. § 12131(1)(B); *United States v. Georgia*, 546 U.S. 151, 154 (2006). In order to state a claim under Title II of the ADA, however, a plaintiff must allege:

> (1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of [his] disability.

*O'Guinn v. Lovelock Correctional Center*, 502 F.3d 1056, 1060 (9th Cir. 2007) (citations and internal quotation marks omitted).

14

The Court notes as an initial matter that Plaintiff may not pursue an ADA claim against the individual defendants in their individual capacities. *See Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1038 (9th Cir. 2006) (holding that the "bar on suits against individual defendants" applies to the ADA); *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002) (holding that the "ADA applies only to public entities.")  CDCR can be liable under the ADA "if it intentionally or with deliberate indifference fails to provide meaningful access or reasonable accommodation to disabled persons." *Mark H. v. Lemahieu*, 513 F.3d 922, 938 (9th Cir. 2008).  But, because Plaintiff names only individuals as Defendants, his Complaint fails to state an ADA claim upon which relief can be granted. *See id.*; *see also Vinson v. Thomas*, 288 F.3d 1145 (9th Cir. 2002) ("[A] plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in [his or] her individual capacity to vindicate rights created by Title II of the ADA.")

Plaintiff has also failed to allege facts from which a plausible inference could be drawn that Defendants actions were taken "by reason of his disability," [10] as opposed to what Defendants told Plaintiff at the time—that it was late at night and the cell Plaintiff was assigned was the only available option at the time.  This rationale is supported by the fact that Plaintiff was promptly removed from the cell at 6:30 a.m. the next morning, October 29, 2019, and the broken window was repaired later that same day.  Compl. Ex. H at 65–66.  Further, based on documents attached to the Complaint, it appears Plaintiff was

/ / /

---

[10] The Court notes that, generally, temporary conditions do not qualify as a disability under the ADA. *See Sanders v. Arneson Prods., Inc.*, 91 F.3d 1351 (holding that temporary condition that lasted less than four months was not a disability under the ADA) (citing 29 C.F.R. Part 1630 App., § 1630.2(j)); *Johnson v. City & Cty. of San Francisco*, Case Nos. C 99–4375 JL, C 00–0221 JL, 2001 WL 263298, *4 (N.D. Cal. March 8, 2001) ("[T]he ADA does not cover disabilities which are temporary in nature.").  Regulations list three factors to consider in determining whether an individual is substantially limited in a major life activity, two of which relate to the duration of the impairment and its impact. *See* 29 C.F.R. § 1620.2(j). Those factors are: "(i) The nature and severity of the impairment; (ii) The duration or expected duration of the impairment; and (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." *Id.*

moved to a cell in A Facility, which houses DPO status inmates,[11] on October 30, 2019, *see id.* Ex. B at 32, further suggesting that his original assignment to D Facility was not made due to Plaintiff's disability, but because of his "Temporary Status," the late hour, and limited cell availability. *See O'Guinn*, 502 F.3d at 1060; *Iqbal*, 566 U.S. at 682 (analyzing "obvious alternative explanations" and rejecting purposeful discrimination as a "plausible conclusion" sufficient to survive a motion to dismiss).

Therefore, because Plaintiff names only individual defendants and has not alleged facts tending to show that Defendants intentionally discriminated against him based on his purported disability, he fails to state a claim for violation of the ADA. Accordingly, the Court **DISMISSES** the ADA claim *sua sponte* based on Plaintiff's failure to state a claim. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); *Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121.

## V.   State Law Negligence Claim

In his third ground for relief, Plaintiff argues Doe #1, Doe #2, and Galindo were negligent under California state law when they failed to provide him with safe and secure living conditions of confinement and "failed to use reasonable care to avoid foreseeable risk of injury" when assigning him to the cell in D Facility on October 28, 2019. Compl. at 23–24.

"In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). However, "once judicial power exists under § 1367(a), retention of supplemental

/ / /

---

[11] Plaintiff states he saw a nurse on October 29, 2019, and, after a review of his medical status, Plaintiff's classification was changed from "Temporary Wheelchair Status" to "DPO-Intermittent Wheelchair user," qualifying him to be moved off D Facility, which does not house DPO inmates. Compl. at 18.

jurisdiction over state law claims under 1367(c) is discretionary." *Acri v. Varian Assoc., Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997).

