AURELIO MARTIN SEPULVEDA
(Name)
480 ALTA ROAD
(Address)
SAN DIEGO, CA 92179
(City, State, Zip)
J-76828
(CDCR / Booking / BOP No.)

**FILED**

JUN 1 8 2021

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                              DEPUTY

# United States District Court
## Southern District of California

AURELIO MARTIN SEPULVEDA
(Enter full name of plaintiff in this action.)

                                    Plaintiff,

v.

E. GALINDO, Correctional Officer;
JOHN DOE # 2, Correctional Sergeant;
JOHN CHAU, Medical Doctor; and
PEYMAN SHAKIBA, Medical Doctor,
(Enter full name of each defendant in this action.)

                                    Defendant(s).

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Case No. 3:20-CV-2079-JLS(MDD)
(To be supplied by Court Clerk)

**FIRST AMENDED**
Complaint under the
Civil Rights Act
42 U.S.C. § 1983

## A. Jurisdiction

Jurisdiction is invoked pursuant to 28 U.S.C. § 1343(a)(3) and 42 U.S.C. § 1983. If you wish to assert jurisdiction under different or additional authority, list them below.
28 U.S.C. § 1331; 28 U.S.C. § 1367 (SUPPLEMENTAL)

## B. Parties

1. <u>Plaintiff</u>: This complaint alleges that the civil rights of Plaintiff, AURELIO MARTIN SEPULVEDA
(print Plaintiff's name)
_____, who presently resides at RICHARD J. DONOVAN CORRECTIONAL
(mailing address or place of confinement)
FACILITY _____, were violated by the actions of
the below named individuals. The actions were directed against Plaintiff at RICHARD J. DONOVAN
CORRECTIONAL FACILITY _____ on (dates) 10/28/19, 10/28/19, and 10/28/19.
(institution/place where violation occurred)        (Count 1)      (Count 2)      (Count 3)

§ 1983 SD Form
(Rev. 8/15)

2. <u>Defendants:</u> (Attach same information on additional pages if you are naming more than 4 defendants.)

Defendant  E. GALINDO                     resides in   SAN DIEGO                ,
                    (name)                                                      (County of residence)
and is employed as a   CORRECTIONAL OFFICER                  . This defendant is sued in
                          (defendant's position/title (if any))
his/her ☒ individual ☐ official capacity. (Check one or both.) Explain how this defendant was acting under

color of law:  DEFENDANT GALINDO IS AND WAS EMPLOYED AS A CORRECTIONAL OFFICER

ASSIGNED AS MEDICAL TRANSPORTATION OFFICER AT THE RICHARD J. DONOVAN

CORRECTIONAL FACILITY LOCATED IN SAN DIEGO, CALIFORNIA                         .

Defendant  JOHN DOE # 2                   resides in   SAN DIEGO                ,
                    (name)                                                      (County of residence)
and is employed as a   CORRECTIONAL SERGEANT                 . This defendant is sued in
                          (defendant's position/title (if any))
his/her ☒ individual ☐ official capacity. (Check one or both.) Explain how this defendant was acting under

color of law:  DEFENDANT JOHN DOE # 2 IS AND WAS EMPLOYED AS A CORRECTIONAL

SERGEANT ASSIGNED AS A MEDICAL SERGEANT IN THE TTA/ER AT THE RICHARD J.

DONOVAN CORRECTIONAL FACILITY LOCATED IN SAN DIEGO, CALIFORNIA                 .

Defendant  JOHN CHAU,MD                   resides in   SAN DIEGO                ,
                    (name)                                                      (County of residence)
and is employed as a   PHYSICIAN & SURGEON                   . This defendant is sued in
                          (defendant's position/title (if any))
his/her ☒ individual ☒ official capacity. (Check one or both.) Explain how this defendant was acting under

color of law: DEFENDANT JOHN CHAU,MD IS AND WAS EMPLOYED AS A STAFF PHYSICIAN

THE CALIFORNIA CORRECTIONAL HEALTH CARE SERVICES (CCHCS) TO PROVIDE MEDICAL

CARE TO INMATES IN CDCR AND AT RICHARD J. DONOVAN CORRECTIONAL FACILITY .

Defendant  PEYMAN SHAKIBA,MD              resides in   SAN DIEGO                ,
                    (name)                                                      (County of residence)
and is employed as a   PHYSICIAN & SURGEON                   . This defendant is sued in
                          (defendant's position/title (if any))
his/her ☒ individual ☒ official capacity. (Check one or both.) Explain how this defendant was acting under

color of law:  DEFENDANT PEYMAN SHAKIBA,MD IS AND WAS EMPLOYED AS A STAFF PHYSICIAN

BY THE CALIFORNIA CORRECTIONAL HEALTH CARE SERVICES (CCHCS) TO PROVIDE

MEDICAL CARE TO INMATES IN CDCR AND AT RICHARD J. DONOVAN CORRECTIONAL FACILITY.

**C. Causes of Action** (You may attach additional pages alleging other causes of action and the facts supporting them if necessary.)

<u>Count 1</u>: The following civil right has been violated: <u>EIGHTH AMENDMENT VIOLATION-</u>

<u>DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS</u> (E.g., right to medical care, access to courts,

due process, free speech, freedom of religion, freedom of association, freedom from cruel and unusual punishment, etc.)

<u>Supporting Facts</u>: [Include all facts you consider important to Count 1. State what happened clearly and in your own words. You need not cite legal authority or argument. Be certain to describe exactly what each defendant, *by name*, did to violate the right alleged in Count 1.]

PLEASE SEE ATTACHED COMPLAINT

FACTUAL ALLEGATIONS

Count 2: The following civil right has been violated:  EIGHTH AMENDMENT VIOLATION–

(E.g., right to medical care, access to courts,

FAILURE TO PROTECT HEALTH & SAFETY FROM DANGEROUS INHUMANE CONDITIONS

due process, free speech, freedom of religion, freedom of association, freedom from cruel and unusual punishment, etc.)

Supporting Facts:   [Include all facts you consider important to Count 2. State what happened clearly and in your own words. You need not cite legal authority or argument. Be certain to describe exactly what each defendant, *by name*, did to violate the right alleged in Count 2.]

PLEASE SEE ATTACHED COMPLAINT

FACTUAL ALLEGATIONS

Count 3: The following civil right has been violated: TORT OF NEGLIGENCE UNDER CALIFORNIA
LAW– NEGLIGENT ENDANGERMENT
(E.g., right to medical care, access to courts,
due process, free speech, freedom of religion, freedom of association, freedom from cruel and unusual punishment, etc.)

Supporting Facts: [Include all facts you consider important to Count 3. State what happened clearly and in your own words. You need not cite legal authority or argument. Be certain to describe exactly what each defendant, *by name*, did to violate the right alleged in Count 3.]
PLEASE SEE ATTACHED COMPLAINT

FACTUAL ALLEGATIONS

**D. Previous Lawsuits and Administrative Relief**

1. Have you filed other lawsuits in state or federal courts dealing with the same or similar facts involved in this case? ☒Yes ☐ No.

If your answer is "Yes", describe each suit in the space below. [If more than one, attach additional pages providing the same information as below.]

(a) Parties to the previous lawsuit:
Plaintiffs: AURELIO MARTIN SEPULVEDA

Defendants: UNKNOWN (PHYSICAL THERAPIST)

(b) Name of the court and docket number: SUPERIOR COURT OF CALIFORNIA- COUNTY OF RIVERSIDE [CASE NO: BLC1300182] BLYTHE COURT

(c) Disposition: [ For example, was the case dismissed, appealed, or still pending?] DISMISSED

(d) Issues raised: MEDICAL CARE RESULTING IN PERSONAL INJURY OF SHOULDER

(e) Approximate date case was filed: 2010

(f) Approximate date of disposition: SAME

2. Have you previously sought and exhausted all forms of available relief from the proper administrative officials regarding the acts alleged in Part C above? [E.g., CDCR Inmate/Parolee Appeal Form 602, etc.] ? ☒ Yes ☐ No.

If your answer is "Yes", briefly describe how relief was sought and the results. If your answer is "No", briefly explain why administrative relief was not exhausted.

ADMINISTRATIVE APPEAL LOG # RJD-E-19-07299  FULLY EXHAUSTED THRU THIRD LEVEL; CDCR 1824-REASONABLE ACCOMMODATION REQUEST LOG # RJD-A-19-7025 MOVED TO ADA CELL AND DPW DESIGNATION MADE PRIOR TO DECISION (RAP) RESPONSE;

HEALTH CARE GRIEVANCE LOG # RJD-HC-20001425 FULLY EXHAUSTED THRU THIRD LEVEL. ALL ADMINISTRATIVE REMEDIES FULLY EXHAUSTED AS AVAILABLE THROUGH CDCR.

**E.  Request for Relief**

Plaintiff requests that this Court grant the following relief:

1. An injunction preventing defendant(s):

_____

_____

_____

_____

2. Damages in the sum of $ <u>ACCORDING TO PROOF</u>

3. Punitive damages in the sum of $ <u>ACCORDING TO PROOF</u>.

4. Other: <u>ANY FURTHER RELIEF AS THE COURT DEEMS PROPER, INCLUDING</u>
<u>APPOINTMENT OF COUNSEL</u>

**F. Demand for Jury Trial**

Plaintiff demands a trial by ☒ Jury  ☐ Court.  (Choose one.)

**G.   Consent to Magistrate Judge Jurisdiction**

In order to insure the just, speedy and inexpensive determination of Section 1983 Prisoner cases filed in this district, the Court has adopted a case assignment involving direct assignment of these cases to magistrate judges to conduct all proceedings including jury or bench trial and the entry of final judgment on consent of all the parties under 28 U.S.C. § 636(c), thus waiving the right to proceed before a district judge.  The parties are free to withhold consent without adverse substantive consequences.

The Court encourages parties to utilize this efficient and expeditious program for case resolution due to the trial judge quality of the magistrate judges and to maximize access to the court system in a district where the criminal case loads severely limits the availability of the district judges for trial of civil cases.  Consent to a magistrate judge will likely result in an earlier trial date.  If you request that a district judge be designated to decide dispositive motions and try your case, a magistrate judge will nevertheless hear and decide all non-dispositive motions and will hear and issue a recommendation to the district judge as to all dispositive motions.

You may consent to have a magistrate judge conduct any and all further proceedings in this case, including trial, and the entry of final judgment by indicating your consent below.

Choose only one of the following:

☐ Plaintiff consents to magistrate judge jurisdiction as set forth above.

**OR**

☒ Plaintiff requests that a district judge be designated to decide dispositive matters and trial in this case.

<u>  6/16/21  </u>
Date

Signature of Plaintiff

1   AURELIO MARTIN SEPULVEDA
    CDCR # J-76828 / E24-C105-01LOW
2   RICHARD J. DONOVAN CORRECTIONAL FACILITY
    480 ALTA ROAD
3   SAN DIEGO, CA 92179

4   In Propria Persona

5

6                    UNITED STATES DISTRICT COURT

7                   SOUTHERN DISTRICT OF CALIFORNIA

8

9   AURELIO MARTIN SEPULVEDA,          CASE NO.3:20-CV-2079-JLS (MDD)

10           Plaintiff,                FIRST AMENDED COMPLAINT UNDER
                                       THE CIVIL RIGHTS ACT 42 U.S.C.
11      vs.                            § 1983 SEEKING COMPENSATORY &
                                       PUNITIVE DAMAGES; AND DEMAND
12  E. GALINDO,Correctional Officer;   FOR JURY TRIAL
    JOHN DOE # 2,Correctional Sergeant,
13  at the RJD Correctional Facility
    sued in their Individual Capacities;
14  JOHN CHAU,Medical Doctor;PEYMAN
15  SHAKIBA,Medical Doctor,at the RJD
    Correctional Facility sued in both
16  their Individual and Official Capacities,
                    Defendants.      /

17              VERIFIED COMPLAINT FOR DAMAGES
                  AND DEMAND FOR TRIAL BY JURY
18

19                     I. INTRODUCTION

20      This is a Civil Rights Action filed by Aurelio Martin Sepulveda,a State

21  Prisoner,for Damages and seeking a Trial by Jury under 42 U.S.C. § 1983 alleging

22  an **Eighth Amendment** Violation of Deliberate Indifference to his Serious Medical

23  Needs, a violation of his Constitutional Right to be free from Cruel or Unusual

24  Punishment as guaranteed by the **Eighth Amendment** to the **United States Constitution**;

25  and also alleges the **Tort of Negligence** under the laws of the **State of California**.

26                     II. JURISDICTION

27      1. The Court has Jurisdiction over Plaintiff's Claims of Violation of

28  Federal Constitutional Rights under 28 U.S.C. §§ 1331 & 1343 and 42 U.S.C. § 1983.

                               1

2. Additionally,the Court also has Supplemental Jurisdiction over the Plaintiff's State Law Tort Claim under 28 U.S.C. § 1367.

### III. VENUE

3. The events giving rise to the Claims occured in the District,therefore Venue is appropiate under 28 U.S.C. § 1391(b)(2).

### IV. PARTIES

4. Plaintiff Aurelio Martin Sepulveda is and was at all times relevant to this Action incarcerated in the California Department of Corrections & Rehabilitation (CDCR) and housed at the Richard J. Donovan Correctional Facility (RJD) located in San Diego,CA.

5. Plaintiff as a State Prisoner is and was at all times relevant to this Action in the legal custody of named Defendants as Correctional Officers at RJD and dependent on Defendants named as Staff Physicians at RJD for Medical Care to his Serious Medical Needs as his Primary Care Providers.

6. Defendant E. Galindo,is a Correctional Officer employed at RJD and at all times relevant to this Action,was assigned as a Medical Transportation Officer in charge of the Medical Transportation of Inmates to and from Off-Site Hospitals.

7. At all times relevant to this Action, Defendant E. Galindo was responsible for the care and control of Plaintiff's Health & Security because of his Medical Condition and Disability.

8. Defendant E. Galindo,during the scope of employment was acting under color of state law and is sued in his Individual capacity.

9. Defendant John Doe # 2,is a Correctional Sergeant employed at RJD and at all times relevant to this Action,was assigned to the Treatment Triage Area (TTA) & Emergency Room (ER) and in charge of enforcing and determining appropiate Inmate Housing Assignments in accordance with CDCR Policies,including **Article 46 I/M Housing Assignments No's: 54046.3 & 54046.4,**when Inmates are returned to the Prison after being Released from Off-Site Hospitals.

2

10. These binding Policies make Defendant John Doe # 2,in his Supervisory Capacity responsible as vested in them.

11. Defendant John Doe # 2's name is presently unknown to Plaintiff.

12. In addition, Defendant John Doe # 2 is responsible for ensuring CDCR's Provision of Health & Safety to Prisoners and is in charge of the Supervision of subordinate Medical Transportation Officers,including Defendant E. Galindo.

13. Defendant John Doe # 2,during the scope of employment was acting under color of state law and is sued in his Individual Capacity.

14. Defendant John Chau,MD is employed at RJD as a Staff Physician & Surgeon by the California Correctional Health Care Services (CCHCS) to provide Medical Care to Inmates in CDCR and housed at RJD.

15. At all times relevant to this Action,on October 28,2019,Defendant John Chau,MD was assigned to the TTA/ER at RJD and responsible for treating Plaintiff as an Out to Medical(OTM) Emergent Return from Hospital and for Medically Clearing Plaintiff for Rehousing.

16. Defendant John Chau,MD was responsible for Reviewing the Surgeon's Medical Reports and Post-Operative Orders and for ensuring that Plaintiff was issued proper accommodation for his Conditions,including issuing of a Wheelchair and properly designating Plaintiff's Medical Status to ensure proper Housing accommodations (Wheelchair Access-Cell) to follow the Surgeon's Recommendations.

17. Defendant John Chau,MD,during the scope of employment was acting under color of state law and is sued in both his Individual and Official Capacities.

18. Defendant Peyman Shakiba,MD is employed at RJD as a Staff Physician & Surgeon by the California Correctional Health Care Services (CCHCS) to provide Medical Care to Inmates in CDCR and housed at RJD.

19. At all times relevant to this Action, on October 29,2019,Defendant Peyman Shakiba,MD was assigned to D-Facility Medical Clinic and responsible for treating Plaintiff as his Primary Care Provider.

3

20. Defendant Peyman Shakiba,MD,as Plaintiff's Primary Care Provider was responsible for reviewing his Medical File,including the Operative Report and Post-Operative Recommendations from Surgeons and ensure that Plaintiff's Disability was properly designated and appropiately housed to accommodate his Condition as Recommended by the Surgeons.

21. Defendant Peyman Shakiba,MD,during the scope of employment was acting under color of state law and is sued in both his Individual and Official Capacities.

### V. EXHAUSTION OF ADMINISTRATIVE REMEDIES

22. On November 6,2019, Plaintiff submitted Administrative Appeal Log# **RJD-E-19-07299** and alleged being subjected to Inhumane Living Conditions by housing him in a Cell deactivated with a broken back window,broken glass spilt over the floor,without a Mattress,Blankets,Sheets,clean Clothing or Tiolet Paper on October 28,2019 upon return from Off-Site Hospital after undergoing Two Major Surgical Procedures [Heart Surgery & Amputation of Two Toes @ Left Foot] 4 days prior.

23. This Appeal was Denied at the First Level on December 17,2019.

24. On January 14,2020, Plaintiff re-submitted the Appeal for a Second-Level Review and on January 28,2020 it was Denied at the Second-Level.

25. Although, the Appeal at the First & Second Level of Review concluded, that the Request was outside the scope of the Appeals Process,it was responded to on the merits.

26. On July 16,2020,the Appeal was Denied at the Third Level of Review.This Decision exhausted all administrative remedies available within CDCR.**(Exhibit-A)**

27. Simultaneously, Plaintiff submitted CDCR 1824-Reasonable Accommodation Request on November 06,2019.[Log # **RJD-A-19-7025**]

28. On November 14,2019, a Reasonable Accommodation Panel (RAP) Meeting was held and Plaintiff was sent a Copy on December 04,2019. This Response noted a change in Disability Placement Program Status from DPO to DPW on November 13,2019

4

and Plaintiff having been moved to a DPW (ADA) Cell on November 13,2019 to accommo-
date his condition and Surgeon's Non Weight Bearing Order dated October 24,2019.()
(Exhibit -B)

29. This Decision was satisfactory and did not require Plaintiff to re-submit
an Appeal for further Review.

30. On January 29,2020, Plaintiff submitted Administrative Appeal Log # RJD-E-
20-0756(later modified to Log # RJD-E-20-0582 at the First Level of Review).

31. This Administrative Appeal requested a copy of CDCR 2184-Plant Operations
Work Request & Log # Dep't Request No.FD-19-10-078 Work Order,indicating the Work
Completion Date by Plant Operations of the broken Window Repair of D-Facility,Bldg.
# 16,Cell # 111.This Window was totally replaced due to the hole in it.

32. This Appeal was Partially Granted at the First Level of Review,in that
action requested at # 2-Request for a Copy of the CDCR 2184 Form was Granted & a
copy provided to Plaintiff on February14,2020. (Exhibit-C)

33. On April 13,2020, Plaintiff submitted a Timely Government Claim and was
assigned Claim # 20003925 regarding Plaintiff's Tort of Negligence Claims.

34. On May 13,2020 this Claim was completed and Rejected due to involving "com-
plex issues that are beyond the scope of analysis and legal interpretation typically
undertaken by the GCP. Claims involving complex issues are best determined by the
courts." Thus,was rejected to allow for Plaintiff.to initiate court action. (Exhibit-
D)   35. On August 23,2020, Plaintiff submitted Health Care Grievance CDCR 602 HC
and was assigned Log # RJD-HC-20001425. (Exhibit-E)

36. This Grievance alleged the interference with prescribed treatment and fail-
ure to carry out treatment Recommended by the Surgeon. In addition, to the deliberate
indifference to his Serious Medical Needs. An Eighth Amendment violation by both
Defendants Dr. John Chau, MD and Dr. Peyman Shakiba, MD.

37. Although,initially rejected on September 03,2020, after it was resubmitted

5

on September 14,2020. It was accepted on September 16,2020 and reviewed on the merits.

38. An Institutional Response was issued on November 05,2020,and Plaintiff resubmitted the Grievance to its Headquarters on December 02,2020 for a Final Review.

39. On March 02,2021, a Final Decision was reached and all available remedies within CDCR were fully exhausted.

## VI. FACTUAL ALLEGATIONS

### A. SERIOUS MEDICAL NEEDS & DISABILITY

40. Plaintiff is a Permanently Disabled Prisoner who suffers from the following ,but not limited to,underlying Medical Conditions,Classifying him as High Risk Medsical by the California Correctional Health Care Services (CCHCS): (1) Aortic Valve Disorders,(2) Arthritis,(3) Asthma,(4) Bilateral Carpal Tunnel Syndrome,(5) Coronary Artery Disease (CAD),(6) Cardiopulmonary Disorders, (7) Chronic Lower Back Pain,(8) Chronic Neck Pain,(9) Chronic Systolic Heart Failure, (10) Hepatitis-C,(11) Cirrhosis of Liver (End Stage Liver Disease),(12) Chronic Obstructive Pulmonary Disease (COPD),(13) Degenerative Joint Disease,(14) Diabetes Mellitus (Insulin Dependent) (IDDM),(15) Diabetic Gastroparesis & Reflux Disease,(16) Diabetic Retinopathy,(17) Esophagitis,(18) Gallstone,(19) Glaucoma, (20) Hypertension (HTN),(21) Imbalance,(22) Irritable Bowel Syndrome (IBS),(23) Left Shoulder Acrimioclavicular Joint Disease,(24) Liver Fibrosis,(25) Lumbago, (26) Lumbosacral Radiculopathy & Spinal Stenosis,(27) Mitral Valve Disorders,(28) Myocardial Infarction,(29) Neuropathy,(30) Nonrheumatic Mitral Valve Disorder,(31) Plantar Fascitis,(32) Scheuermann Disease.

41. In addition,to the following Historical Conditions,including,but not limited to,:(a) Acute Osteomyelitis &  Gangrenous Necrosis @ Left Foot,(b) Anemia, (c) Celluilitis,(d) Helicobacter Pylori (H-Pylori),(e) Hyperlipidemia,(f) Pneumonia,(g) Rotator Cuff Syndrome,(h) Retinal (Vitreous) Hemorrage,(i) Vitamin

6

D Deficiency.

42. History of Seizure due to Low Blood Glucose Level on 11/23/2017;prior Myocardial Infarction with left bundle-block,severe biventricular Systolic Impairment,and Congestive Heart Failure on April 9,2018 resulting in Catheration, Angiogram,In travascular Ultrsound Left Circumflex Coronary (Artery),PTCA and Stent Placement Mid-Circumflex Coronary. **(Exhibit-F)**

43. Hospitalization on 9/1/2019 due to Pneumonia Symptoms being experienced.

44. After Discharge from the Alvarado Hospital Medical center on 9/2/2019, Plaintiff awoke on 9/3/2019 with dark discoloration of the left fourth toe and redness streaking up his left foot.

45. On 9/4/2019, Plaintiff was seen by Dr. Ronald Zhang,MD,who noted in his diagnosis Plaintiff suffered from an Ulcer over his left foot and concern for Gangrene of the Toe.

46. Dr.Zhang,MD sent Plaintiff back out to the Alvarado Hospital Medical Center for higher level of care,

47. Plaintiff was admitted into the Hospital on 9/4/2019 and remained until 9/11/2019,where he underwent a Vascular Procedure on 9/7/2019 with lower Extremity Angiography of his left leg and Percutaneous Trans Luminal Laser Arthrectomy in the Proximal  Left Anterior Tibialis followed by Angioplasty Left Anterior Tibialis.

48. On 9/16/2019, Plaintiff was seen by Dr. Michael Santos,MD for persistent blackish eschar on the dorsum of the left fourth toe with corresponding erythema over the dorsum of the left midfoot and distal foot along the area of the left fourth metatarsal. Plaintiff was referred to be seen by CCHCS Wound Management Team for Follow-Up Care. **(Exhibit-G)**

49. On October 15,2019, Plaintiff was again sent out to the Tri-City  Medical Center due to the concern of Gangrene and was re-Admitted re: Gangrene type Necrosis  of dorsal soft tissue overlying 4th metatorsal extending towards 5th

metatorsal,purulence,and infection spreading to 4/5 website and 5th metatorsal-phalangeal joint.

50. On Wednesday, October 23,2019, Plaintiff underwent the following Procedures by Dr. Anitha Rajamanickam, Cardiologist: (1)PTCA of Proximal Left Circumflex Artery (LCX) Instent Restenosis (ISR) using a NC 2.75/15 Ballon;(2) Left Heart Catherizations and selection Coronary Angiogram;(3) Ventriculogram; and (4) LV and Aortic Pressure gradients.

51. Her Recommendations included,:"avoiding heavy lifting (more than 5lbs.) and pushing or pulling  heavy objects for the first 7 days after the Procedure. No participation in strenuous activities for 7 days after the Procedure,and future BIV ICD pacemaker device placement by Dr. Mohammad Pashmforough,Cardiologist. **(Exhibit-H)**

52. On Thursday, October 24,2019,Plaintiff underwent a Left Ray Amputation of his 4th and 5th rays (Toes)due to acute Osteomyelitis-Gangrenous Necrosis involving ulcerated Skin  by Dr. Arash Calafi,MD (Surgeon).**(Exhibit-I)**

53. Dr. Calafi,MD's Post-Operative Plan,included,but was not limited to, the need to remain Non Weight Bearing until the wound was fully healed,and to see Plaintiff  in his Clinic in 10 days to evaluate the wounds. In addition,to noting,that if the Amputation failed to heal or become infected. The Plaintiff would require a below-Knee Amputation.**(Exhibit-I)**

54. On October 25,2019, Plaintiff was examined by Dr. Calafi, MD at the Tri-City Medical Center who then issued Orders: "NWB in SLS to LLE until wound heals-could be 2-6 weeks."

55. These Conditions required extensive medical care and management to avoid injury and/or infection to surgical area.

56. These Conditions required Plaintiff not exert himself and meaningful repose after undergoing Two Major Surgeries within 48 hours and given his underlying Heart Condition.

8

57. On October 26,2019, Plaintiff was evaluated by Lindsay R. Fader,Physical Therapist at the Tri-City Medical Center,where she noted the Instructions given by Dr. Arash Calafi,MD,that there be Non Weight Bearing LLE,and her observation that Plaintiff was able to perform Bed Mobility and Transfers X MOD I with use of a Walker to maintain Non Weight Bearing.

58. Her notation of Dr. Calafi's Plan of Care was to include an ADA Cell with Wheelchair access with Roommate and access to 4 Wheel Walker for indoor Non Weight Bearing to Left Lower Exremity during ambulation & MOD I ADLS Activities. (Exhibit-I)

59. Dr. Arash Calafi,MD  agreed to discharge  Plaintiff from his Care under the misconception,that Plaintiff would return to the Prison and be accommodated with a Wheelchair  and Wheelchair accessible  Cell to facilitate his Non Weight Bearing Orders.

60. Plaintiff's conditions are chronic and none of which are temporary that substantially limited major life activities.

61. Plaintiff was not medically cleared for Weight Bearing until December 13,2019 by Dr. David W. Amory,MD approximately (50) days after Plaintiff's Amputation Surgery performed on October 24,2019.(Exhibit-J)

**B. INHUMANE & DANGEROUS CONDITIONS OF CONFINEMENT**

62. On October 28,2019, a CDCR 2184-Plant Operations Work Request was submitted to Correctional Plant ManagerII,Plant Operations Department by D-Facility, Housing Unit # 16's Correctional Officer D. Sengthong requesting that the broken Window in Cell # 111 be repaired.

63. This Plant Operations Work Request was authorized by Correctional Sergeant R. Marientes and assigned Department Request Number: **FD-19-10-078**. (Exhibit-A)

64. A Demand Maintenance Work Order:# 485883 was issued on October 28,2019 at approximately 9:17 a.m.

65. This Work Order described the Back Window to Housing Unit # 16,Cell #111 was broken and required it to be fully replaced by Plant Operations Employee-Alejo on October 29,2019. **(Exhibit-C)**

66. Due to the Cell being in an unlivible  Condition and a threat to the Security of the Institution,the Cell was deactivated,entered into the Strategic Offender Management System (SOMS) Bed Assignments and its prior Occupant was moved out of the Cell.

67. The Cell was stripped of its Mattress and bedding.

68. The Cell was left with broken Glass all over the desk and floor;the Cell was unsuitable to live in,and created a dangerous environment.

68. The Cell was to remain inactive until the Window was repaired and the Cell made fit to live in.

**C. CAUSATION AND INJURY**

69. On October 28,2019, Plaintiff was Discharged from the Tri-City Medical Center at 4002 Vista Way,Oceanside,CA 92056 after he underwent Two Major Surgeries as an Inpatient as described at ¶¶ 50 & 52.

70. On October 23,2019, Dr.Anitha Rajamanickam, Cardiologist performed a Percutaneous Transluminal Coronary Angioplasty of Plaintiff's Proximal Left cir-cumflex Artery and Left Heart Catheterizations and [a] Selective  Coronary  Angio-gram. a Ventriculogram and LV and Aortic Pressure Gradients Procedure.**(Exhibit-H)**

71. On October 24,2019, Plaintiff underwent a Left Ray Amputation of his fourth and fifth toes,that had become gangrenous as a result of Diabetes complications and after an unsuccessful attempt to treat the fourth toe for over a Month.  **(Exhibit-I)**

72. Dr. Arash Calafi,MD's Post-Operative Plan consisted of an Order to remain Non Weight Bearing until the Wound on Plaintiff's left foot was fully healed and he was medically cleared for Weight Bearing due to the gravity of the type of Surgical Procedure he endured. He estimated the wound would take approximately

10

1   2-6 Weeks for it to heal. Due to poor tissue quality and high risk status.

2       73. Dr. Calfi,MD also noted,that if the wound failed to heal or became infect-

3   ed,Plaintiff would require a below-knee amputation, (**Exhibit-I**)

4       74. Plaintiff was to return to see Dr. Calafi,MD in 10 days for further eval-

5   uation of the wound.

6       75. These Orders prohibited Plaintiff from putting any weight on his left

7   leg to avoid pressure and rupture of his sutured/amputated left foot and this

8   condition limited his major life activities)i.e.,walking).

9       76. This Condition required intensive and close monitoring care to Plaintiff's

10   wound  to avoid complications and/or injury.

11       77. On October 28,2019, at approximately 8:00 p.m., Plaintiff was discharged

12   from the Tri-City Medical Center with Post-Operative Orders: Non Weight Bearing on

13   Plaintiff's Left Leg. Custody was transfered to Defendant E. Galindo and his

14   Partner Correctional Officer John Doe # 1.

15       78. Plaintiff was transferred from the Tri-City Medical Center to the Richard

16   J. Donovan Correctional Facility (RJD) by Defendant E. Galindo and his Partner.

17       79. Upon arriving at RJD at approximately 9:00 p.m., Plaintiff was taken to

18   the Prison's Treatment Triage Area (TTA)/ Emergency Room (ER) for assessment and

19   medical clearance to be rehoused  in the Institution.

20       80. Plaintiff was assessed by Registered Nurse Ellen Simpkins due to Plaintiff's

21   Medical Return from Higher Care in the Emergency Room.

22       81. RN Simpkins took Plaintiff's vitals and told Plaintiff that the Doctor

23   had to review his Records before he could be cleared to be rehoused.

24       82. The Review consisted of examining Plaintiff's Medical File and all of

25   the Medical Reports from the Tri-City Medical Center,which included the Reports

26   completed by Dr. Anitha Rajamanickam,Cardiologist & Surgeon and Dr. Arash Calafi,

27   Orthopaedist & Surgeon concerning the two surgical procedures  performed on both

28   October 23,2019 and October 24,2019.

83. These Reports consisted of clear expressive language as to a course of action and prentatives as cautionary care to ensure the wound heals properly avoiding reinjury or infection to the surgical area.

84. If the amputation failed to heal or get infected,it would result in a below-knee amputation, (Exhibit-I); being that Plaintiff suffers from life-threatening underlying conditions,he is at ACC RISK CATEGORY:HIGH > 3% ANNUAL MOTALITY RATE. (Exhibit-H)

85. These Conditions hampered Plaintiff's ability to walk and substantially limits his major life activities,including,but not limited to,walking,standing, lifting,bending,and involving himself in any streneous activities.

86. These extreme Heart and Mobility limitations which hinder his ability to walk have created significant discomfort and sporatic sleepless patterns with significant pain with weight bearing.

87. Plaintiff continued to suffer difficulty walking,pain and increased swelling when walking with ortho shoes that worsened and became warm in area.

88. On March 02,2020, Plaintiff was seen by Dr.Erica Goyal,MD (now Dr. Corleone,MD as of June of 2020) after complaining of concerns of healing of the amputated left toe area.

89. Dr. Goyal noted in her progress notes mild edema of the Left Foot in the distribution of the Plantar Surface of the Left Tarsal Remnant and Metatarsals (3rd). She also noted,that Plaintiff was at a significant risk of infection due to him bearing weight.(Exhibit-K)

90. On June 08,2020, Plaintiff was again seen by Dr.Erica Corleone,MD,at which time she again issued a Referral to Orthotics for an Evaluation noting Plaintiff's history of amputation and past e/o blistering. (Exhibit-K)

91. Dr. Calafi,MD's Recommendations and Post-Operative Plan in his Report required that Plaintiff be issued a Wheelchair due to his Non Weight Bearing Order,that he be accommodated in his living conditions to gain Wheelchair access,

12

1  that he be afforded a follow up consultation in(10)days for evaluation of the
2  wound.

3      * DEFENDANT DR. JOHN CHAU,MD

4      92. On October 28,2019,Defendant Chau,MD was assigned to the Prison's TTA/ER
5  as the attending Physician,reviewed Plaintiff's Medical File and Dr.Calafi,MD's
6  Operative Report,including its **PostOperative Plan** (Recommendations). All Medical
7  Reports by Dr. Rajamanickam,MD concerning Plaintiff's Heart Procedure and Orders.

8      93. At that time,Defendant Chau,MD ignored  the Recommendations made by both
9  Surgeons,including that Plaintiff" avoid heavy lifting (more than 5 pounds)and
10 pushing or pulling heavy objects for the first 7 days after the Procedure.Do not
11 participate in strenuous activities for 7 days after the Procedure,""follow up
12 with your primary cardiologist in 2-4 weeks," and "will need to remain non weight
13 bearing until the woumd is fully healed," and to "see him again in 10 days in my
14 clinic to evaluate the wounds."

15     94. Defendant Chau,MD instead elected to rely on his own non-specialized
16 opinion,that Plaintiff's conditions were not serious and only temporary.

17     95. Defendant Chau,MD determined,that Plaintiff did not require a Wheelchair
18 for a period longer than 14 days to expire on November 11,2019,failed to evaluate
19 Plaintiff's status and complete an 1845/7410  to confirm his Disability to classi-
20 fy him as DPW- severe mobility restrictions and requires full time wheelchair
21 accommodation to ambulate in and out of cell/bed area.Criteria:full time WC pres-
22 cribed for use.WC accessible housing and path of travel required. In addition,
23 failed to complete and enter a Referral for Plaintiff to be seen by Dr. Calafi,MD
24 in 10 days as Recommended in the Medical Reports he Reviewed.

25     96. Defendant Chau,MD proceeded to issue and enter Orders at approximately
26 9:32 p.m. for a temporary Wheelchair to be issued to Plaintiff for 14 days only,
27 without  requiring a Wheelchair accessible Cell for housing in order to comply
28 with the Surgeon's Non Weight Bearing recommended care for Plaintiff's amputated

13

foot. **(Exhibit-14)**

97. Defendant Chau,MD then proceeded to divert from his responsibility to provide the Recommended Care for Plaintiff's wound after amputation of the two toes on his left foot just days prior,a painful condition, and instead simply presumptuously overstepped Dr. Calafi's Orders and deviated deliberately from the Standard of Care for such serious conditions.

98. Defendant Chau,MD simply refused to refer Plaintiff to be seen by Dr. Calafi,MD in 10 days as Plaintiff's Orthopedic Surgeon who is qualified to treat the amputated foot.

99. Defendant Chau,MD  medically cleared Plaintiff to be housed in a non-wheelchair accessible Cell  and released Plaintiff back to Custody Staff.

100. Defendant Chau,MD was aware of the Recommendations made by both Dr. Rajamanickam, MD and Dr. Calafi, MD after their respective Surgeries. He was aware of Plaintiff's underlying Medical Conditions and High Risk status requiring intensive and and higher level of  care. Defendant Chau,MD ignored these Instructions.

101. Defendant Chau,MD as Plaintiff's Primary Care Physician,and after reviewing his entire Medical File,and including the Operative Reports by both Surgeons at the Tri-City Medical Center, knew Plaintiff could not walk or bear weight on his Left Leg requiring a Wheelchair fulltime with a Wheelchair access Cell in order to accommodate his needs.

102. Defendant Chau,MD, was,as the first treating Physician upon Plaintiff's arrival at RJD & Reviewing the Operative Reports,responsible for providing an effective treatment as Recommended by both Surgeons.

103. Defendant Chau,MD substituted his own opinion as to the significance of Plaintiff's Conditions and ignored both Surgeon's Recommendations while downgrading the length of expected recovery time clearly inicated in both Operative Reports' Post-Operative Plans.

104. Defendant Chau,MD's deliberate interference with the Recommended Plan

14

was a result of a colloquy held with Defendant John Doe # 2 in the TTA/ER,where Defendant John Doe # 2 requested that Plaintiff's Wheelchair Status be classified as only Temporary by Defendant Chau,MD in order to house Plaintiff in D-Facility.

105. Defendant Chau,MD knowingly and intentionally disregarded both Surgeons Recommended Post-Operative Plans refusing to effectively treat Plaintiff's serious medical needs when he decided to be in cahoots with Defendant John Doe#2 rather than follow the Recommendations made on both October 23,2019 and October 24,2019.

106. As a result,these deliberate acts by Defendant Chau,MD were a precursor to the inadequate care and to facilitate housing Plaintiff in a regular Cell rather than in an ADA Wheelchair Accessible Cell as his Conditions required.

107. Plaintiff suffered extreme pain when he had to put weight on his left foot that streaked up his left leg and walk in & out of the regular Cell he was housed in on October 28,2019.

108. Plaintiff had to lay on a cold metal bunk,because he had no mattress, nor bedding issued to him that increased his pain level,heart rate and Blood Pressure due to enduring the cold air coming in through the broken window.

109. Plaintiff suffered systematic episodes of frequent and watery bowel movements throughout the evening of October 28,2019 and early morning hours of October 29,2019.

110. Plaintiff was placed at an elevated risk of injury to his amputated foot,and of suffering Heart complications due to his weak Heart Condition,slowed breathing and extrenuous activity creating a fall risk.

111. Defendant Chau,MD denied Plaintiff reasonable and competent Medical Care demonstrating a deliberate indifference to Plaintiff's Serious Medical Needs;none of which were temporary.

* DEFENDANT DR. PEYMAN SHAKIBA,MD

112. On October 29,2019, Defendant Shakiba,MD was assigned to the D-Facility

15

Medical Clinic as Plaintiff's Primary Care Provider.

113. At approximately 10:00 a.m. Plaintiff arrived at the D-Facility Medical Clinic and was initially seen by Registered Nurse Diane Posadas.

114. RN Posadas informed Plaintiff,that he was there for a Follow-up on his Off-Site Hospital return the night before due to his amputation of 4th & 5th toes @ Left Foot.

115. RN Posadas conducted an assessment of the amputated foot. She made her notations as to its status and discussed self-care management with Plaintiff.

116. At that time,RN Posadas told Plaintiff,that she was working in the TTA/ER when he arrived from the Hospital.

117. RN Posadas then told Plaintiff,that she heard Defendants Chau,MD and John Doe # 2 (Sergeant) talking about where to house him.

118. RN Posadas told Plaintiff,that the Sergeant requested Plaintiff's Wheel-chair be made temporary so they could house him in D-Facility. Defendant Chau,MD agreed to make the Order Temporary since he did not believe it was serious nor required that Plaintiff could not walk.

119. RN Posadas commented to Plaintiff,that she did not agree with what they had done to him in the ER.

120. RN Posadas then told Plaintiff,that she was going to ask the Doctor to change his Status in order for him to be moved off D-Facility,adding that D-Faci-lity only housed temporary Status Wheelchair Users and he could not stay on the yard.

121. RN Posadas completed her assessment at approximately 10:12 a.m. and contacted Defendant Shakiba,MD to ask him to Review Plaintiff's Operative Report and change his Status in order for him to be rehoused off the yard.**(Exhibit-M)**

122. At that time, Defendant Shakiba,MD reviewed Plaintiff's Medical File, including all Records sent from the Tri-City Medical Center on October 28,2019.

123. These Records included both Operative Reports from Dr Anitha Rajamanickam,

16

1 | Cardiologist and Dr. Arash Calafi,Orthopedic Surgeon.

2 |     124. These same Records,that were reviewed by Defendant Chau,MD on October
3 | 28,2019 when Plaintiff arrived at RJD from Tri-City Medical Center.

4 |     125. Defendant Shakiba,MD was aware,that Defendant Chau,MD had failed to
5 | appropiately classify Plaintiff's Status and failed to follow the Recommendations
6 | made by both Surgeons just 5 days prior.

7 |     126. Defendant Shakiba,MD was aware,that Defendant Chau,MD had failed to
8 | issue a Wheelchair to Plaintiff as Permanent and assure he was housed in a Wheel-
9 | chair accessible Cell to accommodate his needs following the Recommendations of
10 | the Orthopedic Surgeon.

11 |     127. Defendant Shakiba,MD knew that Dr. Calafi,MD had recommended and issued
12 | Non Weight Bearing Orders to avoid the wound from healing and/or becoming infect-
13 | ed resulting in the need to amputate below the knee. The need to leave the sutures
14 | in for a prolonged period of time given the poor tissue quality and high risk
15 | status. **(Exhibit-I)**

16 |     128. Defendant Shakiba,MD knew,that Defendant Chau,MD had failed to enter a
17 | Referral for Plaintiff to be seen in(10) days by Dr. Calafi,MD as stated in the
18 | Operative Report to examine the wounds.

19 |     129. At approximately 2:19 p.m., Defendant Shakiba,MD also ignored the
20 | Recommendations made by the two Surgeons,that included Plaintiff avoid heavy
21 | lifting and pushing or pulling heavy objects(that include himself),not to parti-
22 | cipate in strenuous activities,and the need for Non Weight Bearing until the
23 | wound was healed and cleared after being seen by him.

24 |     130. Defendant Shakiba,MD refused to enter a Referral for Plaintiff to be
25 | seen by Dr. Calafi,MD by November 07,2019 (10-day Recommendation) even when he
26 | knew that Defendant Chau,MD had not entered a Referral either.

27 |     131. Defendant Shakiba,MD also elected to rely on his own  non-specialized
28 | opinion and determined that Plaintiff did not require a permanent Wheelchair

1  status that would require he be housed in a Wheelchair accessible Cell to
2  accommodate his needs and only changed over his status to DPO-Intermittent
3  Wheelchair User to be used for outside Cell/Housing.

4      132. This decision was in contrast to the Recommendations made by both
5  the Cardiologist and Orthopedic Surgeon.

6      133. Defendant Shakiba,MD noted on the 1845/7410 he entered on October 29,
7  2019,that Plaintiff suffers from Bone Disease of Spine,weakness of both lower
8  extremities,and severe Heart Condition & COPD. **(Exhibit-M)**

9      134. These Reports reviewed by Defendant Shakiba,MD on October 29,2019 con-
10  sisted of clear expressive language as to the course of action and preventives
11  as cautionary care to ensure the wound healed avoiding injury and/or infection.

12      135. These conditions hampered Plaintiff's ability to walk,place weight on
13  his left foot,not to mention his inability to endure strenuous activities due
14  to his serious Heart Conditions.

15      136. Plaintiff required a stress-free and safe living enviroment to ensure
16  optimal Recovery,instead, Plaintiff was not accommodated for his serious medical
17  needs and only issued a temporary 1845/7410 to expire on 11/27/2019 by Defendant
18  Shakiba,MD sufficient enough for Plaintiff to be moved off the yard.

19      137. On October 30,2019, Plaintiff was moved to A-Facility,Building 3,Cell #
20  123,another non-wheelchair accessible cell.

21      138. Plaintiff continued to have difficulty moving in and out the Cell,as-
22  well as forced to bear weight in order to ambulate in and outside the cell to
23  retrieve the wheelchair.

24      139. Plaintiff continued to endure excruciating pain in his foot streaking
25  up his leg while attempting mobilize inside the cell placing him at risk of fall
26  and further injury.

27      140. On November 6,2019, Plaintiff submitted a CDCR 1824-Reasonable Accommo-
28  dation Request complaining of him not being accommodated and seeking he be moved

1 | into an ADA Wheelchair accessible Cell/Bed.

2 | 141. This prompted Plaintiff to be seen by Dr.Erica Goyal,MD (now Dr.Erica

3 | Corleone,MD) in the A-Facility Medical Clinic.

4 | 142. Dr. Goyal,MD examined Plaintiff's amputated foot and commented to Plain-

5 | tiff,that she had read his 50 page Report and he needed to be DPW-requiring full-

6 | time wheelchair accommodation to ambulate both inside & outside Cell/Bed area.

7 | 143. When Dr. Goyal,MD attempted to enter a Status change from DPO to DPW,

8 | she stated,that it had already been changed that morning by Dr.Barenchi,Chief

9 | Physician & Surgeon and a bed move was being conducted already.

10 | 144. Dr. Goyal,MD,in her Progress Notes made an addendum at 11:57 a.m.

11 | concuring with Dr. Barenchi,MD's Disability Status making Plaintiff: DPW requiring

12 | he be accommodated in a ADA Wheelchair accessible Cell/Bed to accommodate his

13 | serious medical condition.

14 | 145. Dr. Goyal,MD noted,that Plaintiff had not seen Dr. Calafi,MD and that a

15 | follow up should be scheduled and entered a Referral for Plaintiff to be seen by

16 | Vascular Surgery.**(Exhibit-N)**

17 | 146. At approximately 9:52 a.m., that morning on November 13,2019,Dr. Ryan

18 | Barenchi,Chief Physician & Surgeon changed Plaintiff's Disability Status to DPW

19 | assuring that Plaintiff would be rehoused in a wheelchair accessible cell. Pre-

20 | scribed for fulltime use to expire on 11/13/2020 and entered an Order detailing

21 | the change was "to DPW for non weight bearing after surgery." **(Exhibit-N)**

22 | 147. At approximately 12:30 p.m., Plaintiff was moved into an ADA Wheelchair

23 | accessible Cell in A-Facility,Building 4,cell # 131L and ultimately back to E-

24 | Facility ,Building 24,B-Pod,Room 102,Bed # 4 LOW.

25 | 148. On December 04,2019, Plaintiff was sent a copy of the Reasonable

26 | Accommodation Panel (RAP) Response,where it noted that no further interim accommo-

27 | dation was required.

28 | 149. On December 13,2019, Plaintiff was seen by Dr.David Amory,MD who noted

that Plaintiff was now able to advance to weight bearing as tolerated,and approximately (45) days after Defendant Shakiba,MD determined Plaintiff was able to stand and pivot into or out of a regular transportation vehicle,did not require a Wheelchair inside a Cell or conforming to the Non Weight Bearing Recommendation from Dr. Calafi,MD prior to Plaintiff's discharge from Tri-City Medical Center.

150. Defendant Shakiba,MD's deliberate indifference with the recommended plan were a precursor to Plaintiff's continued suffering and inadequate care to his serious medical needs when Plaintiff was rehoused in A-Facility and not until he seeked accommodation by way of CDCR 1824 did he ultimately was changed over to DPW Status and housed in an ADA Wheelchair accessible Cell to comply with the Post-Operative Plans made by both the Cardiologist and Orthopedic Surgeon prior to his arrival at RJD.

151. Defendant Shakiba,MD ignored these Instructions based on his own unspecialized determination that interfered with the Surgeons' Plan of Treatment.

152. By minimizing the seriousness of Plaintiff's Conditions and intentionally assigning his Status as Temporary,Defendant Shakiba,MD worked in collaboration with Defendant Chau,MD placing Plaintiff in serious danger and risk of falling rather than following the Surgeon's Recommendation for Non Weight Bearing by designating Plaintiff as DPW-Fulltime Wheelchair User & accommodating him with a Wheelchair accessible Cell/Bed to meet his needs.

153. Deliberate Acts that were not corrected until November 13,2019 by Dr. Barenchi, Chief Physician & Surgeon and only after Plaintiff was no longer under the Care of neither Defendant Chau,MD,nor Defendant Shakiba,MD.

154. Both Defendants Chau,MD & Shakiba,MD  as Plaintiff's Primary Care Providers failed to treat Plaintiff's Conditions that affected his Daily Activities and placed him at risk of falling & further injury resulting in unneccessary pain  while interfering with the Surgeons' Recommended Plan of Treatment.

155. Knowing these risks,both Defendants Chau,MD & Shakiba,MD were aware that Plaintiff had just underwent Heart Surgery & Amputation Surgery,lacked Mobility without a Wheelchair to Use Fulltime and his Serious Medical Conditions required a Wheelchair accessible Cell/Bed .

156. Defendants Chau,MD & Shakiba,MD both knew Plaintiff's risk of falling and significant further injury and/or Infection that could result in a below-kneew amputation if the wounds did not fully heal.

157. Defendants Chau,MD & Shakiba,MD both knew this could be the outcome from Plaintiff bearing weight causing Pain and excess exertion trying to get around in a Cell without a Wheelchair contrary to both Surgeon's Instructions when Plaintiff was discharged from Tri-City Medical Center on October 28,2019.

158. Approximately (43) days after Plaintiff was actually Medically Cleared for Weight Bearing on December 13,2019 by Dr. Amory, MD on January 23,2020 Plaintiff was again downgraded to DPO Status-Intermmitent Wheelchair User by Dr. Ronald Zhang,MD,this time on 'Permanent' Status. (Exhibit-O)

159. Plaintiff's Condition although rendered Medically Cleared for Weight Bearing,nevertheless continued to get worse,feeling hot,and with Edema noted in the Progress Notes from Dr. Goyal,MD on March 02,2020 when Plaintiff complained of his concerns of healing of amputated Left Foot 'in the distribution of the plantar surface of the left tarsal remnant and metatarsals (3rd), 'due to high amount of pressure on the foot when walking.(Exhibit-N)

160. Defendant Shakiba,MD denied Plaintiff reasonable and competent Medical Care demonstrating a deliberate indifference to Plaintiff's Serious Medical Needs.

* DEFENDANT JOHN DOE # 2

161. On October 28,2019, Defendant John Doe # 2,as a Correctional Sergeant was assigned to the Post at the Treatment Triage Area (TTA)/ Emergency Room (ER) at RJD.

162. Defendant John Doe # 2 is positioned at the Podium centered at the

entrance of the TTA/ER. At this Officer's Station,Defendant John Doe # 2 is able to observe,not only the entrance doorway,but the Nurse's Station located to its left in the ER area.

163. Defendant John Doe # 2,is also in constant communication with Medical Staff in order to coordinate Inmate movement,including determining Inmate Housing Assignments in accordance with CDCR Policy,Article 46-Inmate Housing Assignments, No.'s 54046.3 & 54046.4.

164. In addition, Defendant John Doe # 2 is assigned to perform Supervisory duties of Correctional Officers assigned to the TTA/ER and Medical Transportation Officers,including Defendant E. Galindo, as Desk Sergeant.

165. On October 28,2019, Plaintiff was brought into the TTA/ER through the front entrance door by Defendant E. Galindo and his Partner John Doe # 1  in full view of Defendant John Doe # 2 and other Correctional Officers assigned to TTA/ER.

166. Defendant E. Galindo was directed to place Plaintiff in the Tank located in front of the Officer's Station & entrance to the ER area.

167. Plaintiff was assessed by RN Simpkins and told that she was waiting for the Dr. to clear him for him to be rehoused.

168. After Defendant John Doe # 2 looked into the tank and saw Plaintiff sitting in a Wheelchair and with a Cast on his left leg. After he spoke to RN Simpkins,he walked over into the ER area and spoke to Defendant Chau,MD.

169. A discussion arose as to where to house Plaintiff and Defendant John Doe # 2 requested Defendant Chau,MD issue Plaintiff's Order for a Wheelchair as temporary in order to house him in D-Facility.

170. Defendant Chau,MD agreed to Defendant John Doe # 2's request and since he did not believe Plaintiff's condition was serious nor required that Plaintiff not walk and could stand.

171. Defendant John Doe # 2 knew that Plaintiff was returning from Tri-City

22

1  Medical Center after being released to the custody of Defendant E. Galindo & his

2  Partner John Doe # 1 to be brought back to RJD to be rehoused.

3      172. Defendant John Doe # 2 was cognizant of all factors to be considered

4  before rehousing Plaintiff,that included,but were not limited to, him being at

5  Tri-City Medical Center where he had undergone Two Major Surgeries.

6      173. One for his Heart Condition and another for Amputation of his Toes

7  that required he be in a Wheelchair and had Orders from the Surgeon for Non

8  Weight Bearing. Therefore necessary to be housed in an ADA Wheelchair accessible

9  Cell/Bed to accommodate Plaintiff's Medical Needs.

10     174. Another was Plaintiff was formally housed in an ADA Bed in E-Facility

11 prior to being admitted to Tri-City Medical Center on October 15,2019.

12     175. Defendant John Doe # 2 had knowledge of CDCR Policies,including **Article**

13 46,Inmate Housing Assignments,No.54046.3,which states,in part,"staff must use

14 correctional experience and training,correctional awareness,and reasonableness

15 to determining suitability for Dormitory,Celled,and Single-Celled Living." and

16 No. 54046.4,which additionally states in part," all staff involved in the re-

17 view and approval of...housing assignment must be cognizant of all available

18 factors to be considered prior to determining housing assignment. Including

19 vulnerability of the Inmate due to medical,mental health,and disabilities.

20     176. These binding Policies make Defendant Supervisors,such as Defendant

21 John Doe # 2 responsible for avoiding & mitigating the risks that pose a danger

22 to Plaintiff. In his Supervisory capacity Defendant John Doe # 2 is responsible

23 as vested in him.

24     177. When determining Plaintiff's Housing Assignment, Defendant John Doe #

25 2 reviewed  the Strategic Offender Management System (SOMS) Bed Assignments and

26 became aware that D-Facility,Housing Unit # 16,Cell # 111 was unoccupied due to

27 a Broken Window,which caused it to be deactivated pending its repair.

28     178. Defendant John Doe # 2 failed to take Plaintiff's Medical Factors

1 into consideration,even after seeing Plaintiff for himself in a Wheelchair and
2 in a cast on his left leg.

3    179. Defendant John Doe # 2  saw nothing on SOMS verifying that the Cell
4 was again activated for living in it,called D-Facility's Program Office and
5 spoke to the attending Sergeant and was made aware that the Cell was available.

6    180. Defendant John Doe # 2 was on Notice that the Cell was Deactivated
7 due to a Broken Window that created a dangerous condition of confinement and
8 consciously neglected and disregarded the obvious risk of its dangerous condition
9 elected to house Plaintiff in the Cell anyways.

10    181. After speaking to the Program Sergeant assigned to D-Facility' Program
11 Office, Defendant John Doe # 2 was fully aware that the prior occupant in Cell
12 # 111 was moved out because it was unsafe and in unlivible conditions.

13    182. Defendant John Doe # 2 neglected to take Plaintiff's vulnerability
14 as demanded by **Article 46,Inmate Housing Assignments,No.'s 54046.3 & 54046.4**
15 and failed to stop him from being housed in a dangerous living condition that
16 elevated his risk of falling and injuring himself nor subjecting him to torturous
17 enviroment caused by the broken window and glass allover the cell.

18    183. Plaintiff could have simply been housed in the TTA's Prison Hospital
19 where his Medical Conditions and Surgeons' Recommendation could have been met
20 until other appropiate alternate housing could have been located on October 29,
21 2019.

22    184. Defendant John Doe # 2 committed repeated negligent acts in failing to
23 avoid the foreseeable  danger in housing Plaintiff in a Cell with a Broken
24 Window the size of a Softball,broken Glass allover the floor,and without adhering
25 to his duty to provide safe living while in Defendant John Doe # 2's & his
26 subordinate Correctional Officers custody.

27    185. Defendant John Doe # 2 breached his duty by allowing the very harm
28 he was intended to  forestall to befall Plaintiff and by failing to protect.

24

186. Defendant John Doe # 2,when determining Plaintiff'a housing,he became aware that the Cell had a broken window and was not to house anyone until the broken window was fixed by Plant-Operations and cleared for activation. That the Cell presented a danger of injury to the Health & Safety of Plaintiff.

187. Defendant John Doe # 2 was aware of the obvious danger of placing Plaintiff in a Cell with a Broken Window would subject him to needless suffering and elevate his risk of further injury to his amputated foot.

188. Defendant John Doe # 2,ignored the substantial risk of harm and the conditions of confinement that the broken window and glass all over the floor created towards Plaintiff in the health condition he was in after undergoing two major Surgeries and with all of the Recommendations from the Surgeons.

189. Defendant John Doe # 2 had an affirmative duty and legal responsibility to act to protect Plaintiff from harm that was likely to aggravate his conditions,instead exposed Plaintiff to unsafe conditions of confinement when he chose to disregard the risks and authorized Plaintiff to be housed in D-Facility,Building # 16,Cell # 111 without  the broken window to be fixed first despite knowing  a work order had been submitted describing the back window was broken and chattered requiring it be replaced.(**Exhibit-A**)

190. This Plant Operations Work Request (CDCR 2184) was submitted by C/O D. Sengthong on October 28,2019 and authorized by Correctional Sergeant R. Marientes [Departmental Request Number: FD-19-10-078].

191. Defendant John Doe # 2 failed to take affirmative steps to find alternative housing having reviewed the medical factors in accordance with **Article 46,Inmate Housing Assignments,No.54046.4.**

192. Plaintiff had an expectation of safety to his health & living conditions.

193. Plaintiff was approached by **ER-Nurse Simpkins** while inside the holding tank and told that he was being housed in D-Facility.

194. Plaintiff complained to Defendant E. Galindo and insisted that he speak with Defendant John Doe # 2 (Sergeant) and inform him that Plaintiff needed to go back to an ADA Bed in E-Facility where he was already housed before he was admitted into the Hospital.

195. Defendant E. Galindo told Plaintiff, that he would speak to the Sergeant and walked away.

196. Defendant E. Galindo returned minutes later and told Plaintiff that his previous bunk on E-Facility was no longer available and it was late.

197. Plaintiff repeatedly told Defendant E. Galindo, that he'd rather stay in the holding tank or R & R (holding Cells) until a bed could be made available in E-Facility.

198. Defendant E. Galindo told Plaintiff, that he could not stay in the holding tank and the Sergeant had already housed him in D-Facility.

199. Defendant E. Galindo told Plaintiff that he was directed by the Sergeant to hurry up and take him to "D" yard, because it was late.

200. These directions from Defendant John Doe # 2 to Defendant E. Galindo set in motion the series of acts by Defendant E. Galindo who transported Plaintiff to D-Facility to be housed in dangerous living conditions.

201. Defendant John Doe # 2 here in his Supervisory Position, not only in neglecting his duties to protect Plaintiff's Health & Safety was personally involved, but was fully aware of Plaintiff's need for being housed in a Wheelchair accessible Cell due to his need for Non weight Bearing on his amputated foot.

202. As a result, Plaintiff was housed in a Cell with a Softball-Size Hole and broken glass spilt all over the floor, without a mattress, Blankets, Sheets, nor Toilet Paper.

203. Plaintiff suffered several health problems, including, but not limited to, vulnerability to the cold weather, abnormal heart rate, anxiety attacks, irregular breathing inflamming Asthma attacks, dizzy spells, bouts of anguish,

26

1   stress,hypertension,and severe Diarrhea symptoms throughout the Night.

2      204. In addition, Plaintiff suffered chills ,felt faint,and spiritless.

3      205. Plaintiff suffered extreme pain on his left foot running up his leg
4   everytime he attempted to stand and forced to walk & hobble to the toilet with-
5   out his wheelchair.

6      206. Plaintiff was forced to humiliate himself and use the toilet without
7   any toilet paper to wipe and wash his butt area with only water from the sink
8   to clean himself.

9      207. As a result of Defendant John Doe # 2 housing Plaintiff in D-Facility,
10  Building # 16,Cell # 111 with a Broken Window and broken glass all over the
11  floor that created a dangerous living condition and a threat to the safety &
12  Security of the Institution, he failed to use reasonable care to avoid the
13  foreseeable risk that a Broken window and glass all over the floor produces.

14     208. Defendant John Doe # 2's acts constitute Negligence.

15     * DEFENDANT E. GALINDO

16     209. On October 28,2019, Plaintiff was discharged from the Tri-City Medical
17  Center and released into the custody of Defendant E. Galindo and his Partner
18  Correctional Officer John Doe # 1.

19     210. After arriving at RJD, Plaintiff was escorted by Defendant E. Galindo
20  into the Prison's TTA/ER to be seen by Medical Staff and to be Medically Cleared
21  to be rehoused back into the Population.

22     211. At approximately 9:30 p.m., Defendant Chau,MD issued a Temporary
23  Wheelchair Order and Medically cleared Plaintiff to be rehoused by Custody Staff.

24     212. After Defendant John Doe # 2,Correctional Sergeant determined Plain-
25  tiff's housing and authorized him to be housed in D-Facility, Plaintiff was
26  notified first by ER-Nurse Simpkins and later followed up by Defendant E.Galindo.

27     213. Plaintiff was still in the Red Jumpsuit he was transfered in from
28  the Tri-City Medical Center.

214. Defendant E. Galindo stood in front of the Holding Tank and attempted to hand Plaintiff dirty,stinky clothing and told Plaintiff to change into them.

215. Plaintiff complained,that the clothing was dirty and could cause him an infection. He requested that Defendant E. Galindo bring him clean clothes.

216. Defendant E. Galindo refused and simply replied that he had taken the clothes from the dirty Bin,because there was no where else for him to get more clothes.

217. Defendant E. Galindo then stated that Plaintiff could either take it or not,but they had to go.

218. At approximately 11:00 p.m.,Plaintiff was escorted from the TTA/ER to D-Facility by Defendant E. Galindo and his Partner John Doe by Wheelchair.

219. Upon arriving at Building # 16, Defendant E. Galindo was the first to enter the Building and walked directly to Cell # 111.

220. Defendant E. Galindo stood in front of the Door and motioned for the only Building Officer in Building # 16 assigned as Control Officer to open the Cell Door.

221. As Defendant E. Galindo stood in front of Cell # 111,he looked inside the Cell and inspected the Cell from the back to the front.

222. Defendant E. Galindo observed that the back window was broken and that glass was laying over the desk and all over the floor.

223. C/O John Doe # 1 pushed Plaintiff up to the front of the Cell and Plaintiff was Ordered by both Defendant E. Galindo & his Partner to enter the Cell.

224. Plaintiff looked inside the Cell and told Defendant E. Galindo,that the window was broken and the Cell had no Mattress,bed roll,or toilet paper in it.

225. Defendant E. Galindo responded,that there was no one there to ask for a mattress,bedding,or toilet paper,because it was late.

226. Plaintiff continued to complain to Defendant E. Galindo about the broken window, that there was glass everywhere, and that there was no mattress or even toilet paper in the Cell.

227. Plaintiff repeatedly asked to be put somewhere else without a broken window and glass on the floor.

228. Defendant E. Galindo stood in front of the Cell Door, looked inside at the broken window, then down on the floor seeing the broken glass.

229. Defendant E. Galindo simply ignored Plaintiff's complaints as trivial.

230. Defendant E. Galindo knew the obvious risk of danger to harm to Plaintiff in the delicate health condition he was in after experiencing two major Surgeries, having underlying chronic conditions and restricted to a Wheelchair.

231. Defendant E. Galindo knew Plaintiff was incapacitated and unable to walk.

232. Defendant E. Galindo, despite knowing he had a duty to provide a safe and secure place to Plaintiff while he was in his Custody, failed to use due care to eliminate Plaintiff's exposure to the dangerous conditions of confinement.

233. Plaintiff told Defendant E. Galindo, that he was told by the Doctor to not put weight on his left leg.

234. Defendant E. Galindo ordered Plaintiff to get up and go into the Cell.

235. Plaintiff complied with Defendant E. Galindo's order and stood off the Wheelchair experiencing extreme pain and hopped into the Cell.

236. Plaintiff continued to complain to Defendant E. Galindo, that there was no mattress or toilet paper in the Cell.

237. Defendant E. Galindo simply looked at his Partner and motioned the Control Officer to close the Cell Door behind Plaintiff.

238. Plaintiff sat on the Metal Bunk and looked at Defendant E. Galindo who was looking into the Cell's front Window while he pointed to the broken window.

239. Defendant E. Galindo and his Partner walked away from the Cell and out

1 | the building.

2 |     240. Plaintiff sat staring at the broken window with a Softball size hole,

3 | that was also cracked and had shattered glass  all over the desk & onto the

4 | floor of the Cell.

5 |     241. Plaintiff was also exposed to a deprivation of human necessities(i.e.,

6 | mattress, blankets,sheets,and toilet paper)when he was housed in the dangerous

7 | conditions of confinement.

8 |     242. Defendant E. Galindo failed to take Plaintiff's Serious Medical  Condi-

9 | tions into consideration,even after he himself had transported Plaintiff from

10 | Tri-City Medical Center after being discharged for undergoing two major surgeries

11 | (4) days before. His knowledge of Plaintiff requiring a Wheelchair and inability

12 | to walk.

13 |     243. Defendant E. Galindo knew that the Cell had a broken window,broken

14 | glass all over the desk and floor when he inspected it prior to directing Plain-

15 | tiff to go into the Cell. He knew that its condition was dangerous and could

16 | harm Plaintiff,yet consciously neglected and disregarded the obvious risk of

17 | harm to Plaintiff and ordered him to enter it.

18 |     244. Defendant E. Galindo took no alternative steps to  contact his

19 | Superiors,notify them of the condition the Cell was in,or secure safe living

20 | conditions.

21 |     245. Defendant E. Galindo breached his duty by allowing the very harm he

22 | subjected Plaintiff to,and had a legal responsibility to act to protect from

23 | the harm likely to aggrevate his health conditions.

24 |     246. Defendant E. Galindo  was aware of the obvious danger of housing

25 | Plaintiff in a Cell with a Broken Window and Glass everywhere could injure him

26 | and his amputated foot,and simple chose to neglect these factors.

27 |     247. Plaintiff suffered needlessly,and experienced related problems,includ-

28 | ing,but not limited to, vulnerability to the cold air coming into the Cell

through the broken window,abnormal heart rate,anxiety attacks,irregular breathing
inflamming Asthma attacks,dizzy spells,bouts of anguish,stress,hypertension,
severe Diarrhea symptoms,chills,faint, lack of sleep,and lack of spirit.

248. Plaintiff was forced to lay on the cold Metal Bunk without a Mattress,
blankets,sheets, aggrevating his pain running up his left leg.

249. Plaintiff suffered extreme pain on his left foot running up his leg
everytime he attempted to stand and forced to walk & hobble to the toilet with-
out his Wheelchair.

250. Plaintiff was forced to humiliate himself and use the toilet without
any toilet paper to wipe and wash his butt area with only water from the sink
to clean himself during the episodes of Diarrhea throughout the night.

251. Defendant E. Galindo had no discretion to derelict from his duties,nor
to disregard the risk of foreseeable harm likely to result from his negligent
conduct that exposed Plaintiff when he ordered Plaintiff to go into the Cell.

252. Plaintiff had just endured two major surgeries only (4)days prior to
being placed in danger by Defendant E. Galindo,and deprived of safe & appropiate
housing.

253. Defendant E. Galindo's acts constitute Negligence.

### VII. CLAIMS FOR RELIEF

#### EIGHTH AMENDMENT VIOLATION-DELIBERATE
#### INDIFFERENCE TO SERIOUS MEDICAL NEEDS

254. Plaintiff realleges and incorporates by reference each allegation of
paragraphs 40 thru 61 and 69 thru 160,inclusive,as alleged herein.

255. Plaintiff asserts,that Defendants Dr. John Chau,MD and Dr. Peyman
Shakiba,MD both individually and in concert violated his Right guaranteed by
the Eighth Amendment of the United States Constitution. Defendants' conduct
constitutes deliberate indifference to Plaintiff's Serious Medical Needs in
violation of his Right to be free from cruel and unusual punishment.Estelle v.
Gamble,429 U.S. 97,104(1976);Farmer v. Brennan,511 U.S. 825 (1994);see Jett v.

Penner,439 F.3d 1091,1096 (9th Cir. 2006);see also Snow v. McDaniel,681 F.3d 978,

986(9th Cir.2012);HAmilton v. Endell,981 F.2d 1062,1067 (9th Cir. 1992);Colwell

v. Bannister,763 F.3d 1060(2014);McGuckin,974 F.2d at 1059-60,974 F.2d 1050(9th

Cir. 1992);Hunt v. Dental Dept.,865 F.2d 198,200(9th Cir. 1989).

256. Plaintiff is informed and believes,and therein alleges that Defendants Dr. John Chau,MD and Dr Peyman Shakiba, MD both acted intentionally in manner described above with knowledge of Plaintiff's Serious Medical Needs,suffering, and risk of further serious harm that could result from these actions and delay.

257. As a direct and proximate result of both Defendants' actions herein alleged, Plaintiff suffered extreme pain and anguish,distress both Mental & Physical due to his inability to walk without being in extreme pain.

258. Defendants' Dr. John Chau,MD and Dr. Peyman Shakiba,MD acted with deliberate indifference to his Serious Medical Needs and was a precursor to the continued Constitutional Violation.

259. Plaintiff is entitled to an award of Compensatory and Punitive Damages for Injury, pain and suffering caused by Defendants' failure to provide adequate care.

260. As a further direct and proximate result of Defendants' actions herein alleged, plaintiff suffered severe emotional and psychological distress.Plaintiff is entitled to an award of Compensatory and Punitive Damages for injuries incurred.

261. Plaintiff is entitled to a trial by Jury to determine the extent of the Defendants' liability and Damages.

EIGHTH AMENDMENT VIOLATION~CRUEL
AND UNUSUAL PUNISHMENT [FAILURE
TO PROTECT HEALTH & SAFETY FROM
DANGEROUS CONDITIONS OF CONFINEMENT

262. Plaintiff realleges and incorporates by reference each allegation of paragraphs 62 thru 68, 161 thru 181,186 thru 192,200 thru 207,and 218 thru 250, inclusive,as alleged herein.

263. Plaintiff asserts,that Defendants E. Galindo and John Doe # 2,as

Correctional Staff individually and in concert violated his Right guaranteed by the **Eighth Amendment**'s prohibition on Cruel and Unusual Punishment that places Prison Officials " under an obligation to take reasonable measures to guarantee the safety of inmates" under their care. **Hudson v. Palmer**,468 U.S. 517,526-527 (1984); **DeShaney v. Winnebago Cty. Dep't of Soc. Servs.**,489 U.S. 189,199-200(1989); 'It is enough that the Defendants acted or failed to act "despite their knowledge of a substantial risk of serious harm."' **Farmer v. Brennan**,511 U.S. 825,842(1994). Prison Officials may not "ignore a condition of confinement that is sure or very likely to cause serious illness and needless suffering." **Helling v. McKinney**,509 U.S. 25,33 (1993).

264. Plaintiff is informed and believes,and therein alleges that both Defendants E. Galindo and John Doe # 2 acted intentionally in manner described above with knowledge of the dangerous conditions of confinement created by the broken window and glass spilt all over the floor of the Cell,of Plaintiff's significant prone to falling and further injuring his amputated foot that could result from these actions.

265. As a direct and proximate result of Defendants' actions herein alleged, Plaintiff suffered injury,extreme pain ,anguish,and other serious health related problems,including distress both mental & physical from the denial of his Constitutional Right.

266. Plaintiff is entitled to an award of Compensatory and Punitive Damages for injuries incurred and pain & Suffering caused by Defendants' failure to protect Plaintiff's health & Safety from dangerous conditions of confinement.

267. In addition, to depriving him from reasonable access to a Mattress, bedding,and basic personal hygiene materials such as Toilet Paper while housed in the dangerous living conditions and under life-threatning Health Conditions.

268. As a further direct and proximate result of Defendants' actions,Plaintiff suffered severe emotional and psychological Distress. Plaintiff is entitled

33

1   to an award of Compensatory and Punitive Damages for injuries incurred.

2   269. Plaintiff is entitled to a trial by Jury to determine the extent of

3   Defendants' liability and Damages.

NEGLIGENCE UNDER CALIFORNIA LAW-
NEGLIGENT ENDANGERMENT & FAILURE
TO PROVIDE SAFE & SECURE LIVING
CONDITIONS OF CONFINEMENT

6   270. Plaintiff incorporates paragraphs 62 thru 68,161 thru 181,186 thru 192,

7   194 thru 253,inclusive,as alleged herein.

8   271. Plaintiff asserts,that,in the alternative, Defendants E. Galindo and

9   John Doe # 2,as Correctional Staff having custody of Plaintiff throughout the

10  events alleged,violated their Tort Law Duty to provide a safe and secure living

11  conditions of confinement and "failed to use reasonable  care to avoid foresee-

12  able  risk of injury" when assigning Plaintiff to a Cell that had a Broken

13  Window,Glass spilt all over the Cell Floor, and was deactivated due to its

14  unlivible condition.

15  272. Defendants neglected their duty when knowing of Plaintiff's Serious

16  Health Conditions,risk of falling and Wheelchair status ordered due to Non

17  Weight Bearing Orders from the Surgeon,housed Plaintiff in the dangerous Cell

18  on October 28,2019.

19  273. These acts described above also constituted the Tort of Negligence

20  under California Laws.

VIII. RELIEF REQUESTED

WHEREFORE, Plaintiff requests that the Court grant the following relief:

1. Award Compensatory Damages according to proof;

2. Award Punitive Damages according to proof;

3. Appoint Counsel pursuant to 28 U.S.C. § 1915(e)(1);

4. Any such further relief as the Court deems proper.

DEMAND FOR TRIAL BY JURY

Plaintiff Aurelio Martin Sepulveda,hereby demands a Trial by Jury to deter-

34

1 | mine the extent of Defendants' liability and Damages.

2 | Dated: 6/16/21                          Respectfully Submitted:

3 |

4 |                                         AURELIO MARTIN SEPULVEDA
                                            CDCR # J-76828
5 |                                         Plaintiff / In Propria Persona

6 |                          **VERIFICATION**
          Pursuant to 28 U.S.C. § 1746, I declare and verify  under penalty of perjury
7 | under the laws of the United States of America that the foregoing is true and
      correct.
8 |

9 |     Executed this ___16TH___ day of June, 2021 at San Diego, CA.

10 |                                        AURELIO MARTIN SEPULVEDA

11 |                                        CDCR # J-76828
                                           Plaintiff-Declarant
12 |                                        In Propria Persona

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |



# EXHIBIT COVER PAGE

| A |
| --- |
| EXHIBIT |

DESCRIPTION OF THIS EXHIBIT:

CDCR 602 Administrative Appeal Log # RJD-E-19-7299

NUMBER OF PAGES TO THIS EXHIBIT:___**10**___PAGES.

JURISDICTION: (CHECK ONLY ONE)

☐ COUNTY GRAND JURY

☐ COUNTY MUNICIPAL COURT

☐ COUNTY CIRCUIT COURT

☐ COUNTY SUPERIOR COURT

☐ STATE COURT OF APPEAL

☒ UNITED STATES DISTRICT COURT

☐ STATE SUPREME COURT

☐ STATE BAR COURT

☐ STATE CIRCUIT COURT

☐ UNITED STATES SUPREME COURT

☐ OTHER:_____

Approved for
use with
Judicial
Council forms
(01-19-08)
MDT/CRA

STATE OF CALIFORNIA
**INMATE/PAROLEE APPEAL**
CDCR-602 (REV. 03/12)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

2003235

J76828

Side 1

FOR STAFF USE ONLY

Institution/Parole Region: Log #: Category:
RJD·E·19·7299

FOR STAFF USE ONLY

You may ap _____ ehabilitation (CDCR) decision, action, condition, policy or regulation that has a material adverse effect upon your welfare and for which there is no other prescribed method of departmental review/remedy available. See California Code of Regulations (CCR), Title 15, Section 3084.1. You must send this appeal and any supporting documents to the Appeals Coordinator (AC) within 30 calendar days of the event that led to the filing of this appeal. If additional space is needed, _only_ one CDCR Form 602-A will be accepted. Refer to CCR 3084 for further guidance with the appeal process. No reprisals will be taken for using the appeal process.

**Appeal is subject to rejection if one row of text per line is exceeded.**                    **WRITE, PRINT, or TYPE CLEARLY in black or blue ink.**

Name (Last, First): SEPULVEDA, AURELIO M.   CDC Number: J-76828   Unit/Cell Number: A3-123 LOW   Assignment:

State briefly the subject of your appeal (Example: damaged TV, job removal, etc.):
SUBJECTED TO INHUME LIVING QUARTERS.

A. Explain your issue (If you need more space, use Section A of the CDCR 602-A): ON 10/28/19, I RETURNED FROM TRI-CITY HOSPITAL, WHERE I HAD MY 2 LEFT TOES/LEFT FOOT AMPUTATED. I WAS RE-HOUSED FROM E24-C102-4LOW TO D16-111 LOW.

B. Action requested (If you need more space, use Section B of the CDCR 602-A): THAT I BE COMPENSATED FOR THE 7½ HOURS OF PHYSICAL TORTURE (CRUEL & UNUSUAL PUNISHMENT) I ENDURED ON 10/28/19 THRU 10/29/19 IN THE AMOUNT $25,000.

Supporting Documents: Refer to CCR 3084.3.
☐ Yes, I have attached supporting documents.

List supporting documents attached (e.g., CDC 1083, Inmate Property Inventory; CDC 128-G, Classification Chrono):

☑ No, I have not attached any supporting documents. Reason: I DO NOT HAVE ACCESS TO HOUSING DOCUMENTS OR NAMES OF WATCH COMMANDER AUTHORIZED I BE HOUSED IN D16-111 LOW ON 10/28/19.

Inmate/Parolee Signature: _Aurelio Sepulveda_   Date Submitted: 11/6/19

☐ **By placing my initials in this box, I waive my right to receive an interview.**

Received
NOV 15 2019
RJDCF Appeals

Living Conditions
other

Received
JAN 15 2020
RJDCF Appeals

REC BY OOA
MAR 16 2020

**C. First Level - Staff Use Only**
This appeal has been:                    **Staff – Check One: Is CDCR 602-A Attached?** ☐ Yes ☐ No
☐ Bypassed at the First Level of Review. Go to Section E.
☐ Rejected (See attached letter for instruction) Date: ____ Date: ____ Date: ____ Date: ____
☐ Cancelled (See attached letter) Date: ____
☑ Accepted at the First Level of Review.
Assigned to: E. BENYARD   Title: AW-D   Date Assigned: 11/22/19   Date Due: ____

First Level Responder: Complete a First Level response. Include Interviewer's name, title, interview date, location, and complete the section below.
Date of Interview: 12/17/19   Interview Location: Telephonic Interview
Your appeal issue is: ☐ Granted ☐ Granted in Part ☑ Denied ☐ Other: ____
See attached letter. If dissatisfied with First Level response, complete Section D.
Interviewer: I. Godinez (Print Name)   Title: SGT   Signature: ____   Date completed: 12/17/19
Reviewer: E. BENYARD (Print Name)   Title: AW(A)   Signature: ____
Date received by AC: JAN 02 2020

AC Use Only
Date mailed/delivered to appellant JAN 02 2020

**D. If you are dissatisfied with the First Level response,** explain the reason below ~~~ch supporting documents and submit to the Appeals Coordinator for processing within 30 calendar days of receipt of response. If you need more space, use Section D of the CDCR 602-A.

DISSATISFIED: I DISPUTE THAT, I WAS GIVEN A MATTRESS, A BLANKET, SHEETS OR TOILET PAPER, NOR ADEQUATE CLOTHES WHEN I WAS PLACED IN D16-111 LOW AT 11:00 P.M. NO BUILDING OFFICER MADE CONTACT WITH ME, NOR ARE ANY "BUILDING OFFICERS", AS SGT. GODINEZ FALSLY STATES, EVER ASSIGNED TO BUILDING 16 AS THEIR POST DURING 1ST WATCH HOURS. THERE IS ONLY ONE OFFICER ASSIGNED AS

Inmate/Parolee Signature: _Annette D. Sepulveda_   Date Submitted: 1/14/20

---

**E. Second Level - Staff Use Only**                                            Staff – Check One: Is CDCR 602-A Attached?  ☐ Yes  ☐ No

This appeal has been:

☐ By-passed at Second Level of Review. Go to Section G.
☐ Rejected (See attached letter for instruction) Date: _____ Date: _____ Date: _____ Date: _____
☐ Cancelled (See attached letter)
☐ Accepted at the Second Level of Review

Assigned to: _AW-D_   Title: _AW-D_   Date Assigned: 1/23/20   Date Due: FEB 28 2020

Second Level Responder: Complete a Second Level response. If an interview at the Second Level is necessary, include interviewer's name and title, interview date and location, and complete the section below.

Date of Interview: 12-17-19 (FLR)   Interview Location: RJD

Your appeal issue is: ☐ Granted   ☐ Granted in Part   ☒ Denied   ☐ Other: _____

See attached letter. If dissatisfied with Second Level response, complete Section F below.

Interviewer: _L. Vendre Wid_   Title: _LT_   Signature: _____   Date completed: 1-28-20
(Print Name)

Reviewer: _Ph. Vazquez_   Title: _RA_   Signature: _____   2-28-2020
(Print Name)

Date received by AC: FEB 28 2020                                              AC Use Only   FEB 28 20
                                                                             Date mailed/delivered to appellant ___/___/___

---

**F. If you are dissatisfied with the Second Level response,** explain reason below; attach supporting documents and submit by mail for Third Level Review. It must be received within 30 calendar days of receipt of prior response. Mail to: Chief, Inmate Appeals Branch, Department of Corrections and Rehabilitation, P.O. Box 942883, Sacramento, CA 94283-0001. If you need more space, use Section F of the CDCR 602-A.

DISSATISFIED: AT FLR, I DISPUTED THE ALLEGED FACT, THAT SGT. C. GODINEZ TRIES TO ENTER INTO THE RECORD. SGT. C. GODINEZ STATES I WAS PROVIDED WITH MANDATORY ITEMS, SUCH AS CLOTHING, HYGIENE ITEMS, AND A MATTRESS ON OCTOBER 28,2018 WHEN HOUSED IN BLDG#16, CELL# 111. AT 11PM, THERE ARE NO

Inmate/Parolee Signature: _Annette D. Sepulveda_   Date Submitted: 3/8/20

---

**G. Third Level - Staff Use Only**

This appeal has been:
☐ Rejected (See attached letter for instruction) Date: _____ Date: _____ Date: _____ Date: _____ Date: _____
☐ Cancelled (See attached letter)   Date: _____
☒ Accepted at the Third Level of Review. Your appeal issue is ☐ Granted  ☐ Granted in Part  ☒ Denied  ☐ Other: _____
    See attached Third Level response.

                                                                             Third Level Use Only
                                                                             Date mailed/delivered to appellant  JUL 24 2020

---

**H. Request to Withdraw Appeal:** I request that this appeal be withdrawn from further review because; State reason. (If withdrawal is conditional, list conditions.)

_____

_____

_____

Inmate/Parolee Signature: _____   Date: _____

Print Staff Name: _____   Title: _____   Signature: _____   Date: _____

STATE OF CALIFORNIA
**INMATE/PAROLEE APPEAL FORM ATTACHMENT**
CDCR 602-A  (REV. 03/12)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Side 1

| IAB USE ONLY | Institution/Parole Region: | Log #: | Category: |
|---|---|---|---|

Z003235

*FOR STAFF USE ONLY*

Attach this form to the CDCR 602, only if more space is needed.  Only one CDCR 602-A may be used.

Appeal is subject to rejection if one row of text per line is exceeded.   **WRITE, PRINT, or TYPE CLEARLY in black or blue ink.**

| Name (Last, First): SEPULVEDA, AURELIO M. | CDC Number: J-76828 | Unit/Cell Number: A3-123bu | Assignment: UNASSIGNED |
|---|---|---|---|

**A.  Continuation of CDCR 602, Section A only** (Explain your issue) : WHERE I WAS PLACED
IN CELL WITH A LARGE SOFTBALL SIZE HOLE
AND SHATTERED WINDOW, WITHOUT BLANKETS,
SHEETS, MATTRESS, OR TOILET PAPER
AT 11 PM. I REQUESTED TOILET PAPER AND BED
ROLE AND WAS DENIED MY HUMAN NECESSITIES
BY C/OS AND INSTEAD LEFT TO ES IN CELL
SUBJECTED TO PHYSICAL AILMENTS OF
COLD WEATHER SEEPING THROUGH BROKEN
WINDOW. DUE TO DIARREA/STOMACH PROBLEMS
CAUSED BY ANTIBIOTICS I WAS ON I WAS FORCED
TO USE TOILET AND WASH MY BUTT AREA WITH WATER
TO TRY AND CLEAN MYSELF, BECAUSE I COULD
NOT GET SIMPLE TOILET PAPER FROM C/O STAFF
UNTIL THE NEXT MORNING AT AROUND 7 AM
AFTER I ASKED 2ND WATCH OFFICER. I WAS SUBJECTED
TO CRUEL & UNUSUAL PUNISHMENT BY BEING HOUSED
IN NON-LIVIBLE QUARTERS ON 11/28/19 AND WITH-
OUT TOILET PAPER OR BEDDING (AND/OR MATTRESS)

Inmate/Parolee Signature: _[signature]_   Date Submitted: 11/6/19

RECEIVED OIA
MAR 16 2020

STAFF USE ONLY

**B.  Continuation of CDCR 602, Section B only** (Action requested): _____

Inmate/Parolee Signature: _____   Date Submitted: _____

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE/PAROLEE APPEAL FORM ATTACHMENT
CDCR 602-A (REV. 03/12)
Side 2

:20-cv-02079-JLS-MDD   Document 13   Filed 06/18/21   PageID.337   Page 47 of 166



**D. Continuation of CDCR 602, Section D only (Dissatisfied with First Level response):** THE CONTROL OFFICER, opened & closing DOORS. THERE WAS NO BUILDING OFFICERS IN THE BUILDING WHEN TRANSPORTATION OFFICERS PLACED ME IN THE CELL. I ASKED TRANSPORTATION OFFICERS FOR A BED ROLL, MATTRESS AND AT THE VERY LEAST TOILET PAPER AND THEY SIMPLY ANSWERED THAT THERE WAS NOONE TO ASK IN THE BUILDING. I WAS NEVER ASKED BY ANYONE IF I NEEDED ANYTHING, AND I DISPUTE THE FALSE ALLEGATION THAT I SAID "NO". BY SGT. GODINEZ OWN ADMISSION AND STATEMENT RESPONSE, HE CONFIRMS THAT I WAS PLACED IN A CELL WITH A HOLE AND BROKEN WINDOW ON OCTOBER 28 2019 AND IT WAS NOT REPAIRED UNTIL THE NEXT AFTERNOON OR DAY ON OCTOBER 29, 2019. THE CELL WAS UNDER UNLIVABLE CONDITIONS AND A SECURITY RISK WITH A HOLE IN WINDOW AND SHATTERED WINDOW WITH GLASS EVERYWHERE IN CELL. I SHOULD HAVE NEVER BEEN PUT INSIDE A CELL, WITH MY HEALTH CONDITIONS, TO SUFFER THE INCLEMENT WEATHER CONDITIONS, COLD IN DRAFT COMING THROUGH THE BROKEN WINDOW. THE SOLE REASON THE PREVIOUS INMATE WAS MOVED OUT THE CELL TO BEGIN WITH. I WAS LEFT IN CELL WITH ANY NECESSITIES UNTIL THE NEXT MORNING AT 2ND WATCH, AFTER I SUFFERED FOR 7½ HOURS.

Inmate/Parolee Signature: _____   Date Submitted: 1/14/20

**F. Continuation of CDCR 602, Section F only (Dissatisfied with Second Level response):** BUILDING FLOOR OFFICERS RESIGNED AS TO THEIR POST. THE ONLY OFFICER IN BLDG# 16 WAS THE CONTROL OFFICER WHO HAD ZERO CONTACT WITH ME, AND WHO SIMPLY OPEND THE CELL DOOR AND CLOSED IT BEHIND ME. SGT. C. GODINEZ, THE FLR INTERVIEWER FAILED TO IDENTIFY WHO HE CLAIMED TO HAVE SPOKEN TO AND REACHED HIS UNSUBSTANTIATED CONCLUSION, THAT I RESPONDED, "NO" WHEN ASKED BY THESE ALLEGED BLDG# 16 OFFICERS (MORE THAN ONE) ON OCTOBER 28, 2019 IF I REQUIRED ANY SPECIAL ACCOMMODATION. SGT. C. GODINEZ ACKNOWLEDGES THAT THE WINDOW WAS BROKEN ON OCTOBER 28, 2019, AND WAS NOT REPAIRED UNTIL OCTOBER 29, 2019. SGT. C. GODINEZ'S CLAIM THAT, HE WAS TOLD, I RESPONDED "NO" WHEN ASKED BY THE ALLEGED BLDG# 16 OFFICERS IS HEARSAY AND INADMISSIBLE AS EVIDENCE OF TRUTH & FACT. A PROPER INVESTIGATION WILL CONCLUDE I WAS LEFT IN CELL WITHOUT A BED ROLL, MATTRESS, OR SIMPLE TOILET PAPER ON 10/28/19.

Inmate/Parolee Signature: _____   Date Submitted: 3/8/20

State of California

Department of Corrections and Rehabilitation

# Memorandum

Date    :    December 17, 2019

To      :    Sepulveda, A. M. (CDCR # J76828)
             E 024B1-102004L
             Richard J. Donovan Correctional Facility

Subject:    **FIRST LEVEL APPEAL RESPONSE  LOG NO.: RJD-E-19-07299**

Appeal Issue:
You have filed a CDCR 602, Inmate Appeal, alleging the following:
1. You claim that on October 28, 2019, upon your return from Tricity Medical Hospital you were re-housed in Facility D Housing Unit 16 Cell 111L. You claim you were placed in a cell with a "large size hole and shattered window, without blankets, sheets, mattress or toilet paper and was denied human necessities."

Action Requested:
Your requested action(s) are:
1. To be compensated $125,000.00 for the 7.5 hours of physical and mental torture (cruel and unusual) you endured on October 28, 2019.

REGULATIONS:  The rules governing this issue are:
| | |
|---|---|
| **CCR 3001** | **Subject to Regulations** |
| **CCR 3084.1** | **Right to Appeal** |
| **CCR 3270** | **General Policy** |
| **CCR 3287** | **Cell, Property and Body Inspections** |

INTERVIEWED BY: C. Godinez, Correctional Sergeant, on December 17, 2019.

A review of the Strategic Offender Management System (SOMS) on December 17, 2019, indicated your TABE score is 12.9; as well as, your DPP code is DPW; DDP code is NDD; and you are not a participant in the MHSDS level of care.

Due to your case factors, effective communication was achieved by speaking slowly & clearly reading the appeal concerns as annotated within the appeal and having you periodically repeat back in your own words what was stated to you throughout the interview.

During the interview, you were given the opportunity to provide additional information and/or to clarify the issues under review. You thoroughly explained your appeal issues but provided no new evidence, documentation, or information that would support your appeal.

CDC 1617 (3/89)

Sepulveda, A. M. (CDCR # J76828)
Appeal Log No. RJD-E-19-07299
PAGE 2

Appeal Response/Discussion:
In reaching a decision on this issue, below you will find an itemized response:

Issue:
1.  You claim that on October 28, 2019, upon your return from Tricity Medical Hospital you were re-housed in Facility D Housing Unit 16 Cell 111L. You claim you were placed in a cell with a "large size hole and shattered window, without blankets, sheets, mattress or toilet paper and was denied human necessities." Housing Unit 16 Officers were interviewed regarding your claims, to which they stated you were provided with the mandatory items such as clothing, hygiene items, and a mattress. Additionally, Housing Unit 16 Officers asked you on October 28, 2019 if you required any special accommodation, to which you stated no. A work order was submitted for the Housing Unit 18 Cell 111 for a cracked window on October 28, 2019, and completed on October 29, 2019.

DECISION:  The appeal is Denied.

Action requested:
1.  Your request to be compensated $125,000.00 for the 7.5 hours of physical and mental torture (cruel and unusual) you endured on October 28, 2019 is Denied, as this request is outside the scope of the appeals process.

Also, be advised that this issue may be submitted to the Second Level of Review, if desired, by completing Section "D" of the CDCR 602 and submitting the appeal with the supporting documents to the RJDCF Appeals Office.

E. BENYARD
Associate Warden (A) – Facility D
Richard J. Donovan Correctional Facility

STATE OF CALIFORNIA
**PLANT OPERATIONS WORK REQUEST (ATTACHMENT A)**
CDCR 2184 (02/09)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

## PLANT OPERATIONS WORK REQUEST

TO: CORRECTIONAL PLANT MANAGER II, PLANT OPERATIONS DEPT.     DATE: 10/28/19

BUILDING NUMBER: HU/16 _____     LOCATION OF WORK: CELL 111 _____

WORK REQUESTED: BROKEN WINDOW IS CRACKED AND HAS A HOLE. _____

_____

_____

_____

_____

REQUESTED BY:

NAME: D. SENGTHONG _____

TITLE: CORRECTIONAL OFFICER _____

UNIT/DEPT: _____ PHONE: 6441 _____

DEPT. HEAD/SUPERVISOR AUTHORIZATION

NAME: R. MARIENTES _____

TITLE: CORRECTIONAL SERGEANT _____

DEPARTMENT REQUEST NUMBER: FD-19-10-078

Work requests involving construction, structural alterations, and/or changes, improvements, or additions to the existing physical plant, require prior authorization, budgeting, and shall be accompanied by an attached memorandum stating justification for the requested work. Requests for locks and keys must be submitted via the Custody Office. Requests for furniture repair are handled by Property Control.

**For Plant Operations Use Only**

APPROVAL TO PROCEED: _____     DATE: _____     PRIORITY: _____

SHOP ASSIGNED: _____          ☐ IF MORE THAN ONE SHOP INVOLVED, CHECK HERE.

COMPLETED BY: _____     COMPLETION DATE: _____

# OF HOURS: _____ LABOR COST: _____ MATERIALS COST: _____

TOTAL COST: _____

# OF I/M: _____     # OF HRS. PER I/M: _____

COMMENTS:

OP-FMD-0100

PLANT OPERATIONS LOG #

State of California                                          Department of Corrections and Rehabilitation

# Memorandum

Date    :    January 28, 2020

To      :    Sepulveda, A. M. (CDCR# J76828)          *E 24 - B-102*
             FE-24-102L
             Richard J. Donovan Correctional Facility

Subject:    **SECOND LEVEL APPEAL RESPONSE  LOG NO.: RJD-B-19-07299**

Appeal Issue:
You have filed an Inmate/Parolee Appeal, CDCR 602, alleging the following:
1. On October 28, 2019, upon your return from Tri-City Medical Hospital, you were
   re-housed on Facility D in Housing Unit 16, Cell 111L (FD-16-111L).  You claim
   the cell had a "large size hole and shattered window," and you were placed in the
   cell without receiving blankets, sheets, mattress or toilet paper, and were denied
   human necessities.

Action Requested:
Your requested action(s) are:
1. To be compensated $125,000.00 for the 7.5 hours of physical and mental torture
   (cruel and unusual) you endured on October 28, 2019.

REGULATIONS:  The rules governing this issue are:
**CCR 3001        Subject to Regulations**
**CCR 3060        Means**
**CCR 3084.1     Right to Appeal**
**Operational Procedure #31 Facility B, Level III SNY Inmate Program**
**DOM 32010.10 General Training**

INTERVIEWED   BY:   C.   Godinez,   Correctional   Sergeant   (Sgt.),   on
December 17, 2019, at the First Level of Review (FLR).

FIRST   LEVEL   DECISION:      The  appeal  was  Denied  at  the  FLR,  citing
"Housing Unit 16 Officers were interviewed regarding your claims, to which they
stated you were provided with the mandatory items."

In Section D, you indicated that you were dissatisfied with the FLR by noting that you
dispute the FLR stating you were issued a mattress, blanket, sheets, toilet paper,
or adequate clothing when placed in FD-16-111L.

Appeal Response:
In reaching a decision on this issue, below you will find an itemized response:

Sepulveda, A., CDCR # J76828
Appeal Log No. RJD-B-19-07299
Page 2

Upon review of the documentation submitted, the reviewer has determined the appeal was not appropriately reviewed and evaluated by the FLR.

Issue:
1. You claim that on October 28, 2019, upon your return from Tri-City Medical Hospital, you claim you were placed in FD-16-111L with a "large size hole and shattered window, without blankets, sheets, mattress, or toilet paper, and was denied human necessities." Sgt. C. Godinez conducted interviews with Housing Unit 16 Officers at the FLR regarding your claims, to which the staff individually stated you were provided with the mandatory items such as clothing, hygiene items, and a mattress.   Additionally, on October 28, 2019, you were asked by Housing Unit 16 Officers if you required any special accommodation, to which you claimed you did not.  Additionally, it was determined at the FLR, that you were in fact placed in cell 111 which had a broken window at the time.   Therefore, a work order was submitted, and the cracked window fixed on October 29, 2019.

DECISION:  The appeal is Denied.

Action requested:
1. Your request to be monetarily compensated $125,000.00 for the 7.5 hours of physical and mental torture (cruel and unusual) you endured on October 28, 2019, is Denied.  The request is outside the scope of the appeals process.

MODIFICATION ORDER:  None.

Also, be advised that this issue may be submitted for a Third Level of Review, if desired, by completing section "F" of the CDCR 602 and mailing the appeal to the Chief of the Office of Appeals at the address listed on the back of the CDCR 602.

M. Pollard               2-28-2020
Warden (A)
Richard J. Donovan Correctional Facility

STATE OF CALIFORNIA —DEPARTMENT OF CORRECTIONS AND REHABILITATION                                   GAVIN NEWSOM, GOVERNOR

**OFFICE OF APPEALS**
P. O. BOX 942883
SACRAMENTO, CA  94283-0001



## OFFICE OF APPEALS (THIRD LEVEL) DECISION

JUL 1 6 2020

In re: Aurelio Sepulveda, J76828                          TLR Case No.: 2003235
　　　Richard J. Donovan                                  Local Log No.: RJD-19-07299
　　　Correctional Facility

### I.  ISSUE ON APPEAL:

The claimant alleges that upon his return from Tri-City hospital on October 28, 2019, he was rehoused in a cell with a "large size hole and shattered window, without blankets, sheets, mattress or toilet paper and was denied human necessities." Therefore, the claimant is requesting monetary compensation for the "7 ½" hours of "physical and mental torture" he endured on October 28, 2019, through October 29, 2019.

### II. RULES AND REFERENCES:

#### A.   CONTROLLING AUTHORITY:

- California Code of Regulations (CCR), Title 15, Sections 3030, 3060

#### B.   DOCUMENTS CONSIDERED:

- CDCR Form 602, Inmate Appeal, Log #: RJD-19-07299
- First Level Appeal Response, dated December 17, 2019
- Second Level Appeal Response, dated January 28, 2020
- Plant Operations Work Request, dated October 28, 2019

### III. REASONING AND DECISION: DENIED.

Upon review of the relevant documentation and applicable regulations, the Office of Appeals finds the claimant's issues were appropriately addressed at the Second Level of Review (SLR). According to the SLR's interview with the housing unit Officers, they contend the claimant was provided with the mandatory items such as clothing, hygiene items, and a mattress. The claimant also acknowledges in his appeal that he was provided with toilet paper early the following morning. Additionally, records confirm there was a cracked window in the claimant's cell at the time; however, the window was repaired the following day, as evidenced by the Plant Operations Work Request dated October 28, 2019. Additionally, the Strategic Offender Management System Bed Assignments confirms the claimant was relocated to another cell in Facility "A" on October 30, 2019. As such, the Office of Appeals is unable to conclude the institution violated policy regarding this matter.

After a thorough review of all documents and evidence available at the time of this written decision, it is the order of the Office of Appeals that the appeal at the Third Level of Review is **DENIED.**  This decision exhausts the administrative remedies available to the appellant within CDCR.

### IV. REMEDY

The appeal has been denied.  Therefore, there is no applicable remedy.

*C. Ballard*

C. Ballard, Appeals Examiner
Office of Appeals
cc: Warden, RJD
　　　Grievance Coordinator, RJD



# EXHIBIT COVER PAGE

<div style="border: 1px solid black">B</div>

EXHIBIT

DESCRIPTION OF THIS EXHIBIT:

CDCR 1824 Reasonable Accommodation Request Log # RJD-A-19-7025

NUMBER OF PAGES TO THIS EXHIBIT:____3____PAGES.

JURISDICTION: (CHECK ONLY ONE)

☐ COUNTY GRAND JURY

☐ COUNTY MUNICIPAL COURT

☐ COUNTY CIRCUIT COURT

☐ COUNTY SUPERIOR COURT

☐ STATE COURT OF APPEAL

☒ UNITED STATES DISTRICT COURT

☐ STATE SUPREME COURT

☐ STATE BAR COURT

☐ STATE CIRCUIT COURT

☐ UNITED STATES SUPREME COURT

☐ OTHER:_____

Approved for
use with
Judicial
Council forms
(01-19-08)
MDT/CRA

STATE OF CALIFORNIA
**REASONABLE ACCOMMODATION REQUEST**
CDCR 1824 (Rev. 09/17)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Page 1 of 1

| INSTITUTION (Staff use only) | LOG NUMBER (Staff Use Only) 7025 | DATE RECEIVED BY STAFF: |
|---|---|---|
| RJD | RJD-A-19-7025 | Received RUV 0 8 2019 RJDCF Appeals |

**\*\*\*\*\*\*\*\*\*\*\*TALK TO STAFF IF YOU HAVE AN EMERGENCY\*\*\*\*\*\*\*\*\*\*\***
<u>DO NOT</u> use a CDCR 1824 to request health care or to appeal a health care decision. This may delay your access to health care. Instead, submit a CDC 7362 or a CDCR 602-HC

| INMATE'S NAME (Print) SEPULVEDA, AURELIO M | CDCR NUMBER J-76828 | ASSIGNMENT UNASSIGNED | HOUSING A3-123 LOW |
|---|---|---|---|

INSTRUCTIONS:

- You may use this form if you have a physical or mental disability or if you believe you have a physical or mental disability.
- You may use this form to request a specific reasonable accommodation which, if approved, will enable you to access and/or participate in a program, service or activity. You may also use this form to submit an allegation of disability-based discrimination.
- Submit this form to the Custody Appeals Office.
- The 1824 process is intended for an individual's accommodation request. Each individual's request requires a case-by-case review.
- The CDCR 1824 is a request process, not an appeal process. All CDCR 1824 requests will receive a response.
- If you have received an 1824 decision that you disagree with, you may submit an appeal (CDCR 602, or CDCR 602-HC if you are disagreeing with a medical diagnosis/treatment decision).

**WHAT CAN'T YOU DO / WHAT IS THE PROBLEM?**
ON 10/28/19. I ARRIVED FROM TRI-CITY HOSPITAL WHERE MY 2 (L) FOOT TOES WERE AMPUTATED BY DR. CALAFI, M.D. HE ORDERED I PUT NO WEIGHT ON (L) LEG AND I WAS PLACED IN A NON-WHEEL CHAIR ACCESSIBLE/NON-ADA CELL/OR BED, INSTEAD IN A REGULAR CELL FIRST IN D16-111 LOW, THEN 2 DAYS LATER TO A3-123 LOW AND * (SEE BACK PAGE)

**WHY CAN'T YOU DO IT?**
I AM NOT SUPPOSED TO PUT WEIGHT ON LEFT LEG DUE TO AMPUTATION SURGERY ON 10-24-19 AT TRI-CITY HOSPITAL PER DR. CALAFI, M.D.'S ORDERS.

**WHAT DO YOU NEED?**
I NEED TO IMMEDIATELY BE RE-HOUSED IN A WHEEL-CHAIR ACCESSIBLE CELL OR MOVED BACK TO AN ADA WHEEL-CHAIR ACCESSIBLE BED IN E-FACILITY (AS I WAS PREVIOUSLY HOUSED SINCE 2/28/17) AND AM CURRENTLY ENDORSED TO SNCC 2/28/17. THIS CURRENT CELL IS NOT ACCOMMODATING MY SERIOUS CONDITION AND PLACING ME AT RISK OF FALL OR INJURY. *(Use the back of this form if more space is needed)*

| DO YOU HAVE DOCUMENTS THAT DESCRIBE YOUR DISABILITY?   Yes ☐   No ☒   Not Sure ☐ |
|---|
| List and attach documents, if available: |
| _____ |
| _____ |
| _____ |

I understand that staff have a right to interview or examine me, and my failure to cooperate may cause this request to be disapproved.

| _Aurelio M. Sepulveda_ | 11/6/19 |
|---|---|
| INMATE'S SIGNATURE | DATE SIGNED |

Assistance in completing this form was provided by:

| _____ | _____ | _____ |
|---|---|---|
| Last Name | First Name | Signature |

NEITHER CELL ALLOWS ME TO GAIN ENTRY WITH THE WHEELCHAIR AND ACCESS TO BED AREA AS WHEN I WAS IN E-FACILITY E24-C102-4LOW (ADA BED AS OF 2-28-17) I CANNOT GAIN ACCESS TO BED WITHOUT LEAVING MY CHAIR APPROXIMATELY 7 FEET AWAY AND OUTSIDE CELL BEYOND OUT OF BOUNDS AREA. THIS IS TOTALLY AGAINST WHAT DR. CALAFI, M.D. (SURGEON) TOLD ME, THAT I COULD NOT PUT ANY WEIGHT ON MY LEFT LEG OR OPERATED AREA COULD RIP OPEN AND LEAD TO FURTHER INJURY. SINCE 10/28/19, I'VE BEEN FORCED TO HOP AROUND ON RIGHT LEG AND STILL PUT WEIGHT AND PRESSURE ON LEFT LEG IN ORDER TO MOVE TO AND OUT OF MY BED AND IN CELL TO MOBILIZE BECAUSE I CAN'T USE MY WHEEL CHAIR INSIDE MY CELL. THIS CELL I AM CURRENTLY HOUSED IN IS NOT ACCOMMODATING MY SERIOUS MEDICAL CONDITION AND IS PLACING ME IN FURTHER RISK OF FURTHER INJURY OR WORSENING MY CONDITION, OR RISK OF FALLING.

## REASONABLE ACCOMMODATION PANEL (RAP) RESPONSE

| | | |
|---|---|---|
| **RAP Meeting Date:** 11/14/2019 | **Date IAC Received 1824:** 11/8/2019 | **1824 Log Number:** RJD-A-19-7025 |
| **Inmate's Name:** SEPULVEDA, A. | **CDCR #:** J76828 | **Housing:** RJD E-24B1-102-4L |

**RAP Staff Present:** J. Juarez, ADA Coordinator; Dr. R. Barenchi, Chief Physician & Surgeon; E. Frijas, Custody Appeals Representative; V. Alanis, Health Care Compliance Analyst; M. Ortiz, Health Care Grievance Representative; Dr. K. Rodriguez, Psychologist; G. Martinez, Education

**Summary of Inmate's 1824 Request:** You claim two toes on your left foot were amputated. You request to be moved to a DPW cell on Facility E.

Interim Accommodation:

☒ No interim accommodation required: No foreseen serious or irreparable harm while processing this request.

FINAL RESPONSE:

**RAP is able to render a final decision on the following:**

**Response:** A review of the Strategic Offender Management Systems (SOMS) reflects you currently have a wheelchair and walker assigned to you. Your Primary Care Provider (PCP) changed your Disability Placement Program code to DPW on 11/13/2019. You were also moved to a DPW cell on 11/13/2019. Subsequently, you were moved from Facility A-4-131L to Facility E-24b1-102-4L on 11/19/2019. If you disagree with a medical treatment/diagnosis decision, you may submit a CDCR 602 HC, Health Care Grievance.

**Direction if dissatisfied with this RAP decision:** If you are dissatisfied with this decision, submit an appeal CDCR 602, Inmate/Parolee Appeal (green form). Be sure to attach this response and your CDCR 1824 as supporting documents. Refer to California Code of Regulations (CCR) Title 15, Section 3087 for further guidance.

| | | |
|---|---|---|
| J. Juarez, AW | | Date sent to inmate:  **DEC 0 4 2019** |
| **ADA Coordinator/Designee** | Signature | |



# EXHIBIT COVER PAGE

C

EXHIBIT

DESCRIPTION OF THIS EXHIBIT:

CDCR 602 Administrative Appeal Log # RJD-E-20-0756
                        (modified # RJD-E-20-0582)

NUMBER OF PAGES TO THIS EXHIBIT:____4____PAGES.

JURISDICTION: (CHECK ONLY ONE)

☐ COUNTY GRAND JURY

☐ COUNTY MUNICIPAL COURT

☐ COUNTY CIRCUIT COURT

☐ COUNTY SUPERIOR COURT

☐ STATE COURT OF APPEAL

☒ UNITED STATES DISTRICT COURT

☐ STATE SUPREME COURT

☐ STATE BAR COURT

☐ STATE CIRCUIT COURT

☐ UNITED STATES SUPREME COURT

☐ OTHER:_____

Approved for
use with
Judicial
Council forms
(01-19-08)
MDT/CRA

STATE OF CALIFORNIA
**INMATE/PAROLEE APPEAL**
CDCR 602 (REV. 03/12)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Side I

| IAB USE ONLY | Institution/Parole Region: | Log #: | Category: |
|---|---|---|---|
| | RJD·E·20·0756 | | 9 |

*FOR STAFF USE ONLY*

You may appeal any California Department of Corrections and Rehabilitation (CDCR) decision, action, condition, policy or regulation that has a material adverse effect upon your welfare and for which there is no other prescribed method of departmental review/remedy available. See California Code of Regulations (CCR), Title 15, Section 3084.1. You must send this appeal and any supporting documents to the Appeals Coordinator (AC) within 30 calendar days of the event that led to the filing of this appeal. If additional space is needed, only one CDCR Form 602-A will be accepted. Refer to CCR 3084 for further guidance with the appeal process. No reprisals will be taken for using the appeal process.

**Appeal is subject to rejection if one row of text per line is exceeded.**          WRITE, PRINT, or TYPE CLEARLY in black or blue ink.

| Name (Last, First): SEPULVEDA, AURELIO M. | CDC Number: J-76828 | Unit/Cell Number: E24-B102-04LOW | Assignment: FAC.E POOCH PROGRAM |
|---|---|---|---|

State briefly the subject of your appeal (Example: damaged TV, job removal, etc.):
Plant Manager II,,failure to adhere to constraints of Section 3086(f)(4)

A. Explain your issue (If you need more space, use Section A of the CDCR 602-A): On January 14,2020,
I submitted a CDCR 22-I/M/Parolee Request for Interview,Item,or Ser-
vice pursuant to Article 8.5,15 CCR 3086 directed to RJD Plant Oper-
ations Manager II,Plant Operations Department requesting a copy of

B. Action requested (If you need more space, use Section B of the CDCR 602-A): (1)that the Form 22
be properly addressed and responded to;and (2)that I be afforded a
copy of the requested CDCR 2184-Plant Operations Work Request,Form as
completed by Plant Operations Department on October 29,2019 & Log #.

Received
JAN 30 2020
RJDCF Appeals
Living Conditions
other

Supporting Documents: Refer to CCR 3084.3.
☒ Yes, I have attached supporting documents.
List supporting documents attached (e.g., CDC 1083, Inmate Property Inventory; CDC 128-G, Classification Chrono):
CDCR 22-Dated 1/14/20

☐ No, I have not attached any supporting documents. Reason :_____

Inmate/Parolee Signature: _____   Date Submitted: 1/29/20

☐ **By placing my initials in this box, I waive my right to receive an interview.**

**C. First Level - Staff Use Only**
This appeal has been:          Staff – Check One: Is CDCR 602-A Attached? ☐ Yes ☐ No
☐ Bypassed at the First Level of Review. Go to Section E.
☐ Rejected (See attached letter for instruction) Date: ____ Date: ____ Date: ____ Date: ____
☐ Cancelled (See attached letter) Date: ____
☒ Accepted at the First Level of Review.
    Assigned to: BS          Title: BS          Date Assigned: 2/6/20   Date Due: MAR 13

First Level Responder: Complete a First Level response. Include Interviewer's name, title, interview date, location, and complete the section below.
Date of Interview: 12/13/20          Interview Location: Law Library FAC E
Your appeal issue is: ☐ Granted ☒ Granted in Part ☐ Denied ☐ Other:_____
See attached letter. If dissatisfied with First Level response, complete Section D.
Interviewer: LA Lewis          Title: CPS          Signature: _____   Date completed: 1/13/20
(Print Name)
Reviewer: B.O. Phillips          Title: A2          Signature: _____
(Print Name)
Date received by AC: MAR 13 2020

| AC Use Only |
|---|
| Date mailed/delivered to appellant ___/___/___ |

STATE OF CALIFORNIA
**INMATE/PAROLEE APPEAL**
CDCR 602 (REV. 03/12)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Side 2

**D. If you are dissatisfied with the First Level response**, explain the reason below, attach supporting documents and submit to the Appeals Coordinator for processing within 30 calendar days of receipt of response.  If you need more space, use Section D of the CDCR 602-A.

_____

_____

_____

_____

_____

Inmate/Parolee Signature: _____  Date Submitted : _____

---

**E.  Second Level - Staff Use Only**          Staff – Check One: Is CDCR 602-A Attached?  ☐ Yes   ☐ No

This appeal has been:
☐ By-passed at Second Level of Review.  Go to Section G.
☐ Rejected (See attached letter for instruction) Date: _____  Date: _____  Date: _____  Date: _____
☐ Cancelled (See attached letter)
☐ Accepted at the Second Level of Review

Assigned to: _____  Title: _____  Date Assigned: _____  Date Due: _____

Second Level Responder:  Complete a Second Level response.  If an interview at the Second Level is necessary, include interviewer's name and title, interview date and location, and complete the section below.

Date of Interview: _____          Interview Location: _____

Your appeal issue is:  ☐ Granted   ☐ Granted in Part   ☐ Denied   ☐ Other: _____

See attached letter.  If dissatisfied with Second Level response, complete Section F below.

Interviewer: _____  Title: _____  Signature: _____  Date completed : _____
               (Print Name)

Reviewer: _____  Title: _____  Signature: _____
            (Print Name)

Date received by AC: _____

| AC Use Only |
| Date mailed/delivered to appellant ____ /____ /____ |

---

**F.  If you are dissatisfied with the Second Level response**, explain reason below; attach supporting documents and submit by mail for Third Level Review.  It must be received within 30 calendar days of receipt of prior response.  Mail to: Chief, Inmate Appeals Branch, Department of Corrections and Rehabilitation,  P.O. Box 942883, Sacramento, CA 94283-0001.  If you need more space, use Section F of the CDCR 602-A.

_____

_____

_____

_____

_____

Inmate/Parolee Signature: _____  Date Submitted: _____

---

**G.  Third Level - Staff Use Only**

This appeal has been:
☐ Rejected (See attached letter for instruction) Date: _____  Date: _____  Date: _____  Date: _____  Date: _____
☐ Cancelled (See attached letter)   Date: _____
☐ Accepted at the Third Level of Review.  Your appeal issue is ☐ Granted   ☐ Granted in Part   ☐ Denied   ☐ Other: _____
      See attached Third Level response.

| Third Level Use Only |
| Date mailed/delivered to appellant ____ /____ /____ |

---

**H. Request to Withdraw Appeal:**  I request that this appeal be withdrawn from further review because; State reason. (If withdrawal is conditional, list conditions.)

_____

_____

_____

_____

_____  Inmate/Parolee Signature: _____  Date: _____

Print Staff Name: _____  Title: _____  Signature: _____  Date: _____

STATE OF CALIFORNIA
**INMATE/PAROLEE APPEAL FORM ATTACHMENT**
CDCR 602-A (REV. 03/12)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Side 1

| | IAB USE ONLY | Institution/Parole Region: | Log #: | Category: |
|---|---|---|---|---|
| | | | | |
| | | | *FOR STAFF USE ONLY* | |

Attach this form to the CDCR 602, only if more space is needed.  Only one CDCR 602-A may be used.
Appeal is subject to rejection if one row of text per line is exceeded.      **WRITE, PRINT, or TYPE CLEARLY in black or blue ink.**

| Name (Last, First): | CDC Number: | Unit/Cell Number: | Assignment: |
|---|---|---|---|
| SEPULVEDA, AURELIO M. | J-76828 | E24-B102-04LOW | FAC.E POOCH PROGRAM |

**A. Continuation of CDCR 602, Section A only (Explain your issue):** CDCR 2184-Plant Operations
Work Request(Attachment A) OP-FMD-0100 Form submitted to him on Octo-
ber 28,2019,in regards to a Request submitted for Repair of:Broken
Window ,cracked and with a Hole. This Request was submitted for Repair
in Building HU# 16,Cell 111,by C/O D. Sengthons and under Dept. Reque-
st Number: FD-19-10-078 and approved for submittal by Corr.Sergeant
R. Marientes (Dept. Head/Supervisor Authorization). This Request was
completed on October 29,2019. I informed of the need for this compl-
eted Form showing the lower portion completed by Plant Operations,
that shows the date completed and by whom. Most importantly,the
Plant Operations Log #,and any comments made by Plant Operations Dept.
This Document is needed for purpose of confirmation of the actual
work performed and date of completion relevant to Administrative
Appeal Log# RJD-E19-07299,a pending Appeal. As of today,January 29,
2020,I have not recieved any Response,nor the requested Form. Time
constraints as to section 3086(f)(2)(4) state I will have a Response
within Three Working Days after reciept of the Form,and as subd.(D)
states:Return Original and remaining copy of Form to I/M,allowing me
to seek further Review.I am being denied access to this Process.

Inmate/Parolee Signature: _[signature]_   Date Submitted: 1/29/20

**B. Continuation of CDCR 602, Section B only (Action requested):** _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Inmate/Parolee Signature: _____   Date Submitted: _____

STATE OF CALIFORNIA
**INMATE/PAROLEE APPEAL FORM ATTACHMENT**
CDCR 602-A (REV. 03/12)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

**Side 2**

**D.  Continuation of CDCR 602,  Section D only (Dissatisfied with First Level response):** _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**Inmate/Parolee Signature:** _____   **Date Submitted:** _____

**F.  Continuation of CDCR 602, Section F only (Dissatisfied with Second Level response):** _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**Inmate/Parolee Signature:** _____   **Date Submitted:** _____

State of California

Department of Corrections and Rehabilitation

# Memorandum

Date:   February 14, 2020

To:   SEPULVEDA, Aurelio (CDCR#: T11765)
Facility E Housing Unit 24, Cell B-102
Richard J. Donovan Correctional Facility

Subject:   **FIRST LEVEL APPEAL RESPONSE LOG NO.:  RJD-E-20-0582**

Appeal Issue:
You have filed a CDCR 602, Inmate Appeal, alleging the following:
1.  You allege that you submitted a Form 22 to Plant Operations, Correctional Plant Manager II (CPM II) requesting a document and have not received an answer.

Action Requested:
Your requested action is:
1.  You request that the CPM II answer the Form 22.

2.  You request a copy of the CDCR 2184 form that shows the work completed by Plant Operations.

REGULATIONS:   The California Code of Regulations (CCR), Title 15 rules governing this issues is:
CCR 3001     **Subject to Regulations**
CCR 3084.1     **Right to Appeal**

INTERVIEWED BY:   L. A. Lewis, Correctional Plant Supervisor, on Thursday, February 13, 2020, in the Facility E Law Library.

A review of the Strategic Offender Management System on February 13, 2020, indicated your TABE score is: 12.9; as well as, your DPP code is: DPO; DDP code is: NDD, and you are not a participant in the MHSDS.

In preparing the response to this appeal, your appeal, supporting documents and all applicable policies, procedures, and laws were considered.

Appeal Response/Discussion:

In reaching a decision on this issue, below you find an itemized response
Issue:
1.  You allege that you submitted a Form 22 to Plant Operations, CPM II requesting a document and have not received an answer.

CDC 1617 (3/89)

SEPULVEDA, A. (CDCR#: J76828)
Appeal Log #: RJD-E-20-0756
Page 2

DECISION:  The appeal is **PARTIALLY GRANTED** in that:

Action requested:
1. You request that the CPM II answer the Form 22.  DENIED.  Plant    Operations never received a Form 22 from you.

2. You request a copy of the CDCR 2184 form that shows the work completed by Plant Operations.  GRANTED.  Enclosed is a copy of the work order that was created from a call received on the Emergency Work Request line.


Also, be advised that this issue may be submitted to the Second Level of Review, if desired, by completing Section "D" of the CDCR Form 602 and submitting the appeal with the supporting documents to the RJDCF Appeals Office.

B. D. PHILLIPS
Associate Warden – Business Services
Richard J. Donovan Correctional Facility

# Demand Maintenance Work Order

## R. J. DONOVAN CORRECTIONAL FAC

**Work Order:** ▯▯▯▯▯▯▯     **485883**     **Issued:** *10/28/2019*     **Time:** *09:17:49*

**Priority:** *1*     **Required:** *10/29/2019*

**Requestor:** *PLANT OPS - CALLED IN*     **Phone:** *6425*     **Status:** *Online*

**Activity:** *PA*      *PA Activity*
**Description:** *FD HU16 C111 - BACK WINDOW CRACKED.*

**Asset:** *210000044308*   *CWDF-SAP-001*    *CELL - WINDOW,FIXED*    **Warranty Expires:**
**Description:** *CELL - GLASS*     **Original Desc:** *CELL - WINDOW,FIXED*
**Remarks:**        **System:** *Unknown (TBD)*
**Last PM WO:**

**Building:** *4.5*     *HOUSING UNIT 16*     **Floor:** *01*     *FIRST FLOOR*
**Area:** *01*      *FIRST FLOOR*     **Room:** *C111*     *CELL - 111*

**Shop:** *PA*     *Paint/Glazing Shop*
**Center:** *General Maintenance*
**Project:**
**Vendor:**

**Work Order Notes**
CALLED x6425, 10/26/19 @ 11:30 AM. -LE

**Resolution:** __ **Vandalism** __ **Called in Vendor** __ **Report New WO/Project** __ **No Problem Found**
**Actions Taken:**

**Additional Notes:**

**Part Number:** *Back Cell Window*     **Quantity Used:** *$275.00*

**Employee:** *A Gjo*     **Date** *10-29-19*     **Hours** *2*

**Inmate Hours**
**Date**   **Hours**



# EXHIBIT COVER PAGE

DESCRIPTION OF THIS EXHIBIT:

GOVERNMENT CLAIMS PROGRAM— CLAIM # 20003925

NUMBER OF PAGES TO THIS EXHIBIT:___1___PAGES.

JURISDICTION: (CHECK ONLY ONE)

☐ COUNTY GRAND JURY

☐ COUNTY MUNICIPAL COURT

☐ COUNTY CIRCUIT COURT

☐ COUNTY SUPERIOR COURT

☐ STATE COURT OF APPEAL

☒ UNITED STATES DISTRICT COURT

☐ STATE SUPREME COURT

☐ STATE BAR COURT

☐ STATE CIRCUIT COURT

☐ UNITED STATES SUPREME COURT

☐ OTHER:_____

D

EXHIBIT

Approved for
use with
Judicial
Council forms
(01-19-08)
MDT/CRA

 CALIFORNIA DEPARTMENT OF GENERAL SERVICES

Governor Gavin Newsom

05/13/2020

Aurelio M. Sepulveda J76828
480 Alta Road
San Diego, CA 92179

RE:  Claim 20003925 for Aurelio M. Sepulveda J76828 against Department of Corrections and Rehabilitation (CDCR)

Dear Aurelio Sepulveda,

Government Claims Program (GCP) staff completed its investigation of your claim and rejected it for the following reasons.

The claim involves complex issues that are beyond the scope of analysis and legal interpretation typically undertaken by the GCP.  Claims involving complex issues are best determined by the courts.  Therefore, staff did not make a determination regarding the merit of the claim, and it is being rejected so you can initiate court action if you choose to pursue this matter further.

If you choose to pursue court action in this matter, it is not necessary or proper to include the GCP in your lawsuit unless the GCP was identified as a defendant in your original claim.  Please consult Government Code section 955.4 regarding proper service of the summons.

If you have questions about this matter, please feel free to contact GCP by phone, mail, or email using the contact information below.   Please remember to reference the assigned claim number (20003925) in your communication.

Sincerely,

Ulaa Alshami, Staff Services Analyst
Government Claims Program
gcinfo@dgs.ca.gov

**WARNING:**  Subject to certain exceptions, you have only six (6) months from the date this notice was personally delivered or deposited in the mail to file a court action on this claim.  See Government Code Section 945.6.  You may seek the advice of an attorney of your choice in connection with this matter.  If you desire to consult an attorney, you should do so immediately.



**CALIFORNIA DEPARTMENT OF**
**GENERAL SERVICES**

**Governor Gavin Newsom**

## DECLARATION OF SERVICE BY U.S. MAIL

Name of Claimant: Aurelio M. Sepulveda J76828
GCP File no.: 20003925

I am employed by the Government Claims Program. I am 18 years of age or older. I am familiar with the business practice at the Government Claims Program for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Government Claims Program is deposited with the United States Postal Service with postage thereon fully prepaid that same day in the ordinary course of business. On 05/13/2020, I served the attached letter by placing a true copy thereof enclosed in a sealed envelope in the internal mail collection system at the Government Claims Program, located at 707 Third Street, West Sacramento, CA 95605, addressed as follows:

Aurelio M. Sepulveda J76828
480 Alta Road
San Diego, CA 92179

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on 05/13/2020, at West Sacramento, California.

Ulaa Alshami



# EXHIBIT COVER PAGE

| E |
| :-: |
| EXHIBIT |

DESCRIPTION OF THIS EXHIBIT:

CDCR 602 HC Health Care Grievance Log # RJD-HC-20001425

NUMBER OF PAGES TO THIS EXHIBIT:____13____PAGES.

JURISDICTION: (CHECK ONLY ONE)

☐ COUNTY GRAND JURY

☐ COUNTY MUNICIPAL COURT

☐ COUNTY CIRCUIT COURT

☐ COUNTY SUPERIOR COURT

☐ STATE COURT OF APPEAL

☒ UNITED STATES DISTRICT COURT

☐ STATE SUPREME COURT

☐ STATE BAR COURT

☐ STATE CIRCUIT COURT

☐ UNITED STATES SUPREME COURT

☐ OTHER:_____

Approved for
use with
Judicial
Council forms
(01-19-08)
MDT/CRA

STATE OF CALIFORNIA
**HEALTH CARE GRIEVANCE**
CDCR 602 HC (Rev. 10/18)

DEPARTMENT OF CORRECTIONS AND REHABILITATION
Page 1 of 2

| STAFF USE ONLY | Expedited? ☐ Yes ☑ No | Tracking #: RJD HC 20001425 |
|---|---|---|

M. Sousley RN
Staff Name and Title (Print)

M. Sousley
Signature

**SEP 16 2020**
Date

If you think you have a medical, mental health or dental emergency, notify staff immediately. If additional space is needed, use Section A of the CDCR 602 HC A Health Care Grievance Attachment. Only one CDCR 602 HC A will be accepted. You must submit this health care grievance to the Health Care Grievance Office for processing. Refer to California Code of Regulations (CCR), Title 15, Chapter 2, Subchapter 8, Article 5 for further guidance with the health care grievance process.

Do not exceed more than one row of text per line. WRITE, PRINT, or TYPE CLEARLY in black or blue ink.

| Name (Last, First, MI): | CDCR #: | Unit/Cell #: |
|---|---|---|
| **SEPULVEDA, AURELIO M.** | J-76828 | E24-B102-04LOW |

**SECTION A:** Explain the applied health care policy, decision, action, condition, or omission that has had a material adverse effect upon your health or welfare for which you seek administrative remedy:

On 10/28/19, I returned from Tri-City Hospital after Amputation of my (4th/5th) Toes on my Left Foot. I was seen in the ER by Medical Staff RN E. Simpkins. After consulting Dr. John Chau,P & S,Dr. Chau improperly Classified me and issued a Temporary 14 Day Order for a Wheelchair DME,Disabilitty Type: Mobility without accommodating my inability to Ambulate and place weight on my Left Leg and failed to follow the Recommendation & Report by Dr. Arash Calafi,M.D. (Surgeon) that there be non-weight bearing on left leg due to the recent Amputation to my two toes on left foot, rather than Classifying me as DPW,Wheel-chair Use for accessibility inside & outside Cell Wheelchair Accessible Cell/Housing and Non-Weight Bearing as was corrected by Dr. Ryan Barenchi,CP & S on 11/13/20. This misclassi-fication by Dr. Chau iniated the misaccomodation of Housing in a Cell not Wheelchair access and requiring me to leave my Chair outside the Cell and put weight on my left leg to enter

Supporting Documents Attached. Refer to CCR 3999.227 ☑ Yes ☐ No

Grievant Signature: _Aurelio M. Sepulveda_    Date Submitted: **8/23/20**

BY PLACING MY INITIALS IN THIS BOX, I REQUEST TO RECEIVE AN INTERVIEW AT THE INSTITUTIONAL LEVEL.  _A.S._

| SECTION B: HEALTH CARE GRIEVANCE REVIEW INSTITUTIONAL LEVEL: Staff Use Only | Is a CDCR 602 HC A attached? ☑ Yes ☐ No |
|---|---|

This grievance has been:

☑ Rejected (See attached letter for instruction): Date: **SEP 03 2020**  Date:

☐ Withdrawn (see section E)

☑ Accepted    Assigned To: **FACILITY**    Title: **PCP**    Date Assigned: **OCT 05 2020**  Date Due: ~~11/19/20~~

Interview Conducted? ☑ Yes ☐ No    Date of Interview: 10/19/20    Interview Location: E-clinic

Interviewer Name and Title (print): Corleone PTs    Signature: _____ MD    Date: 10/19/20

Reviewing Authority
Name and Title (print): M. Glynn, CEO    Signature: _____    Date: 10/19/20

| Disposition: See attached letter | ☐ Intervention | ☑ No Intervention |
|---|---|---|

SEP 03 2020    NOV 05 2020

HCGO Use Only: Date closed and mailed/delivered to grievant:

| 1. Disability Code: | 2. Accommodation: | 3. Effective Communication: |
|---|---|---|
| ☐ TABE score ≤ 4.0 | ☑ Additional time | ☑ Patient asked questions |
| ☐ DPH ☐ DPV ☐ LD | ☐ Equipment ☐ SLI | ☑ Patient summed information |
| ☐ DPS ☐ DNH | ☑ Louder ☐ Slower | Please check one: |
| ☐ DDP | ☐ Basic ☐ Transcribe | ☐ Not reached ☑ Reached |
| ☑ Not Applicable | ☐ Other* | *See chrono/notes |

4. Comments:

RECEIVED RJD AUG 25 2020 HCGO

REJECTED RJD SEP 03 2020 HCGO

RECEIVED RJD SEP 16 2020 HCGO

COMPLETED RJD NOV 05 2020 HCGO

RECEIVED HCCAB DEC 07 2020

STATE OF CALIFORNIA
**HEALTH CARE GRIEVANCE**
CDCR 602 HC (Rev. 10/18)

DEPARTMENT OF CORRECTIONS AND REHABILITATION
Page 2 of 2

Tracking #: 20001425

| SECTION C: | **Health Care Grievance Appeal. If you are dissatisfied with the Institutional Level Grievance Response,** explain the reason below (if more space is needed, use Section C of the CDCR 602 HC A), and submit the entire health care grievance package by mail for Headquarters' (HQ) Level health care grievance appeal review. Mail to: Health Care Correspondence and Appeals Branch, P.O. Box 588500, Elk Grove, CA 95758. |
|---|---|

DISSATISFIED: FIRST, THIS APPEAL WAS GENERATED AGAINST DR. JOHN CHAU, PHYSICIAN & SURGEON AND DR. PEYMAN SHAKIBA, PHYSICIAN & SURGEON FOR FAILING TO FOLLOW THE RECOMMENDATIONS OF THE SURGEON TO HAVE NO WEIGHT BEARING ON MY LEFT LEG DUE TO MY AMPUTATION OF THE 4TH & 5TH RAYS (TOES) ON LEFT FOOT. FOR A PERIOD OF ATLEAST 4 to 6 WEEKS AND UNTIL "FULLY" HEALED TO AVOID INJURY. ON THE INSTITUTIONAL LEVEL RESPONSE IT MENTIONS MY COMPLAINT BEING AGAINST A DR. SEDIGHT, WHO I NEVER MENTIONED, OR HAVE ANY IDEA OF WHO THAT IS. DURING THE

Grievant Signature: _(signature)_                     Date Submitted: DECEMBER 2, 2020

| SECTION D: | **HEALTH CARE GRIEVANCE APPEAL REVIEW HQ LEVEL: Staff Use Only** | | Is a CDCR 602 HC A attached? ☒ Yes | ☐ No. |
|---|---|---|---|---|

This grievance has been:

☐ Rejected (See attached letter for instruction):     Date: _____     Date: _____

☐ Withdrawn (see section E)   ☒ Accepted

☐ Amendment   Date: _____

Interview Conducted?   ☐ Yes ☒ No   Date of Interview: _____   Interview Location: _____

Interviewer Name and Title (print): _____   Signature: _____   Date: _____

**Disposition:** See attached letter   ☐ Intervention   ☒ No Intervention

*This decision exhausts your administrative remedies.*

HQ Use Only: Date closed and mailed/delivered to grievant: MAR 0 2 2021

| SECTION E: | Grievant requests to WITHDRAW health care grievance: I request that this health care grievance be withdrawn from further review. Reason: |
|---|---|

Grievant Signature: _____   Date Submitted: _____

Staff Name and Title (Print): _____   Signature: _____   Date: _____

COMPLETED
HCCAB
MAR 0 2 2021

**STAFF USE ONLY**

Distribution: **Original** - Returned to grievant after completed; **Scanned Copy** - Health Care Appeals and Risk Tracking System 2.0 (Do not place in central file or health record)

*Unauthorized collection, creation, use, disclosure, modification or destruction of personally identifiable information and/or protected health information may subject individuals to civil liability under applicable federal and state laws.*

STATE OF CALIFORNIA
**HEALTH CARE GRIEVANCE ATTACHMENT**
CDCR 602 HC A (10/18)

DEPARTMENT OF CORRECTIONS AND REHABILITATION
Page 1 of 2

STAFF USE ONLY

Tracking #:

RJD HC 20001425

Attach this form to the CDCR 602 HC, Health Care Grievance, only if more space is needed. Only one CDCR 602 HC A may be used.
Do not exceed more than one row of text per line. WRITE, PRINT, or TYPE CLEARLY in black or blue ink.

| Name (Last, First, MI): | CDCR Number: | Unit/Cell Number: |
|---|---|---|
| SEPULVEDA, AURELIO M. | J-76828 | E24-B102-04LOW |

**SECTION A:** Continuation of CDCR 602 HC, Health Care Grievance, Section A only (Explain the applied health care policy, decision, action, condition, or omission that has had a material adverse effect upon your health or welfare for which you seek administrative remedy):

& exit the Cell causing me etreme pain and to be at risk of falling down. On 10/29/19, I was seen by RN D. Posadas who brought the issue to the attention of Dr. Peyman Shakiba, P & S, that I needed to be given a non-temporary Wheelchair Status due to my Amputation of my Toes. Dr. Shakiba again improperly re-classified me as DRO-Intermittently Use as an Accommodation still forcing me to leave the Wheelchair outside the Cell and required me to enter & exit the Cell by placing weight on my leg and placing me at risk of falling down disregarding my inability to ambulate in and out of a Cell without placing weight on my leg against the Recommendation & Report by Dr. Calafi M.D. (Surgeon) at Tri-City Hospital. These Orders by Dr. Shakiba on 10/29/19 included that Severe Mobility Restrictions,Wheelchair intermittently as an accommodation to ambulate outside cell/bed-WC accessible Cell not required/WC can be kept outside cell ,against the Recommendation & Report by Dr. Calafi,M.D. (Surgeon))that was readily available to all Medical Staff at RJD Correctional Facility on 10/28/19 & 10/29/19, including Dr. Steven Roberts,M.D., Recvr's Med. Exec. on 10/29/19. Both Dr. Chau & Dr. Shakiba were responsible for reviewing the Recommendation & Report by Dr. Calafi (Surgeon) and for ensuring that I be placed on DPW- Status in order for me to be housed in a Wheelchair accessible Cell where I could gain access to the bed & Restroom area in the Wheelchair without placing any weight on my left leg and putting me at risk of falling until I was finally re-classified as DPW and re-housed in a WC accessible/ADA Cell on 11/13/19.

Grievant Signature: _[signature]_                     Date Submitted: **8/23/20**

**SECTION B:** Staff Use Only: Grievants do not write in this area. Grievance Interview Clarification. Document issue(s) clarified during interview.

| | | | |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

| Name and Title: | Signature: | Date: |
|---|---|---|
| | | |

RECEIVED
RJD
AUG 25 2020
HCGO

REJECTED
RJD
SEP 03 2020
HCGO

RECEIVED
RJDC
SEP 16 2020
HCGO

COMPLETED
RJD
NOV 05 2020
HCGO

RECEIVED
USCAB
DEC 07 2020

COMPLETED
HCCAB
MAR 02 2021

STAFF USE ONLY

Case 3:20-cv-02079-JLS-MDD Document 13 Filed 06/18/21 PageID.363 Page 73 of 166

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS AND REHABILITATION

# HEALTH CARE GRIEVANCE ATTACHMENT

CDCR 602 HC A (10/18)

Tracking #: [illegible] 1425

**SECTION C:** Continuation of CDCR 602 HC, Health Care Grievance Appeal, Section C only (Dissatisfied with Health Care Grievance Response):

INTERVIEW, DR. [illegible] WAS [illegible] AND ADDRESSED MY COMPLAINT THAT I HAD [illegible] TO DO WITH THE ACTIONS BY DR. [illegible] AND DR. SHAKIBA ON OCTOBER 28, 2019 AND OCTOBER 29, 2019, AND HAD NOTHING TO DO WITH MY CURRENT ADA STATUS OR HOUSING. SHE AGREED THAT IT SHOULD HAVE BEEN MADE DPW STATUS ON 10/28/2019 AND 10/29/2019 RATHER THAN TEMPORARY OR DPO THEN. I EXPLAINED THAT IT DID NOT ACCOMMODATE MY DISABILITY NEEDS AT THAT TIME AND THAT IMPROPER CLASSIFICATION LED TO ME INAPPROPRIATELY HOUSED ON 10/28/2019 AND 10/29/2019. THIS RESULTED IN ME FILING AN ADA ACCOMMODATION ON 11/6/2019 (LOG# RJD-A-19-7025 AND MY STATUS CHANGED OVER TO DPW, BY DR. RYAN BARENCHI, CPAS ON 11/13/2019 FOR NON WEIGHT BEARING AFTER SURGERY. THIS ESTABLISHED DELIBERATE INDIFFERENCE TO MY SERIOUS MEDICAL NEEDS AND SHOULD HAVE BEEN HANDLED APPROPRIATELY AS AN APPROPRIATE STAFF COMPLAINT AND VIOLATION OF SUCH PURPOSES.

Grievant Signature: [signature] Date Submitted: DECEMBER [illegible], 2020

**SECTION D:** Staff Use Only (Grievants do not write in this area. Grievance Appeal Interview Clarification. Document issue(s) clarified during interview (if necessary at HQ Level)):

Name and Title: Signature: Date:

STAFF USE ONLY

Distribution: Original - Returned to grievant after completed. Scanned Copy - Health Care Appeals and Risk Tracking System 2.0 (Do not place in central file or health record)

Unauthorized collection, creation, use, disclosure, modification or destruction of personally identifiable information and/or protected health information may subject individuals to civil liability under applicable federal and state laws.

Attachment

AURELIO MARTIN SEPULVEDA
CDCR # J-76828 / E24-B102-04LOW
RICHARD J. DONOVAN CORRECTIONAL FACILITY
480 ALTA ROAD
SAN DIEGO, CA 92179

HEALTH CARE GRIEVANCE COORDINATOR
RICHARD J. DONOVAN CORRECTIONAL FACILITY
480 ALTA ROAD
SAN DIEGO, CA 92179
Attn: Health Care Appeals Office

Re: Filing of Health Care Grievance
    & Request for Tracking #

HC Grievance Coordinator,

        I am submitting this Grievance for your processing and issuance of a Tracking
Number. Although, I recieved some Medical Records on June 16,2020 concerning my
10/28/19 encounters with Dr. Chau,I was unable to obtain the Medical Records
that indicated Dr. Shakiba that deal with my encounter with her on 10/29/19 until
8/20/20 from Ms. V. Griggs. Because my complaint in the submitted Grievance are
concerning my encounters with them both in the ER & on D-Facility and their
inappropiate Classification and lack of accommodation for my housing needs from
the period of 10/28/19 thru 11/13/19,being in E-Facility as of 11/19/19. I have
attempted to obtain the Medical Records needed in order to find out the names of
the attending Physicians on 10/28/19 & 10/29/19 in order to properly name them
in the Grievance for Exhaustion purposes only. As of 11/19/19 I have been properly
housed in E-Facility and my Grievance is only concerning the acts committed on
10/28/19 & 10/29/19 only. Therefore, I can now submit the Grievance with the
properly named Physicians I am complaining of. Please process and issue me a
Tracking Number and notify me as soon as you are able to. Thank You.

Dated: 8/23/20                              Respectfully Submitted:

                                            AURELIO MARTIN SEPULVEDA
                                            CDCR # J-76828
                                            Appellant
                                            E24-B102-04LOW

RECEIVED
HCCAB
DEC 07 2020

 **Attachment**

# CALIFORNIA CORRECTIONAL
# HEALTH CARE SERVICES



### Institutional Level Rejection Notice

**Date:**   SEP 0 3 2020

**To:**        SEPULVEDA, AURELIO (J76828)
               # E  024B1102004LW
               Richard J Donovan Correctional Facility
               480 Alta Road
               San Diego, CA 92179

**Tracking #:**    RJD HC 20001425

Your health care grievance submitted for institutional level review does not comply with health care grievance procedures established in California Code of Regulations, Title 15, Chapter 2, Subchapter 2, Article 5, and is rejected for the following reason(s):

**Time Constraints: Initial Submission**: California Code of Regulations, Title 15, Section 3999.227(b) states, "The grievant shall complete Section A of the CDCR 602 HC and submit to the HCGO [Health Care Grievance Office] where the grievant is housed within 30 calendar days of: (1) The action or decision being grieved, or; (2) Initial knowledge of the action or decision being grieved."

Explain why you believe your health care grievance was submitted within the time constraint or the circumstances that prevented you from doing so.

A CDCR Health Care Services Request Form has been submitted on your behalf to evaluate your ADA status.

Take the necessary corrective action provided in this notice, and resubmit the health care grievance to the Health Care Grievance Office where you are housed within 30 calendar days.

*[signature]*

Health Care Grievance Office Representative
Richard J Donovan Correctional Facility

RECEIVED
HCCAB
DEC 07 2020

---

Note:  Permanent health care grievance document.  Do not remove from the health care grievance package.

CALIFORNIA CORRECTIONAL
**HEALTH CARE SERVICES**

**Attachment**

AURELIO MARTIN SEPULVEDA
CDCR # J-76828 / E24-B102-04LOW
RICHARD J. DONOVAN CORRECTIONAL FACILITY
480 ALTA ROAD
SAN DIEGO, CA 92179


HEALTH CARE GRIEVANCE COORDINATOR
RICHARD J. DONOVAN CORRECTIONAL FACILITY
480 ALTA ROAD
SAN DIEGO, CA 92179
Attn:Health Care Grievance Office Representative

Re: Statement in Response to Institutional Level
    Rejection Notice dated September 03,2020
    Tracking #: RJD HC 20001425


Health Care Grievance Coordinator,

      I am submitting this Statement in Response to the Institutional Level
Rejection Notice dated September 03,2020 that I recieved notifying me that
I had failed to comply with Section 3999.227(b). This Section clearly states
that I must submit a Grievance within 30 Days of:" initial knowledge of the
action or Decision being grieved." As directed by this Notice, I am submitting
this Statement in support of my explanation as to why this Grievance should not
be disallowed and should be processed through for Acceptance and Disposition.
      This Grievance is alleging the interference with Prescribed Treatment &
failure to carry out Treatment as Ordered by Surgeon who Amputated my two Toes
on my Left Foot on October 24,2019 by Dr. Arash Calafi,M.D. at Tri-City
Medical Center. This Grievance has absolutely nothing to do with me wanting to
be re-evaluated concerning my ADA Status or Classification. As I explained in
the cover letter attached hereto as an Attachment dated 8/23/2020. After numerous
attempts to obtain the Medical Records on June 16,2020 and 8/20/2020, and being
rehoused in E-Facility on 11/19/19. Being that both encounters with these two
Doctors were at the Emergency Room on 10/28/2019 & on 10/29/2019 in D-Facility,
I have been attempting to gain the names of these individual Doctors in order
to properly name them in the Grievance after I was made aware of their individual
participation in the use of their judgment for that of the Surgeon Specialist.
After I obtained these names from the Medical Records I recieved on August 20,2020,
I immediately submitted for filing a Grievance on August 23,2020...only (3) days
after initial knowledge of the acts by the Doctors I am attempting to file the
Grievance against. I had no knowledge whatsoever as to their participation
in the inadequate care being administered for my Serious Medical Needs at the
time of my arrival here at RJD Correctional Facility on 10/28/2019 from the
Hospital at Tri-City Medical center, until August 20,2020 at which time I
immediately complied with the time restraints applicable to Section 3999.227,subd.(b).
      Again, I am appropiately housed here at E-Facility and the Grievance is
only concerning the acts committed by these Doctors on 10/28/2019 & 10/29/2019.
Please accept this Grievance and process it for its adjudication.
      Thank You! very much for your attention to this matter.

Dated: September 14, 2020            Respectfully Submitted:

RECEIVED
HCCAB
DEC 07 2020

AURELIO MARTIN SEPULVEDA
CDCR # J-76828



# CALIFORNIA CORRECTIONAL
# HEALTH CARE SERVICES



**Institutional Level Response**

**Closing Date:** NOV 0 5 2020

**To:** SEPULVEDA, AURELIO (J76828)
E 024B1102004LW
Richard J Donovan Correctional Facility
480 Alta Road
San Diego, CA 92179

**Tracking #:** RJD HC 20001425

## RULES AND REGULATIONS

The rules governing these issues are: California Code of Regulations, Title 15; Health Care Department Operations Manual; Mental Health Services Delivery System Program Guide; California Department of Corrections and Rehabilitation Department Operations Manual.

## HEALTH CARE GRIEVANCE SUMMARY

In your CDCR 602 HC, Health Care Grievance, you explained the decision, action, condition, omission, policy, or regulation that has had a material adverse effect upon your health or welfare for which you seek administrative remedy.

| Issue | Description |
|---|---|
| Issue: Disagreement with Treatment ( Primary Care Provider ) | You state your PCP failed to follow the recommendations of the surgeon. |
| Issue: Chrono Issues ( Accommodation Not Supplied ) | You disagree with not being given DPW status. |
| Issue: Non-Medical/Custody ( Housing ) | Concerns regarding housing. |
| Issue: Staff Complaints ( Deliberate Indifference ) | You state Dr. Shakiba and Dr. Sedighi did not house you according to surgeon recommendations and you want them held accountable for actions. |

## INTERVIEW

On 10/19/20, you were interviewed by E. Coreleone, P&S regarding this health care grievance. During the interview, you were allowed the opportunity to fully explain your health care grievance issue(s).

## INSTITUTIONAL LEVEL DISPOSITION

[X] No intervention.    [ ] Intervention.

---

Note 1: The institutional level review is based on records available as of the date the Institutional Level Response is signed by the reviewing authority.
Note 2: The closing date reflects the closed, mailed/delivered date of the health care grievance.
Note 3: Permanent health care grievance document. Do not remove from the health care grievance package.

RECEIVED
HCCAB
DEC 0 7 2020

CALIFORNIA CORRECTIONAL
HEALTH CARE SERVICES

A.SEPULVEDA, J76828
RJD HC 20001425
Page 2 of 3

## BASIS FOR INSTITUTIONAL LEVEL DISPOSITION

Your health care grievance package and health record, and all pertinent departmental policies and procedures were reviewed. These records indicate:

- On 10/19/20 you were interviewed by Dr. Corleone and provided the opportunity to express your concerns. Dr. Corleone thoroughly reviewed your related medical records and treatment plan with you.
- During your interview with Dr. Corleone, you expressed dissatisfaction with being initially designated with a disability code of DPO rather than your current code of DPW. You were dissatisfied in your housing conditions and not being allowed to have your wheelchair in cell. You are dissatisfied your wheelchair was originally classified as temporary.
- A review of your care and health records indicate you have received appropriate primary care provider evaluation and monitoring for your medical conditions. Your primary care provider has completed assessments, noted review of your history, current symptoms, and laboratory/imaging results, and developed a plan of care. You received surgical intervention, specialty assessments, orthotic referrals, disability codes and a wheelchair.
- Specialty providers may not order additional diagnostic tests, specialty services, or make referrals directly. The primary care provider is responsible to determine the necessity for all specialist recommendations; however, the primary care provider is under no obligation to provide the recommended treatment and may choose an alternate strategy. In addition, some services require prospective review prior to services being rendered.
- The health care grievance was reviewed and evaluated by the reviewing authority and the issue was deemed not to meet staff complaint criteria. While you may not agree with the decisions of your treatment team, it does not constitute staff misconduct or deliberate indifference to your health care needs.
- While California Correctional Health Care Services health care providers are responsible for documenting health factors to be considered in making placement decisions, custody is responsible for determination of appropriate institutional placement and housing assignment. As such, it is recommended you address your concerns with your Correctional Counselor, other appropriate custody staff, or through the Institutional Classification Committee process.

Your medical condition will continue to be monitored with care provided as determined medically or clinically indicated by the primary care provider. If you have additional health care needs, you may access health care services by utilizing the approved processes in accordance with California Correctional Health Care Services policy.

While the health care grievance process is a means of setting forth your health care concerns, it is not a substitute for direct communication about your health with your health care providers. You are encouraged to continue your care with your assigned health care providers and share with them new or additional clinical information about your conditions that you believe may affect your care. However, California law directs your health care providers to offer and provide only the care they determine to be currently medically or clinically necessary for you, in accordance with appropriate policies and procedures. Previous orders from other health care facilities or staff, input from health care consultants, and/or your own personal preferences may be considered, but do not control the professional judgment of your current health care providers.

If you are dissatisfied with the Institutional Level Response, follow the instructions on the CDCR 602 HC, Health Care Grievance, and submit the entire health care grievance package for headquarters' level review. The headquarters' level review constitutes the final disposition on your health care grievance and exhausts your administrative remedies.

Note 1: The institutional level review is based on records available as of the date the Institutional Level Response is signed by the reviewing authority.
Note 2: The closing date reflects the closed, mailed/delivered date of the health care grievance.
Note 3: Permanent health care grievance document. Do not remove from the health care grievance package.

RECEIVED
HCCAB
DEC 0 7 2020

CALIFORNIA CORRECTIONAL
HEALTH CARE SERVICES

A.SEPULVEDA, J76828
RJD HC 20001425
Page 3 of 3

_S. Roberts, MD_
Chief Medical Executive
Richard J. Donovan Correctional Facility

_10/26/20_
Reviewed and Signed Date

_M. Glynn_
Chief Executive Officer
Richard J. Donovan Correctional Facility

_10/29/2020_
Reviewed and Signed Date

SR:MG:hf

Note 1:  The institutional level review is based on records available as of the date the Institutional Level Response is signed by the reviewing authority.
Note 2:  The closing date reflects the closed, mailed/delivered date of the health care grievance.
Note 3:  Permanent health care grievance document.  Do not remove from the health care grievance package.

RECEIVED
HCCAB
DEC 0 7 2020

**CALIFORNIA CORRECTIONAL**
**HEALTH CARE SERVICES**

 CALIFORNIA CORRECTIONAL
# HEALTH CARE SERVICES


**Headquarters' Level Response**

**Closing Date:** MAR 0 2 2021

**To:**
SEPULVEDA, AURELIO (J76828)
Richard J Donovan Correctional Facility
480 Alta Road
San Diego, CA 92179

**From:**
California Correctional Health Care Services
Health Care Correspondence and Appeals Branch
P.O. Box 588500
Elk Grove, CA 95758

**Tracking #:** RJD HC 20001425

## RULES AND REGULATIONS
The rules governing these issues are: California Code of Regulations, Title 15; Health Care Department Operations Manual; Mental Health Services Delivery System Program Guide; California Department of Corrections and Rehabilitation Department Operations Manual.

## HEALTH CARE GRIEVANCE APPEAL SUMMARY
In your CDCR 602 HC, Health Care Grievance, you explained the decision, action, condition, omission, policy, or regulation that has had a material adverse effect upon your health or welfare for which you seek administrative remedy.

| Issue | | Description |
|---|---|---|
| Issue: | Disagreement with Treatment ( Primary Care Provider ) | Alleged primary care providers failed to follow surgeon recommendations for non-weight bearing. |
| Issue: | Chrono Issues ( Accommodation Not Supplied ) | Dissatisfied with not being given full-time wheelchair accommodation (DPW) status after returning to institution on October 28, 2019. |
| Issue: | Non-Medical/Custody ( Housing ) | Concerns regarding housing. |
| Issue: | Staff Complaints ( Deliberate Indifference ) | Alleged deliberate indifference by providers Doctors Shakiba and Chau. |

## HEADQUARTERS' LEVEL DISPOSITION

[X] No intervention.    [ ] Intervention.

## BASIS FOR HEADQUARTERS' LEVEL DISPOSITION
Your health care grievance package and health record, and all pertinent departmental policies and procedures were reviewed. These records indicate:

- You alleged negligent care; however, your allegation is refuted by professional health care staff familiar with your health care history, as well as a review of your health record. The health care grievance was

---

Note 1: The headquarters' level review is based on records available as of the date the Headquarters' Level Response is signed by the reviewing authority.
Note 2: The closing date reflects the closed, mailed/delivered date of the health care grievance.

reviewed and evaluated by the reviewing authority and the issue was deemed not to meet staff complaint criteria. While you may not agree with the decisions of your treatment team, it does not constitute staff misconduct or deliberate indifference to your health care needs.

- Your concerns and issues have been taken into consideration and sent to the proper entities for appropriate review and/or action. The outcome of the review or any action taken is confidential and will not be shared with inmates, staff, or the public.
- The Institutional Level Response adequately addressed your concerns regarding wheelchair accommodation and is sustained at the headquarters' level of review.
- You are recorded as having accommodations including bottom bunk, ground floor-no stairs, durable medical equipment including a wheelchair, walker, and mobility impaired disability vest. You are recorded as having mobility restrictions with intermittent wheelchair use for ambulation outside of cell/bed (DPO) status.
- On February 8, 2021, the primary care provider documented your chart was reviewed; you would be rescheduled for chronic care program appointment as encounter was cancelled due to current COVID-19 outbreak. There is no recent documentation that you have attempted to access health care services utilizing the approved processes for concerns related to wheelchair accommodations.

Your medical condition will continue to be monitored with care provided as determined medically or clinically indicated by the primary care provider. If you have additional health care needs, you may access health care services by utilizing the approved processes in accordance with California Correctional Health Care Services policy.

Per the Health Care Department Operations Manual, Section 3.6.2, Comprehensive Accommodation, accommodations designated as permanent do not require further review or renewal. The accommodation may be revised or removed by the provider as indicated by the patient's status. The accommodation may be updated or rescinded at any time, even if previously written as permanent.

Per the Health Care Department Operations Manual, Section 3.1.1, Complete Care Model, California Correctional Health Care Services "…shall manage and deliver medically necessary health care services to the patient population." The Complete Care Model is based on the industry standard known as the Patient-Centered Health Home. The Complete Care Model "shall serve as the foundation for California Correctional Health Care Services health care services delivery." All California Correctional Health Care Services policies and procedures are designed to meet the minimum level of care necessary to provide constitutionally adequate medical care to patients in the California Department of Corrections and Rehabilitation.

While California Correctional Health Care Services health care providers are responsible for documenting health factors to be considered in making placement decisions, custody is responsible for determination of appropriate institutional placement and housing assignment. As such, it is recommended you address your concerns with your Correctional Counselor, other appropriate custody staff, or through the Institutional Classification Committee process.

It is not in the purview of grievants to dictate administrative actions in regard to the health care grievance process. Your health care grievance was processed per California Code of Regulations, Title 15, Chapter 2, Subchapter 2, Article 5.

While the health care grievance process is a means of setting forth your health care concerns, it is not a substitute for direct communication about your health with your health care providers. You are encouraged to continue your care with your assigned health care providers and share with them new or additional clinical information about your conditions that you believe may affect your care. However, California law directs your health care

Note 1:  The headquarters' level review is based on records available as of the date the Headquarters' Level Response is signed by the reviewing authority.
Note 2:  The closing date reflects the closed, mailed/delivered date of the health care grievance.

providers to offer and provide only the care they determine to be currently medically or clinically necessary for you, in accordance with appropriate policies and procedures. Previous orders from other health care facilities or staff, input from health care consultants, and/or your own personal preferences may be considered, but do not control the professional judgment of your current health care providers.

This decision exhausts your administrative remedies.

S. Gates, Chief
Health Care Correspondence and Appeals Branch
Policy and Risk Management Services
California Correctional Health Care Services

March 1, 2021

Reviewed and Signed Date

---

Note 1: The headquarters' level review is based on records available as of the date the Headquarters' Level Response is signed by the reviewing authority.
Note 2: The closing date reflects the closed, mailed/delivered date of the health care grievance.

CALIFORNIA CORRECTIONAL
**HEALTH CARE SERVICES**

P.O. Box 588500
Elk Grove, CA  95758



# EXHIBIT COVER PAGE

| F |
|---|

EXHIBIT

DESCRIPTION OF THIS EXHIBIT:

Medical Records: Aurelio Martin Sepulveda, CDCR # J-76828

NUMBER OF PAGES TO THIS EXHIBIT:_____9_____PAGES.

JURISDICTION: (CHECK ONLY ONE)

☐ COUNTY GRAND JURY

☐ COUNTY MUNICIPAL COURT

☐ COUNTY CIRCUIT COURT

☐ COUNTY SUPERIOR COURT

☐ STATE COURT OF APPEAL

☒ UNITED STATES DISTRICT COURT

☐ STATE SUPREME COURT

☐ STATE BAR COURT

☐ STATE CIRCUIT COURT

☐ UNITED STATES SUPREME COURT

☐ OTHER:_____

Approved for
use with
Judicial
Council forms
(01-19-08)
MDT/CRA



**HEALTH CARE SERVICES**

**RJD - RJ Donovan Correctional Facility**
480 Alta Road
San Diego, CA 92179-

| | |
|---|---|
| **Patient:** | **SEPULVEDA, AURELIO MARTIN** |
| DOB/Age/Sex: | 12/26/1970  47 years       Male |
| Encounter Date: | 11/15/2013 |
| Attending: | Guldseth,David P&S |

CDCR #:    J76828
PID #:      11762197
Referring:

---

### *Assessment Forms*

---

**First Medical Responder-DCT Entered On: 11/23/2017 12:32 PST**
**Performed On: 11/23/2017 12:30 PST by Villafuerte, Laura LVN**

**Incident/Subjective Data**
*Fr-Current Housing Unit :*  E 024C1;102
*Fr-Location of Incident :*  E 024C1;102
*Fr-Date and Time of Incident :*  11/23/2017 11:25 PST
*Fr-Time BLS staff on scene :*  11:25 PST
*Fr-Time Clinical staff notified :*  11:25 PST
*Fr-Time Clinical staff arrived :*  11:28 PST
*Fr-Time clinical staff departed :*  11:45 PST
*Fr-Time TTA notified :*  11:25 PST
*Chief Complaint :*  SEIZURE
*Fr-Past Medical History :*  No
*Fr-Mechanism of Injury :*  Other: SEIZURE

Villafuerte, Laura LVN - 11/23/2017 12:30 PST

---

Report Request ID:   10466663

Print Date/Time:   8/13/2018 13:16 PDT

**WARNING:** This report contains confidential, proprietary, and/or legally privileged
information intended for the recipient only.

Take only the medications listed above. Contact your doctor prior to taking any medications not on this list.

SEPULVEDA, AURELIO MARTIN has been given the following list of follow-up instructions, prescriptions, and patient education materials:

## Follow-up Appointments

**23620827** 10/02/17 0:01:00 PDT, 07/03/18 0:00:00 PDT, ~PATIENTLOCATION

**33621073** 11/28/17 12:35:00 PST, 11/17/17 0:00:00 PST, 45d f/u frm 10/3 /// Prev. MedSATS ID: 16929657

**Consult to Optometry** 10/20/17 0:01:00 PDT, Routine, Physician ordered, Diabetic retinopathy check. Patient has remained confused ophthalmology Summer/Fall of 2017, 04/21/18 23:59:00 PDT, RJD E 024C1

**Hepatitis C (HCV) Consult** 11/28/17 0:01:00 PST, Routine, Physician ordered, Patient with hepatitis C genotype IIIa and fibroscan showing F4 fibrosis requesting treatment (see GI note 11/7/2017), 12/15/17 23:59:00 PST, RJD E 024C1

**Medical Episodic Care Follow Up 40** 11/13/17 0:01:00 PST, PCP Requested, 60 days, 01/12/18 23:59:00 PST, f/u HCV labs

**OTM Routine Return Follow Up 20** 11/28/17 12:50:00 PST, *Within 14 Calendar days, Guldseth, David P&S, 11/21/17 23:59:00 PST, 14 day PCP FU from Telemedicine FU w/ Dr. Reddy (Gastroenterology)

**PCP Follow Up Return from Higher Level of Care 40** 11/28/17 12:20:00 PST, *5 days, Guldseth, David P&S, 11/28/17 23:59:00 PST, S/P TTA 11/23/2017 S/P SEIZURE/LOW BLOOD GLUCOSE LEVEL

## Chronos

**128-D Dental Priority Classification** 10/19/17 10:20:00 PDT, DPC 2

**128-D Dental Priority Classification** 11/08/17 14:20:00 PST, DPC 3

**1845/7410** 09/16/17 17:46:00 PDT

**1845/7410 (SOMS)** 09/16/17 17:47:10 PDT, DPM, P, 7410 Expire Date 12/31/9999, GFNS, LBO, SC, LR, WRN, Patient safety

**DPW**= Full Time Wheelchair User Impacting Placement Placement

**DPO**= Intermittent Wheelchair User Impacting

**DPM**=Mobility Impairment Impacting Placement Placement

**DLT**=Requires Level Terrain NOT Impacting

**DPH**=Deaf/Hearing Impairment Impacting Placement

**DNH**=Hearing Impairment NOT Impacting

* Auth (Verified) *

4/10/2018 1:05:04 PM   Sharp Healthcare   Page 18 of 20

Facility: **Sharp Chula Vista Medical Center**                                    **SEPULVEDA, AURELIO**
SHC#:   107-851-227                    Admit: 4/9/2018
FIN:   62461005                        Disch:              DOB/Age/Sex: 12/26/1970   47 years   Male

| Procedure Note |
| --- |

Document Name:                           Procedure Note
Document Status:                         Transcribed
Electronically Signed By:
Authenticated By:

**CARDIAC PROCEDURE**

Sharp Chula Vista Hospital
ADMIT #: 62461005   DATE OF SERVICE: 04/09/2018
EMRN: 839498   DOB: 12/26/1970   GENDER: M
SHC #: 107851227

PATIENT NAME:  SEPULVEDA, AURELIO

AUTHOR: MEHRAN MOUSSAVIAN

PREPROCEDURE DIAGNOSES:
1.  Non-ST-elevation myocardial infarction with a left
bundle-branch block.
2.  Severe biventricular systolic impairment.
3.  Congestive heart failure.

PROCEDURES PERFORMED:
1.  Right heart catheterization.
2.  Left heart catheterization.
3.  Selective coronary angiogram.
4.  Intravascular ultrasound of the left circumflex coronary,
which is a dominant artery.
5.  PTCA and stent placement to the mid circumflex coronary with
a 3.5 x 18 mm Onyx.

POSTPROCEDURE DIAGNOSES:
1.  Severe elevation of right heart pressures as well as left
ventricular end diastolic pressure as well as a pulmonary
capillary wedge pressure suggestive of severe biventricular
systolic impairment.
2.  Left main is angiographically normal.
3.  Successful percutaneous transluminal coronary angioplasty and
stent placement to severe stenosis of the left circumflex
coronary with 1 drug-eluting stent.  The distal posterior
descending artery is diffusely diseased and the posterolateral
ventricular branch has mild luminal plaquing.  The left
circumflex coronary is a dominant vessel.
4.  Left anterior descending has diffuse moderate disease
throughout its body.  The distal left anterior descending has
diffuse mild luminal plaquing.
5.  Ramus intermedius also has diffuse moderate disease.
6.  Right coronary is nondominant and has a high-grade stenosis.

Request ID:  151885346                   Page 17 of 19                 4/10/2018 13:00 PDT

*=Abnormal | C=Critical | #=Corrected Result | R=Result Comment | O=Order Comment | ^=Interpretive Data | @=Performing Lab | W=Witness
Unless otherwise noted, all lab testing is performed at Chula Vista Medical Center, 751 Medical Center Court, Chula Vista, CA 91911

**\* Auth (Verified) \***

4/10/2018 1:05:04 PM   Sharp Healthcare   Page 19 of 20

Facility:  Sharp Chula Vista Medical Center                                    SEPULVEDA, AURELIO
SHC#:   107-851-227          Admit: 4/9/2018
FIN:   62461005          Disch:          DOB/Age/Sex: 12/26/1970   47 years     Male

| Procedure Note |
| --- |

**DESCRIPTION OF PROCEDURE:**
The risks, benefits and alternatives were explained to the
patient prior to procedure including but limited to myocardial
infarction, stroke, bleeding, infection, need for blood
transfusions, limb loss and death.

Ultrasound guide was used to puncture the right radial artery,
the wire passed without difficulty, and a 6-French sheath was
introduced.  The patient received a cocktail of verapamil and
nitroglycerin.  We used a TIG catheter for selective left main
coronary angiogram and selective right coronary angiogram.
Pigtail catheter was used for left heart catheterization.  The
patient was given additional doses of heparin.  We used an EBU
3.0 guide to cannulate the origin of left main coronary.  We
wired the left circumflex coronary with a BMW wire.  Balloon
angioplasty was performed with a 2.5 balloon followed by stenting
with a 3.5 x 18 mm Onyx.  The final angiogram did show excellent
results without dissection or perforation.

We then used the ultrasound guide to puncture the right common
femoral vein and a 7-French sheath was introduced.  Swan-Ganz
catheterization was performed with fluoroscopy.  The patient
tolerated the procedure well.

**HEMODYNAMICS:**
1.  Central aortic pressure is 145/87.  He goes as high as
169/129/108.
2.  RA _____ 19, RV is 81/17, PA is 81/41.  Pulmonary capillary
wedge pressure mean is 33.  The cardiac output by Fick 3.6 with a
cardiac index of 1.8.  PVR was 533, SVR of 2132.  Left
ventricular end-diastolic pressure was 36 to 40 mmHg.

**IMPRESSION:**
1.  Myocardial infarction due to severe stenosis of the left
circumflex coronary, which is a dominant artery confirmed on
intravascular ultrasound and 1 stent deployed.
2.  Moderate disease of the left anterior descending and ramus
intermedius.
3.  Severe elevation of right heart pressures, may be
multifactorial; however, there is a significant component of
left-sided heart failure.
4.  Severe cardiomyopathy, likely combination of ischemic heart
disease and hypertensive heart disease.

**RECOMMENDATIONS:**
1.  We will start the patient on Bumex 1 mg twice daily, increase
carvedilol, add losartan and spironolactone.

---

Request ID:  151885346                      Page 18 of 19                      4/10/2018 13:00 PDT

*=Abnormal | C=Critical | #=Corrected Result | R=Result Comment | O=Order Comment | ^=Interpretive Data | @=Performing Lab | W=Witness
Unless otherwise noted, all lab testing is performed at Chula Vista Medical Center, 751 Medical Center Court, Chula Vista, CA 91911

**\* Auth (Verified) \***

4/10/2018 1:05:04 PM   Sharp Healthcare   Page 20 of 20

Facility:  **Sharp Chula Vista Medical Center**                                                    **SEPULVEDA, AURELIO**
SHC#:  107-851-227                    Admit:  4/9/2018
FIN:      62461005                        Disch:                        DOB/Age/Sex: 12/26/1970   47 years     Male

| *Procedure Note* |
|---|

2.   Aspirin plus Plavix.
3.   Intensive blood pressure control and lipid-lowering control.
He has already been started on Atorvastatin 80 mg daily.
4.   Dr. Mohamedali will round on him tomorrow and a formal heart
failure consultation will be obtained.

I appreciate the opportunity to participate in the care of this
patient.


MM:Nuance  C: 04/09/2018 21:24:45 Confirmation:3082506
D: 04/09/2018 19:02:45 T: 04/09/2018 19:28:12 DOCUMENT: 433838101

*=Abnormal | C=Critical | #=Corrected Result | R=Result Comment | O=Order Comment | ^=Interpretive Data | @=Performing Lab | W=Witness
Unless otherwise noted, all lab testing is performed at Chula Vista Medical Center, 751 Medical Center Court, Chula Vista, CA 91911

Patient Name: SEPULVEDA, AURELIO MARTIN                                                    MRN: J76828
Date of Birth: 12/26/1970 00:00 PST                                                        FIN: 10000003511762197J76828

* Auth (Verified) *

APR/12/2018/THU 15:14                          FAX No.



J76828



**Sharp Chula Vista Medical Center**
751 Medical Center Court
Chula Vista, CA 91911

| | | | | |
|---|---|---|---|---|
| Patient: | **SEPULVEDA, AURELIO** | Location: | V IMCU 5E | |
| SHC#: | 107-851-227   MRN# 00-83-94-98 | Room: | 512 | Admit: 4/9/2018 |
| FIN: | 62461005 | Bed: | A | Disch: 4/11/2018 |
| DOB/Age/Sex: | 12/26/1970   47 years   Male | Attending: | Laity MD,Douglas William | |

## Discharge Summary

| | |
|---|---|
| Document Name: | Discharge Summary |
| Document Status: | Transcribed |
| Electronically Signed By: | |
| Authenticated By: | |

**HOSPITALIST DISCHARGE SUMMARY**

Sharp Chula Vista Hospital
ADMIT #: 62461005   DATE OF ADMISSION: 04/09/2018
EMRN: 839498   DATE OF DISCHARGE: 04/11/2018
SHC #: 107851227   DOB: 12/26/1970   GENDER: M

PATIENT NAME: . SEPULVEDA, AURELIO

AUTHOR: DOUGLAS W LAITY

DISCHARGE DIAGNOSES:
1. Non-ST-elevation myocardial infarction, now status post
cardiac catheterization with left circumflex stent placement and
now on aspirin and Plavix.
2. Acute on chronic systolic congestive heart failure
exacerbation, likely ischemic cardiomyopathy, now improved with
Bumex.
3. Diabetes mellitus with an A1c of 9.
4. Hypertension.
5. Hyperlipidemia.

CONSULTATIONS:
Dr. Moussavian of Cardiology.

PROCEDURES:
Cardiac catheterization with moderate disease in the LAD and
ramus intermedius as well as severe stenosis of the left
circumflex coronary, status post successful percutaneous coronary
intervention and stent placement.

HOSPITAL COURSE:
The patient is a 47-year-old male who was brought in from Donovan
Prison with chest pain and shortness of breath associated with
nausea that started the morning of admission. He was found to
have an acute non-ST-elevation myocardial infarction. Initial
troponin was elevated at 0.1. On repeat, it trended up to 0.33.
The patient was started on a heparin drip initially, and Dr.

---

Request ID: 152121955                                            4/12/2018 14:47 PDT

*=Abnormal | C=Critical | #=Corrected Result | R=Result Comment | O=Order Comment | ^=Interpretive Data | @=Performing Lab | W=Witness
Unless otherwise noted, all lab testing is performed at Chula Vista Medical Center, 751 Medical Center Court, Chula Vista, CA 91911

RECEIVED  APR 1 2 2018

Patient Name: SEPULVEDA, AURELIO MARTIN                                     MRN: J76828
Date of Birth: 12/26/1970 00:00 PST                    FIN: 10000003511762197J76828

* Auth (Verified) *

APR/12/2018/THU 15:14                          FAX No.                      

Facility: **Sharp Chula Vista Medical Center**                             **SEPULVEDA, AURELIO**
SHC#:   107-851-227              Admit: 4/9/2018
FIN:    62461005                 Disch: 4/11/2018    DOB/Age/Sex: 12/26/1970  47 years   Male

**Discharge Summary**

Moussavian of Cardiology was consulted, and on the afternoon of
presentation, the patient was taken to the Cath Lab for a cardiac
catheterization.  Successful PCI and stent placement was done to
the left circumflex.  The patient was also found to have an EF of
20% to 25% with some mild acute exacerbation.  The EF was 20% to
25%.  This is likely a combination of ischemic cardiomyopathy as
well as hypertensive heart disease.  The patient was started on
Bumex as well as Aldactone, Losartan and Coreg.  With the dual
antiplatelet therapy as well as his cardiac regimen for his CHF,
the patient has done well.  His breathing is now much better and
his vital signs are all within normal limits and stable.  He has
been ambulatory in room air without any shortness of breath.  He
feels ready to go back to Donovan.

DISPOSITION:
Discharged to Donovan.

DISCHARGE MEDICATIONS:
1.  Aspirin 81 mg daily, needs to be continued.
2.  Plavix 75 mg daily, has been prescribed, and it is absolutely
essential that the patient is getting aspirin and Plavix daily
regularly because of his recent stent placement.
3.  Lipitor 80 mg daily, has been prescribed.
4.  Bumex 1 mg daily, has been prescribed.
5.  Coreg 18.75 mg b.i.d., has been prescribed.
6.  Aldactone 25 mg daily, has been prescribed.
7.  Losartan 50 mg daily, has been started.

Otherwise, the patient will be on his prior outpatient
medications including his prior:
1.  Insulin regimen.
2.  Dulera.
3.  Xopenex p.r.n.
4.  Cholecalciferol previous dose.
5.  Gabapentin 900 mg p.o. q.p.m.

FOLLOWUP:
1.  The patient should follow up with his MD at Donovan Prison.
2.  The patient should follow up with Cardiology, Dr. Mohamedali,
in 2 weeks given his congestive heart failure.

CC:
BURHAN MOHAMEDALI
MEHRAN MOUSSAVIAN

DWL:Nuance  C: 04/11/2018 18:36:29 Confirmation:3083854
D: 04/11/2018 12:52:33 T: 04/11/2018 17:13:45 DOCUMENT: 433972901

Request ID: 152121955                                      4/12/2018 14:47 PDT

*=Abnormal | C=Critical | #=Corrected Result | R=Result Comment | O=Order Comment | ^=Interpretive Data | @=Performing Lab | W=Witness
Unless otherwise noted, all lab testing is performed at Chula Vista Medical Center, 751 Medical Center Court, Chula Vista, CA 91911

* Auth (Verified) *

SEPULVEDA, AURELIO

Facility: **Sharp Chula Vista Medical Center**
SHC#:   108-041-406                 Admit: 9/1/2019
FIN:    62784234                    Disch:              DOB/Age/Sex: 12/26/1970   48 years    Male

## Diagnostic Radiology

**Interpretation**

The heart is enlarged. The pulmonary vascularity is within normal limits.

No focal airspace consolidation, masses, adenopathy or pleural effusions are identified.

Mild peribronchial cuffing raises the question of underlying airways disease. Patchy basilar atelectasis is present.

IMPRESSION:

1.  Cardiomegaly without congestive heart failure.

2.  Bibasilar atelectasis with peribronchial cuffing raising the question of underlying airways disease.

This exam was performed at: Sharp Chula Vista Medical Center
***** *Final* *****

*Dictated by: Schiffman MD, Howard R*

*Signed (Electronic Signature): 09/01/2019 8:02 pm*
*Signed by: Schiffman MD, Howard R*

## Cardiac Rhythm Analysis

Document Name:                          ECG- 12 Lead
Document Status:                        Transcribed
Electronically Signed By:
Authenticated By:

**MUSEWebURL**
http://socurlint/url/opener.aspx?MuseProdCVWeb/musescripts/museweb.dll?RetrieveTestByDateTime?PatientID=108041406&
Date=01-09-2019&Time=19%3a38%3a31%3a00&TestType=ECG&Site=3&OutputType=PDF&Ext=PDF HNAM RP

**ECG Measurement and Diagnosis**
Test Reason : Chest Pain.Blood Pressure : ***/*** mmHG.Vent. Rate : 123 BPM    Atrial Rate
: 123 BPM.   P-R Int : 142 ms        QRS Dur : 162 ms.    QT Int : 344 ms      P-R-T Axes
: 014 -35 113 degrees.   QTc Int.: 492 ms..Sinus tachycardia.Possible Left atrial
enlargement.Left axis deviation.Left bundle branch block.Abnormal ECG.No previous ECGs
available..Referred By:         PRELIM RESULT

*=Abnormal | C=Critical | #=Corrected Result | R=Result Comment | O=Order Comment | ^=Interpretive Data | @=Performing Lab | W=Witness
Unless otherwise noted, all lab testing is performed at Chula Vista Medical Center, 751 Medical Center Court, Chula Vista, CA 91911

Facility: RJD

Patient Name: SEPULVEDA, AURELIO MARTIN
Date of Birth: 12/26/1970 00:00 PST

MRN: J76828
FIN: 1000000351176 2197J76828

\* Auth (Verified) \*

Sepulveda, Aurelio M (MRN 104700984) DOB: 12/26/1970          Encounter Date: 09/01/2019

J76828

# Sepulveda, Aurelio M

MRN: 104700984

---

**Admission**                    Last attending: Wilfredo R Abesamis, MD
9/1/2019 - 9/2/2019 (21 hours)
Status: Discharged
Alvarado Medical Center

---

## Discharge Summary

Wilfredo R Abesamis, MD (Physician) • Internal Medicine

### DISCHARGE SUMMARY

**Name:** Aurelio M Sepulveda          **MRN:** 104700984
**DOB:** 12/26/1970                    **Age:** 48 y.o.
**Sex:** male                          **Acct:** 726000062059
**Location:** AH NW CUSTODY            **PCP:** Fernando A Zamudio, MD
**Admission Date:** 9/1/2019 10:40 PM  **Attending:** Wilfredo R Abesamis, MD

**Discharge Date:** 9/2/2019
**Admitting Physician:** Wilfredo R Abesamis, MD
**Discharge Physician:** Wilfredo R Abesamis, MD
**Consulting Physician:**

**Admission Diagnoses:**
 Pneumonia
 CAD (coronary artery disease)
 Type 2 diabetes mellitus with complication (CMS/HCC)
 Essential hypertension
 Hyperlipidemia

**Discharge Diagnoses:**
 Pneumonia
 CAD (coronary artery disease)
 Type 2 diabetes mellitus with complication (CMS/HCC)
 Essential hypertension
 Hyperlipidemia

**Results from last 7 days**

| Lab | Units | 09/02/19 0916 |
|-----|-------|---------------|
| POC GLUCOSE | mg/dL | 407* |

**Brief History:**
Aurelio M Sepulveda is a 48 y.o. male an inmate at Donovan, was transferred here from Sharp
Chula Vista ER for further evaluation and management. Patient claimed that he has been
coughing with brown sputum and short of breath for the last 1 week. He denies chest pain or
palpitations. He had fever and chills yesterday and so he informed the staff at Donovan and
mentioned to them that he may have the same symptoms when he had a heart attack last
year. He was then send to Sharp Chula Vista ER. Chest x-ray was negative but CAT scan of
the chest showed minimal infiltrate in the left upper lobe. He was started on intravenous
antibiotics. Because of his history of CAD, he was transferred here for evaluation.

---

Printed by Juanita Ante at 9/3/19 9:05 AM          RECEIVED SEP 0 3 2019          Page 1 of 5



# EXHIBIT COVER PAGE

G

EXHIBIT

Description of this Exhibit:

Medical Records:Aurelio Martin Sepulveda, CDCR # J-76828

Number of pages to this Exhibit:_____**17**_____ pages.

Jurisdiction: (Check only one)

☐ County Grand Jury

☐ County Municipal Court

☐ County Circuit Court

☐ County Superior Court

☐ State Court of Appeal

☒ United States District Court

☐ State Supreme Court

☐ State Bar Court

☐ State Circuit Court

☐ United States Supreme Court

☐ Other:_____

Approved for
use with
Judicial
Council forms
(01-19-08)
MDT/CRA



**CALIFORNIA CORRECTIONAL**
**HEALTH CARE SERVICES**

**RJD - RJ Donovan Correctional Facility**
480 Alta Road
San Diego, CA 92179-

| | |
|---|---|
| **Patient:** | **SEPULVEDA, AURELIO MARTIN** |
| DOB/Age/Sex: | 12/26/1970  48 years    Male |
| Encounter Date: | 11/15/2013 |
| Attending: | Guldseth,David P&S |

| | |
|---|---|
| CDCR #: | J76828 |
| PID #: | 11762197 |
| Referring: | |

---

## *Progress Notes*

---

| | |
|---|---|
| Document Type: | Outpatient Progress Note |
| Document Subject: | foot ulcer/ r/o toe gangrene |
| Service Date/Time: | 9/4/2019 12:08 PDT |
| Result Status: | Auth (Verified) |
| Perform Information: | Zhang,Ronald P&S (9/4/2019 12:09 PDT) |
| Sign Information: | Zhang,Ronald P&S (9/4/2019 12:09 PDT) |
| Authentication Information: | Zhang,Ronald P&S (9/4/2019 12:09 PDT) |

---

**History of Present Illness**
this is 48 y/o pt with  h/o diabetes, CAD, and liver cirrhosis, pt presented to RN line today
with foot ulcer over left foot, there is an area of darkened skin between his toes and
extending to left foot.
this is concerning for gangrene of his toe. will send pt to higher level of care.

**Problem List/Past Medical History**
  Ongoing
    Acute gastritis
    Allergic rhinitis due to other allergen
    Aortic valve disorders
    Asthma
    Back pain
    Background diabetic retinopathy
    Benign essential hypertension
    CAD (coronary artery disease)
    Chronic low back pain
    Chronic neck pain
    Cirrhosis of liver
    COPD (chronic obstructive pulmonary
    disease)
    Diabetes
    Diabetes mellitus type 2, controlled,
    without complications ·
    Diabetic gastroparesis
    Diabetic retinopathy
    End stage liver disease
    Esophagitis
    Gallstone
    Hypoglycemia
    Imbalance
    Irritable bowel syndrome (IBS)
    Liver fibrosis
    Lumbago
    Mitral valve disorders
    Myocardial infarction
    Neuropathic pain
    Nonrheumatic mitral valve disorder
    Other acquired deformities of knee
    Polyneuropathy in diabetes
    Primary angle-closure glaucoma
    Sore throat

---

Report Request ID:   22582331                    Print Date/Time:   10/2/2019 10:11 PDT

**WARNING:** This report contains confidential, proprietary, and/or legally privileged
information intended for the recipient only.

Patient Name: SEPULVEDA, AURELIO MARTIN          MRN: J76828
Date of Birth: 12/26/1970 00:00 PST               FIN: 10000003511762197J76828

* Auth (Verified) *



## AFTER VISIT SUMMARY

### Alvarado Hospital Medical Center

Aurelio M. Sepulveda MRN: 104700984  📅 9/4/2019 - 9/11/2019  📍 AH Northwest Custody

---

## Instructions



**Your medications have changed**

➡ START taking:
**amoxicillin-clavulanate (AUGMENTIN)**
This replaces a similar medication. See the full medication list for instructions.

**mupirocin (BACTROBAN)**

✖ STOP taking:
**amoxicillin-clavulanate 875-125 MG per tablet (AUGMENTIN)**
Replaced by a similar medication.

**Review your updated medication list below.**

---

## Your Next Steps

### ❓ Ask

☐ Ask how to get these medications
- amoxicillin-clavulanate
- mupirocin

### 📖 Read

☐ Read these attachments
- SURGICAL SITE INFECTIONS FAQS - SHEA (ENGLISH)
- CELLULITIS, ADULT, EASY-TO-READ (ENGLISH)

## You are allergic to the following

Date Reviewed: 9/4/2019

| Allergen | Reactions |
|----------|-----------|
| **Codeine** | Swelling |
| **Tramadol** | GI Intolerance |
| **Nsaids** | Not Noted |

## About your hospitalization

You were admitted on: September 4, 2019
You were discharged on: September 11, 2019

You last received care in the: AH Northwest Custody
Unit phone number: 619-229-3241

## Reason for Inpatient Admission

Your primary diagnosis was: Not on File

---

Aurelio M. Sepulveda (MRN: 104700984) • Printed by [124529] at 9/11/19 12:14 PM          Page 1 of 16   **Epic**

* Auth (Verified) *

### Your medication list (continued)

STOP taking these medications (continued)

amoxicillin-clavulanate 875-125 MG per tablet
Commonly known as: AUGMENTIN
Replaced by: amoxicillin-clavulanate 500-125 MG per tablet

# Where to Get Your Medications

## Information about where to get these medications is not yet available

Ask your nurse or doctor about these medications

☐ amoxicillin-clavulanate 500-125 MG per tablet

☐ mupirocin 2 % ointment

## ⌘ Physicians who cared for you during your hospitalization

| Provider | Service | Role | Specialty |
|---|---|---|---|
| Shota P Gurtch, MD | — | Attending Provider | Internal Medicine |
| Michael L Butera, MD | — | Consulting Physician | Infectious Diseases |

## Immunizations Administered for This Admission

None

**Procedures & Surgeries**

Procedure(s) (LRB):
ARTERIAL LOWER EXTREMITY ANGIOGRAPHY (N/A)

9/4/2019 - 9/7/2019

Surgeon(s):
Michael H Michalski Jr., MD
-------------------

## Care Plan Problems/Goals ↗                                    Expand | Report

**Pain**
Patient's pain/discomfort is manageable
        Progressing

**Safety**
Patient will be injury free during hospitalization
        Progressing

⬤aily Care

\* Auth (Verified) \*

Sepulveda, Aurelio M (MRN 104700984)                        Encounter Date: 09/04/2019

# Sepulveda, Aurelio M                                  MRN: 104700984

---

**Michael L Butera, MD**    Consults    Date of Service: 9/9/2019 3:23 PM
Physician    Addendum
Infectious Disease

## CONSULTATION

**Name:** Aurelio M Sepulveda      **MRN:** 104700984
**DOB:** 12/26/1970      **Acct:** 726000062396
**Age:** 48 y.o.      **Admit Date:** 9/4/2019 5:56 PM
**Sex:** male      **Attending:** Shota P Gurtch, MD
**PCP:** Fernando A Zamudio, MD      **Location:** AH NW CUSTODY

**Referring Physician:** Dr. Shota Gurtch

---

| History of Present Illness |
| --- |

**Reason for Consultaiont: Assistant fevers despite broad-spectrum antibiotics and revascularization of ischemic foot**

Aurelio M Sepulveda is a 48 y.o. male with peripheral and coronary vascular disease, diabetes, treated hepatitis C, dyslipidemia and chronic bronchitis/asthma COPD readmitted on 9/4/2019 after recent admission for possible pneumonia left upper lobe.
Work-up showed significant inflow disease left side and is status post peripheral angioplasty stent. He has been on broad-spectrum antibiotics with Zosyn and Vanco and I am asked to see him today by Dr. Shota Gurtch because he been having ongoing fevers the patient tells me he has not had any high fevers in the last 24 hours. He still has some ischemic and inflammatory changes of the dorsum of the foot particularly over the dorsal fourth ray and fourth digit though the digit itself appears to be reperfused with good capillary blanching. He had a superficial blister over the dorsal foot which was unroofed with viable tissue below.

He denies any injection drug use, has not had any obvious phlebitis from peripheral IVs denies nausea vomiting diarrhea abdominal pain dysuria flank pain hematuria or other localizing symptoms to suggest an alternative source of his fevers.

| Medical History |
| --- |
| Hypertension |
| Hyperlipidemia |
| Prior tobacco use COPD |
| Asthma |
| Adult onset diabetes mellitus |
| Glaucoma |
| Coronary vascular disease with a non-ST MI in April 2018 status post dominant left circumflex stent with diffuse disease and L PDA moderate disease in LAD and high grade stenosis nondominant coronary artery. |
| |
| Treated hepatitis C with a 12-week course of therapy and evidently a sustained virologic response |
| Multiple tattoos |

* Auth (Verified) *

Sepulveda, Aurelio M (MRN 104700984)                           Encounter Date: 09/04/2019

| Eyes: | As above |
| Respiratory: | Chronic tobacco use with underlying COPD, no TB history currently no cough or dyspnea |
| Cardiovascular: | Coronary arthroscopic vascular disease with previous angioplasty stent |
| Gastrointestinal: | Hepatitis C treated no history of hematemesis melena ascites |
| Genitourinary: | No history of ulcerative general disease dysuria flank pain hematuria |
| Musculoskeletal: | Prior joint surgeries as noted above |
| Skin: | No chronic rash spider bites MRSA |
| Neurological: | No headache TIA CVA |

### Physical Examination

**Physical Exam:** Last fever spike was 101.4 at 7 PM last night after that only low-grade temperature elevations.
Vascular procedure was done on 9/7/2019 with lower extremity angiography of the left leg and percutaneous trans luminal laser arthrectomy in the proximal left anterior tibialis followed by angioplasty left anterior tibialis

| General: | Well-developed well-nourished gentleman alert appropriate |
| HEENT: | Conjunctiva noninjected no thrush no sinus tenderness external auditory canals normal |
| Neck: | Supple without adenopathy no bruits |
| Respiratory: | Hyperresonant to percussion with slightly prolonged expiratory phase |
| Heart: | S1-S2 normal regular rhythm without rub gallop audible murmur |
| Abdomen: | Flat soft without palpable liver edge spleen edge no shifting dullness |
| GI: | Normal bowel sounds, no genital lesions |
| Musculoskeletal: | No joint effusions |
| Skin: | No generalized rash |
| Extremities: | Puncture wound right groin from recent angiography with no obvious pseudoaneurysm hematoma or inflammation.no obvious phlebitis in upper extremity peripheral IV sites Erythema of the left 4th toe some maceration of the skin overlying the left 4th ray with status post superficial debridement of bullous lesion in this area currently no obvious a sending infection fluctuance or crepitus and I do not appreciate any effusion in the MTP joint or IP joints.  There is good capillary blanching of the toe |
| Neurologic: | Intact sensation no focal or lateralizing weakness |

Sodium 134 potassium 4.0 glucose 268 vancomycin trough 18 white count normal at 7.6 hemoglobin 11.2 hematocrit 34.4 71 segs 14 lymphs.
Count is down from 14,000 on 9/4/2019
Urine analysis had microscopic hematuria which may need further work-up negative protein few white cells 0-5 with no casts no crystals
Wound culture with Proteus mirabilis and a staph aureus that is not MRSA
T angios reviewed which included views of his other internal organs.  The liver was normal biliary tract normal pancreas and spleen normal bilateral kidneys normal with no stones or nephrolithiasis he had no retroperitoneal adenopathy he did have hypertrophic osteophytes in

Sepulveda, Aurelio M (MR # 104700984) Printed by [124529] at 9/11/19 11:18 AM

Patient Name: SEPULVEDA, AURELIO MARTIN                                        MRN: J76828
Date of Birth: 12/26/1970 00:00 PST                                              FIN: 10000003511762197J76828

* Auth (Verified) *

Sepulveda, Aurelio M (MRN 104700984)                          Encounter Date: 09/04/2019

the lower thoracic spine and L2-L3 diffuse calcified and noncalcified atherosclerotic vascular disease without aneurysm.

He did have 2 sets of blood cultures on 9/4/2019 which showed no growth and presumably did not have an active bloodstream infection at the time of presenting with this left leg ischemic manifestation. The echocardiogram does not show any valvular vegetations to suggest cardiac emboli from an infection. Note the echo below he does have cardiomyopathy with LVH global hypokinesis with a low ejection fraction though it appears he is been in sinus rhythm here without documented arrhythmia A. fib etc. it is unclear to me if this was an embolic lesion to the leg or just intrinsic atherosclerosis with a clot and I will need to clarify with cardiology

I did review his last admission and the patient was hospitalized on 9/1/2019 and discharged on 9/2/2019 for possible pneumonia/COPD exacerbation by Dr. Abesamis sent out on Augmentin. work-up at that time showed an chest x-ray with some bibasilar atelectasis and a CT scan that was negative for pulmonary embolus but showed minimal patchy groundglass opacity in the left upper lobe.

Echocardiogram from 9/7/2019Echocardiogram~~Rhythm: RBBB~~Indications~Cardiomyopathy~~2D Dimensions~IVC    22.3 mm    ~~M-Mode Dimensions~Left Atrium(MM) 33.56 (25-40mm)    IVSd 14.75 (7-11mm)~Aortic Root    33.19 (22-37mm)    LVDd 62.00 (40-56mm) ~Aortic Cusp Exc 21.39 (15-20mm)    PWd  15.49 (7-11mm)~FS (%)    14 %    LVDs  50.52 (20-38mm)~ESV(Teich)    121.1 ml    LVEF(%)    20 (>50%)~~Aortic Valve~AoV Peak Vel.    1.3 m/s    AO Peak Gr.    6.3 mmHg    ~~Mitral Valve~MV Peak E    1.1 m/s    MV Peak A    0.9 m/s~A Duration    143.0 ms    E' (avg)    0.0 m/s~E/E'    28.1    MV DT    113.1 ms~PVa    0.3 m/s    PVa Duration    161.5 ms~~Left Ventricle~Left ventricle is moderately dilated. Left ventricular systolic function is severely decreased. Moderate concentric left ventricular hypertrophy. Global hypokinesis with basalar inferoseptal akinesis.. Basalar posterolateral wall contracts well. Left atrial pressure is elevated. Severe diastolic dysfunction is present (restrictive filling). LVEF is 15-20%. There is no pericardial effusion.~~Right Ventricle~The right ventricle is normal size. The right ventricular systolic function is normal.~~Atria~The left atrium size is normal. The right atrium size is normal.~~Aortic Valve~The aortic valve is normal in structure. There is no aortic valvular stenosis. Trace aortic regurgitation.~~Mitral Valve~Increased reflectance of mitral valve leaflets. Mild mitral regurgitation.~~Tricuspid Valve~The tricuspid valve is normal in structure. Trace tricuspid regurgitation.~~Pulmonic Valve~The pulmonary valve is normal in structure. There is no pulmonic valvular regurgitation.~~Great Vessels~The aortic root is normal in size. IVC is normal in size.

**Vitals:**

Sepulveda, Aurelio M (MR # 104700984) Printed by [124529] at 9/11/19 11:18 AM

* Auth (Verified) *

Sepulveda, Aurelio M (MRN 104700984)                         Encounter Date: 09/04/2019

| Procedure | Component | Value | Units | Date/Time |
|---|---|---|---|---|

INDICATION: cellulitis.

COMPARISON: None.

TECHNIQUE: Three views were obtained.

FINDINGS:
No acute fracture or dislocation.  Scattered interphalangeal joint degenerative change.
Erosion is seen along the medial base of first digit proximal phalanx.
Osseous mineralization is within normal limits.
There is diffuse calcification of the pedal arteries.

Impression:
   1.  No acute osseous abnormality.
   2.  Likely inflammatory erosion along the base of first digit proximal phalanx.
   3.  No definite evidence of osteomyelitis, toe radiographs of the area of interest would be
more sensitive.


Problem List:
Active Problems:
   Cellulitis
      Evidence of hemodynamically significant stenosis in the left proximal anterior tibial
      artery.
      Consider follow-up CTA or catheter based angiogram if there are symptoms of left
      foot ischemia.


Assessment:
Ischemic changes left fourth toe

Plan:
The patient appears to have had an because of ischemia of the left fourth toe.  He may have
either thrown an embolus or have infarcted the toe.  He has a wedge-shaped area of duskiness
on the dorsum of the foot classic for vascular occlusion.

The patient should be evaluated by a vascular specialist.
Intervention may be able to salvage the foot and/or toe.
This is early gangrene, but it does not appear that the tissues been totally lost at this time.


   Mark D Jacobson, MD


ED to Hosp-Admission
(Current) on 9/4/2019


Sepulveda, Aurelio M (MR # 104700984) Printed by [124529] at 9/11/19 11:21 AM

* Auth (Verified) *

Sepulveda, Aurelio M (MRN 104700984)                    Encounter Date: 09/04/2019

---

**Imaging:**

X-ray Chest 1 View

Result Date: 9/5/2019
INDICATION: Chest Pain. COMPARISON: None TECHNIQUE: Single frontal chest radiograph. FINDINGS: Lungs are well expanded and clear. No pneumothorax or pleural effusion. Cardiomediastinal silhouette is mildly enlarged No acute osseous abnormality.

No radiographic evidence of acute cardiopulmonary disease.

X-ray Foot 3 Views Left

Result Date: 9/5/2019
INDICATION: cellulitis. COMPARISON: None. TECHNIQUE: Three views were obtained. FINDINGS: No acute fracture or dislocation. Scattered interphalangeal joint degenerative change. Erosion is seen along the medial base of first digit proximal phalanx. Osseous mineralization is within normal limits. There is diffuse calcification of the pedal arteries.

1. No acute osseous abnormality. 2. Likely inflammatory erosion along the base of first digit proximal phalanx. 3. No definite evidence of osteomyelitis, toe radiographs of the area of interest would be more sensitive.

Us Doppler Arterial Legs Bilateral

Result Date: 9/5/2019
INDICATION: LEFT FOOT ISCHEMIA COMPARISON: None. TECHNIQUE: A comprehensive color duplex Doppler ultrasound examination of both lower extremities was performed. Color imaging, Doppler wave form analysis, and peak systolic flow measurements of the common femoral, profunda femoral, superficial femoral, and popliteal arteries were performed. Bilateral ABI (ankle-brachial indices) were measured at rest in the recumbent position. FINDINGS: There is diffuse atherosclerotic plaque present bilaterally. RIGHT EXTREMITY: Triphasic waveforms and normal velocities in the distal external iliac, common femoral and superficial femoral artery. The profunda femoris is patent. Phasic waveforms and normal velocities continued in the popliteal artery and tibial peroneal trunks. Multiphasic waveforms throughout the runoff vessels which are all patent proximal to distal. LEFT EXTREMITY: Triphasic waveforms and normal velocities to the distal external iliac artery, common femoral artery and superficial femoral artery. The profunda femoris is patent. Normal velocities and waveforms seen in the popliteal artery and tibial peroneal trunk. Multiphasic waveforms continue in the runoff vessels which are all patent proximal to distal. There is elevated velocity in the proximal anterior tibial artery to 156 cm/s consistent with hemodynamically significant stenosis. Ankle-brachial indices not performed due to patient intolerance.

1. Diffuse atherosclerotic disease without significant inflow or outflow disease bilaterally. 2. Evidence of hemodynamically significant stenosis in the left proximal anterior tibial artery. Consider follow-up CTA or catheter based angiogram if there are symptoms of left foot ischemia.

---

Sepulveda, Aurelio M (MR # 104700984) Printed by [124529] at 9/11/19 11:18 AM

* Auth (Verified) *

Sepulveda, Aurelio M (MRN 104700984)                          Encounter Date: 09/04/2019

| **Imaging** |
| --- |

CT Angiogram Abdominal Aorta And Bilateral Iliofemoral Runoff With And/or Without Contrast

Result Date: 9/6/2019
FINDINGS: ABDOMINAL AORTA: Mild to moderate calcified and noncalcified atherosclerotic disease without aneurysm. RENAL/VISCERAL: Single renal arteries bilaterally with early bifurcation on the left. No significant stenosis. ILIAC ARTERIES: No significant stenosis or aneurysm. RIGHT LEG: Mild stenosis of the proximal superficial femoral artery approaching 30%. Focal calcified plaque is seen at Hunter's canal without hemodynamically significant stenosis. The popliteal artery ends in trifurcation. There is severe focal stenosis of the proximal peroneal artery. Short segment focal high-grade stenosis also noted in the proximal anterior tibial artery all runoff vessels are patent proximal to distal. LEFT LEG: No significant stenosis in the common femoral or superficial femoral artery. There is mild focal stenosis of the suprageniculate popliteal artery due to noncalcified plaque. The popliteal artery ends in trifurcation with noncalcified anterior and central luminal filling defect extending into the proximal peroneal and anterior tibial arteries which could reflect thromboembolism. Moderate multifocal disease of the proximal anterior tibial artery is also present. Runoff vessels are patent at the the ankle. With likely calcified and poor filling dorsalis pedis artery. OTHER VASCULAR: Negative. LOWER THORAX: Mild global cardiac enlargement with the left atrium incompletely imaged. Hazy groundglass opacities in the left greater than right lung bases likely reflect a combination of atelectasis and or edema. LIVER: Normal. No enlargement or significant focal lesion. Portal vein is patent. BILIARY: Normal. No visible dilatation or calcification. PANCREAS: Normal. No lesion, fluid collection, ductal dilatation, or acute inflammation. SPLEEN: Normal. No enlargement or focal lesion. KIDNEYS: Normal. No mass, obstruction, or nephrolithiasis. ADRENALS: Normal. No mass or enlargement.
RETROPERITONEUM: Normal. No mass or adenopathy. BOWEL/MESENTERY: Normal. No visible mass, obstruction, or bowel wall thickening. ABDOMINAL WALL: Normal. No mass or hernia. PELVIC NODES: Normal. No pelvic adenopathy. PELVIC ORGANS: No visible mass. BONES: Hypertrophic osteophytosis of the lower thoracic spine and mid lumbar spine with anterior osteophyte ptosis worst at L2/L3.

1. Diffuse calcified and noncalcified atherosclerotic disease without aneurysm. 2. No significant inflow disease. Mild focal stenosis of the right proximal SFA, 30%. 3. There is noncalcified anterior eccentric and central luminal filling defect involving the proximal left anterior tibial artery and peroneal artery which may reflect thromboembolism, recommend correlation with atrial arrhythmia or PFO. This could also reflect chronic and stable atherosclerotic disease given presence of moderate to severe short segment stenosis involving the proximal anterior tibial and peroneal artery on the right.
-----------------------------------------------------------------------------------------

US Doppler Arterial Legs Bilateral

Result Date: 9/5/2019
FINDINGS: There is diffuse atherosclerotic plaque present bilaterally. RIGHT EXTREMITY: Triphasic waveforms and normal velocities in the distal external iliac, common femoral and superficial femoral artery. The profunda femoris is patent. Phasic waveforms and normal velocities continued in the popliteal artery and tibial peroneal trunks. Multiphasic waveforms throughout the runoff vessels which are all

Facility: RJD

* Auth (Verified) *

SEP/07/2019/SAT 08:40 AM                    FAX No.                    P. 001


ALVARADO HOSPITAL
MEDICAL CENTER

# Alvarado Hospital Medical Center

6655 Alvarado Road, San Diego, CA 92120
Phone: 619-229-3230    Fax: 619-229-3335
www.alvaradohospital.com

Name : SEPULVEDA, AURELIO
Birthdate :12/26/1970
Sex :M
Age :048Y
Height :    in.
Weight :    lbs
BSA :    m2

Patient ID :104700984
Date : 09/07/2019
Accession# :2019090700693
Sonographer :Bridget Heaton, RDCS
Referring Physician: MICHALSKI JR, MICHAEL

## TRANSTHORACIC ECHOCARDIOGRAM                    Preliminary Report

EXAM: Comprehensive 2D, Doppler, and color-flow Echocardiogram
Rhythm RBBB

**Indications**
Cardiomyopathy

**2D Dimensions**
IVC                    22.3 mm

**M-Mode Dimensions**

| | | | |
|---|---|---|---|
| Left Atrium(MM) | 33.56 (25~40mm) | IVSd | 14.75 (7~11mm) |
| Aortic Root | 33.19 (22~37mm) | LVDd | 62.00 (40~56mm) |
| Aortic Cusp Exc | 21.38 (15~20mm) | PWd | 15.49 (7~11mm) |
| FS (%) | 14 % | LVDs | 50.52 (20~38mm) |
| ESV(Teich) | 121.1 ml | LVEF(%) | 20 (>50%) |

**Aortic Valve**

| | | | |
|---|---|---|---|
| AoV Peak Vel. | 1.3 m/s | AO Peak Gr. | 6.3 mmHg |

**Mitral Valve**

| | | | |
|---|---|---|---|
| MV Peak E | 1.1 m/s | MV Peak A | 0.9 m/s |
| A Duration | 143.0 ms | E' (avg) | 0.0 m/s |
| E/E' | 28.1 | MV DT | 113.1 ms |
| PVa | 0.3 m/s | PVa Duration | 161.5 ms |

**Left Ventricle**
Left ventricle is moderately dilated. Left ventricular systolic function is severely decreased. Moderate concentric left ventricular hypertrophy. Global hypokinesis with basalar inferoseptal akinesis.. Basalar posterolateral wall contracts well. Left atrial pressure is elevated. Severe diastolic dysfunction is present (restrictive filling). LVEF is 15-20%. There is no pericardial effusion.

**Right Ventricle**
The right ventricle is normal size. The right ventricular systolic function is normal.

**Atria**
The left atrium size is normal. The right atrium size is normal.

**Aortic Valve**
The aortic valve is normal in structure. There is no aortic valvular stenosis. Trace aortic regurgitation.

**Mitral Valve**
Increased reflectance of mitral valve leaflets. Mild mitral regurgitation.

**Tricuspid Valve**
The tricuspid valve is normal in structure. Trace tricuspid regurgitation.

**Pulmonic Valve**
The pulmonary valve is normal in structure. There is no pulmonic valvular regurgitation.

**Great Vessels**
The aortic root is normal in size. IVC is normal in size.

**Signed by**

* Auth (Verified) *

These results are sorted by the time the specimen was collected, with newest collections at the top.

## ☤ Radiology Results (last 21 days)

| Procedure | Component | Value | Units | Date/Time |
|---|---|---|---|---|
| X-ray Chest 1 View [139755420] | | | | Collected: 09/09/19 1203 |
| Order Status: Completed | | | | Updated: 09/09/19 1206 |

Narrative:

INDICATION: fever.

COMPARISON: None

TECHNIQUE: Single frontal chest radiograph.

FINDINGS:

Lungs are well expanded and clear. Mild vascular congestion noted.

No pneumothorax or pleural effusion.

Cardiomediastinal silhouette is mildly enlarged with a ventricular configuration.

No acute osseous abnormality.

Impression:

Vascular congestion with mild cardiomegaly. No consolidation.

| CT Angiogram Abdominal Aorta and Bilateral Iliofemoral Runoff with and/or without Contrast [139514778] | | | | Collected: 09/06/19 0850 |
| Order Status: Completed | | | | Updated: 09/06/19 0909 |

Narrative:

INDICATION: Arterial duplex study shows nothing that would be a probable percutaneous target. We need to look for sources of upstream thromboembolism including abdominal aortic and popliteal aneurysm. Will obtain abdominal/iliac/extremity CTA. Further recommendations to follow..

COMPARISON: None.

TECHNIQUE: After obtaining the patient's consent, CT images of the abdomen, pelvis, and lower extremities were obtained with non-ionic intravenous contrast material. Multiplanar image reconstruction was performed. In addition, Multiplanar MIP reconstructions were created and interpreted to optimize visualization of vascular anatomy. Numerous low-radiation dose strategies were employed including AEC (Automatic Exposure Control) and individualized BMI-based low dose scan protocols. The exam was performed on a CT scanner that is compliant with the NEMA XR-29 Smart Dose Standard. DICOM Radiation Dose Structured Reporting capability and Dose Check Standard are also features of this scanner.

RADIATION DOSE ESTIMATE:
* CTDIvol (mGy): 17.2 \ DLP (mGy-cm): 986

FINDINGS:

ABDOMINAL AORTA: Mild to moderate calcified and noncalcified atherosclerotic disease without aneurysm.
RENAL/VISCERAL: Single renal arteries bilaterally with early bifurcation on the left. No significant stenosis.
ILIAC ARTERIES: No significant stenosis or aneurysm.

RIGHT LEG:
Mild stenosis of the proximal superficial femoral artery approaching 30%. Focal calcified plaque is seen at Hunter's

Facility: RJD

* Auth (Verified) *

<br>
Page 2 of 3

| Procedure | Component | Value | Units | Date/Time |
|---|---|---|---|---|

canal without hemodynamically significant stenosis. The popliteal artery ends in trifurcation. There is severe focal stenosis of the proximal peroneal artery. Short segment focal high-grade stenosis also noted in the proximal anterior tibial artery all runoff vessels are patent proximal to distal.

LEFT LEG:
No significant stenosis in the common femoral or superficial femoral artery. There is mild focal stenosis of the supragenículate popliteal artery due to noncalcified plaque. The popliteal artery ends in trifurcation with noncalcified anterior and central luminal filling defect extending into the proximal peroneal and anterior tibial arteries which could reflect thromboembolism. Moderate multifocal disease of the proximal anterior tibial artery is also present. Runoff vessels are patent at the the ankle. With likely calcified and poor filling dorsalis pedis artery.

OTHER VASCULAR: Negative.

LOWER THORAX: Mild global cardiac enlargement with the left atrium incompletely imaged. Hazy groundglass opacities in the left greater than right lung bases likely reflect a combination of atelectasis and or edema.
LIVER: Normal. No enlargement or significant focal lesion. Portal vein is patent.
BILIARY: Normal. No visible dilatation or calcification.
PANCREAS: Normal. No lesion, fluid collection, ductal dilatation, or acute inflammation.
SPLEEN: Normal. No enlargement or focal lesion.
KIDNEYS: Normal. No mass, obstruction, or nephrolithiasis.
ADRENALS: Normal. No mass or enlargement.
RETROPERITONEUM: Normal. No mass or adenopathy.
BOWEL/MESENTERY: Normal. No visible mass, obstruction, or bowel wall thickening.
ABDOMINAL WALL: Normal. No mass or hernia.
PELVIC NODES: Normal. No pelvic adenopathy.
PELVIC ORGANS: No visible mass.
BONES: Hypertrophic osteophytosis of the lower thoracic spine and mid lumbar spine with anterior osteophyte ptosis worst at L2/L3.
Impression:
1. Diffuse calcified and noncalcified atherosclerotic disease without aneurysm.
2. No significant inflow disease. Mild focal stenosis of the right proximal SFA, 30%.
3. There is noncalcified anterior eccentric and central luminal filling defect involving the proximal left anterior tibial artery and peroneal artery which may reflect thromboembolism, recommend correlation with atrial arrhythmia or PFO. This could also reflect chronic and stable atherosclerotic disease given presence of moderate to severe short segment stenosis involving the proximal anterior tibial and peroneal artery on the right.

US Doppler Arterial Legs Bilateral [139514769]           Collected: 09/05/19 1648
Order Status: Completed                                   Updated: 09/05/19 1654
Narrative:
INDICATION: LEFT FOOT ISCHEMIA

COMPARISON: None.

TECHNIQUE: A comprehensive color duplex Doppler ultrasound examination of both lower extremities was performed. Color imaging, Doppler wave form analysis, and peak systolic flow measurements of the common femoral, profunda femoral, superficial femoral, and popliteal arteries were performed. Bilateral ABI (ankle-brachial indices) were measured at rest in the recumbent position.

FINDINGS:
There is diffuse atherosclerotic plaque present bilaterally.

RIGHT EXTREMITY: Triphasic waveforms and normal velocities in the distal external iliac, common femoral and superficial femoral artery. The profunda femoris is patent. Phasic waveforms and normal velocities continued in the popliteal artery and tibial peroneal trunks. Multiphasic waveforms throughout the runoff vessels which are all patent proximal to distal.

* Auth (Verified) *

Page 3 of 3

| Procedure | Component | Value | Units | Date/Time |
|-----------|-----------|-------|-------|-----------|

LEFT EXTREMITY: Triphasic waveforms and normal velocities to the distal external iliac artery, common femoral artery and superficial femoral artery. The profunda femoris is patent. Normal velocities and waveforms seen in the popliteal artery and tibial peroneal trunk. Multiphasic waveforms continue in the runoff vessels which are all patent proximal to distal. There is elevated velocity in the proximal anterior tibial artery to 156 cm/s consistent with hemodynamically significant stenosis.

Ankle-brachial indices not performed due to patient intolerance.

Impression:
1. Diffuse atherosclerotic disease without significant inflow or outflow disease bilaterally.
2. Evidence of hemodynamically significant stenosis in the left proximal anterior tibial artery. Consider follow-up CTA or catheter based angiogram if there are symptoms of left foot ischemia.

**X-ray Chest 1 View [139497817]**          Collected: 09/05/19 1044
Order Status: Completed                      Updated: 09/05/19 1047
Narrative:
    INDICATION: Chest Pain.

    COMPARISON: None

    TECHNIQUE: Single frontal chest radiograph.

    FINDINGS:

    Lungs are well expanded and clear.

    No pneumothorax or pleural effusion.

    Cardiomediastinal silhouette is mildly enlarged

    No acute osseous abnormality.
Impression:

    No radiographic evidence of acute cardiopulmonary disease.

**X-ray Foot 3 Views Left [139497820]**      Collected: 09/05/19 1042
Order Status: Completed                      Updated: 09/05/19 1046
Narrative:
    INDICATION: cellulitis.

    COMPARISON: None.

    TECHNIQUE: Three views were obtained.

    FINDINGS:
    No acute fracture or dislocation. Scattered interphalangeal joint degenerative change. Erosion is seen along the medial base of first digit proximal phalanx.
    Osseous mineralization is within normal limits.
    There is diffuse calcification of the pedal arteries.
Impression:
    1. No acute osseous abnormality.
    2. Likely inflammatory erosion along the base of first digit proximal phalanx.
    3. No definite evidence of osteomyelitis, toe radiographs of the area of interest would be more sensitive.



**CALIFORNIA CORRECTIONAL**
**HEALTH CARE SERVICES**

**RJD - RJ Donovan Correctional Facility**
480 Alta Road
San Diego, CA 92179-

| | |
|---|---|
| **Patient:** | **SEPULVEDA, AURELIO MARTIN** |
| DOB/Age/Sex: | 12/26/1970  48 years    Male |
| Encounter Date: | 11/15/2013 |
| Attending: | Guldseth,David P&S |

CDCR #:   J76828
PID #:    11762197
Referring:

---

## *Progress Notes*

---

Document Type:
Document Subject:
Service Date/Time:
Result Status:
Perform Information:
Sign Information:
Authentication Information:

Outpatient Progress Note
F/u Left foot cellulitis; Refused 9/13/19 Ophthalmology Appt.
9/16/2019 11:07 PDT
Auth (Verified)
Santos,Michael P&S (9/16/2019 11:23 PDT)
Santos,Michael P&S (9/16/2019 11:28 PDT)
Santos,Michael P&S (9/16/2019 11:28 PDT); Santos,Michael
P&S (9/16/2019 11:28 PDT); Santos,Michael P&S (9/16/2019
11:28 PDT); Santos,Michael P&S (9/16/2019 11:27 PDT)

### Chief Complaint
F/u Left foot cellulitis; Refused 9/13/19 Ophthalmology Appt.

### History of Present Illness
This is a 48-year-old male who is being followed up today after he was admitted at
AHMC on 9/4/2019 for left foot ulcer. Patient was noted to have an ulcer between the fourth
and fifth digits of the left foot with darkening discoloration of the left fourth toe and redness
streaking up his left foot. Patient was given IV vancomycin and Zosyn and later Ancef and
Flagyl. Arterial Doppler shows significant stenosis of the left proximal artery. Patient
had angiography and balloon angioplasty of his left leg on 9/7/2019. Patient was
stable after revascularization and there was return of pink color on the left foot. There is
persistent redness on the dorsum of the left foot but was noted to be less prominent. There
is persistent blackish eschar on the dorsum of the left fourth
toe with corresponding erythema over the dorsum of the left midfoot and distal foot along
the area of the left fourth metatarsal. Patient presently stable and denies any worsening
pain, fever or chills.

   Patient is also being followed up after he refused ophthalmology appointment on
9/13/2019. Patient was educated on the importance of following up with a specialist.
Patient will be rescheduled.

### Review of Systems
CONSTITUTIONAL: Negative for fever, chills or night sweats.
DERMATOLOGIC: As noted above
HEENT: Denies earache, sore throat.
RESPIRATORY: Denies cough, wheezing, SOB, exertional dyspnea or hemoptysis.
CARDIOVASCULAR: Denies chest pain, palpitations, or lower extremity edema.
GASTROINTESTINAL: Denies nausea, vomiting, diarrhea, abdominal pain
GENITOURINARY: Denies nocturia, hematuria or dysuria.
NEUROLOGIC: Denies headache or dizziness.

### Physical Exam

  Vitals & Measurements
**T:** 36.8  °C  (Oral)  **HR:** 82 (Peripheral)  **RR:** 16  **BP:** 104/69  **SpO2:** 98%
**WT:** 83 kg  **WT:** 83 kg  (Wt dosing)

### Problem List/Past Medical History
Ongoing
   Acute gastritis
   Allergic rhinitis due to other allergen
   Aortic valve disorders
   Asthma
   Back pain
   Background diabetic retinopathy
   Benign essential hypertension
   CAD (coronary artery disease)
   Chronic low back pain
   Chronic neck pain
   Cirrhosis of liver
   COPD (chronic obstructive pulmonary
   disease)
   Diabetes
   Diabetes mellitus type 2, controlled,
   without complications
   Diabetic gastroparesis
   Diabetic retinopathy
   End stage liver disease
   Esophagitis
   Gallstone
   Hypoglycemia
   Imbalance
   Irritable bowel syndrome (IBS)
   Liver fibrosis
   Lumbago
   Mitral valve disorders
   Myocardial infarction
   Neuropathic pain
   Nonrheumatic mitral valve disorder
   Other acquired deformities of knee
   Polyneuropathy in diabetes

---

Report Request ID:   22582327

Print Date/Time:   10/2/2019 10:06 PDT

**WARNING:** This report contains confidential, proprietary, and/or legally privileged
information intended for the recipient only.

**RJD - RJ Donovan Correctional Facility**

Patient:    **SEPULVEDA, AURELIO MARTIN**
DOB/Age/Sex:  12/26/1970 / 48 years     / Male     CDCR: J76828

---

## Progress Notes

GENERAL: The patient is awake, alert, oriented, not in acute distress. Patient is ambulatory
SKIN:  No petechia, ecchymosis, hematoma
HEENT: Pupils equal, round and reactive to light and accommodation. Extraocular movements intact. Anicteric sclerae.
NECK: No jugular venous distention. No cervical lymphadenopathy. No thyromegaly.
CHEST/LUNGS: Clear to auscultation bilaterally with good air exchange. No crackles, no rales, no wheezes.
HEART: Regular rate and rhythm. No murmurs, rubs, or gallops.
ABDOMEN: Soft and nontender. Normoactive bowel sounds. No palpable mass. No rebound tenderness or muscle guarding.
NEUROLOGICAL: Cranial nerves II-XII intact.
EXTREMITIES: No clubbing no cyanosis, no edema.
(+) persistent blackish eschar on the dorsum of the left fourth
toe with corresponding erythema
over the dorsum of the left midfoot and distal foot along the area of the left fourth metatarsal

### Assessment/Plan
1. Cellulitis of fourth toe of left foot
    Patient scheduled for daily wound dressing and he is referred to be seen by CCHCS Wound Management Team.  Patient is presently on Augmentin for cellulitis.  Patient advised compliance.  We will follow-up patient.
2. Diabetic retinopathy
    Patient will be rescheduled for follow-up appointment with the ophthalmologist.
Orders:
Medical Episodic Care Follow Up 40
Request for Ophthalmology

Primary angle-closure glaucoma
Sore throat
Superficial ulcer of skin
Unspecified arthropathy, pelvic region and thigh
Vision changes
Historical
No qualifying data

### Procedure/Surgical History
4/9/18 PTCA and Stent placed in mid Circumflex artery, Arthroscopy, knee, cardiac cath with left circumflex stent placement 4/9/18, Colonoscopy, Diagnostic ultrasound of digestive system, Diagnostic ultrasound of heart, Esophagogastroduodenoscopy [EGD] with closed biopsy, Magnetic resonance imaging of spinal canal, Other cardiovascular stress test.

### Medications
**Active Medications:**
amoxicillin-clavulanate  1 tab Oral TID-KOP KOP
aspirin  81 mg Oral Daily-KOP KOP
atorvastatin  80 mg Oral qPM-KOP KOP
benzonatate  100 mg Oral TID-KOP7 KOP
carvedilol  6.25 mg Oral BID-KOP KOP
clopidogrel  75 mg Oral Daily-KOP KOP
glucose  37.5 gm Oral Daily-KOP KOP PRN: low blood sugar
insulin glargine  50 unit Subcutaneous BIDAC NA
insulin lispro  25 unit Subcutaneous TIDAC NA
levalbuterol  90 mcg Oral q6hr-KOP90 KOP PRN: shortness of breath
liraglutide  1.8 mg Subcutaneous Daily NA
losartan  25 mg Oral Daily-KOP KOP
mometasone-formoterol  2 puff Oral BID-KOP KOP
mupirocin topical  1 app Topical TID-KOP KOP
nitroglycerin  0.4 mg Sublingual q5min-KOP KOP PRN: chest pain
spironolactone  25 mg Oral Daily-KOP KOP

### Allergies
NSAIDs
codeine
traMADol

---

Report Request ID:    22582327        Print Date/Time:  10/2/2019 10:06 PDT

**WARNING:** This report contains confidential, proprietary, and/or legally privileged information intended for the recipient only.



**CALIFORNIA CORRECTIONAL**
# HEALTH CARE SERVICES

**RJD - RJ Donovan Correctional Facility**
480 Alta Road
San Diego, CA 92179-

| | | | |
|---|---|---|---|
| **Patient:** | **SEPULVEDA, AURELIO MARTIN** | | |
| DOB/Age/Sex: | 12/26/1970  48 years    Male | **CDCR #:** | J76828 |
| Encounter Date: | 11/15/2013 | **PID #:** | 11762197 |
| Attending: | Guldseth,David P&S | Referring: | |

## *Progress Notes*

Document Type:                              Outpatient Progress Note
Document Subject:                          CCHCS Wound Management Team Consult Note
Service Date/Time:                          9/23/2019 11:16 PDT
Result Status:                                 Auth (Verified)
Perform Information:                        Jayasundara,Priyantha NP (9/23/2019 11:42 PDT)
Sign Information:                             Jayasundara,Priyantha NP (9/23/2019 12:07 PDT)
Authentication Information:              Jayasundara,Priyantha NP (9/23/2019 12:07 PDT);
                                                       Jayasundara,Priyantha NP (9/23/2019 12:07 PDT)

**Chief Complaint**
wound care consult to L foot

**History of Present Illness**
47 year male with history of D/M, CAD, ESLD, HTN and chronic low back pain, bilateral
lower extremity neuropathy, asthma and cirrhosis of the liver.  Patient was discharged from
Alvarado Hospital Medical Center on September 2, 2019 very next day he was.with left
lower extremity 4th toe erythema and blister.  Patient was admitted
to hospital again with left lower extremity 4th toe cellulitis.  During the hospitalization patient
was with status post peripheral angioplasty with a stent to left lower extremity and
completed IV antibiotic with Zosyn and vancomycin.  Patient discharged from
hospital 9/11/2019 on p.o. antibiotics. I/P had been getting had been getting daily wound
care with gauze by nursing.  Patient is states his left lower extremity looks much better now.

**Review of Systems**
Denies  fever, chills, night sweats, scalp tenderness.
C-V : Denies irregular heartbeat, racing heart, chest pains.
Resp. : Denies shortness of breath, wheezing, coughing up blood.
MS : Denies joint pain, aching muscles, welling of joints.
Integ. : See HPI
Neurologic : Denies frequent headaches, double vision, weakness.
Hematologic: Denies easy bleeding.

**Physical Exam**

**Vitals & Measurements**
**T:** 36.5 °C  (Oral)  **HR:** 80 (Peripheral)  **RR:** 18  **BP:** 127/82  **SpO2:** 98%
**WT:** 83 kg  **WT:** 83 kg (Wt dosing)
GENERAL: No apparent distress. He is alert and oriented x3.
SKIN: See under local wound assessment.
HEENT: Head is normocephalic and atraumatic.
NECK: Supple. No carotid bruits. No lymphadenopathy or thyromegaly.

**Problem List/Past Medical History**
Ongoing
  Acute gastritis
  Allergic rhinitis due to other allergen
  Aortic valve disorders
  Asthma
  Back pain
  Background diabetic retinopathy
  Benign essential hypertension
  CAD (coronary artery disease)
  Chronic low back pain
  Chronic neck pain
  Cirrhosis of liver
  COPD (chronic obstructive pulmonary
  disease)
  Diabetes
  Diabetes mellitus type 2, controlled,
  without complications
  Diabetic gastroparesis
  End stage liver disease
  Esophagitis
  Gallstone
  Hypoglycemia
  Imbalance
  Irritable bowel syndrome (IBS)
  Liver fibrosis
  Lumbago
  Mitral valve disorders
  Myocardial infarction
  Neuropathic pain
  Nonrheumatic mitral valve disorder
  Other acquired deformities of knee
  Polyneuropathy in diabetes
  Primary angle-closure glaucoma
  Sore throat

Report Request ID:   22582325

Print Date/Time:   10/2/2019 10:06 PDT

**WARNING:** **This report contains confidential, proprietary, and/or legally privileged
information intended for the recipient only.**

**RJD - RJ Donovan Correctional Facility**

Patient:     **SEPULVEDA, AURELIO MARTIN**
DOB/Age/Sex:  12/26/1970 / 48 years     / Male          CDCR: J76828

---

### Progress Notes

LUNGS: Breath sounds are clear bilaterally without rales, rhonchi or wheezing.
HEART: Regular rate and rhythm.
EXTREMITIES: Without any cyanosis, clubbing, rash, lesions or edema.
VASCULAR: All pulses are palpable. Bilateral feet pedal pulses (PT and DP) Triphasic +2 pulses with Doppler PT and DP
LYMPHATIC: No Cervical, supra/intraclavicular, axillary, trochlear adenopathy

Local Wound Assessment: Left lower extremity dorsal side 4th toe extending to mid dorsal side of foot 6.5 X 2.1 cm flat eschar tissue covdered - no obviously visible or palpable bone. no current purulence, local faint erythema noted, 0ntact intact sensation in toes and able to move.

No debridement indicated today.

#### Assessment/Plan
1. Cellulitis of fourth toe of left foot
   During the hospitalization patient had a x-ray done with no signs of osteomyelitis. Will update dressing change daily with nursing. No alarming signs or symptoms noted. Explained patient signs and symptoms or infections, important of follow-up with nursing staff dressing change, and medication compliant. Answered all the questions. We will follow-up this patient next week to keep a closer watch.

EDUCATION: Discussed the assessment and plan. Encouraged healthy living, nutrition, and exercise as tolerated and low-salt and low cholesterol diet. Avoid alcohol, tobacco, illicit drugs and hepatotoxic exposures. Do not do any tattoos, share needles, toothbrushes or razors. Safe sexual practice. Patient education on medication management, side effects, risks and benefits of medication, as well as risks of uncontrolled disease, up to and including the possibility of death. The importance of compliance was discussed. Urgent care precautions were discussed. The patient is to return to clinic earlier if symptoms worsen.

EFFECTIVE COMMUNICATION: TABE SCORE: 12.9. Effective communication was achieved. Additional time was taken to effectively communicate with the patient. I spoke slowly, clearly, and used simple language. He was able to summarize information. He answered questions verbally and nonverbally. The patient's questions were answered. The patient verbalized understanding in his own words and agreed to the treatment plan to my satisfaction.

Superficial ulcer of skin
Unspecified arthropathy, pelvic region and thigh
Vision changes
Historical
   No qualifying data

**Procedure/Surgical History**
4/9/18 PTCA and Stent placed in mid Circumflex artery, Arthroscopy, knee, cardiac cath with left circumflex stent placement
4/9/18, Colonoscopy, Diagnostic ultrasound of digestive system, Diagnostic ultrasound of heart, Esophagogastroduodenoscopy [EGD] with closed biopsy, Magnetic resonance imaging of spinal canal, Other cardiovascular stress test.

#### Medications
**Active Medications:**
aspirin  81 mg Oral Daily-KOP KOP
atorvastatin  80 mg Oral qPM-KOP KOP
carvedilol  6.25 mg Oral BID-KOP KOP
clopidogrel  75 mg Oral Daily-KOP KOP
glucose  37.5 gm Oral Daily-KOP KOP PRN: low blood sugar
insulin glargine  50 unit Subcutaneous BIDAC NA
insulin lispro  25 unit Subcutaneous TIDAC NA
levalbuterol  90 mcg Oral q6hr-KOP90 KOP PRN: shortness of breath
liraglutide  1.8 mg Subcutaneous Daily NA
losartan  25 mg Oral Daily-KOP KOP
mometasone-formoterol  2 puff Oral BID-KOP KOP
nitroglycerin  0.4 mg Sublingual q5min-KOP KOP PRN: chest pain
spironolactone  25 mg Oral Daily-KOP KOP

---

Report Request ID:    22582325                    Print Date/Time:   10/2/2019 10:06 PDT

**WARNING:** This report contains confidential, proprietary, and/or legally privileged information intended for the recipient only.



# EXHIBIT COVER PAGE

| H |
| :---: |
| EXHIBIT |

DESCRIPTION OF THIS EXHIBIT:

Medical Records:Aurelio Martin Sepulveda, CDCR # J-76828
Re: CARDIOLOGY

NUMBER OF PAGES TO THIS EXHIBIT:___10___PAGES.

JURISDICTION: (CHECK ONLY ONE)

☐ COUNTY GRAND JURY

☐ COUNTY MUNICIPAL COURT

☐ COUNTY CIRCUIT COURT

☐ COUNTY SUPERIOR COURT

☐ STATE COURT OF APPEAL

☒ UNITED STATES DISTRICT COURT

☐ STATE SUPREME COURT

☐ STATE BAR COURT

☐ STATE CIRCUIT COURT

☐ UNITED STATES SUPREME COURT

☐ OTHER:_____

Approved for
use with
Judicial
Council forms
(01-19-08)
MDT/CRA

Patient Name: SEPULVEDA, AURELIO MARTIN
Date of Birth: 12/26/1970

MRN: J76828
FIN: 1000000003511762197J76828

* Auth (Verified) *

## Tri-City Medical Center

| **Cardiology** |
| --- |

Legend: @ = Abnormal, * = Corrected, L = Low, H = High, R= Ref Lab, F= Footnote



**Tri-City Healthcare District**
4002 Vista Way, Oceanside, CA 92056, 760-724-8411

Sepulveda, Aurelio
MRN: 01321463
FIN#: 6002737837

Age/DOB/Sex: 48 years        12/26/1970    Male
Adm. Physician:   McCutcheon ,Claire M.

LOC: 3S; 320; 02
Service: MED
Admit Date:  10/15/2019
Discharge Date:
Request ID:    49961392

Print:    10/28/2019 10:27 PDT      Page 1 of 108

Facility: RJD

* Auth (Verified) *

## Tri-City Medical Center

| Cardiology |
| --- |

Signed By:
Rajamanickam ,Anitha (10/23/2019 13:18 PDT)

Performed By:
Rajamanickam ,Anitha (10/23/2019 13:18 PDT)

### RADIAL CARDIAC CATH /PCI REPORT

INDICATION: Positive Stress Test/Class II Anginal Symtoms

PHYSICIAN : Anitha Rajamanickam MD

### FINDINGS/FINAL DIAGNOSIS

1. 70% ISR of LCX
2. No significant aortic valve stenosis or gradient on pullback
3. Ejection fraction of 55-60%% (Limited View)
4. LVEDP is 5

### PROCEDURES PERFORMED

1. PTCA ofproximalLeft circumflex artery(LCX) In stent restenosis(ISR) using a NC 2.75/15 balloon
2. Left heart catheterizations and Selective Coronary angiogram
3.. Ventriculogram
4. LV and Aortic pressure gradients

### PROCEDURE DETAILS

CONCIOUS SEDATION : 50mcg of fentanyl and 1mg of Versed
ACCESS: Right femoral artery
CLOSURE: Hemostasis achieved with VascBand closure device
PULSES: Unchanged post prccedure from preprocedure.
COMPLICATIONS: None.
BLOOD LOSS: Minimal
DYE : 80cc

### PROCEDURE DESCRIPTION

After informed Consent was obtained , thepatient was transferred to the cardiac catheterization laboratory and prepped and draped as per
protocol under aseptic precautions. Time out was performed as per protocol. The labs, medications, prior procedures, imaging and history
reviewed prior to begining the procedure. It was confirmed again that the patient is able to and willing to be compliant with dual antiplatelet
therapy if PCI is needed prior to starting the procedure.Decision was made just to PTCA if required and Stent after surgery if inicated

Conscious sedation was performed as per protocol. 2-3 cc of 1% Lidocaine was used as local anesthesia to numb the insertion site. Radial
artery access was obtained using a Seldinger technique and a 6Fr Radial sheath was inserted. The 6 French sheath was flushed with saline
and an opening pressure was recorded. Radial cocktail of 200 mcg of Verapamil, 200 mcg of Nitro and 5000 IU of Heparin were given via the
radial sheath. Blood pressures remained stable.

A 6 French JR4 catheter was inserted over a wire up to the mid ascending aorta. The aortic valve was crossed. The wire was removed and

Legend: @ = Abnormal, * = Corrected, L = Low, H = High, R= Ref Lab, F= Footnote

Sepulveda, Aurelio
MRN: 01321463
FIN#: 6002737837
DOB: 12/26/1970
Print: 10/28/2019 10:27 PDT

LOC: 3S; 320; 02
Service: MED
Admit Date: 10/15/2019
Discharge Date:
Request ID:  49961392

Facility: RJD

Patient Name: SEPULVEDA, AURELIO MARTIN
Date of Birth: 12/26/1970
MRN: J76828
FIN: 1000000351176219 7J76828

* Auth (Verified) *

## Tri-City Medical Center

### Cardiology

the catheter was flushed taking care to always ensure that the system was free of air. The left ventricular end-diastolic pressure and systolic pressure was recorded. Left ventriculogram was performed using standard views with a hand-held injection using 10 cc of dye. The catheter was pulled back after flushing the system out of dye to record the aortic pullback gradient. The right coronary artery was then engaged using the JR4 and angiographic pictures of the right coronary artery were performed using standard views. The JR4 catheter was exchanged over a long exchange wire for a 6 Fr JL3.5  and then JL 3.0 catheter. The wire was removed and the catheter was flushed taking care to always ensure that the system was free of air. Left main trunk was engaged and angiographic images of the left main, left coronary artery and left circumflex was performed using standard views. The JL  catheter was removed over the wire.

The decision was made to proceed with heparin as anticoagulant of choice. Patient was bolused with an additional 9000 units of heparin. ACT was checked as per protocol and ensure that ACT was therapeutic at greater than 250.  ACT was checked every 15 minutes throughout the procedure to ensure that ACT remained therapeutic.. A total of 12000 units of heparin were given.

The patient was given Brilinta 180 mg orally as a loading dose

A 6 French VL 3.0guiding catheter was taken up over the wire up to the mid ascending aorta.  The wire was removed and the catheter was flushed to ensure that there was no air in the system. The Left main trunkwas engaged using 6 French  guide. Therapeutic ACT anticoagulation was achieved. The *** lesion was crossed using a Runthrough wire . The lesion was predilated successfully using a Complaint 2.5/12balloon. The lesion was then stented using a *** drug eluting stent. The stent was post dilated to ***atmospheres using the stent balloon. Final angiogram after the wire was removed showed a well expanded stent with less than 10% stenosis . No dissection, perforation or any complications as evidenced by the final angiogram after the wire was removed.

Hemostasis was achieved as above. Patient left the lab in a stable condition.

**CORONARY ANGIOGRAM**

DOMINANCE: Leftdominant system
LMT: Large size vessel . Minimal luminal irregularities
LAD: Moderate size vessel. Minimal luminal irregularities .  Gives rise to  one moderate sized diagonol arterywhich show minimal luminal irregularities
LCX : Large size vessel . Minimal luminal irregularities.Gives rise to  large OM1,large OM2,LPL and LPDAwhich show minimal luminal irregularities
RCA : Moderate size vessel.  Proximal 70-80% stenosis. Rest of the vessel shows Minimal luminal irregularities .
RAMUS: Moderate size vessel. Minimal luminal irregularities .

**RECOMMENDATIONS**
1. Bed rest for 3 hours . Vasc band removal as per protocol. Remove 1-2 cc of air every 15minutes ensuring that there is now bleeding at access site.
2. 0.9 NS at 125cc/hr for10hours
3. Avoid Nonsteroidals ( Iburbrufen, Advil, Celebrex,Naproxen etc) for at least 1 week
4. Avoidheavy lifting (more than 5 pounds), and pushing or pulling heavy objects for the first 7 days after the procedure. Do not participate in strenuous activities for 7 days after the procedure. This includes most sports - jogging, golfing, play tennis, and bowling.
6. Follow up with your primary cardiologist in 2-4 weeks
7. HOLD METFORMIN for 48 hours if patient on metformin
8. Aspirin 81 mg daily
9.  Plavix 75 mg daily
10. Atorvastatin 80 mg daily
11. Losaratan 25 mg daily. Hold if blood pressure less than 100
12. Coreg 6.25 mg po BID  Hold if blood pressure less than 100 are heart rate less than 60
13. Lifestyle modifications and dietary counseling performed
14. BiV ICD per Dr.Pashmforoush

Legend: @ = Abnormal, * = Corrected, L = Low, H = High, R= Ref Lab, F= Footnote

---

Sepulveda, Aurelio          EG
MRN: 01321463
FIN#: 6002737837
DOB: 12/26/1970
Print: 10/28/2019 10:27 PDT

Page 6 of 108

LOC: 3S; 320; 02
Service: MED
Admit Date:  10/15/2019
Discharge Date:
Request ID:  49961392

Facility: RJD

Patient Name: SEPULVEDA, AURELIO MARTIN
Date of Birth: 12/26/1970

MRN: J76828
FIN: 10000003511762197J76828

* Auth (Verified) *

## Tri-City Medical Center

| Progress Note |
| --- |

Signed By:
Olonan ,Christopher D.(10/23/2019 12:31 PDT)

Performed By:
Olonan ,Christopher D.(10/23/2019 12:31 PDT)

patient is in cath lab

Electronically Signed By: Olonan , Christopher D.          MD
Electronically Signed On: 10/23/19 12:31 PDT

---

Signed By:
Pashmforoush ,Mohammad (10/22/2019 19:01 PDT)

Performed By:
Pashmforoush ,Mohammad (10/22/2019 19:01 PDT)

48 year old unfortunate male with DM And CAD and now ischemic/non-ischemic cardiomyopathy presnting with gangrene of foot.
Patien is noted to have profound cardiomyopathy and will most likely need a device (BIVICD).
If there is no evidence of bacteremia, can consider device placmenet during this hospitalization.

Electronically Signed By: Pashmforoush , Mohammad
Electronically Signed On: 10/22/19 19:01 PDT

---

Signed By:
Rajamanickam ,Anitha (10/23/2019 12:19 PDT)

Performed By:
Rajamanickam ,Anitha (10/22/2019 16:47 PDT)

### Subjective
No new complaints.  Patient is disappointed that he cannot go for surgery yet

### CARDIAC WORK-up

1. EKG shows normal sinus rhythm with interventricular conduction delay
2. Echocardiogram on 10/21/2019 was a technically difficult study due to patient's body habitus.Dilated left ventricular cardiomyopathy, estimated LVEF 29 %, with thinning and akinesis of the septum and inferior wall.Normal right ventricular size and systolic function. Normal right and left atrial size.No significant valvular abnormality identified.Prior echo 11/19/2015 : LVEF decreased from 70 % to 29 %, with new wall motion abnormalities.on 10/22/2019 Definity image enhancement to re-evaluate left ventricular size and function.Dilated left ventricular cardiomyopathy, estimated LVEF 30 %.Image enhanced (Definity) echo demonstrates akinesis of the septum, inferior wall, and apex. No thrombus was identified.LV volume is severely increased at 98 ml/m2.
Prior echo 10/21/2019 : LV function measured the same but volume measurement increased with the use of Definity
3. NUCLEAR STRESS TEST shows medium sized LAD territory infarct with mild reversible proximal peri-infarct ischemia.  Left ventricular dilatation and severe generalized LV hypokinesis with mild transient ischemic dilatation.  Ejection fraction of 19%

### ASSESSMENT

1. Diabetic foot with gangrene
2. Preoperative clearance prior to intermediate risk surgery
3. Hypertension
4. Insulin-dependent diabetes mellitus

**Medications**
albuterol, 1.25 mg= 3 mL, NEB, Q2HR, PRN
Aldactone, 25 mg= 1 tab, ORAL, DAILY
aminophylline, 50 mg= 2 mL, IV PUSH, AS DIRECTED, PRN
aspirin, 81 mg= 1 tab, ORAL, DAILY
ceftriaxone IVPB
Coreg, 6.25 mg= 2 tab, ORAL, BID
D50 IV Bolus, 15 g= 30 mL, IV PUSH, PRN, PRN
glucagon, 1 mg= 1 vial, IM, AS DIRECTED, PRN
glucose ORAL, 15 g= 60 mL, ORAL, AS DIRECTED, PRN
HumaLOG, Resistant Correction Factor, SUBQ, AC AND HS
hydralazine INJ, 10 mg= 0.5 mL, IV PUSH, Q6HR, PRN
ibuprofen, 800 mg= 1 tab, ORAL, Q8HR, PRN
influenza virus vaccine, 0.5 mL, IM, ON CALL
insulin lisPRO, 12 units, SUBQ, TIDAC
lactobacillus acidophilus and bulgaricus, 1 tab, ORAL, TID
Lantus, 45 units, SUBQ, BID
Lipitor, 80 mg= 2 tab, ORAL, QPM

---

Legend: @ = Abnormal, * = Corrected, L = Low, H = High, R= Ref Lab, F= Footnote

Sepulveda, Aurelio
MRN: 01321463
FIN#: 6002737837
DOB: 12/26/1970
Print: 10/28/2019 10:27 PDT

Page 52 of 108

LOC: 3S; 320; 02
Service: MED
Admit Date:  10/15/2019
Discharge Date:
Request ID:  49961392

Facility: RJD

Patient Name: SEPULVEDA, AURELIO MARTIN
Date of Birth: 12/26/1970

MRN: J76828
FIN: 10000003511762197J76828

* Auth (Verified) *

## Tri-City Medical Center

| Progress Note |
| --- |

5.  CAD.  S/P non-STEMI with PCI to most likely LAD in April 2018 with a positive stress test showing peri-infarct ischemia.
6.  Nonischemic cardiomyopathy. Chronic systolic heart failure without any acute exacerbation last EF we have here was in 2015 which is 70%.  Currently 29%.

### RECOMMENDATIONS

1.  Patient is asymptomatic currently.
2.  No signs and symptoms of heart failure exacerbation
3.  Continue on aspirin 81 mg daily
4.  Continue on Coreg 6.25 mg p.o. twice daily.  Heart rate less than 60 or blood pressure less than 100
5.  Continue on atorvastatin 80 mg daily.  LDL goal of less than 70
6.  Continue on losartan 25 mg daily.  Hold if blood pressure less than 100
7.  Continue on Plavix 75 mg daily
8.  Will try again to get records from Alvarado Hospital
9.  Coronary angiogram in a.m.
10.  Will need to follow-up with electrophysiology as an outpatient.  Would refer to Dr. PAshmforoush regarding need for an BI VICD placement as an outpatient
11.  Risk benefits and alternatives of coronary angiogram discussed with patient in detail. He fully understands the risks are inclusive of but not limited to ESRD requiring hemodialysis, stroke, death, perforation and urgent surgery.  Adequate time was given to patient to ask questions.  All his questions were answered to satisfaction.  He is fully willing to proceed understanding the risks benefits and alternatives.  Patient is able to take dual antiplatelet therapy.  However discussed with his orthopedic surgeon says he can proceed with surgery on aspirin and Plavix if required.  We will evaluate coronary anatomy to see if PTCA is an option.  We will consider stent for rescue if required.  He can be brought back after surgery in 4 to 6 weeks for PCI

### Objective

#### Vitals & Measurements
T: 36.7 °C (Oral)  TMIN: 36.4 °C (Oral)  TMAX: 36.8 °C (Oral)  HR: 96(Peripheral)  RR: 18
BP: 129/76  SpO2: 98%
Room Air/Oxygen Therapy: Room air (10/22/19 14:58:00 PDT)

#### Physical Exam
GENERAL: Patient is alert oriented ×3.  In no apparent distress
HEENT: Bilateral pupils reactive, EOMI
CVS: S1, S2, rate rhythm regular
RS: Bilateral air entry, no crackles, no rhonchi,
ABDOMEN: Soft, nontender, nondistended, bowel sounds heard
Extremities: Bandage in the left foot.  Left 4th toe has infection on the dorsal left fourth toe with discharge and gangrenous change extending along the 4th metatarsal
JVD: No JVD
CNS: Patient is alert oriented ×3, speech is normal, no gross focal neurological deficits, moves all extremities

| | This visit (24 hour periods starting at 06:00 PDT) | | |
| --- | --- | --- | --- |
| | 10/22/19 * | 10/21/19 | 10/20/19 |
| Total Summary | | | |
| Intake mL | 708 | 1,590 | 2,250 |

Legend: @ = Abnormal, * = Corrected, L = Low, H = High, R= Ref Lab, F= Footnote

losartan, 25 mg= 1 tab, ORAL, DAILY
magnesium sulfate IVPB, 1 g= 100 mL, IVPB, AS DIRECTED, PRN
metroNIDAZOLE, 500 mg= 1 tab, ORAL, Q8HR
Normal Saline Flush, 10 mL, IV PUSH, PRN, PRN
Plavix, 75 mg= 1 tab, ORAL, DAILY
sucralfate, 1 g= 1 tab, ORAL, QIDACHS
vancomycin
Vancomycin per Pharmacy, 1 dose= 1 mL, IVPB, PHARMACYONLY
Zofran, 4 mg= 1 tab, ORAL, Q6HR, PRN

### Diagnostic Results
NM Cardiac Rst/Str/Trd/Gated/Ef w/Adenos
10/22/19 10:22:15
IMPRESSION:MEDIUM- SIZED LAD TERRITORY INFARCT, WITH MILD REVERSIBLE PROXIMAL PERI- INFARCT ISCHEMIA.LEFT VENTRICULAR DILATATION AND SEVERE GENERALIZED LEFT VENTRICULAR HYPOKINESIS, WITH MILD TRANSIENT ISCHEMIC DILATATION.SEVERELY DIMINISHED LEFT VENTRICULAR EJECTION FRACTION OF 19%.ACC RISK CATEGORY: HIGH.Low risk group:_Normal or small myocardial perfusion defects at rest or with stress.Intermediate risk group : (1 to 3% mortality risk)_Mild to moderate resting left ventricular dysfunction with ejection fraction of 35 - 49%._Moderate perfusion defects without left ventricular dilatation or increased lung uptake.High risk group: (>3 percent annual mortality rate)_Severe left ventricular dysfunction with ejection fraction of less 35%._Stress induced large perfusion defect particularly if anterior._Stress induced multiple perfusion defects of moderate size._Large fixed perfusion defect with LV dilatation or increased lung uptake._Stress induced moderate perfusion defect with LV dilatation or increased lung uptake.TECHNICAL COMMENTS
Signed By: Penry , Jackson W.
*****************************************
XR Chest 1 View Portable
10/21/19 09:36:56
IMPRESSION:NO ACUTE CARDIOPULMONARY FINDINGS.mnTranscribed by: 10/21/2019 9:45 AMTECHNICAL COMMENTS
Signed By: Stupin , Jeremy S.

---

Sepulveda, Aurelio
MRN: 01321463
FIN#: 6002737837
DOB: 12/26/1970
Print: 10/28/2019 10:27 PDT

Page 53 of 108

LOC: 3S; 320; 02
Service: MED
Admit Date:  10/15/2019
Discharge Date:
Request ID:  49961392

Patient Name: SEPULVEDA, AURELIO MARTIN
Date of Birth: 12/26/1970

MRN: J76828
FIN: 1000000351176219TJ76828

* Auth (Verified) *

## Tri-City Medical Center

| Progress Note |
|---|

rate)._Severe left ventricular dysfunction with ejection fraction of less 35%._Stress induced large perfusion defect particularly if anterior._Stress induced multiple perfusion defects of moderate size._Large fixed perfusion defect with LV dilatation or increased lung uptake._Stress induced moderate perfusion defect with LV dilatation or increased lung uptake.TECHNICAL COMMENTS
Signed By: Penry , Jackson W.

**Lab Results**
MICROBIOLOGY
Blood Culture: Double Click (10/16/19 05:19:00 PDT)
TOXICOLOGY/DRUG LEVLES
Vanco Tr: 19.5 mcg/mL (10/23/19 10:33:00 PDT)
WBCs: 7.5 K/uL (10/24/19 05:56:00 PDT)
RBC: 4.25 M/uL Low (10/24/19 05:56:00 PDT)
Hgb: 12.7 g/dL Low (10/24/19 05:56:00 PDT)
Hematocrit: 37.5 % Low (10/24/19 05:56:00 PDT)
Platelets: 153 K/uL (10/24/19 05:56:00 PDT)
**Chemistry**
Anion Gap: 7 mmol/L (10/24/19 05:56:00 PDT)
BUN: 17 mg/dL (10/24/19 05:56:00 PDT)
Calcium: 8.6 mg/dL (10/24/19 05:56:00 PDT)
Chloride: 104 mEq/L (10/24/19 05:56:00 PDT)
CO2: 28 mEq/L (10/24/19 05:56:00 PDT)
Creatinine: 0.69 mg/dL (10/24/19 05:56:00 PDT)
GFR: >60 (10/24/19 05:56:00 PDT)
Glucose Lvl: 169 mg/dL High (10/24/19 05:56:00 PDT)
Potassium: 3.7 mEq/L (10/24/19 05:56:00 PDT)
Sodium: 138 mEq/L (10/24/19 05:56:00 PDT)

Electronically Signed By: Olonan , Christopher D.          MD
Electronically Signed On: 10/24/19 12:56 PDT

Signed By:
Rajamanickam ,Anitha (10/23/2019 13:24 PDT)

Performed By:
Rajamanickam ,Anitha (10/23/2019 13:24 PDT)

**Subjective**
Seen pre and post PTCA. No complaints.Anxious to get surgery

**CARDIAC WORK-up**

1. EKG shows normal sinus rhythm with interventricular conduction delay
2. Echocardiogram on 10/21/2019 was a technically difficult study due to patient's body habitus.Dilated left ventricular cardiomyopathy, estimated LVEF 29 %, with thinning and

**Medications**
albuterol, 1.25 mg= 3 mL, NEB, Q2HR, PRN
Aldactone, 25 mg= 1 tab, ORAL, DAILY
aminophylline, 50 mg= 2 mL, IV PUSH, AS DIRECTED, PRN
aspirin, 81 mg= 1 tab, ORAL, DAILY
ceftriaxone IVPB

Legend: @ = Abnormal, * = Corrected, L = Low, H = High, R= Ref Lab, F= Footnote

Sepulveda, Aurelio
MRN: 01321463
FIN#: 6002737837
DOB: 12/26/1970
Print: 10/28/2019 10:27 PDT

Page 49 of 108

LOC: 3S; 320; 02
Service: MED
Admit Date:  10/15/2019
Discharge Date:
Request ID:  49961392

Facility: RJD

Patient Name: SEPULVEDA, AURELIO MARTIN                                                    MRN: J76828
Date of Birth: 12/26/1970                                                    FIN: 10000003511762197J76828

* Auth (Verified) *

## Tri-City Medical Center

### Progress Note

akinesis of the septum and inferior wall. Normal right ventricular size and systolic function. Normal right and left atrial size. No significant valvular abnormality identified. Prior echo 11/19/2015 : LVEF decreased from 70 % to 29 %, with new wall motion abnormalities.on 10/22/2019 Definity Image enhancement to re-evaluate left ventricular size and function. Dilated left ventricular cardiomyopathy, estimated LVEF 30 %. Image enhanced (Definity) echo demonstrates akinesis of the septum, inferior wall, and apex. No thrombus was identified. LV volume is severely increased at 98 ml/m2.
Prior echo 10/21/2019 : LV function measured the same but volume measurement increased with the use of Definity
3. NUCLEAR STRESS TEST shows medium sized LAD territory infarct with mild reversible proximal peri-infarct ischemia. Left ventricular dilatation and severe generalized LV hypokinesis with mild transient ischemic dilatation. Ejection fraction of 19%
4. PTCA of proximal Left circumflex artery(LCX) In stent restenosis(ISR) using a NC 2.75/15 balloon. Hs 80% stenosis of a non dominant RCA

### ASSESSMENT

1. Diabetic foot with gangrene
2. Preoperative clearance prior to intermediate risk surgery
3. Hypertension
4. Insulin-dependent diabetes mellitus
5. CAD. S/P non-STEMI with PCI to most likely LAD.in April 2018 with a positive stress test showing peri-infarct ischemia.s/p PTCA of IS of LCX -
6. Nonischemic cardiomyopathy. Chronic systolic heart failure without any acute exacerbation last EF we have here was in 2015 which is 70%. Currently 29%.

### RECOMMENDATIONS

1. Patient is asymptomatic currently.
2. No signs and symptoms of heart failure exacerbation
3. Continue on aspirin 81 mg daily
4. Continue on Coreg 6.25 mg p.o. twice daily. Heart rate less than 60 or blood pressure less than 100
5. Continue on atorvastatin 80 mg daily. LDL goal of less than 70
6. Continue on losartan 25 mg daily. Hold if blood pressure less than 100
7. Continue on Plavix 75 mg daily
8. Will try again to get records from Alvarado Hospital
9. Will need to follow-up with electrophysiology -Dr. Pashmforoush regarding need for an BI VICD placement
10 Dw with Dr. Clalafi. may proceed with surgery in am
11. Optimized for low to intermediate risk surgery from a cardiac standpoint per ACC/AHA guidelines.
12. Consider PCI of non dominant RCA only if symptomatic on maximal antianginal therapy

### Objective

#### Vitals & Measurements
T: 36.6 °C (Oral) TMIN: 36.4 °C (Oral) TMAX: 38.7 °C (Oral) HR: 94(Peripheral) RR: 18
BP: 154/88 SpO2: 99% WT: 84 kg
Room Air/Oxygen Therapy: Room air (10/23/19 13:16:00 PDT)

#### Physical Exam
GENERAL: Patient is alert oriented ×3. In no apparent distress

Coreg, 6.25 mg= 2 tab, ORAL, BID
D50 IV Bolus, 15 g= 30 mL, IV PUSH, PRN, PRN
glucagon, 1 mg= 1 vial, IM, AS DIRECTED, PRN
glucose ORAL, 15 g= 60 mL, ORAL, AS DIRECTED, PRN
HumaLOG, Resistant Correction Factor, SUBQ, AC AND HS
hydralazine INJ, 10 mg= 0.5 mL, IV PUSH, Q6HR, PRN
ibuprofen, 800 mg= 1 tab, ORAL, Q8HR, PRN
influenza virus vaccine, 0.5 mL, IM, ON CALL
insulin lisPRO, 12 units, SUBQ, TIDAC
lactobacillus acidophilus and bulgaricus, 1 tab, ORAL, TID
Lantus, 45 units, SUBQ, BID
Lipitor, 80 mg= 2 tab, ORAL, QPM
losartan, 25 mg= 1 tab, ORAL, DAILY
magnesium sulfate IVPB, 1 g= 100 mL, IVPB, AS DIRECTED, PRN
metroNIDAZOLE, 500 mg= 1 tab, ORAL, Q8HR
Normal Saline Flush, 10 mL, IV PUSH, PRN, PRN
NS 1,000 mL, 1000 mL, IV CONTINUOUS
Plavix, 75 mg= 1 tab, ORAL, DAILY
sucralfate, 1 g= 1 tab, ORAL, QIDACHS
vancomycin
Vancomycin per Pharmacy, 1 dose= 1 mL, IVPB, PHARMACYONLY
Zofran, 4 mg= 1 tab, ORAL, Q6HR, PRN

#### Diagnostic Results
NM Cardiac Rst/Str/Trd/Gated/Ef w/Adenos
10/22/19 10:22:15
IMPRESSION:MEDIUM- SIZED LAD TERRITORY INFARCT, WITH MILD REVERSIBLE PROXIMAL PERI- INFARCT ISCHEMIA.LEFT VENTRICULAR DILATATION AND SEVERE GENERALIZED LEFT VENTRICULAR HYPOKINESIS, WITH MILD TRANSIENT ISCHEMIC DILATATION.SEVERELY DIMINISHED LEFT VENTRICULAR EJECTION FRACTION OF 19%.ACC RISK CATEGORY: HIGH.Low risk group:_Normal or small myocardial perfusion defects at rest or with stress.Intermediate risk group : (1 to 3% mortality risk)_Mild to moderate resting left ventricular dysfunction with ejection fraction of 35 - 49%._Moderate perfusion defects without left ventricular

Legend: @ = Abnormal, * = Corrected, L = Low, H = High, R= Ref Lab, F= Footnote

Sepulveda, Aurelio                                              LOC: 3S; 320; 02
MRN: 01321463                                                   Service: MED
FIN#: 6002737837                                               Admit Date: 10/15/2019
DOB: 12/26/1970                                                 Discharge Date:
Print: 10/28/2019 10:27 PDT              Page 50 of 108         Request ID:  49961392

Patient Name: SEPULVEDA, AURELIO MARTIN
Date of Birth: 12/26/1970

MRN: J76828
FIN: 1000000351176219J76828

\* Auth (Verified) \*

## Tri-City Medical Center

### Magnetic Resonance Imaging

| Accession Number | Exam | Exam Date/Time | Ordering Provider |
|---|---|---|---|
| MR-19-0005575 | MR Foot Left w/wo Contrast | 10/16/2019 11:47 PDT | McCutcheon ,Claire M. |

**Report**
IMPRESSION:

OSTEOMYELITIS INVOLVING THE LEFT FOURTH TOE.

NO EVIDENCE OF ABSCESS.

TECHNICAL COMMENTS
\*\*\* Final Report\*\*\*
Dictated by: Nicpon , Gregory
Dictated on:  10/16/19 12:01
Signed By:  Nicpon , Gregory

Finalized Date and Time 10.16.2019 12:04

### Nuclear Medicine

| Accession Number | Exam | Exam Date/Time | Ordering Provider |
|---|---|---|---|
| NM-19-0002886 | NM Cardiac Rst/Str/Trd/Gated/Ef w/Adenos | 10/22/2019 10:05 PDT | Rajamanickam ,Anitha |

**Reason for Exam**
(NM Cardiac Rst/Str/Trd/Gated/Ef w/Adenos) Chest Pain

**Report**
RADIOPHARMACEUTICALS: 3.5 mCi Thallium-201 IV at rest and 25 mCi technetium 99m Myoview IV at stress.

INDICATION:  Chest pain.

COMPARISON:  Nuclear medicine myocardial perfusion imaging 7/6/2015.

PROCEDURE: 1-day Myocardial Perfusion Scan. SPECT imaging was performed at rest followed by same day gated SPECT imaging after pharmacological stress with 0.4 mg Lexiscan IV.

FINDINGS:

PERFUSION:

Medium- sized, approximately 15%, moderate- severe intensity, primarily fixed perfusion defect extending along the anterior wall from the apex to the mid ventricle, with some mild reversibility proximally.

Additional mild fixed probable diaphragmatic attenuation artifact.

WALL MOTION: Severe generalized left ventricular hypokinesis. TID value is 1.35.

Legend: @ = Abnormal, \* = Corrected, L = Low, H = High, R= Ref Lab, F= Footnote

Sepulveda, Aurelio
MRN: 01321463
FIN#: 6002737837
DOB: 12/26/1970
Print: 10/28/2019 10:27 PDT

Page 106 of 108

LOC: 3S; 320; 02
Service: MED
Admit Date:  10/15/2019
Discharge Date:
Request ID:  49961392

Facility: RJD

Patient Name: SEPULVEDA, AURELIO MARTIN                                                                                    MRN: J76828
Date of Birth: 12/26/1970                                                                                   FIN: 1000000351176219J76828

* Auth (Verified) *

# Tri-City Medical Center

## Nuclear Medicine

| Accession Number | Exam | Exam Date/Time | Ordering Provider |
|---|---|---|---|
| NM-19-0002886 | NM Cardiac Rst/Str/Trd/Gated/Ef w/Adenos | 10/22/2019 10:05 PDT | Rajamanickam ,Anitha |

**Report**

LVEF: 19% (Normal 50% or above). End diastolic volume is 263 mL, and end systolic volume is 212 mL.

IMPRESSION:

MEDIUM- SIZED LAD TERRITORY INFARCT, WITH MILD REVERSIBLE PROXIMAL PERI- INFARCT ISCHEMIA.

LEFT VENTRICULAR DILATATION AND SEVERE GENERALIZED LEFT VENTRICULAR HYPOKINESIS, WITH MILD TRANSIENT ISCHEMIC DILATATION.

SEVERELY DIMINISHED LEFT VENTRICULAR EJECTION FRACTION OF 19%.

ACC RISK CATEGORY: HIGH.

Low risk group:

-Normal or small myocardial perfusion defects at rest or with stress.

Intermediate risk group : (1 to 3% mortality risk)

-Mild to moderate resting left ventricular dysfunction with ejection fraction of 35 - 49%.
-Moderate perfusion defects without left ventricular dilatation or increased lung uptake.

High risk group: (>3 percent annual mortality rate)

-Severe left ventricular dysfunction with ejection fraction of less 35%.
-Stress induced large perfusion defect particularly if anterior.
-Stress induced multiple perfusion defects of moderate size.
-Large fixed perfusion defect with LV dilatation or increased lung uptake.
-Stress induced moderate perfusion defect with LV dilatation or increased lung uptake.

TECHNICAL COMMENTS
    *** Final Report***
Dictated by:  Penry , Jackson W.
Dictated on:   10/22/19 10:29
Signed By:  Penry , Jackson W.

Finalized Date and Time 10.22.2019 10:32

Legend: @ = Abnormal, * = Corrected, L = Low, H = High, R= Ref Lab, F= Footnote

Sepulveda, Aurelio                                                         LOC: 3S; 320; 02
MRN: 01321463                                                           Service: MED
FIN#: 6002737837                                                        Admit Date:  10/15/2019
DOB: 12/26/1970                                                          Discharge Date:
Print: 10/28/2019 10:27 PDT                  Page 107 of 108            Request ID:  49961392

Facility: RJD

Patient Name: SEPULVEDA, AURELIO MARTIN
Date of Birth: 12/26/1970

MRN: J76828
FIN: 1000000351176219 7J76828

* Auth (Verified) *

## Tri-City Medical Center

### Progress Note

Vanco Tr: 19.5 mcg/mL (10/23/19 10:33:00 PDT)
WBCs: 10.7 K/uL High (10/25/19 05:26:00 PDT)
RBC: 3.96 M/uL Low (10/25/19 05:26:00 PDT)
Hgb: 11.9 g/dL Low (10/25/19 05:26:00 PDT)
Hematocrit: 34.7 % Low (10/25/19 05:26:00 PDT)
Platelets: 153 K/uL (10/25/19 05:26:00 PDT)
**Chemistry**
Anion Gap: 8 mmol/L (10/25/19 05:26:00 PDT)
BUN: 12 mg/dL (10/25/19 05:26:00 PDT)
Calcium: 8.7 mg/dL (10/25/19 05:26:00 PDT)
Chloride: 101 mEq/L (10/25/19 05:26:00 PDT)
$CO_2$: 26 mEq/L (10/25/19 05:26:00 PDT)
Creatinine: 0.71 mg/dL (10/25/19 05:26:00 PDT)
GFR: >60 (10/25/19 05:26:00 PDT)
Glucose Lvl: 185 mg/dL High (10/25/19 05:26:00 PDT)
Potassium: 3.4 mEq/L Low (10/25/19 05:26:00 PDT)
Sodium: 135 mEq/L (10/25/19 05:26:00 PDT)

Electronically Signed By: Smith , Richard C.        MD
Electronically Signed On: 10/25/19 12:02 PDT

Signed By:
Pashmforoush , Mohammad (10/24/2019 18:37 PDT)

Performed By:
Pashmforoush , Mohammad (10/24/2019 18:37 PDT)

Patient is status post amputation of the foot. In addition, he is noted to have profound nonischemic cardiomyopathy. I do not suspect that his cardiomyopathy would improve significantly. Therefore, before discharge and only if the cultures are negative, I would recommend implantation of a biventricular AICD I will continue to follow the patient.

Electronically Signed By: Pashmforoush , Mohammad
Electronically Signed On: 10/24/19 18:37 PDT

Signed By:
Olonan ,Christopher D.(10/24/2019 12:56 PDT)

Performed By:
Olonan ,Christopher D.(10/24/2019 12:56 PDT)

**Subjective**
denies chest pain, denies shortness of breath, denies abdominal pain

**Objective**

Vitals & Measurements
T: 36 °C (Oral) TMIN: 36 °C (Oral) TMAX: 36.8 °C (Oral) HR: 90(Peripheral) RR: 18
BP: 151/91 SpO2: 97%
Room Air/Oxygen Therapy: Room air (10/24/19 11:50:00 PDT)

**Medications**
albuterol, 1.25 mg= 3 mL, NEB, Q2HR, PRN
Aldactone, 25 mg= 1 tab, ORAL, DAILY
aminophylline, 50 mg= 2 mL, IV PUSH, AS DIRECTED, PRN
aspirin, 81 mg= 1 tab, ORAL, DAILY
ceftriaxone IVPB
Coreg, 6.25 mg= 2 tab, ORAL, BID
D50 IV Bolus, 15 g= 30 mL, IV PUSH, PRN, PRN

Legend: @ = Abnormal, * = Corrected, L = Low, H = High, R= Ref Lab, F= Footnote

Sepulveda, Aurelio
MRN: 01321463
FIN#: 6002737837
DOB: 12/26/1970
Print: 10/28/2019 10:27 PDT

Page 47 of 108

LOC: 3S; 320; 02
Service: MED
Admit Date: 10/15/2019
Discharge Date:
Request ID: 49961392

Facility: RJD



# EXHIBIT COVER PAGE

| I |
|---|
| EXHIBIT |

DESCRIPTION OF THIS EXHIBIT:

Medical Records:Aurelio Martin Sepulveda, CDCR # J-76828
Re: AMPUTATION OF 4TH/5TH  RAYS @ LEFT FOOT

NUMBER OF PAGES TO THIS EXHIBIT:___11___PAGES.

JURISDICTION: (CHECK ONLY ONE)

☐ COUNTY GRAND JURY

☐ COUNTY MUNICIPAL COURT

☐ COUNTY CIRCUIT COURT

☐ COUNTY SUPERIOR COURT

☐ STATE COURT OF APPEAL

☒ UNITED STATES DISTRICT COURT

☐ STATE SUPREME COURT

☐ STATE BAR COURT

☐ STATE CIRCUIT COURT

☐ UNITED STATES SUPREME COURT

☐ OTHER:_____

Approved for
use with
Judicial
Council forms
(01-19-08)
MDT/CRA

Patient Name: SEPULVEDA, AURELIO MARTIN
Date of Birth: 12/26/1970

MRN: J76828
FIN: 1000000003511762197J76828

* Auth (Verified) *

## Tri-City Medical Center

| History & Physical |
|---|

-Patient taking 50 units of Lantus twice daily along with 25 units of lispro before meals. We will start at lower doses while he is in the hospital as diet may be more tightly controlled while he is here.
-* Currently continue Lantus 30 units twice daily +8 units lispro before meals plus resistant insulin sliding scale. Will uptitrate this as needed
- *Follow-up A1c
-ADA diet

3. Coronary artery disease status post stents in the past
-Continue aspirin and Coreg. Continue carvedilol.

4. Hypertension
-Continue losartan 25 mg
-Hydralazine as needed for hypertension

5. Hepatitis
-Continue on Aldactone although unclear if patient has history of cirrhosis or the true reason for being on Aldactone.

CPK: 158 IU/L (10/15/19 19:30:00 PDT)
Creatinine: 0.65 mg/dL (10/15/19 19:30:00 PDT)
GFR: >60 (10/15/19 19:30:00 PDT)
Glucose Lvl: 179 mg/dL High (10/15/19 19:30:00 PDT)
Lactic Acid Lvl: 2.1 mEq/L (10/15/19 19:30:00 PDT)
Lipase Lvl: 92 unit/L High (10/15/19 19:30:00 PDT)
Potassium: 4.3 mEq/L (10/15/19 19:30:00 PDT)
SGOT (AST): 25 IU/L (10/15/19 19:30:00 PDT)
SGPT (ALT): 37 IU/L (10/15/19 19:30:00 PDT)
Sodium: 137 mEq/L (10/15/19 19:30:00 PDT)
Total Protein: 7.9 g/dL (10/15/19 19:30:00 PDT)
Troponin: 0.03 ng/mL (10/15/19 19:30:00 PDT)
***COAGULATION***
Protime INR: 1.1 (10/15/19 19:30:00 PDT)
PT: 13.6 seconds (10/15/19 19:30:00 PDT)

Diagnostic Results
XR Foot 4 Views Left
10/15/19 16:38:37
IMPRESSION:SUSPICIOUS FOR SOME EROSIONS OF THE DISTAL PHALANX OF THE FOURTH TOE. PROBABLE OLD FRACTURE OF THE PROXIMAL PHALANX OF THE FOURTH TOE. IF FURTHER EVALUATION IS NEEDED, RECOMMEND MRI.sbTranscribed by: 10/15/2019 6:42 PMTECHNICAL COMMENTS
Signed By: Georgy , Bassem A.

Electronically Signed By: McCutcheon , Claire M.          MD
Electronically Signed On: 10/16/19 00:09 PDT

| Operative Report |
|---|

Signed By:
Calafi ,Arash (10/24/2019 18:03 PDT)

Performed By:
Calafi ,Arash (10/24/2019 15:04 PDT)

**Preoperative Diagnosis**
Left foot diabetic ulcer and gangrene involving the 4/5th rays

**Postoperative Diagnosis**
Left foot diabetic ulcer and gangrene involing the 4/5th rays

**Date of Procedure**
October 24, 2019 14:55:06

**Surgeon(s)**
Calafi , Arash (Surgeon)

**Assistant**
none

**Anesthesia**
General Anes
Boddu , Navneet K. (Anesthesiologist)

Legend: @ = Abnormal, * = Corrected, L = Low, H = High, R= Ref Lab, F= Footnote

Sepulveda, Aurelio
MRN: 01321463
FIN#: 6002737837
DOB: 12/26/1970
Print: 10/28/2019 10:27 PDT

LOC: 3S; 320; 02
Service: MED
Admit Date: 10/15/2019
Discharge Date:
Request ID: 49961392

Facility: RJD

Patient Name: SEPULVEDA, AURELIO MARTIN
Date of Birth: 12/26/1970

MRN: J76828
FIN: 10000003511762197J76828

* Auth (Verified) *

## Tri-City Medical Center

### Operative Report

**Name of Procedure:**
Ray amputation of 4th and 5th rays, irrigation and debridement with primary closure, application of short leg splint

**Anesthesia Type:**
General Anes
Boddu , Navneet K. (Anesthesiologist)

**Complications**
bone

**Unintended Retained Item**
None

**Procedure cancelled:[NA][(Include when and why cancelled)]**
N/A

**Indications**
Mr. Sepulveda is a 48-year-old man with poorly controlled diabetes mellitus and peripheral neuropathy, history of myocardial infarction, and hypertension who is been admitted for a left forefoot diabetic ulcer and concern for gangrene. He has previously been seen by my colleague Dr. Selden who has discussed his case with me. In brief, the patient reports that in early September he was hospitalized for pneumonia at Alvarado Hospital. Two-Three days after he was discharged back to jail he had taken off his sock and noted that his fourth toe was black. Apparently he was then hospitalized again at Alvarado Hospital where he went some sort of revascularization procedure of his left foot. The patient does not know any specific details about this. Unfortunately the appearance of the fourth toe has never improved. In fact it seems to have gotten worse. Patient was apparently treated with antibiotics for some period of time but the ulceration on top of his foot persisted. Just about a week ago the foot also began to become malodorous. He denies any systemic symptoms such as fevers chills chest pains or shortness of breath. Given his baseline neuropathy has very minimal pain (1/10) in his foot at this time. He denies a previous history of diabetic foot ulcers. He has had an ultrasound of the left lower extremity during his current stay, which seems to show normal arterial flow. He is also had an MRI of the left foot which suggest osteomyelitis involving the left fourth toe. Currently afebrile, has a normal white blood count, and is receiving broad-spectrum antibiotics. There is been no growth from his blood cultures.

As this wound has been ongoing for about a month and has been slowly worsening and concerning for wet gangrene- there is some urgency to removing the area of necrotic and infected tissue for source control. Currently on exam he has a palpable dorsalis pedis pulse, his foot appears to be warm and well-perfused, and he has had an ultrasound suggesting normal arterial flow. As such I feel there is a reasonable chance he can heal a trans metatarsal or ray amputation. I did have a long discussion with him that if this fails and does not heal or he develops a new infection then a more proximal amputation could be necessary, namely a below-knee amputation. This time I have discussed with him performing a knee amputation versus a transmetatarsal amputation, I will also assess his ankle dorsiflexion Intra-Op and if he does appear to have Achilles tightness may possibly perform a tendo Achilles lengthening. This would be with the goal of balancing the foot and relieving forefoot pressures which prevent future ulcerations. I also discussed the risks benefits and alternatives of surgery-typically pain, infection, damage to surrounding neurovascular structure, and need for additional procedures.
All of his questions were answered and he has consented to proceed as above.

**Findings**
gangrene type necrosis of dorsal soft tissue overlying 4th metatarsal extending towards 5th metatarsal. purulence underneath necrotic tissue at the level of all phalanges and distal 1/3 aspect of the 4th metatarsal. evidence of infection spreading to 4/5 webspace and 5th metarsal-phalangeal joint. No clear evidence of infection spreading toward 3rd ray.

---

Legend: @ = Abnormal, * = Corrected, L = Low, H = High, R= Ref Lab, F= Footnote

Sepulveda, Aurelio
MRN: 01321463
FIN#: 6002737837
DOB: 12/26/1970
Print: 10/28/2019 10:27 PDT

Page 37 of 108

LOC: 3S; 320; 02
Service: MED
Admit Date:  10/15/2019
Discharge Date:
Request ID:  49961392

Facility: RJD

Patient Name: SEPULVEDA, AURELIO MARTIN
Date of Birth: 12/26/1970

MRN : J76828
FIN: 1000000351176219776828

**\* Auth (Verified) \***

## Tri-City Medical Center

| Operative Report |
|---|

**Detailed Account of Procedure including Approach and Technique used**

Mr. Sepulveda was identified in the preoperative area. The operative extremity was marked and I again reviewed the procedure with the patient, who agreed to proceed as previously outlined. The patient was then brought to the operating room and transferred supine onto the operating room table. Prior to beginning with surgery I did obtain a preoperative culture through a swab at 4th dorsal area of necrosis. General endotracheal anesthesia was then induced by the anesthesia team. I applied a non-sterile tourniquet to the left upper thigh, however, this was not used during the case and consideration of maximizing healing potential given vascular disease. The left lower extremity was then prepped and draped in typical sterile fashion. A time-out was again called verifying the correct patient procedure and operative extremity. I began by thoroughly investigating the forefoot. The dorsal area of skin and soft tissue necrosis involved the 4th ray to the level of the mid to proximal metatarsal shaft. It also spread somewhat into the 5th ray. The 3rd ray appeared to be spared of necrosis and infection. I made a sharp dissection around the border of the clearly demarcated area of necrosis and began slowly spread with a hemostat to see if the infection had spread outside of this area. There was frank purulence underlying the black necrotic tissue. The infection did not appear to spread to the 3rd ray where the tissue was healthy and bleeding. Similarly, proximal to my incision overlying the 4/5 metatarsals the tissue appeared healthy and bleeding . I determined that a ray resection of the 4/5th rays would be adequate for achieving clean margins of infection and necrotic tissue. Dorsally the incision was made just proximal to the border of necrotic tissue, and plantarly the tissue was not necrotic so the incision plantarly was made as distal and close to the metatarsal heads as possible.

I made my skin incisions being cautious not to undermine the tissue in an oblique fashion but rather full thickness tissue cuts directly onto bone. I achieved hemostasis over the dorsum and then plantarly using Bovie cautery and pressure. As I was completing dissection, I again noted that the zone I had chosen did appear to be healthy proximally as I expected and non viable distally. Once on the metatarsal shafts of 4 and 5, I elevated the periosteum using scalpel and key elevator. I then made my metatarsal bony cuts. I began on the 4th metatarsal and made a cut beveled plantarly to remove more bone plantarly as well as beveled to cut more bone laterally. I then cut the fifth metatarsals again beveled to remove more bone laterally and plantarly to form a nice cascade that would accommodate the soft tissue stump. This was also checked on fluoroscopy and short sutmps of the 4/5th metatarsals remained, having removed the distal 2/3 of the 4th and 5th metatarsals. Once this was complete I then identified both the extensor and flexor tendons held them with an Allis clamp, retracted them away from the foot ,and cut them as proximally as possible. I identified any digital nerves that I could see and removed these in a similar fashion cutting them as proximal as possible to prevent neuroma formation. Any remaining plantar plate were also removed as these could be sources of infection. Once I was pleased with source control and that all tissue remaining appeared healthy I performed a copious irrigation using 9 L of normal saline.

Subsequently, I re-checked hemostasis and used Bovie cautery to cauterize any remaining bleeders. Once I was pleased with the hemostasis I placed 2 g of vancomycin powder within the wound for further source control of the infection. I then brought the plantar flap over the metatarsals exposed dorsally. I paid very close attention to the closure to ensure that good soft tissue technique was utilized to maximize healing potential. First, I used 2-0 Vicryl stitches to attach the plantar flap to the periosteum and overlying dorsal tissue in an interrupted fashion. I placed a few 3-0 Monocryl's in a subcutaneous fashion after this to for further approximate the skin. The skin was then closed with 3 -0 Nylon sutures in a vertical mattress fashion to minimize skin tension. I checked capillary refill in the plantar fat pad that had been brought up it was sluggish but intact. The stump itself did appear pink rather than blanched however, I also poked it with a 25-gauge needle and there was slow bleeding

---

Legend: @ = Abnormal, \* = Corrected, L = Low, H = High, R= Ref Lab, F= Footnote

Sepulveda, Aurelio
MRN: 01321463
FIN#: 6002737837
DOB: 12/26/1970
Print: 10/28/2019 10:27 PDT

Page 38 of 108

LOC: 3S; 320; 02
Service: MED
Admit Date:  10/15/2019
Discharge Date:
Request ID:  49961392

* Auth (Verified) *

## Tri-City Medical Center

### Operative Report

which was also promising.  As such I felt there was a possibility that this would heal.  I then checked the dorsiflexion of the ankle.  With the knee fully extended I could get the ankle to neutral dorsiflexion and therefore I felt no percutaneous Achilles lengthening was needed.  I then placed Steri-Strips over the incision to further decrease tension across the stitches and skin incision, followed by Adaptic soaked in Betadine solution followed by very loosely applied gauze and Curlex to minimize tension on the stump and the incision.  A short leg splint was then applied after being extensively padded with web roll to prevent pressure ulceration.  The patient was then awaken from general endotracheal anesthesia without complication and transferred to the PACU in stable condition.

**Postoperative Plan:**
Mr. Sepulveda will remain on broad-spectrum antibiotics.  I did take multiple cultures in the operating room which can be followed and likely antibiotic can be narrowed.  It will be interesting to see, however, if there is any growth from the cultures given that  he has been on broad-spectrum antibiotics for some time. he will need to remain non weight bearing until the wound is fully healed. He will need to be in a short leg splint for the first 7-10 days.  If all this goes according to plan then I would see him again in 10 days in my clinic to evaluate the wounds. I will likely leave the sutures in for prolonged period of time given the poor tissue quality and high risk status, likely for 3 to 6 weeks.  Once the amputation is healed, we will fit him with a special orthotic or shoe insert to  facilitate gait.  If unfortunately the amputation fails to heal or becomes infected, then he would likely require a below-knee amputation.

**Estimated Blood Loss**
30cc

**Specimen(s)**
multiple tissue cultures sent to lab for analsys

**Patient Status**
stable

Electronically Signed By: Calafi , Arash           MD
Electronically Signed On: 10/24/19 18:03 PDT

### Procedure Note

Signed By:                                          Performed By:
Calafi ,Arash (10/24/2019 12:11 PDT)              Calafi ,Arash (10/24/2019 12:11 PDT)

**Physician Pre-Procedure Documentation Entered On: 10/24/2019 12:11 PDT**
**Performed On: 10/24/2019 12:11 PDT by Calafi , Arash**

**Physician Pre-Procedure Documentation**
*Interval H&P Note :*  I have examined the patient and reviewed the attached history and physical and verified its contents without the need for changes.
*Informed Consent MD Verified :*  Explanation of procedure, benefits and risks. Possible alternatives w/benefits and risks. Potential problems w/recuperation. Likelihood of achieving Tx goal. Any research/economic interest I may have regarding the treatment. All questions answered ..

Legend: @≠ Abnormal, * = Corrected, L = Low, H = High, R= Ref Lab, F= Footnote

Sepulveda, Aurelio                                  LOC: 3S; 320; 02
MRN: 01321463                                       Service: MED
FIN#: 6002737837                                    Admit Date:  10/15/2019
DOB: 12/26/1970                                     Discharge Date:
Print: 10/28/2019 10:27 PDT          Page 39 of 108          Request ID:  49961392

Facility: RJD

Patient Name: SEPULVEDA, AURELIO MARTIN
Date of Birth: 12/26/1970

MRN: J76828
FIN: 1000003511762197J76828

\* Auth (Verified) \*

## Tri-City Medical Center

### Progress Note

GFR: >60 (10/15/19 22:10:00 PDT)
Glucose Lvl: 177 mg/dL High (10/15/19 22:10:00 PDT)
Hgb A1c: 9.6 % High (10/15/19 19:30:00 PDT)
Lactic Acid Lvl: 1 mEq/L (10/15/19 22:10:00 PDT)
Lipase Lvl: 92 unit/L High (10/15/19 19:30:00 PDT)
Magnesium: 1.9 mg/dL (10/16/19 05:19:00 PDT)
Phos: 3.3 mg/dL (10/16/19 05:19:00 PDT)
Potassium: 3.8 mEq/L (10/15/19 22:10:00 PDT)
SGOT (AST): 25 IU/L (10/15/19 19:30:00 PDT)
SGPT (ALT): 37 IU/L (10/15/19 19:30:00 PDT)
Sodium: 135 mEq/L (10/15/19 22:10:00 PDT)
Total Protein: 7.9 g/dL (10/15/19 19:30:00 PDT)
Troponin: 0.03 ng/mL (10/15/19 19:30:00 PDT)
\*\*\*COAGULATION\*\*\*
Protime INR: 1.1 (10/15/19 19:30:00 PDT)
PT: 13.6 seconds (10/15/19 19:30:00 PDT)

Electronically Signed By: McCutcheon , Claire M.        MD
Electronically Signed On: 10/16/19 11:57 PDT

Signed By:
Calah, Arash (10/25/2019 15:43 PDT)

Performed By:
Calah, Arash (10/25/2019 15:43 PDT)

**Subjective**
Doing well this AM,reports very minimal pain.

**Objective**

**Vitals & Measurements**
T: 37.4 °C (Oral) TMIN: 36.3 °C (Oral) TMAX: 37.4 °C (Oral) HR: 98(Peripheral) RR: 18
BP: 124/71 SpO2: 94%
Room Air/Oxygen Therapy: Room air (10/25/19 14:35:00 PDT)

**Physical Exam**
General: No acute distress
Head: Normocephalic, atraumatic
Neck: Supple motion, trachea midline
Chest: Respirations non-labored
Abdomen: Soft, non-tender
Psychiatric: Appropriate, alert and oriented. Interacting appropriately
LLE:
splint c/d/i
exposed 3 toes warm and well perfused with brisk capillary refill
able to wiggle exposed toes
some numbness to toes consistent with his nerve block postop

**Medications**
albuterol, 1.25 mg= 3 mL, NEB, Q2HR, PRN
Aldactone, 25 mg= 1 tab, ORAL, DAILY
aminophylline, 50 mg= 2 mL, IV PUSH, AS DIRECTED, PRN
aspirin, 81 mg= 1 tab, ORAL, DAILY
ceftriaxone IVPB
Coreg, 6.25 mg= 2 tab, ORAL, BID
D50 IV Bolus, 15 g= 30 mL, IV PUSH, PRN, PRN
gabapentin, 300 mg= 1 cap, ORAL, TID
glucagon, 1 mg= 1 vial, IM, AS DIRECTED, PRN
glucose ORAL, 15 g= 60 mL, ORAL, AS DIRECTED, PRN
HumaLOG, Resistant Correction Factor, SUBQ, AC AND HS
hydralazine INJ, 10 mg= 0.5 mL, IV PUSH, Q8HR, PRN
ibuprofen, 800 mg= 1 tab, ORAL, Q8HR, PRN
influenza virus vaccine, 0.5 mL, IM, ON CALL

Legend: @ = Abnormal, \* = Corrected, L = Low, H = High, R= Ref Lab, F= Footnote

Sepulveda, Aurelio
MRN: 01321463
FIN#: 6002737837
DOB: 12/26/1970
Print: 10/28/2019 10:27 PDT

Page 77 of 108

LOC: 3S; 320; 02
Service: MED
Admit Date: 10/15/2019
Discharge Date:
Request ID: 49961392

Facility: RJD

Patient Name: SEPULVEDA, AURELIO MARTIN                                          MRN: J76828
Date of Birth: 12/26/1970                                                        FIN: 10000003511762197J76828

* Auth (Verified) *

## Tri-City Medical Center

| Progress Note |
| --- |

### Assessment/Plan
48 year old male with DM, peripheral neuropathy and CAD presenting with gangrene and diabetic left foot wound now s/p Ray amputation of 4th and 5th rays on 10/24/19

intraop Cx: GPCs not yet speciated

-NWB in SLS to LLE until wound heals- could be 2-6 weeks
-splint to remain in place untill f/u with me in 10 days. No wound care or modification to splint necessary
-if showering, he should either sponge bath or cover splint with plastic bags
-clean margins intraop but may benefit from short course of oral antibiotic therapy tailored to organism isolated based on intraop cultures
-Gabapentin recommended for post-op pain, ordered but patient with minimal pain and does not want to take
-PT ordered to help patient with ambulation

insulin lisPRO, 12 units, SUBQ, TIDAC
lactobacillus acidophilus and bulgaricus, 1 tab, ORAL, TID
Lantus, 45 units, SUBQ, BID
Lipitor, 80 mg= 2 tab, ORAL, QPM
losartan, 25 mg= 1 tab, ORAL, DAILY
magnesium sulfate IVPB, 1 g = 100 mL, IVPB, AS DIRECTED, PRN
metroNIDAZOLE, 500 mg= 1 tab, ORAL, Q8HR
Normal Saline Flush, 10 mL, IV PUSH, PRN, PRN
Plavix, 75 mg= 1 tab, ORAL, DAILY
sucralfate, 1 g= 1 tab, ORAL, QIDACHS
Tylenol, 650 mg= 2 tab, ORAL, Q6HR, PRN
vancomycin
Vancomycin per Pharmacy, 1 dose= 1 mL, IVPB, PHARMACYONLY
Zofran, 4 mg= 1 tab, ORAL, Q6HR, PRN

### Diagnostic Results
XR Fluoro O.R. Exam, With C-Arm >60 min 10/24/19 15:09:36
IMPRESSION:FLUOROSCOPIC GUIDANCE FOR AN INTRAOPERATIVE PROCEDURE.TECHNICAL COMMENTSFluoroscopy time (in minutes and seconds) 0.09
Signed By: Nicpon , Gregory

### Lab Results
MICROBIOLOGY
Blood Culture: Double Click (10/16/19 05:19:00 PDT)
TOXICOLOGY/DRUG LEVLES
Vanco Rn: 13.7 mcg/mL (10/24/19 16:15:00 PDT)
Vanco Tr: 19.5 mcg/mL (10/23/19 10:33:00 PDT)
WBCs: 10.7 K/uL High (10/25/19 05:26:00 PDT)
RBC: 3.96 M/uL Low (10/25/19 05:26:00 PDT)
Hgb: 11.9 g/dL Low (10/25/19 05:26:00 PDT)
Hematocrit: 34.7 % Low (10/25/19 05:26:00 PDT)
Platelets: 153 K/uL (10/25/19 05:26:00 PDT)
Chemistry
Anion Gap: 8 mmol/L (10/25/19 05:26:00 PDT)
BUN: 12 mg/dL (10/25/19 05:26:00 PDT)
Calcium: 8.7 mg/dL (10/25/19 05:26:00 PDT)
Chloride: 101 mEq/L (10/25/19 05:26:00 PDT)
CO2: 26 mEq/L (10/25/19 05:26:00 PDT)
Creatinine: 0.71 mg/dL (10/25/19 05:26:00

Legend: @ = Abnormal, * = Corrected, L = Low, H = High, R= Ref Lab, F= Footnote

Sepulveda, Aurelio
MRN: 01321463
FIN#: 6002737837
DOB: 12/26/1970
Print: 10/28/2019 10:27 PDT

Page 78 of 108

LOC: 3S; 320; 02
Service: MED
Admit Date:  10/15/2019
Discharge Date:
Request ID:  49961392



**CALIFORNIA CORRECTIONAL**
**HEALTH CARE SERVICES**

**RJD - RJ Donovan Correctional Facility**
480 Alta Road
San Diego, CA 92179-

**Patient:** **SEPULVEDA, AURELIO MARTIN**
DOB/Age/Sex: 12/26/1970 49 years    Male
Encounter Date: 11/15/2013
Attending: Shakiba,Peyman P&S

CDCR #: J76828
PID #: 11762197
Referring:

### *Pathology Documentation*

Report Request ID: 29773502

Print Date/Time: 6/11/2020 15:13 PDT

**WARNING:** This report contains confidential, proprietary, and/or legally privileged information intended for the recipient only.

Patient Name: SEPULVEDA, AURELIO MARTIN    MRN: J70...
Date of Birth: 12/26/1970    FIN: 10000003511762197J76820

* Auth (Verified) *

10/29/2019 12:13:50 AM   Tri-City Medical Center   (760) 940-7370   Page 2 of 3

*J 76828*


NORTH COAST
PATHOLOGY
MEDICAL GROUP

**Tri-City Medical Center**

Pathologists:
Marcus Centardo, M.D. M.P.H., Director
Bonnie Bobzien, M.D.
Jerry Kao, M.D.
Melissa Myrsiades, M.D.
Mahnaz Shahidi-Asl, M.D.
Pathology Department: 760-940-7248

| | *Pathology Reports* | | |
|---|---|---|---|
| Accession:<br>T-19-0005488 | Collected Date/Time:<br>10/24/2019 14:57 PDT | Received Date/Time:<br>10/24/2019 14:57 PDT | Pathologist:<br>Wong ,Richard L. |

### Pathology Report

**DIAGNOSIS:**
**A – LEFT FOOT, FOURTH AND FIFTH RAYS, AMPUTATION:**
   ACUTE OSTEOMYELITIS IDENTIFIED.
   GANGRENOUS NECROSIS INVOLVING ULCERATED SKIN AND SUBCUTANEOUS
      SOFT TISSUE.
   ABUNDANT NECROTIC DEBRIS WITH ACUTE INFLAMMATION CONSISTENT
      WITH ABSCESS.

88305 x 1
88311 x 1
*RLW/SLN*

**SUBMITTING DIAGNOSIS:**
Coronary artery disease.

**SPECIMEN:**
A     4th and 5th Ray Amputation , Left Foot

**GROSS:**
A – The specimen is labeled "4th and 5th ray amputation, left foot." Received in formalin is a 7 x 6 x 3 cm aggregate of tan-white to pink-red tissue. Two unattached toes are identified within the aggregate. The skin of each toe is tan-white and one toe exhibits a 1.5 cm necrotic area. Accurate skin margins cannot be sampled.

The remaining tissue fragments consist of bone and soft tissue. At least two fragments of necrotic skin are identified within the aggregate. Representative sections are submitted as labeled.

CASSETTE SUMMARY:

A1     Representative sections of necrotic soft tissue attached to one toe.
A2     Representative sections of separately received necrotic skin.
A3     Representative sections of bone, following decalcification. (RS-3)

*CS /AAB*

RECEIVED OCT 2 9 2019


**Tri-City Healthcare District**
4002 Vista Way, Oceanside, CA 92056, 760-724-8411

Sepulveda, Aurelio
MRN: 01321463
FIN#: 6002737837
Age/DOB/Sex:   48 years     12/26/1970     Male
Attending:     McCutcheon ,Claire M.
Admitting:     McCutcheon ,Claire M.
Requested by:     System Generated

Accession:   T-19-0005488
Service:     MED

Print: 10/29/2019 00:01 PDT
Request ID:   49974194
Page 1 of 2

* Auth (Verified) *

10/29/2019 12:13:50 AM   Tri-City Medical Center  (760) 940-7370   Page 3 of 3



**NORTH COAST**
**PATHOLOGY**
**MEDICAL GROUP**

**Tri-City Medical Center**

Pathologists:
Marcus Centardo, M.D. M.P.H., Director
Bonnie Botzien, M.D.
Jerry Kao, M.D.
Melissa Myrsiades, M.D.
Mahnaz Shahidi-Asl, M.D.
Pathology Department: 760-940-7248

---

*Pathology Reports*

---

| Accession: | Collected Date/Time: | Received Date/Time: | Pathologist: |
|---|---|---|---|
| T-19-0005488 | 10/24/2019 14:57 PDT | 10/24/2019 14:57 PDT | Wong ,Richard L. |

**MICROSCOPIC:**

A – Three H&E stained slides from three tissue blocks are reviewed (one decalcified).  Sections of bone show extensive chronic osteomyelitis and focal acute osteomyelitis.  Sections of soft tissue show gangrenous necrosis of the skin and soft tissue admixed with abundant necrotic debris and acute inflammatory cells.  (RW.sn)

A:10/28/19

*Richard L. Wong, MD*
*(Electronically signed by)*
*Verified: 10/28/19*
*RLW/SLN*

---

| Sepulveda, Aurelio | LOC: 3S; 320; 02 |
|---|---|
| MRN: 01321463 | Service: MED |
| FIN#: 6002737837 | Admit Date:  10/15/2019 |
| DOB: 12/26/1970 | Discharge Date:  10/28/2019 |
| Print: 10/29/2019 00:01 PDT | Request ID:  49974194 |

Page 2 of 2

Facility: RJD

Patient Name: SEPULVEDA, AURELIO MARTIN
Date of Birth: 12/26/1970

MRN: J76828
FIN: 1000000351176219J76828

\* Auth (Verified) \*

## Tri-City Medical Center

| Physical Therapy Evaluation Forms |
|---|

**PT IP Eval Entered On:  10/26/2019 12:45 PDT**
**Performed On:  10/26/2019 12:38 PDT by Fader , Lindsay R**

### Patient Information
*PT-MD order :*  PT Eval
*PT- Treatment Diagnosis :*  Abnormality of gait
*Time Seen for Treatment :*  11:00 PST
*Time seen for Treatment ended :*  11:26 PST
*Tx minutes :*  26 minutes
*Date of Surgery :*  10/24/2019 PDT
*Pertinent Medical History :*  PT IE 10/26/19, pt is s/p amputation of L 4th and 5th toes on 10/24/19. NWB LLE, per MD orders.
PMHx: CAD, s/p stenting, HTN, DM type 2, BLE neuropathy, hepatitis. PLOF: correctional facility, ADA cell with roommate, uses
4WW for facility ambulation, mod I ADLs.
*Prior Level of Function :*  Independent/limited
*Cognition :*  Intact
*PT-Equipment Used Before :*  4-Wheeled Walker
*OT- Living Arrangement- Lives in: :*  Correctional Facility
*OT- Living Arrangements- Situation :*  Roommate
*Safety Judgement :*  Good
*Precautions :*  Diabetic, Cardiac, Weightbearing, Special Precautions
*Upper Extremity WB :*  Not Applicable
*Lower Extremity WB :*  Non Weightbearing
*Special Precautions :*  NWB LLE per MD orders

Fader , Lindsay R - 10/26/2019 12:38 PDT

### Pain/ROM/Strength
*PT- Pain- Location :*  None noted

Fader , Lindsay R - 10/26/2019 12:38 PDT

Right Range of Motion Grid
*Right Shoulder :*  WFL
*Right Elbow :*  WFL
*Right Wrist/Hand :*  WFL
*Right Hip :*  WFL
*Right Knee :*  WFL
*Right Ankle/Foot :*  WFL

Fader , Lindsay R - 10/26/2019 12:38 PDT

Left Range of Motion Grid
*Left Shoulder :*  WFL
*Left Elbow :*  WFL
*Left Wrist/Hand :*  WFL
*Left Hip :*  WFL
*Left Knee :*  WFL

---

**Tri-City Healthcare District**
4002 Vista Way, Oceanside, CA 92056, 760-724-8411

Sepulveda, Aurelio
MRN: 01321463
FIN#: 6002737837
Age/DOB/Sex: 48 years     12/26/1970  Male
Adm. Physician:  McCutcheon ,Claire M.

LOC: 3S; 320; 02
Service: MED
Admit Date:  10/15/2019
Discharge Date:
Request ID:   49961330

Print: 10/28/2019 10:24 PDT     Page 1 of 3

Patient Name: SEPULVEDA, AURELIO MARTIN
Date of Birth: 12/26/1970

MRN: J76828
FIN: 1000000351176219 7J76828

\* Auth (Verified) \*

## Tri-City Medical Center

| Physical Therapy Evaluation Forms |
|---|

*Rolling :*  Mod I
*Bridging :*  Mod I
*Supine Scoot :*  Mod I
*Supine to Sit :*  Mod I
*Sit to Supine :*  Mod I
*Sit to Stand :*  Mod I
*Stand Pivot Transfer :*  Mod I
*Toilet Transfers :*  Mod I

Fader , Lindsay R - 10/26/2019 12:38 PDT

*Device Used :*  FWW, gait belt, NWB LLE
*Functional Assist Comments :*  Patient able to perform bed mobility and transfers x mod I with use of FWW and maintain NWB LLE x Mod I.

Fader , Lindsay R - 10/26/2019 12:38 PDT

**Balance and Endurance**
*Balance :*  Assessed

Fader , Lindsay R - 10/26/2019 12:38 PDT

Balance Grid
*Static Sitting :*  Normal
*Dynamic Sitting :*  Normal
*Static standing/postural alignment/Base of Support :*  Good
*Dynamic Standing :*  Good -

Fader , Lindsay R - 10/26/2019 12:38 PDT

*PT-Device Used Balance Endurance :*  FWW, gait belt
*Endurance: :*  Good

Fader , Lindsay R - 10/26/2019 12:38 PDT

**Ambulation**
*PT-Ambulation :*  Assessed
*Upper Extremity WB :*  Not Applicable
*Lower Extremity WB :*  Non weightbearing
*Device :*  Gait belt, Front-wheeled walker
*Distance Ambulated :*  150 ft
*Level of Assistance :*  Supervised
*Person Assist :*  1- person assist
*PT-Gait Deviations :*  Decreased velocity, Decreased weight shift
*Gait Comment: :*  Pt amb 2 x 150ft using FWW x Supervision to ensure safety. Pt able to maintain NWB LLE status with use of FWW with no sway or LOB. Pt cleared to amb with RN staff using FWW and NWB LLE.

Fader , Lindsay R - 10/26/2019 12:38 PDT

**Assessment/Plan of Care**
*Assessment :*  PT IE 10/26/19: pt is s/p amputation of L 4th and 5th toes on 10/24/19. NWB LLE per MD orders. PLOF: correctional facility, ADA cell with roommate, uses 4WW for facility ambulation, mod I ADLs.

Fader , Lindsay R - 10/26/2019 12:38 PDT

**Discharge Recommendations**
*Discharge Recommendations :*  Home with home program
*PT-Durable Medical Equipment :*  Wheelchair, Other: Pt has personal 4WW
*PT-Discharge Recommendations :*  Recommend WC for use when patient returns to correctional facility, to be used for longer distances.

Fader , Lindsay R - 10/26/2019 12:38 PDT

---

Sepulveda, Aurelio
MRN: 01321463
FIN#: 6002737837
DOB: 12/26/1970
Print: 10/28/2019 10:24 PDT

Page 3 of 3

LOC: 3S; 320; 02
Service: MED
Admit Date:  10/15/2019
Discharge Date:
Request ID:  49961330

Facility: RJD



# EXHIBIT COVER PAGE

<div>
J

EXHIBIT
</div>

DESCRIPTION OF THIS EXHIBIT:

Medical Records:Aurelio Martin Sepulveda, CDCR # J-76828
Re:Medical Clearance for Weight Bearing dated 12/13/2019

NUMBER OF PAGES TO THIS EXHIBIT:____2____ PAGES.

JURISDICTION: (CHECK ONLY ONE)

☐ COUNTY GRAND JURY

☐ COUNTY MUNICIPAL COURT

☐ COUNTY CIRCUIT COURT

☐ COUNTY SUPERIOR COURT

☐ STATE COURT OF APPEAL

☒ UNITED STATES DISTRICT COURT

☐ STATE SUPREME COURT

☐ STATE BAR COURT

☐ STATE CIRCUIT COURT

☐ UNITED STATES SUPREME COURT

☐ OTHER:_____

Approved for
use with
Judicial
Council forms
(01-19-08)
MDT/CRA

Patient Name: SEPULVEDA, AURELIO MARTIN
Date of Birth: 12/26/1970

Case 3:20-cv-02079-JLS-MDD   Document 13   Filed 06/18/21   PageID.425   Page 135 of 166 MRN: J76828
FIN: 10000003511762197J76828

* Auth (Verified) *

J76828

## Tri-City Medical Center

### Forensic Clinic

DOCUMENT NAME:
SERVICE DATE/TIME:
RESULT STATUS:
PERFORM INFORMATION:
SIGN INFORMATION:

Office Visit Note - FC
12/13/2019 07:30 PST
Auth (Verified)
Amory ,David W.(12/13/2019 07:16 PST)
Amory ,David W.(12/18/2019 09:54 PST)

### OFFICE VISIT NOTE

**ADMITTED:** 12/13/2019
**DOB:** 12/26/1970

**OUTPATIENT SPECIALTY SERVICES CLINIC**

**CUSTODY INSTITUTION:** CDCR, RJD

**REASON FOR VISIT:** Orthopedic consultation

**PRINCIPAL DIAGNOSIS:** Status post left fourth and fifth ray amputations.

HISTORY OF PRESENT ILLNESS: This a 48-year-old right hand dominant patient who is status post left fourth and fifth ray amputations by Dr. Colatti on October 24, 2019. The patient comes in today doing very well without significant complaints of pain.

PHYSICAL EXAMINATION: He has some eschar over the incision but the incision is well healed. There is no evidence of necrosis, no evidence of drainage, no evidence of persistent infection. The skin appears to be very viable.

IMAGING: No x-rays were reviewed today.

**DIAGNOSIS(ES):** Status post fourth and fifth ray amputations, October 24, 2019.

At this stage the patient is doing very well. He can advance to weightbearing as tolerated and we will just see him back on a p.r.n. basis.

---

Legend: @ = Abnormal, * = Corrected, L = Low, H = High, R= Ref Lab, F= Footnote

---



**Tri-City Healthcare District**
4002 Vista Way, Oceanside, CA 92056, 760-724-8411

Sepulveda, Aurelio
MRN:01321463
FIN#: 6002757974

Age/DOB/Sex: 48 years          12/26/1970   Male
Adm. Physician:  Amory ,David W.

LOC: CDCR Outpatients
Service: CDCROP
Admit Date:  12/13/2019
Discharge Date:  12/14/2019
Request ID:    50821727

Print:  12/19/2019 06:02 PST      Page 1 of 2

RECEIVED DEC 19 2019

* Auth (Verified) *

## Tri-City Medical Center

### Forensic Clinic

DICTATED:  DAVID W. AMORY, M.D.

DWA/ID3063/sr
D:  12/13/201907:16 A
T:  12/13/2019 07:20 A
#10163444

cc:    DAVID W. AMORY, M.D.
       RJD MRD FAX CDCR, RJD

Electronically Signed By:  Amory , David W.                MD
Electronically Signed On:  12/18/19 09:54 PST

Legend: @ = Abnormal, * = Corrected, L = Low, H = High, R= Ref Lab, F= Footnote

Sepulveda, Aurelio                                                          LOC: CDCR Outpatients
MRN: 01321463                                                               Service: CDCROP
FIN#: 6002757974                                                            Admit Date:  12/13/2019
DOB: 12/26/1970                                                             Discharge Date:  12/14/2019
Print: 12/19/2019 06:02 PST              Page 2 of 2                        Request ID:  50821727

Facility: RJD



# EXHIBIT COVER PAGE

K

EXHIBIT

DESCRIPTION OF THIS EXHIBIT:

Medical Records:Aurelio Martin Sepulveda, CDCR # J-76828

NUMBER OF PAGES TO THIS EXHIBIT:____4____PAGES.

JURISDICTION: (CHECK ONLY ONE)

☐ COUNTY GRAND JURY

☐ COUNTY MUNICIPAL COURT

☐ COUNTY CIRCUIT COURT

☐ COUNTY SUPERIOR COURT

☐ STATE COURT OF APPEAL

☒ UNITED STATES DISTRICT COURT

☐ STATE SUPREME COURT

☐ STATE BAR COURT

☐ STATE CIRCUIT COURT

☐ UNITED STATES SUPREME COURT

☐ OTHER:_____

Approved for
use with
Judicial
Council forms
(01-19-08)
MDT/CRA



**CALIFORNIA CORRECTIONAL**
**HEALTH CARE SERVICES**

**RJD - RJ Donovan Correctional Facility**
480 Alta Road
San Diego, CA 92179-

| | |
|---|---|
| **Patient:** | **SEPULVEDA, AURELIO MARTIN** |
| DOB/Age/Sex: | 12/26/1970 49 years     Male |
| Encounter Date: | 11/15/2013 |
| Attending: | Shakiba,Peyman P&S |

| | |
|---|---|
| CDCR #: | J76828 |
| PID #: | 11762197 |
| Referring: | |

## Progress Notes

| Document Type: | Outpatient Progress Note |
|---|---|
| Document Subject: | Office Visit Note |
| Service Date/Time: | 3/2/2020 11:20 PST |
| Result Status: | Auth (Verified) |
| Perform Information: | Goyal,Erica P&S (3/2/2020 11:30 PST) |
| Sign Information: | Goyal,Erica P&S (3/2/2020 11:30 PST) |
| Authentication Information: | Goyal,Erica P&S (3/2/2020 11:30 PST) |

**Chief Complaint**
Refused 2/11/20 Ophthalmology Clinic Appt. 14 days PCP FU from refusal of telemed FU w/ Dr. Zamudio (Cardiology) c/o concerns healing of L toe #4, #5 s/p amputation Oct 2019

**History of Present Illness**
patient does not want to see cardiology or ophtho due to a lot of stress that he is under. He has not had any symptoms of chest pains/sob/palpitations. He has not noted any vision changes. he does not want any routine EGD to be done as he will refuse that and it is pending for next week. He is concerned about the 4th toe as after amputation he was doingquite well but now with a lot of walking it seems to be getting worse and sometime it feels wwarm but no pain.

**Review of Systems**
as above.

**Physical Exam**

 Vitals & Measurements
**T:** 36.8  °C  (Oral)  **HR:** 93 (Peripheral)  **RR:** 18  **BP:** 121/75  **SpO2:** 97%
**WT:** 84.7 kg  **WT:** 84.7 kg (Wt dosing)
Gen: AAO x 4, NAD
HEENT: PERRLA, NCAT, EOMI,
Lungs: CTAB, now wheezes, rales or rhonchi
Heart: RRR, S1+S2 present, no m/r/g
Abd: Soft, NTND, +bs, no HSM
Ext: +2 pulses, no edema, capillary refill <2 sec, the L. EXT has mild edema and pinkish coloration of the tarsal and metatarsal laterally. there is no significant pain or soft tissue swelling noted. distal neurovascular is in tact. pulses diminished b/l.
Neuro: CNs II-XII grossly in tact, motor 5/5 all 4 extremities, sensation in tact b/l

**Assessment/Plan**
CAD - Coronary artery disease
 the patient refuses any further appointments or testing with cardiology. He was informed of the risk of not obtaining tertiary consultation with regards to his heart disease. He was advised on return and ER precautions. the patient demonstrates full capacity for decision making per my interaction with him today.

**Problem List/Past Medical History**
 Ongoing
  Aortic valve disorders
  Asthma
  Background diabetic retinopathy
  Benign essential hypertension
  CAD (coronary artery disease)
  Chronic low back pain
  Cirrhosis of liver
  COPD (chronic obstructive pulmonary disease)
  Diabetes
  Diabetes mellitus type 2, controlled, without complications
  End stage liver disease
  Gallstone
  History of amputation of lesser toe of left foot
  Imbalance
  Irritable bowel syndrome (IBS)
  Liver fibrosis
  Lumbago
  Mitral valve disorders
  Myocardial infarction
  Neuropathic pain
  Nonrheumatic mitral valve disorder
  Other acquired deformities of knee
  Polyneuropathy in diabetes
  Primary angle-closure glaucoma
  Unspecified arthropathy, pelvic region and thigh
  Vision changes
 Historical
  Acute gastritis
  Allergic rhinitis due to other allergen
  Back pain

---

| Report Request ID:  29773087 | Print Date/Time:  6/11/2020 15:06 PDT |
|---|---|

**WARNING:** This report contains confidential, proprietary, and/or legally privileged information intended for the recipient only.

**RJD - RJ Donovan Correctional Facility**

Patient:       **SEPULVEDA, AURELIO MARTIN**
DOB/Age/Sex:  12/26/1970 / 49 years       / Male       CDCR: J76828

---

| *Progress Notes* |
| --- |

---

Cirrhosis
  the patient refused EGD that is pending for next week. he was informed of the medical risks surrounding the refusal to obtain preventative health screenings with regards to his liver disease. the patient demonstrates full capacity for decision making per my interaction with him today. I did order routine HCC screen for the patient.
Ordered:
US ABDOMEN RUQ

Diabetes
  the patient is no longer wishing to see the eye doctor regarding his DR and h/o poorly controlled DM as well as his chronic eye issue monitoring. including glaucoma. the patient demonstrates full capacity for decision making per my interaction with him today.
Ordered:
glucose, 37.5 gm, Oral, Gel-Oral, Daily-KOP, PRN low blood sugar, Administration Type KOP, Order Duration: 360 day, First Dose: 03/02/20 11:12:00 PST, Stop Date: 02/25/21 11:11:00 PST
insulin glargine, 63 unit, Subcutaneous, Soln, BIDAC, Administration Type NA, Order Duration: 180 day, First Dose: 03/02/20 17:00:00 PST, Stop Date: 08/29/20 16:59:00 PDT
insulin lispro, 32 unit, Subcutaneous, Soln, qAM, Administration Type NA, Medication Indication Endocrinologist recommendation for uncontrolled type 2 DM, Lantus, regular insulin, Lantus, regular insulin, Order Duration: 360 n/a day, Stop Date: 02/26/21 6:59:00 PST,...

Diabetes type I
  very poorly controlled. noncompliant with diet. I have changed his medication administration to be bid rather than tid in hopes to improve compliance. I also instructed the patient on the proper use of the glucogel with symptoms of hypoglycemia. avoid snacking on carb heavy foods.
Ordered:
insulin lispro, 30 unit, Subcutaneous, Soln, qPMAC, Administration Type NA, Automatic Refill, Medication Indication previously tried on multiple meds, victoza, lantus, not improved, Order Duration: 180 monitor clinical response day, Stop Date: 08/29/20 16:59:00 PDT,...

Diabetic retinopathy
  see above.

S/P amputation of foot
  there is mild edema noted of the L. foot in the distribution of the plantar surface of the L. tarsal remnant and metatarsals (3rd) . Will cover with bactrim for 7 days but does not appear to be acutely infected although his foot is significantly at risk due to the patient bearing weight, not compliant with compression stocking and not well controlled on DM. counseled on foot elevation. eval in next few week to see for any progression. if worsened come back sooner. I requested orthotic evaluation due to the high amount of pressure that is likely on the foot when walking that a possible prosthesis vs. insert can be used as nonformulary for shoe.
Ordered:
sulfamethoxazole-trimethoprim, 1 tab, Oral, Tab, BID-KOP, Administration Type KOP, Order Duration: 7 day, First Dose: 03/02/20 14:00:00 PST, Stop Date: 03/09/20 13:59:00 PDT

Orders:
Compression Stocking Permanent

Chronic neck pain
Diabetic gastroparesis
Esophagitis
Hypoglycemia
Sore throat
Superficial ulcer of skin

**Procedure/Surgical History**
4/9/18 PTCA and Stent placed in mid Circumflex artery, Arthroscopy, knee, cardiac cath with left circumflex stent placement 4/9/18, Colonoscopy, Diagnostic ultrasound of digestive system, Diagnostic ultrasound of heart, Esophagogastroduodenoscopy [EGD] with closed biopsy, Magnetic resonance imaging of spinal canal, Other cardiovascular stress test.

**Medications**
 **Active Medications:**
 aspirin  81 mg 1 tab Oral Daily-KOP KOP
1-atorvastatin 80 mg Tab (Lipitor)  80 mg 1 tab Oral qPM-KOP KOP
carvedilol  6.25 mg 1 tab Oral BID-KOP KOP
clopidogrel  75 mg 1 tab Oral Daily-KOP KOP
glucose 40% Gel-Oral 37.5 gm (glucose 40% oral gel)  37.5 gm 1 tube Oral Daily-KOP KOP PRN: low blood sugar
insulin glargine (Lantus) 100 unit/mL Soln 10 mL (2220-33) (Lantus)  63 unit 0.63 mL Subcutaneous BIDAC NA
insulin lispro (Humalog) 100 unit/mL Soln 10 mL (7510-01)  32 unit 0.32 mL Subcutaneous qAM NA
insulin lispro  30 unit 0.3 mL Subcutaneous qPMAC NA
levalbuterol 45 mcg/puff Aerosol 15 gm (XOPENEX HFA 45 MCG INHALER)  90 mcg 2 puff Oral q6hr-KOP90 KOP PRN: shortness of breath
liraglutide 18 mg/3 mL subcutaneous soln 3 mL Multi-Dose Pen (Victoza)  1.8 mg 0.3 mL Subcutaneous Daily NA
losartan  25 mg 1 tab Oral Daily-KOP KOP
formoterol-mometasone 5-200 mcg/inh Aerosol 120 Puffs (Dulera 200 mcg-5 mcg/inh inhalation aerosol)  2 puff Oral BID-KOP KOP
nitroglycerin 0.4 mg Tab-SL (25 ct) (nitroglycerin 0.4 mg sublingual tablet)  0.4 mg 1 tab Sublingual q5min-KOP KOP PRN: chest pain
spironolactone  25 mg 1 tab Oral Daily-KOP

---

Report Request ID:     29773087                                    Print Date/Time:   6/11/2020 15:06 PDT

**WARNING:** This report contains confidential, proprietary, and/or legally privileged information intended for the recipient only.

**RJD - RJ Donovan Correctional Facility**

Patient:        **SEPULVEDA, AURELIO MARTIN**
DOB/Age/Sex:  12/26/1970 / 49 years      / Male          CDCR: J76828

| *Progress Notes* |
|---|

Medical Episodic Care Follow Up 20
Referral to Orthotics Evaluation
Therapeutic Shoes/Orthotics Permanent

KOP
1-sulfamethoxazole-trimethoprim 800 mg-160
mg Tab (Bactrim DS 800 mg-160 mg)  1 tab
Oral BID-KOP KOP
triamcinolone 55 mcg Spray-Nasal 16.9 mL
(120 Sprays) (Nasacort AQ 55 mcg/inh nasal
spray)  110 mcg 2 spray Each nostril
Daily-KOP KOP

**Allergies**
NSAIDs
codeine
traMADol

**Encounter Info:** Patient Name: AURELIO SEPULVEDA,DOB: 12/26/1970,CDCR: J76828,FIN: 10000003511762197J76828,Facility:
RJD,Encounter Type: Institutional Encounter

Report Request ID:   29773087                          Print Date/Time:   6/11/2020 15:06 PDT

**WARNING:** This report contains confidential, proprietary, and/or legally privileged
information intended for the recipient only.

 CALIFORNIA CORRECTIONAL
**HEALTH CARE SERVICES**

**RJD - RJ Donovan Correctional Facility**
480 Alta Road
San Diego, CA 92179-

| | | | |
|---|---|---|---|
| **Patient:** | **SEPULVEDA, AURELIO MARTIN** | | |
| DOB/Age/Sex: | 12/26/1970  49 years    Male | CDCR #: | J76828 |
| Encounter Date: | 11/15/2013 | PID #: | 11762197 |
| Attending: | Shakiba,Peyman P&S | Referring: | |

| *Orders* |
|---|

**Ambulatory Referrals**

Order: **Request for Orthotics**
Order Date/Time: 6/8/2020 13:28 PDT
Order Start Date/Time: 6/8/2020 00:01 PDT
Order Status: Completed            Department Status: Completed            Activity Type: Ambulatory Referrals Request
End-state Date/Time: 6/9/2020 09:25 PDT            End-state Reason:
Ordering Physician: Corleone,Erica P&S            Consulting Physician:
Entered By: Corleone,Erica P&S on 6/8/2020 13:28 PDT
Order Details: 6/8/20 12:01:00 AM PDT, Routine Priority (46-90 days), Orthotics Evaluation, patient has h/o amputation of portion of the L. foot, with e/o blistering. the previous amputation was due to complication of osteomyeleitis from uncontrolled DM., onsite, Ambulatory, No, No, Standard Precautions, 09/06/20 23:59:00 PDT
Order Comment:

Order: **Referral to Orthotics Evaluation**
Order Date/Time: 3/2/2020 11:13 PST
Order Start Date/Time: 5/6/2020 09:40 PDT
Order Status: Canceled            Department Status: Canceled            Activity Type: Ambulatory Referrals
End-state Date/Time: 5/6/2020 10:04 PDT            End-state Reason:
Ordering Physician: Goyal,Erica P&S            Consulting Physician:
Entered By: SYSTEM SYSTEM on 3/2/2020 11:13 PST
Order Details: 5/6/20 9:40:00 AM PDT, Routine Priority (46-90 days), Onsite, h/o L 4th and 5th metatarsal amputation due to infection in 2019. the patient has difficulty walking and pain and increased swelling when he walks with ortho shoes. please eval for possible insert/prosthesis, onsite, 05/31/20 23:59:00 PDT
Order Comment:

---

Legend: c=Corrected, @=Abnormal, C=Critical, L=Low, H=High, f=Result Comment, i=Interp Data, *=Performing Lab

Report Request ID:   29854999                                    Print Date/Time:   6/16/2020 08:24 PDT

**WARNING:** This report contains confidential, proprietary, and/or legally privileged information intended for the recipient only.



# EXHIBIT COVER PAGE

<div style="float:right; border:1px solid black; padding:10px;">

L

EXHIBIT
</div>

DESCRIPTION OF THIS EXHIBIT:

Medical Records:Aurelio Martin Sepulveda,CDCR # J-76828

NUMBER OF PAGES TO THIS EXHIBIT:____4____PAGES.

JURISDICTION: (CHECK ONLY ONE)

☐  COUNTY GRAND JURY

☐  COUNTY MUNICIPAL COURT

☐  COUNTY CIRCUIT COURT

☐  COUNTY SUPERIOR COURT

☐  STATE COURT OF APPEAL

☒  UNITED STATES DISTRICT COURT

☐  STATE SUPREME COURT

☐  STATE BAR COURT

☐  STATE CIRCUIT COURT

☐  UNITED STATES SUPREME COURT

☐  OTHER:_____

Approved for
use with
Judicial
Council forms
(01-19-08)
MDT/CRA



**CALIFORNIA CORRECTIONAL**
**HEALTH CARE SERVICES**

**RJD - RJ Donovan Correctional Facility**
480 Alta Road
San Diego, CA 92179-

| | |
|---|---|
| **Patient:** | **SEPULVEDA, AURELIO MARTIN** |
| DOB/Age/Sex: | 12/26/1970  49 years      Male |
| Encounter Date: | 11/15/2013 |
| Attending: | Shakiba,Peyman P&S |

CDCR #:     J76828
PID #:       11762197
Referring:

---

### *Assessment Forms*

---

**Emergency Severity Index Entered On: 10/28/2019 21:17 PDT**
**Performed On: 10/28/2019 21:35 PDT by Simpkins, Ellen RN**

**Patient Encounter Information**
*ENCTR Information :*  Encounter Info: Patient Name: AURELIO SEPULVEDA,DOB: 12/26/1970,,FIN:
1000000351176219776828,Facility: RJD,Encounter Type: Institutional Encounter

Simpkins, Ellen RN - 10/28/2019 22:37 PDT
~~{ [Encounter Info: Patient Name: AURELIO SEPULVEDA,DOB: 12/26/1970,,FIN: 1000000351176219776828,Facility:~~
~~RJD,Encounter Type: Institutional Encounter~~
~~] - previously charted by Simpkins, Ellen RN at 10/28/2019 21:17 PDT};~~

**ESI**
*Does The Patient Require Immediate Life-Saving Intervention? :*  No
~~{ [No] - previously charted by Simpkins, Ellen RN at 10/28/2019 21:17 PDT};~~
*Is This a High Risk Situation Where The Patient is Confused/Lethargic/Disoriented or in Severe Pain/Distress? :*  No
~~{ [No] - previously charted by Simpkins, Ellen RN at 10/28/2019 21:17 PDT};~~
*How Many Different Resources Will This Patient Need? :*  None
~~{ [None] - previously charted by Simpkins, Ellen RN at 10/28/2019 21:17 PDT};~~
*Recommended ESI Level :*  5

Simpkins, Ellen RN - 10/28/2019 22:37 PDT
~~{ [5 ] - previously charted by Simpkins, Ellen RN at 10/28/2019 21:17 PDT};~~

---

Report Request ID:   29855221

Print Date/Time:   6/16/2020 08:26 PDT

**WARNING:** This report contains confidential, proprietary, and/or legally privileged
information intended for the recipient only.

Attachment

RJD - RJ Donovan Correctional Facility

Patient: **SEPULVEDA, AURELIO MARTIN**
DOB/Age/Sex: 12/26/1970 / 49 years      / Male          CDCR: J76828

| *Orders* |
| --- |

## DME

Order: **Diabetic Supplies/Monitors Recurring Supply**
Order Date/Time: 11/13/2019 11:42 PST
Order Start Date/Time: 11/13/2019 11:42 PST
Order Status: Ordered                    Department Status: Ordered              Activity Type: Endocrinology DME
End-state Date/Time: 11/13/2030 23:59 PST                End-state Reason:
Ordering Physician: Goyal,Erica P&S               Consulting Physician:
Entered By: Goyal,Erica P&S on 11/13/2019 11:42 PST
Order Details: 11/13/19 11:42:00 AM PST, Glucose Meter Strips, Same Day, 11/13/30 11:59:00 PM PST, Constant Indicator
Order Comment:

Order: **Wheelchair Temporary**
Plan Name: Wheelchair DME
Order Date/Time: 10/28/2019 21:32 PDT
Order Start Date/Time: 10/28/2019 22:07 PDT
Order Status: Completed                Department Status: Completed          Activity Type: Orthopedics DME
End-state Date/Time: 11/11/2019 23:59 PST                End-state Reason:
Ordering Physician: Chau,John P&S                Consulting Physician:
Entered By: Simpkins,Ellen RN on 10/28/2019 21:32 PDT
Order Details: Standard Hemi-Wheelchair, Same Day, Constant Indicator
Order Comment:

## Laboratory

Order: **Insulin Autoantibody**
Order Date/Time: 3/16/2020 11:56 PDT
Order Start Date/Time: 3/23/2020 07:35 PDT
Order Status: Completed                Department Status: Completed          Activity Type: General Lab
End-state Date/Time: 3/26/2020 18:30 PDT                End-state Reason:
Ordering Physician: Goyal,Erica P&S                Consulting Physician:
Entered By: Goyal,Erica P&S on 3/16/2020 11:56 PDT
Order Details: Blood, Routine collect, 3/23/20 7:35:00 AM PDT, Once, Stop date 3/26/20 6:30:48 PM PDT, Lab Collect
Order Comment:

---

Legend: c=Corrected, @=Abnormal, C=Critical, L=Low, H=High, f=Result Comment, i=Interp Data, *=Performing Lab

Report Request ID:   29854939          Print Date/Time:   6/16/2020 08:24 PDT

RECEIVED
HCCAB
DEC - 2020

**WARNING:** This report contains confidential, proprietary, and/or legally privileged
information intended for the recipient only.

RJD - RJ Donovan Correctional Facility

Patient: **SEPULVEDA, AURELIO MARTIN**
DOB/Age/Sex: 12/26/1970 / 49 years      / Male          CDCR: J76828

| *Orders* |
|---|

### Patient Care

**Order: Finger Stick Blood Sugar POC**
Order Date/Time: 10/28/2019 21:32 PDT
Order Start Date/Time: 10/28/2019 21:32 PDT
Order Status: Completed                Department Status: Completed              Activity Type: POC Asmt/Tx/Monitoring
End-state Date/Time: 10/28/2019 23:31 PDT                End-state Reason:
Ordering Physician: Chau,John P&S                Consulting Physician:
Entered By: Simpkins,Ellen RN on 10/28/2019 21:32 PDT
Order Details: 10/28/19 9:32:00 PM PDT, Once, Stop date 10/28/19 11:31:35 PM PDT
Order Comment:

**Order: Follow Up RN 10**
Order Date/Time: 10/28/2019 21:32 PDT
Order Start Date/Time: 10/29/2019 10:10 PDT
Order Status: Completed                Department Status: Completed              Activity Type: Follow-up
End-state Date/Time: 10/29/2019 10:19 PDT                End-state Reason:
Ordering Physician: Chau,John P&S                Consulting Physician:
Entered By: Simpkins,Ellen RN on 10/28/2019 21:32 PDT
Order Details: 10/29/19 10:10:00 AM PDT, Care Management, 1 day, 10/29/19 23:59:00 PDT, hospital return >24hrs: L toes amputated.
Order Comment:

**Order: Medical Return from Higher Level of Care Follow Up 40 (OTM Emergent Return Follow Up 40)**
Order Date/Time: 10/28/2019 21:32 PDT
Order Start Date/Time: 11/13/2019 10:20 PST
Order Status: Completed                Department Status: Completed              Activity Type: Follow-up
End-state Date/Time: 11/13/2019 12:08 PST                End-state Reason:
Ordering Physician: Chau,John P&S                Consulting Physician:
Entered By: Simpkins,Ellen RN on 10/28/2019 21:32 PDT
Order Details: 11/13/19 10:20:00 AM PST, *5 days, 11/02/19 23:59:00 PDT, Hospital return >24 hrs: Left toes amputated.
Also see message from 11/6 - I/P refusing everything until he gets supplies for diabetes check.
Order Comment:

---

Legend: c=Corrected, @=Abnormal, C=Critical, L=Low, H=High, f=Result Comment, i=Interp Data, *=Performing Lab

Report Request ID:  29854999                          Print Date/Time:  6/16/2020 08:24 PDT

**WARNING:** This report contains confidential, proprietary, and/or legally privileged
information intended for the recipient only.

Progress Note-Nurse
* Final Report *

SEPULVEDA, AURELIO MARTIN - J76828

# * Final Report *

**Encounter Info:** Patient Name: AURELIO SEPULVEDA,DOB: 12/26/1970,CDCR: J76828,FIN: 1000003511762197J76828,Facility: RJD,Encounter Type: Institutional Encounter

I/p has order for wheelchair temporally that expired on 11/11/19. I/p was seen by Dr. Goyal, his wheelchair status was change from DPO to DPW. Did not retrieved wheelchair from inmate. Will notify PCP of status change.

**Signature Line**
Electronically Signed on 11/18/2019 05:35 PM PST
_____
Chanthalangsy, Udorn RN, RN

**Completed Action List:**
* Perform by Chanthalangsy, Udorn RN on November 18, 2019 17:35 PST
* Sign by Chanthalangsy, Udorn RN on November 18, 2019 17:35 PST
* VERIFY by Chanthalangsy, Udorn RN on November 18, 2019 17:35 PST

Result type:          Progress Note-Nurse
Result date:          November 18, 2019 17:30 PST
Result status:        Auth (Verified)
Result title:         Wheelchair
Performed by:         Chanthalangsy, Udorn RN on November 18, 2019 17:35 PST
Verified by:          Chanthalangsy, Udorn RN on November 18, 2019 17:35 PST

Printed by:     Guimbaolibot, Razel RN                    Page 1  of 1
Printed on:     12/4/2019 10:02 PST



# EXHIBIT COVER PAGE

<div style="border:1px solid">M</div>

EXHIBIT

DESCRIPTION OF THIS EXHIBIT:

Medical Records:Aurelio Martin Sepulveda, CDCR # J-76828

NUMBER OF PAGES TO THIS EXHIBIT:___5___PAGES.

JURISDICTION: (CHECK ONLY ONE)

☐ COUNTY GRAND JURY

☐ COUNTY MUNICIPAL COURT

☐ COUNTY CIRCUIT COURT

☐ COUNTY SUPERIOR COURT

☐ STATE COURT OF APPEAL

☒ UNITED STATES DISTRICT COURT

☐ STATE SUPREME COURT

☐ STATE BAR COURT

☐ STATE CIRCUIT COURT

☐ UNITED STATES SUPREME COURT

☐ OTHER:_____

Approved for
use with
Judicial
Council forms
(01-19-08)
MDT/CRA

**RJD - RJ Donovan Correctional Facility**
480 Alta Road
San Diego, CA 92179-

**CALIFORNIA CORRECTIONAL**
## HEALTH CARE SERVICES

**Patient:**  **SEPULVEDA, AURELIO MARTIN**
DOB/Age/Sex:  12/26/1970  49 years      Male
Encounter Date:  11/15/2013
Attending:  Shakiba,Peyman P&S

CDCR #:  J76828
PID #:  11762197
Referring:

---

### *Assessment Forms*

---

**SOAPE Entered On: 10/29/2019 10:11 PDT**
**Performed On: 10/29/2019 10:00 PDT by Posadas, Diane RN**

**Patient Encounter Information**
*ENCTR Information :*  Encounter Info: Patient Name: AURELIO SEPULVEDA,DOB: 12/26/1970,,FIN:
1000003511762197J76828,Facility: RJD,Encounter Type: Institutional Encounter

**SOAPE**
Posadas, Diane RN - 10/29/2019 10:17 PDT
*Chief Complaint :*  CARE MANAGEMENT
*Information Given By :*  Self
*Sp-Allergy Check Done :*  Yes
*Sp-Medication List Checked :*  Yes
*Sp-Past Medical History Checked :*  Yes
*Sp-Last Meal :*  10/29/2019 06:30 PDT
*Sp-Event Prior-Triggered Chief Complaint :*  RETURN 10/28/2019: TCMC > 24 HOURS, AMPUATION TOES, LEFT
4TH/5TH DIGITS
*Pain Present :*  No actual or suspected pain
*Sp-Clinical Findings :*  SEE COMMENT
(Comment: A/O X 4 WITHOUT SIGNS OF DISTRESS. UP IN WHEELCHAIR. FULL ROM NOTED TO ALL EXTREMITIES
WITH THE EXCEPTION OF LLE. LLE DRESSED IN GAUZE AND COMPRESSION BANDAGE WRAP S/P AMPUATION OF
LEFT (4TH/5TH) TOES, SENSATION PRESENT/INTACT. UNABLE TO VISUALIZE ACTUAL SURGICAL SITE DUE TO
DRESSING, WHICH IS TO REMAIN ON PERSON UNTIL ORDERED FOR CHANGE. OTHERWISE, SKIN
WARM/DRY/INTACT TO LLE AND ALL REMAINING TOES. HEENT WNL. PULSES REGULAR/STRONG, CAPILLARY
REFILL LESS THAN 2 SECONDS. LUNG SOUNDS CLEAR IN ALL LOBES UPON AUSCULTATION. ABDOMEN
SOFT/NON-TENDER, BOWEL SOUNDS ACTIVE IN ALL QUDRANTS. DENIES GU/OTHER CONCERNS AT THIS TIME.
[Posadas, Diane RN - 10/29/2019 10:12 PDT] )
*Temperature Oral :*  37 DegC(Converted to: 98.6 DegF)
*Peripheral Pulse Rate :*  88 bpm
*Respiratory Rate :*  16 br/min
*Systolic Blood Pressure :*  128 mmHg
(Comment: LEFT ARM, SITTING, AUTOMATIC [Posadas, Diane RN - 10/29/2019 10:12 PDT] )
*Diastolic Blood Pressure :*  70 mmHg
*Mean Arterial Pressure, Cuff :*  89 mmHg
*SpO2 :*  100 %
*Medication Compliance :*  I/P states compliant with medications
*Assessment :*  READINESS FOR ENHANCED SELF-CARE MANAGEMENT AEB COMPLIANCE WITH
CARE/ENCOUNTER

---

Report Request ID:  32006932

Print Date/Time:  8/19/2020 10:15 PDT

**WARNING:** This report contains confidential, proprietary, and/or legally privileged information intended for the recipient only.

RECEIVED
HCCUB
DEC 07 2020

RJD - RJ Donovan Correctional Facility

| | |
|---|---|
| Patient: | **SEPULVEDA, AURELIO MARTIN** |
| DOB/Age/Sex: | 12/26/1970 / 49 years    / Male              CDCR: J76828 |

| *Assessment Forms* |
|---|

*Plan :*  CONTINUE CURRENT CARE- WITH THE EXCPETION OF STATUS CHANGE TO DPO
*Sp-Intervention :*  ASSESSMENT, EDUCATION
*Education :*  I/P VERBALIZED UNDERSTANDING OF INSTRUCTIONS
*Clinician Calling Patient :*  Posadas, Diane RN
*Name of Clinician Contacted :*  Shakiba, Peyman P&S
*Disposition To: :*  Other: RELEASED TO CUSTODY
*Referral Required :*  No

<div align="right">Posadas, Diane RN - 10/29/2019 10:17 PDT</div>

**WARNING:** This report contains confidential, proprietary, and/or legally privileged information intended for the recipient only.

RECEIVED
HCCAB
DEC 0 7 2020

**RJD - RJ Donovan Correctional Facility**
480 Alta Road
San Diego, CA 92179-

CALIFORNIA CORRECTIONAL
**HEALTH CARE SERVICES**

| | | | | | |
|---|---|---|---|---|---|
| **Patient:** | **SEPULVEDA, AURELIO MARTIN** | | | | |
| DOB/Age/Sex: | 12/26/1970  49 years  Male | | CDCR #: | J76828 | |
| Encounter Date: | 11/15/2013 | | PID #: | 11762197 | |
| Attending: | Shakiba,Peyman P&S | | Referring: | | |

---

### *1845/7410*

---

**1845/7410 Entered On: 10/29/2019 14:20 PDT**
**Performed On: 10/29/2019 14:19 PDT by Shakiba, Peyman P&S**

**Patient Encounter Information**
*ENCTR Information :*  Encounter Info: Patient Name: AURELIO SEPULVEDA,DOB: 12/26/1970,,FIN: 1000000351 1762197J76828,Facility: RJD,Encounter Type: Institutional Encounter

Shakiba, Peyman P&S - 10/29/2019 14:19 PDT

**1845/7410**
*Disability Verification :*  Disability Confirmed
*Disability Type: Mobility :*  DPO-severe mobility restrictions; only uses Wheelchair Intermittently as an accommodation to ambulate outside cell/bed. Criteria: Intermittent Wheelchair prescribed for use outside cell/housing. WC accessible cell not required/WC can be kept outside cell
*DPO Disability Type :*  NO, patient is able to stand and pivot into or out of a regular transportation vehicle
*Disability Type: Hearing :*  No Hearing Impairment
*Disability Type: Vision :*  No Vision Impairment
*Speech-DPS :*  No
*Kidney-DKD :*  No
*1845/7410 Status :*  Temporary
*1845/7410 Expire Date :*  11/27/2019 23:59 PST
*Orthopedic Condition :*  Bone disease of spine
*Post Operation-Post Injury :*  N/A
*Orthopedic Condition-Upper Extremity :*  N/A
*Neurological Condition :*  N/A
*Orthopedic Condition-Lower Extremity :*  Weakness of both lower extremities, Walker User, Uses hands to assist with mobility; use of cane, or crutch
*UV Exposure :*  N/A
*Inmate Assistant Attendant :*  N/A
*7410-Other :*  Severe heart condition/COPD
*Non-Formulary One Off Accommodations :*  SC = Special Cuffing/Restraints Alert accommodation not covered by above criteria., LR = Lifting Restriction accommodation not covered by above criteria., WRN = No Rooftop Work/No Hazardous Machinery, etc., restriction not covered by above criteria.
*Non-Formulary One Off Justification :*  x
*DPW :*  N/A
*DPO :*  DPO
*DPM :*  N/A
*DLT :*  N/A
*DNM :*  N/A

---

Report Request ID:  32006933                                Print Date/Time:  8/19/2020 10:15 PDT

**WARNING:** This report contains confidential, proprietary, and/or legally privileged information intended for the recipient only.

RECEIVED
HCCAB
DEC 07 2020

RJD - RJ Donovan Correctional Facility

Attachment

| | | |
|---|---|---|
| Patient: | **SEPULVEDA, AURELIO MARTIN** | |
| DOB/Age/Sex: | 12/26/1970 / 49 years / Male | CDCR: J76828 |

## 1845/7410

DPH : N/A
DNH : N/A
DPV : N/A
DNV : N/A
DPS : N/A
DKD : N/A

Shakiba, Peyman P&S - 10/29/2019 14:19 PDT

Report Request ID:   32006933

Print Date/Time:   8/19/2020 10:15 PDT

RECEIVED
CCAB
DEC 07 2020

**WARNING:** This report contains confidential, proprietary, and/or legally privileged information not intended for the recipient only.

RJD - RJ Donovan Correctional Facility

Attachment

Patient:      **SEPULVEDA, AURELIO MARTIN**
DOB/Age/Sex:  12/26/1970 / 49 years     / Male          CDCR: J76828

| **Orders** |
| --- |

**Patient Care**

Order: **Follow Up LVN 10**
Order Date/Time: 10/29/2019 14:20 PDT
Order Start Date/Time: 12/4/2019 09:30 PST
Order Status: Completed          Department Status: Completed          Activity Type: Follow-up
End-state Date/Time: 12/4/2019 09:51 PST          End-state Reason:
Ordering Physician: SYSTEM SYSTEM          Consulting Physician:
Entered By: SYSTEM SYSTEM on 10/29/2019 14:20 PDT
Order Details: 12/4/19 9:30:00 AM PST, Other, 12/04/19 23:59:00 PST, Fired by Discern Expert (BCC_DME_FOLLOW_UP)
due to a "Temporary" 1845/7410 status.
Order Comment:

Order: **Medical Episodic Care Follow Up 20**
Order Date/Time: 10/29/2019 10:18 PDT
Order Start Date/Time: 10/29/2019 00:01 PDT
Order Status: Completed          Department Status: Completed          Activity Type: Follow-up
End-state Date/Time: 10/29/2019 10:19 PST          End-state Reason:
Ordering Physician: Roberts,Steven Rcvr's Med Exec          Consulting Physician:
Entered By: Posadas,Diane RN on 10/29/2019 10:18 PDT
Order Details: 10/29/19 12:01:00 AM PDT, 10/29/19 23:59:00 PDT, CO-CONSULT. TCMC > 24 HOURS, AMPUATION-
TOES, LEFT 4TH/5TH
Order Comment:

Order: **Follow Up LVN 10**
Order Date/Time: 10/28/2019 22:08 PDT
Order Start Date/Time: 11/18/2019 09:30 PST
Order Status: Completed          Department Status: Completed          Activity Type: Follow-up
End-state Date/Time: 11/18/2019 17:35 PST          End-state Reason:
Ordering Physician: SYSTEM SYSTEM          Consulting Physician:
Entered By: SYSTEM SYSTEM on 10/28/2019 22:08 PDT
Order Details: 11/18/19 9:30:00 AM PST, Other, 11/18/19 23:59:00 PST, Fired by Discern Expert (ORD_DME_FOLLOW_UP)
secondary to an order of "Wheelchair Temporary".
Order Comment:

Legend: c=Corrected, @=Abnormal, C=Critical, L=Low, H=High, f=Result Comment, i=Interp Data, *=Performing Lab

Report Request ID:   29854999                    Print Date/Time:   6/16/2020 08:24 PDT

**WARNING:** This report contains confidential, proprietary, and/or legally privileged
information intended for the recipient only.

REQUEST
HCCAB
DEC 07 2020



# EXHIBIT COVER PAGE

N

EXHIBIT

DESCRIPTION OF THIS EXHIBIT:

Medical Records:Aurelio Martin Sepulveda,CDCR # J-76828

NUMBER OF PAGES TO THIS EXHIBIT:___6___PAGES.

JURISDICTION: (CHECK ONLY ONE)

- ☐ COUNTY GRAND JURY
- ☐ COUNTY MUNICIPAL COURT
- ☐ COUNTY CIRCUIT COURT
- ☐ COUNTY SUPERIOR COURT
- ☐ STATE COURT OF APPEAL
- ☒ UNITED STATES DISTRICT COURT
- ☐ STATE SUPREME COURT
- ☐ STATE BAR COURT
- ☐ STATE CIRCUIT COURT
- ☐ UNITED STATES SUPREME COURT
- ☐ OTHER:_____

Approved for
use with
Judicial
Council forms
(01-29-08)
MDT/CRA



**CALIFORNIA CORRECTIONAL**
# HEALTH CARE SERVICES

**RJD - RJ Donovan Correctional Facility**
480 Alta Road
San Diego, CA 92179-

| | |
|---|---|
| **Patient:** | **SEPULVEDA, AURELIO MARTIN** |
| DOB/Age/Sex: | 12/26/1970 49 years    Male |
| Encounter Date: | 11/15/2013 |
| Attending: | Shakiba,Peyman P&S |

CDCR #:    J76828
PID #:     11762197
Referring:

## *Progress Notes*

Document Type:
Document Subject:
Service Date/Time:
Result Status:
Perform Information:

Sign Information:

Authentication Information:

Outpatient Progress Note
Office Visit Note
11/13/2019 11:40 PST
Modified
Goyal,Erica P&S (11/13/2019 11:58 PST); Goyal,Erica P&S
(11/13/2019 11:41 PST)
Goyal,Erica P&S (11/13/2019 11:58 PST); Goyal,Erica P&S
(11/13/2019 11:56 PST)
Goyal,Erica P&S (11/13/2019 11:58 PST); Goyal,Erica P&S
(11/13/2019 11:56 PST); Goyal,Erica P&S (11/13/2019 11:56
PST)

**Addendum by Goyal, Erica P&S on November 13, 2019 11:57:42 PST**
the patient was made DPW by physician manager. I concur with his disability status for now.

**Chief Complaint**
Hospital return >24 hrs: Left toes amputated; Also see message from 11/6 - I/P refusing
everything until he gets supplies for diabetes check.

**History of Present Illness**
I/P is a hospital return > 24 hours he was discharged 10/28/19 from L. 4th and 5th toe
amputation. He has not seen his PCP or his surgeon since then, this is the 5 day follow up
regarding that however he was not seen until today. He reports his noon time sugar is the
lowest at sometimes <60. his pre lunch insulin is often being held because of that. He
does not have any pain of the extremity and notes no drainage from the splint.

**Review of Systems**
Review of Systems:
General: no fevers or chills, no dizziness
CV/Resp: no chest pain shortness of breath, palpitations, PND or orthopnea
GI: no nausea vomiting diarrhea abdominal pain,
Neuro: no neuro deficit, no weakness or sensation loss, no headache
Skin: no rash or urticaria

**Physical Exam**
  Vitals & Measurements
**T:** 36.8 °C (Tympanic) **HR:** 99 (Peripheral)  **RR:** 16  **BP:** 108/66  **SpO2:** 98%
**WT:** 84.7 kg  **WT:** 84.7 kg (Wt dosing)
Gen: AAO x 4, NAD
HEENT: PERRLA, NCAT, EOMI,
Lungs: CTAB, now wheezes, rales or rhonchi
Heart: RRR, S1+S2 present, no m/r/g
Abd: Soft, NTND, +bs, no HSM
Ext: +pulse is diminished of the PT and DP of the L. foot but there is distal neurovascular of

**Problem List/Past Medical History**
Ongoing
    Acute gastritis
    Allergic rhinitis due to other allergen
    Aortic valve disorders
    Asthma
    Back pain
    Background diabetic retinopathy
    Benign essential hypertension
    CAD (coronary artery disease)
    Chronic low back pain
    Chronic neck pain
    Cirrhosis of liver
    COPD (chronic obstructive pulmonary
    disease)
    Diabetes
    Diabetes mellitus type 2, controlled,
    without complications
    Diabetic gastroparesis
    End stage liver disease
    Esophagitis
    Gallstone
    Hypoglycemia
    Imbalance
    Irritable bowel syndrome (IBS)
    Liver fibrosis
    Lumbago
    Mitral valve disorders
    Myocardial infarction

---

Report Request ID:  29773089

Print Date/Time:  6/11/2020 15:06 PDT

**WARNING:** This report contains confidential, proprietary, and/or legally privileged
information intended for the recipient only.

**RJD - RJ Donovan Correctional Facility**

Patient:        **SEPULVEDA, AURELIO MARTIN**
DOB/Age/Sex:  12/26/1970 / 49 years      / Male          CDCR: J76828

| *Progress Notes* |
| --- |

the 3 median toes are in tact. the patient has had amputated 4th and 5th digits, there is a longitidunal scar with healing tissue surrounding the scar that appears like pink, healing extending from the distal MTP of the 4th digit to the distal MTP of the 5th digit, there is large deformity of the 5th MTP but no overlying ulceration in this area. the sutures are in tact but wound does not appear closed yet.
Neuro: CNs II-XII grossly in tact, motor 5/5 all 4 extremities, sensation in tact b/l

**Assessment/Plan**
1. Wound
   per hospital records reviewed he is s/p 4th and 5th toe amputation due to gangrene from osteomyelitis. the MRI showed no e/o proximal infection and per assessment today the wound is healing as expected. per Dr. Calafi the splint is ok to be off now as it has been 2 weeks. I removed the splint, the sutures may have to stay upto about 6 weeks or possibly sooner will await further recs from Dr. Calafi. the patient needs follow up with Dr. Calafi as soon as possible. I counseled the patient on his diabetic control and diet.

Amputated toe
   as above. f/u with Dr. Calafi as soon as possible. message communicated to offsite.

Diabetes
   diabetic supplies ordered. the patient's morning humalog was reduced in hopes that his noon time insulin will not be held. He needs continued monitoring and f/u in one week.
Ordered:
insulin lispro, 20 unit, Subcutaneous, Soln, DailyACBreakfast, Administration Type NA, Medication Indication poorly controlled DM, humalog, lantus, not controlled, Order Duration: 180 monitor bs day, Stop Date: 05/12/20 5:29:00 PDT, First Dose: 11/14/19 5:30:00 PST
insulin lispro, 25 unit, Subcutaneous, Soln, BIDAC, Administration Type NA, Medication Indication Endocrinologist recommendation for uncontrolled type 2 DM, Lantus, regular insulin, Lantus, regular insulin, Order Duration: 30 n/a day, Stop Date: 12/13/19 11:29:00 PST...

Orders:
Diabetic Supplies/Monitors Recurring Supply
Diabetic Supplies/Monitors Recurring Supply
Diabetic Supplies/Monitors Recurring Supply
Diabetic Supplies/Monitors Recurring Supply
Follow Up Vascular Surgery Referral
Medical Episodic Care Follow Up 20

Neuropathic pain
Nonrheumatic mitral valve disorder
Other acquired deformities of knee
Polyneuropathy in diabetes
Primary angle-closure glaucoma
Sore throat
Superficial ulcer of skin
Unspecified arthropathy, pelvic region and thigh
Vision changes
Wound
Historical
No qualifying data

**Procedure/Surgical History**
4/9/18 PTCA and Stent placed in mid Circumflex artery, Arthroscopy, knee, cardiac cath with left circumflex stent placement 4/9/18, Colonoscopy, Diagnostic ultrasound of digestive system, Diagnostic ultrasound of heart, Esophagogastroduodenoscopy [EGD] with closed biopsy, Magnetic resonance imaging of spinal canal, Other cardiovascular stress test.

**Medications**
**Active Medications:**
aspirin  81 mg Oral Daily-KOP KOP
atorvastatin  80 mg Oral qPM-KOP KOP
carvedilol  6.25 mg Oral BID-KOP KOP
clopidogrel  75 mg Oral Daily-KOP KOP
glucose  37.5 gm Oral Daily-KOP KOP PRN: low blood sugar
insulin glargine  50 unit Subcutaneous BIDAC NA
insulin lispro  25 unit Subcutaneous BIDAC NA
insulin lispro  20 unit Subcutaneous DailyACBreakfast NA
levalbuterol  90 mcg Oral q6hr-KOP90 KOP PRN: shortness of breath
liraglutide  1.8 mg Subcutaneous Daily NA
losartan  25 mg Oral Daily-KOP KOP
mometasone-formoterol  2 puff Oral BID-KOP KOP
nitroglycerin  0.4 mg Sublingual q5min-KOP KOP PRN: chest pain
spironolactone  25 mg Oral Daily-KOP KOP

**Allergies**
NSAIDs
codeine
traMADol

---

Report Request ID:    29773089                          Print Date/Time:  6/11/2020 15:06 PDT

**WARNING:** This report contains confidential, proprietary, and/or legally privileged
information intended for the recipient only.

1845/7410                                        SEPULVEDA, AURELIO MARTIN - J76828

### 1845/7410 Entered On: 11/13/2019 9:52 PST
### Performed On: 11/13/2019 9:52 PST by Barenchi, Ryan CP&S

**Patient Encounter Information**
*ENCTR Information :* Encounter Info: Patient Name: AURELIO SEPULVEDA,DOB: 12/26/1970,,FIN:
1000003511762197J76828,Facility: RJD,Encounter Type: Institutional Encounter

Barenchi, Ryan CP&S - 11/13/2019 9:52 PST

**1845/7410**
*Disability Verification :* Disability Confirmed
*Disability Type: Mobility :* DPW-severe mobility restrictions and requires Full Time Wheelchair accommodation to
ambulate in and out of cell/bed area. Criteria: Full Time WC prescribed for use. WC accessible housing and path of travel
required
*Disability Type: Hearing :* No Hearing Impairment
*Disability Type: Vision :* No Vision Impairment
*Speech-DPS :* No
*Kidney-DKD :* No
*1845/7410 Status :* Temporary
*1845/7410 Expire Date :* 11/13/2020 23:59 PST
*Orthopedic Condition :* Bone disease of spine
*Post Operation-Post Injury :* N/A
*Orthopedic Condition-Upper Extremity :* N/A
*Neurological Condition :* N/A
*Orthopedic Condition-Lower Extremity :* Weakness of both lower extremities
*UV Exposure :* N/A
*Inmate Assistant Attendant :* N/A
*7410-Other :* Severe heart condition/COPD
*Non-Formulary One Off Accommodations :* SC = Special Cuffing/Restraints Alert accommodation not covered by above
criteria., LR = Lifting Restriction accommodation not covered by above criteria., WRN = No Rooftop Work/No Hazardous
Machinery, etc., restriction not covered by above criteria.
*Non-Formulary One Off Justification :* x
*DPW :* DPW
*DPO :* N/A
*DPM :* N/A

| | |
|---|---|
| Result type: | 1845/7410 |
| Result date: | November 13, 2019 09:52 PST |
| Result status: | Auth (Verified) |
| Result title: | 1845/7410 |
| Performed by: | Barenchi, Ryan CP&S on November 13, 2019 09:52 PST |
| Verified by: | Barenchi, Ryan CP&S on November 13, 2019 09:52 PST |

1845/7410                                    SEPULVEDA, AURELIO MARTIN - J76828

*DLT :* N/A
*DNM :* N/A
*DPH :* N/A
*DNH :* N/A
*DPV :* N/A
*DNV :* N/A
*DPS :* N/A
*DKD :* N/A

Barenchi, Ryan CP&S - 11/13/2019 9:52 PST

**Completed Action List:**
* Perform by Barenchi, Ryan CP&S on November 13, 2019 09:52 PST
* Sign by Barenchi, Ryan CP&S on November 13, 2019 09:52 PST
* VERIFY by Barenchi, Ryan CP&S on November 13, 2019 09:52 PST

Result type:            1845/7410
Result date:            November 13, 2019 09:52 PST
Result status:          Auth (Verified)
Result title:           1845/7410
Performed by:           Barenchi, Ryan CP&S on November 13, 2019 09:52 PST
Verified by:            Barenchi, Ryan CP&S on November 13, 2019 09:52 PST

Printed by:      Guimbaolibot, Razel RN
Printed on:      12/4/2019 10:03 PST                              Page 2 of 2

Attachment

RJD - RJ Donovan Correctional Facility

Patient: **SEPULVEDA, AURELIO MARTIN**
DOB/Age/Sex: 12/26/1970 / 49 years / Male          CDCR: J76828

| *Orders* |
| --- |

### Patient Care

Order: **Medical Episodic Care Follow Up 20 (PCP Follow Up 20)**
Order Date/Time: 11/13/2019 09:55 PST
Order Start Date/Time: 11/22/2019 14:40 PST
Order Status: Completed          Department Status: Completed          Activity Type: Follow-up
End-state Date/Time: 11/22/2019 12:35 PST          End-state Reason:
Ordering Physician: Barenchi,Ryan CP&S          Consulting Physician:
Entered By: Barenchi,Ryan CP&S on 11/13/2019 09:55 PST
Order Details: 11/22/19 2:40:00 PM PST, 11/18/19 23:59:00 PST, RAP: Changd to DPW for non weight bearing after surgery.
Please review necessity of back brace, mobility vest, cane, walker.
Order Comment:

Order: **7362 RN Initial Visit (Asymptomatic)**
Order Date/Time: 11/6/2019 10:57 PST
Order Start Date/Time: 11/15/2019 09:15 PST
Order Status: Canceled          Department Status: Canceled          Activity Type: Follow-up
End-state Date/Time: 11/15/2019 10:22 PST          End-state Reason:
Ordering Physician: Roberts,Steven Rcvr's Med Exec          Consulting Physician:
Entered By: Sillas,Jonathan OT on 11/6/2019 10:57 PST
Order Details: 11/15/19 9:15:00 AM PST, 137.9.9.80.20191103061856179411047 6893#1.00, I/P states he was told he
would be seen by dr. in 5 days upon returning from ER/TTA ,8 days ago., 11/20/19 23:59:00 PST
Order Comment:

Order: **7362 RN Initial Visit (Asymptomatic)**
Order Date/Time: 11/1/2019 12:00 PDT
Order Start Date/Time: 11/15/2019 09:00 PST
Order Status: Completed          Department Status: Completed          Activity Type: Follow-up
End-state Date/Time: 11/15/2019 10:24 PST          End-state Reason:
Ordering Physician: Roberts,Steven Rcvr's Med Exec          Consulting Physician:
Entered By: Sillas,Jonathan OT on 11/1/2019 12:00 PDT
Order Details: 11/15/19 9:00:00 AM PST, 137.252.9.71.201911050119001921338960498#1.00, "I HAVE AN ACcu-cHEcK
MACHINE FOR My BLOOD SUGAR CHECKS, I HAVE NO SUPPLiES I NEED TO HAVE SUPPLiES ISSuED.", 11/15/19
23:59:00 PST
Order Comment:

---

Legend: c=Corrected, @=Abnormal, C=Critical, L=Low, H=High, f=Result Comment, i=Interp Data, *=Performing Lab

**WARNING:** This report contains confidential, proprietary, and/or legally privileged
information intended for the recipient only.

RECEIVED
HCCAB
DEC 07 2020

## Attachment

## ADA/Effective Communication Patient Summary

**As of:** 01/21/2020 09:38

### Patient Information

**NAME:** SEPULVEDA, AURELIO
**CDCR:** J76828

### Disability Placement Program

**Current DPP Code(s):**
 * DPW

**DPP Verification/Accommodation Date:** 11/13/19
9:53:02 PST

**Current Housing Restrictions/Accomodations:**
 * No Rooftop Work/Hazardous Restriction
 * Lifting Restriction
 * Special Cuffing
 * Transport Vehicle With Lift
 * Full time Wheelchair User
 * Bottom Bunk
 * Ground Floor- No Stairs
 * Barrier Free Wheelchair Acces

### Methods of Communication

**SLI:**

**Primary Method:**

**Secondary Method:**

**Interview Date:**

### Developmental Disability Program

**Current DDP Code:** NDD

**Effective Date:** 08/03/2003 00:00

**Adaptive Support Needs:**

### Testing of Adult Basic Education (TABE)

**TABE Score:** 12.9

**TABE Date:** 01/17/2018 00:00

### Learning Disabilities

**Learning Disabilities:**

### English Proficiency

**LEP:** No

**Primary Language:** English

### Durable Medical Equipment

**Current ISSUED DME:**
 * Back Braces Permanent
 * Compression Stocking Permanent
 * Diabetic Supplies/Monitors Permanent
 * Eyeglass Frames Permanent
 * Foot Orthoses Permanent
 * Mobility Impaired Disability Vest Permanent
 * Therapeutic Shoes/Orthotics Permanent
 * Walkers Permanent
 * Wheelchair Temporary

### MHSDS

**MHLOC:** GP



# EXHIBIT COVER PAGE

0

EXHIBIT

DESCRIPTION OF THIS EXHIBIT:

Medical Records:Aurelio Martin Sepulveda,CDCR # J-76828

NUMBER OF PAGES TO THIS EXHIBIT:____3____ PAGES.

JURISDICTION: (CHECK ONLY ONE)

☐ COUNTY GRAND JURY

☐ COUNTY MUNICIPAL COURT

☐ COUNTY CIRCUIT COURT

☐ COUNTY SUPERIOR COURT

☐ STATE COURT OF APPEAL

☒ UNITED STATES DISTRICT COURT

☐ STATE SUPREME COURT

☐ STATE BAR COURT

☐ STATE CIRCUIT COURT

☐ UNITED STATES SUPREME COURT

☐ OTHER:_____

Approved for
use with
Judicial
Council forms
(01-19-08)
MDT/CRA



**CALIFORNIA CORRECTIONAL**
# HEALTH CARE SERVICES

**RJD - RJ Donovan Correctional Facility**
480 Alta Road
San Diego, CA 92179-

| | | | | |
|---|---|---|---|---|
| **Patient:** | **SEPULVEDA, AURELIO MARTIN** | | | |
| DOB/Age/Sex: | 12/26/1970  49 years     Male | | CDCR #: | J76828 |
| Encounter Date: | 11/15/2013 | | PID #: | 11762197 |
| Attending: | Shakiba,Peyman P&S | | Referring: | |

---

### *1845/7410*

---

**1845/7410 Entered On:  1/23/2020 9:21 PST**
**Performed On:  1/23/2020 9:19 PST by Zhang, Ronald P&S**

**Patient Encounter Information**
*ENCTR Information :*  Encounter Info: Patient Name: AURELIO SEPULVEDA,DOB: 12/26/1970,,FIN:
10000003511762197J76828,Facility: RJD,Encounter Type: Institutional Encounter

Zhang, Ronald P&S - 1/23/2020 9:19 PST

**1845/7410**
*Disability Verification :*  Disability Confirmed
*Disability Type: Mobility :*  DPO-severe mobility restrictions; only uses Wheelchair Intermittently as an accommodation to ambulate outside cell/bed. Criteria: Intermittent Wheelchair prescribed for use outside cell/housing. WC accessible cell not required/WC can be kept outside cell
*DPO Disability Type :*  NO, patient is able to stand and pivot into or out of a regular transportation vehicle
*Disability Type: Hearing :*  No Hearing Impairment
*Disability Type: Vision :*  No Vision Impairment
*Speech-DPS :*  No
*Kidney-DKD :*  No
*1845/7410 Status :*  Permanent
*Orthopedic Condition :*  Severe orthopedic conditions of hips, knees, ankles, feet, or upper extremity
*Post Operation-Post Injury :*  N/A
*Orthopedic Condition-Upper Extremity :*  N/A
*Neurological Condition :*  N/A
*Orthopedic Condition-Lower Extremity :*  Weakness of both lower extremities
*UV Exposure :*  N/A
*Inmate Assistant Attendant :*  N/A
*7410-Other :*  Severe heart condition/COPD
*Non-Formulary One Off Accommodations :*  N/A
*DPW :*  N/A
*DPO :*  DPO
*DPM :*  N/A
*DLT :*  N/A
*DNM :*  N/A
*DPH :*  N/A
*DNH :*  N/A
*DPV :*  N/A
*DNV :*  N/A
*DPS :*  N/A

---

Report Request ID:   29854736                              Print Date/Time:   6/16/2020 08:21 PDT

**WARNING:** This report contains confidential, proprietary, and/or legally privileged
information intended for the recipient only.

**RJD - RJ Donovan Correctional Facility**

Patient:    **SEPULVEDA, AURELIO MARTIN**
DOB/Age/Sex:  12/26/1970 / 49 years    / Male        CDCR: J76828

| 1845/7410 |
| --- |

*DKD :*  N/A

Zhang, Ronald P&S - 1/23/2020 9:19 PST

---

Report Request ID:    29854736                Print Date/Time:  6/16/2020 08:21 PDT

**WARNING:** This report contains confidential, proprietary, and/or legally privileged
information intended for the recipient only.

# ADA/Effective Communication Patient Summary

**As of:** 08/25/2020 09:14

## Patient Information

**NAME:** SEPULVEDA, AURELIO
**CDCR:** J76828

## Disability Placement Program

**Current DPP Code(s):**
 * DPO

**DPP Verification/Accommodation Date:** 01/23/20 9:21:30 PST

**Current Housing Restrictions/Accomodations:**
 * Limited Wheelchair User
 * Bottom Bunk
 * Ground Floor- No Stairs

## Methods of Communication

**SLI:**

**Primary Method:**

**Secondary Method:**

**Interview Date:**

## Developmental Disability Program

**Current DDP Code:** NDD

**Effective Date:** 08/03/2003 00:00

**Adaptive Support Needs:**

## Testing of Adult Basic Education (TABE)

**TABE Score:** 12.9

**TABE Date:** 01/17/2018 00:00

## Learning Disabilities

**Learning Disabilities:**

## English Proficiency

**LEP:** No

**Primary Language:** English

## Durable Medical Equipment

**Current ISSUED DME:**
 * Back Braces Permanent
 * Compression Stocking Permanent
 * Diabetic Supplies/Monitors Permanent
 * Eyeglass Frames Permanent
 * Foot Orthoses Permanent
 * Mobility Impaired Disability Vest Permanent
 * Therapeutic Shoes/Orthotics Permanent
 * Walkers Permanent
 * Wheelchair Permanent

## MHSDS

**MHLOC:**  GP

RECEIVED
HCCAB
DEC 07 2020

AURELIO MARTIN SEPULVEDA
CDCR # J-76828 / E24-C105-01LOW
RICHARD J. DONOVAN CORRECTIONAL FACILITY
480 ALTA ROAD
SAN DIEGO, CA 92179

In Propria Persona


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
Office of the Clerk
333 WEST BROADWAY, SUITE 420
SAN DIEGO, CA 92101
Attn: J. Simmons, Deputy Clerk

Re: AURELIO MARTIN SEPULVEDA V. E. GALINDO, et al.
    CASE NO.3:20-CV-02079-JLS-MDD
    FILING OF FIRST AMENDED COMPLAINT &
    SUPPORTING EXHIBITS

Dear Clerk,

    I am submitting an Original First Amended Complaint and supporting Exhibits
attached in compliance with the Court's Order issued on April 20,2021. This
First Amended Complaint is due on June 21,2021 and I am submitting it for
filing Timely. Please forward to the Honorable Jannis L. Sammartino, United States
District Judge for her adjudication. Please notify me at your earliest convenience
and thank you for your prompt attention to this matter.


Dated: _6_/_16_/_21_                          Respectfully Submitted,

                                              AURELIO MARTIN SEPULVEDA
                                              CDCR # J-76828
                                              Plaintiff / In Propria Persona

AURELIO MARTIN SEPULVEDA
CDCR# J-76828 / E24-C105-1 LOW
RICHARD J. DONOVAN CORRECTIONAL FACILITY
480 ALTA ROAD
SAN DIEGO, CA 92179



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
OFFICE OF THE CLERK
333 W. BROADWAY, SUITE 420
SAN DIEGO, CA 92101
ATTN: CLERK OF THE COURT

CONFIDENTIAL LEGAL MAIL

6/1/07

#93880