"The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).  The Supreme Court has cautioned that "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).  As discussed above, the Court has found Plaintiff's Complaint fails to state a plausible claim for relief under Section 1983 or the ADA.  Therefore, in the absence of any viable federal claim upon which relief may be granted, the Court exercises its discretion and **DISMISSES** Plaintiff's supplemental state law claim without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

## VI.    Leave to Amend

Based on the foregoing, the Court finds that Plaintiff's Complaint fails to state any claim upon which relief can be granted, and that it therefore must be dismissed *sua sponte* and in its entirety pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).  *See Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121.  Because Plaintiff is proceeding pro se, however, the Court, having now provided him with "notice of the deficiencies in his complaint," will also grant him an opportunity to fix those deficiencies.  *See Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (citing *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992)).

In light of Plaintiff's pro se status, the Court grants Plaintiff leave to amend his pleading to attempt to reallege sufficiently his claims against Galindo and *those defendants he is able to identify by name*, if he can.[12]  *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th

---

[12] As noted above, Plaintiff states that he does not currently know the identity of Doe #1 and Doe #2.  The Federal Rules of Civil Procedure neither authorize nor prohibit the use of fictitious parties, although Rule 10 does require a plaintiff to include the names of all parties in his complaint.  *See* Fed. R. Civ. P. 10(a).  Courts especially disfavor Doe pleading in an IFP case because, in the event the plaintiff's complaint alleges a plausible claim for relief, it is effectively impossible for the United States Marshal or Deputy Marshal to fulfill his or her duty to serve an unnamed defendant.  *See* Fed. R. Civ. P. 4(c)(3); 28 U.S.C.

Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend [pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)] unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'") (quoting *Akhtar*, 698 F.3d at 1212).

## MOTION FOR APPOINTMENT OF COUNSEL

Plaintiff has also filed a Motion for Appointment of Counsel,[13] because he is unable to afford a lawyer and claims his imprisonment, particularly with current COVID-19 restrictions placed on inmates housed at RJD, will limit his ability to litigate. *See* ECF No. 8 at 1–2, *see also* ECF No. 9. Plaintiff argues that an eventual trial will likely involve conflicting testimony and evidence that trained counsel will be better able to evaluate and present. *See* ECF No. 8 at 1–2. Plaintiff further contends that severe restrictions at RJD related to COVID-19 additionally have hampered his ability to adequately represent himself because, *inter alia*, he lacks access to the law library. *Id.* at 11–12.

There is no constitutional right to counsel in a civil case. *Lassiter v. Dep't of Social Servs.*, 452 U.S. 18, 25 (1981); *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009). And, while 28 U.S.C. § 1915(e)(1) grants the district court limited discretion to "request" that an attorney represent an indigent civil litigant, *Agyeman v. Corr. Corp. of Am.*, 390 F.3d 1101, 1103 (9th Cir. 2004), this discretion may be exercised only under "exceptional circumstances." *Id.*; *see also Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991). A finding of exceptional circumstances requires the Court "to consider whether there is a 'likelihood of success on the merits' and whether 'the prisoner is unable to articulate his

---

§ 1915(d). Assuming Plaintiff is able to amend his Complaint to state a claim, he may seek discovery to obtain the names of the Does and later amend his pleading in order to substitute the true names of those defendants, unless it is clear that discovery will not uncover their identities, or that Plaintiff's amended complaint is subject to dismissal on other grounds. *See Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (citing *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) ("As a general rule, the use of 'John Doe' to identify a defendant is not favored.")).

[13] Plaintiff filed a "Motion for Appointment of Counsel" on January 21, 2021. *See* ECF No. 8. On February 9, 2021, Plaintiff filed a "Supplement" to his motion, *see* ECF No. 9, which, upon review, is merely a duplicate copy of the motion previously filed on January 21, 2021.

claims in light of the complexity of the legal issues involved.'"  *Harrington v. Scribner*, 785 F.3d 1299, 1309 (9th Cir. 2015) (quoting *Palmer*, 560 F.3d at 970).

As currently pleaded, Plaintiff's Complaint demonstrates neither the likelihood of success nor the legal complexity required to support the appointment of pro bono counsel pursuant to 28 U.S.C. § 1915(e)(1).  *See Terrell*, 935 F.3d at 1017; *Palmer*, 560 F.3d at 970.  First, while Plaintiff may not be formally trained in law, his allegations, as liberally construed, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), show he nevertheless is fully capable of legibly articulating the facts and circumstances relevant to his claims, which are not legally "complex."  *Agyeman*, 390 F.3d at 1103.  Second, for the reasons discussed above, Plaintiff's Complaint requires *sua sponte* dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, and thus it is simply too soon to tell whether he will be likely to succeed on the merits of any potential constitutional claim against any of the defendants. *Id*.

Furthermore, while the Court is sympathetic to the difficulties Plaintiff is experiencing due to the COVID-19 pandemic, minimal-to-no access to the law library does not establish exceptional circumstances.  Indeed, lacking legal expertise is the norm rather than an "exceptional circumstance" in pro se civil rights cases.  *See, e.g.*, *Wood v. Housewright*, 900 F.2d 1332, 1335–36 (9th Cir. 1990) (denying appointment of counsel where plaintiff complained that he had limited access to law library and lacked a legal education).  Moreover, courts in the Ninth Circuit have declined to find that challenges presented by the COVID-19 pandemic alone establish exceptional circumstances.  *See, e.g.*, *Pitts v. Washington*, No. C18-526-RSL-MLP, 2020 WL 2850564, at *1 (W.D. Wash. June 2, 2020) (denying motion for appointment of counsel because, "[a]lthough Plaintiff contends he is unable to access the law library because of social distancing, this bare assertion does not justify the appointment of counsel at this time, nor does the COVID-19 pandemic"); *Faultry v. Saechao*, No. 18-cv-1850-KJM-AC-P, 2020 WL 2561596, at *2 (E.D. Cal. May 19, 2020) (denying motion for appointment of counsel and explaining that "[c]ircumstances common to most prisoners, such as lack of legal education and limited

law library access, do not establish exceptional circumstances supporting appointment of counsel . . . .   The impacts of the COVID-19 health crisis on prison operations are also common to all prisoners."); *see also Snowden v. Yule*, No. 2:17-cv-2167-TLN-AC-P, 2020 WL 2539229, at *1 (E.D. Cal., May 19, 2020) (stating that "limited access to the prison law library and resources, particularly during the current COVID-19 health crisis," is a circumstance that plaintiff shares with many other prisoners); *Raya v. Barka*, No. 3:19-cv-2295-WQH-AHG, 2020 WL 5877848, at *3 (S.D. Cal., Oct. 2, 2020) (noting that "courts in this circuit have declined to find that the COVID-19 pandemic establishes exceptional circumstances") (citing *Pitts*, 2020 WL 2850564, at *1; *Montgomery v. Crane*, No. 18-cv-02911-RM-NYW, 2020 WL 2848149, at *1 (D. Colo. June 2, 2020) (denying motion for appointment of counsel and finding that plaintiff's inability to access the law library due to the COVID-19 pandemic was not an exceptional circumstance that justified appointment of counsel because plaintiff could have requested an extension to file his responsive briefing)).

Therefore, the Court finds no "exceptional circumstances" currently exist and **DENIES** Plaintiff's Motion for Appointment of Counsel (ECF No. 8) without prejudice. *See, e.g., Cano v. Taylor*, 739 F.3d 1214, 1218 (9th Cir. 2014) (affirming denial of counsel where prisoner could articulate his claims in light of the complexity of the issues involved and did not show likelihood of succeed on the merits).

<b>CONCLUSION</b>

For the above-provided reasons, the Court:

1.     **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (ECF Nos. 2, 4, 6).

2.     **DIRECTS** the Secretary of CDCR, or her designee, to collect from Plaintiff's prison trust account the $350 filing fee owed in this case by garnishing monthly payments from his account in an amount equal to twenty percent (20%) of the preceding month's income and forwarding those payments to the Clerk of the Court each time the amount in the account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2). *ALL PAYMENTS MUST BE*

*CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION*.

      3.    **DIRECTS** the Clerk of the Court to serve a copy of this Order on Kathleen Allison, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001.

      4.    **DENIES** Plaintiff's Motion for Appointment of Counsel (ECF No. 8) without prejudice.

      5.    **DISMISSES** this civil action *sua sponte* based on Plaintiff's failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

      6.    **GRANTS** Plaintiff <u>forty-five (45) days' leave from the date of the electronic docketing of this Order</u> in which to file an Amended Complaint that cures the deficiencies of pleading noted above.  The Amended Complaint must be complete by itself without reference to his original pleading.  Defendants not named and any claim not realleged in the Amended Complaint will be considered waived.  *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios*, 896 F.2d at 1546 ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled").

      If Plaintiff fails to file an Amended Complaint within the time provided, the Court will enter a final Order dismissing this civil action based both on Plaintiff's failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) and on Plaintiff's failure to prosecute in compliance with a court order requiring amendment.  *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

      **IT IS SO ORDERED**.

Dated:  March 2, 2021

*Janis L. Sammartino*

Hon. Janis L. Sammartino
United States District Judge