# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AURELIO MARTIN SEPULVEDA, CDCR #J-76828, | Case No.:  20-CV-2079 JLS (MDD) |
| Plaintiff, | **ORDER DISMISSING FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM PURSUANT TO 28 U.S.C. §§ 1915(e)(2)(B) AND 1915A(b)** |
| v. | |
| E. GALINDO, Correctional Officer; JOHN DOE #2, Correctional Sergeant; JOHN CHAU, M.D.; and PEYMAN SHAKIBA, M.D., | |
| Defendants. | |

Plaintiff Aurelio Martin Sepulveda ("Plaintiff" or "Sepulveda"), incarcerated at Richard J. Donovan Correctional Facility ("RJD") in San Diego, California, is proceeding pro se and in forma pauperis ("IFP") in this civil rights action pursuant to 42 U.S.C. § 1983.

## PROCEDURAL HISTORY

Sepulveda filed his original complaint on October 19, 2020.  *See* ECF No. 1 ("Compl.").  In it, Sepulveda claimed RJD Correctional Officer E. Galindo, Correctional

Officer John Doe #1, and Correctional Sergeant John Doe #2 violated the Eighth Amendment and the Americans with Disabilities Act of 1990 ("ADA") when they deprived him of safe and appropriate housing after he underwent two surgeries. *Id.* at 22–23. Plaintiff further claimed these defendants were negligent under California tort law. *Id.* at 23–24.

On March 2, 2021, the Court granted Sepulveda leave to proceed IFP and simultaneously screened and dismissed his Complaint sua sponte for failing to state a claim upon which § 1983 relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). *See* ECF No. 10. Specifically, the Court dismissed Sepulveda's Eighth Amendment claims because he had not alleged the type of "extreme deprivation" of the "minimal civilized measures of life's necessities" required to state a claim against for assigning him to a non-wheelchair accessible cell. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992). The Court found that Plaintiff failed to allege a "risk so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). In addition, Plaintiff failed to state an ADA claim because he named only individual defendants and failed to allege facts to show those defendants intentionally discriminated against him based on his disability. *Mark H. v. Lemahieu*, 513 F.3d 922, 938 (9th Cir. 2008). Finally, in the absence of any viable federal claim, the Court exercised its discretion and dismissed Plaintiff's supplemental state law claim pursuant to 28 U.S.C. § 1367(c)(3). *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). The Court gave Plaintiff 45 days to file an amended complaint that cured the deficiencies outlined in the order. *See* ECF No. 10.

After receiving an extension of time, Sepulveda has now filed a First Amended Complaint ("FAC," ECF No. 13), which renames Defendants E. Galindo and John Doe #2, omits Defendant John Doe #1, and adds Defendants John Chau, M.D., and Peyman Shakiba, M.D. *See* FAC at 1–2.

In the FAC, Sepulveda claims Defendants Chau and Shakiba violated his Eighth Amendment rights when they acted with deliberate indifference to his serious medical

needs.  *Id.* at 38–39.  He further contends Defendants Galindo and Doe # 2 violated his Eight Amendment rights when, after Plaintiff had surgery, they placed him in a cell "intentionally . . . [and] with knowledge of the dangerous conditions of confinement created by the broken window and glass spilt all over the floor of the cell."  *Id.* at 40. Finally, he alleges Defendants Galindo and Doe # 2 were negligent under California state tort law.  *Id.* at 41.  He seeks both compensatory and punitive damages.  *Id.*

## SCREENING PURSUANT TO 28 U.S.C. §§ 1915(e)(2) & 1915A(b)

As Sepulveda now knows, the Prison Litigation Reform Act ("PLRA") requires the Court to review complaints filed by all persons proceeding IFP and by those, like him, who are "incarcerated or detained in any facility [and] accused of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms or conditions of parole, probation, pretrial release, or diversionary program," "as soon as practicable after docketing."  *See* 28 U.S.C. §§ 1915(e)(2) and 1915A(b).

## I.    Standard of Review

Under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), the Court must dismiss sua sponte a prisoner's IFP complaint, or any portion of it, that is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune.  *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)).  "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'"  *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 681 (7th Cir. 2012)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim."  *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to section 1915A "incorporates the familiar standard

applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)").   Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.   "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*   The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

Finally, in deciding whether Plaintiff has stated a plausible claim for relief, the Court may consider exhibits attached to his Complaint.   *See* Fed. R. Civ. R. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citing *Amfac Mortg. Corp. v. Ariz. Mall of Tempe, Inc.*, 583 F.2d 426 (9th Cir. 1978) ("[M]aterial which is properly submitted as part of the complaint may be considered" in ruling on a Rule 12(b)(6) motion to dismiss.)).

## II.   Plaintiff's Allegations

In his FAC, Sepulveda alleges that, while incarcerated at RJD in October 2019, he was admitted to Tri-City Medical Center ("TCMC") for two in-patient surgeries.   FAC at 14–15. On October 23, 2019, a cardiologist performed a "Percutaneous Transluminal Coronary Angioplasty of [Plaintiff's] proximal left circumflex artery" and "left heart catheterizations and [a] selective coronary angiogram," among other things.[1]   *Id.* at 17.

---

[1] "Percutaneous transluminal coronary angioplasty" is a cardiovascular procedure performed to "widen the lumen of a partially or fully occluded blood vessel (as the femoral or coronary artery)" that has been narrowed or blocked by "passing a balloon catheter through the skin and into a blood vessel (as of the groin or arm) to be guided to the site of obstruction," where the balloon catheter

The next day, October 24, 2019, Sepulveda underwent a procedure to amputate the fourth and fifth toes of his left foot, which had become gangrenous due to complications from diabetes. *Id.*

Plaintiff was released from the hospital on the evening of October 28, 2019. *Id.* at 18. Upon discharge, Sepulveda was given a post-operative plan that included an order to "remain non-weightbearing" until the wound on his left foot was fully healed in "2–6 weeks." *Id.* at 15, *see also id.* Ex. I at 133. The discharge recommendations stated that Sepulveda was released with a wheelchair and noted that also he had a four-wheel walker. *See id.* Ex. I at 133. The physical therapist "recommend[ed] [wheelchair] for use when patient returns to correctional facility to be used for longer distances." *Id.* The order noted that Sepulveda was "able to perform bed mobility and transfers with use of a [four-wheel walker] while maintaining non-weight bearing lower-left extremity." *Id.*

Plaintiff was transported back to RJD by Defendant Galindo and another correctional officer. *Id.* at 18. After arriving, Sepulveda was taken to the prison's Treatment Triage Area ("TTA") for assessment and clearance to be re-housed in a cell. Dr. Chau reviewed Plaintiff's medical file and post-operative reports from the TCMC doctors. Dr. Chau assigned Plaintiff temporary wheelchair status, also known as "DPO status."[2] *Id.* at 20. Plaintiff states that Dr. Chau "ignored the recommendation made by both [TCMC] surgeons" and instead assigned Sepulveda a wheelchair for only two weeks, "without

---

is inflated to clear the plaque causing the blockage. *See* Merriam–Webster Medical Dictionary, https://www.merriam-webster.com/medical/percutaneous%20transluminal%20angioplasty (visited Feb. 16, 2021).

[2] DPO status is for "Intermittent Wheelchair Users." *See* FAC at 25; *see also Polley v. Davis*, 17-cv-03793-JST, 2018 WL 4352958, at *5 (N.D. Cal. Sept. 11, 2018). DPO status is for inmates "who do not require a wheelchair full time but are medically prescribed a wheelchair for use outside of the assigned cell." *See Miller v. Adonis*, 1:12-cv-00353-DAD-EPG-PC, 2019 WL 4076441, at *9 (E.D. Cal. Aug. 29, 2019). Conversely, DPW status is assigned to inmates who require a permanent wheelchair and accessible cell. *See* ECF No. 13 at *Polley*, 2018 WL 4352958, at *5.

requiring a wheelchair accessible cell for housing." *Id.*   Sepulveda contends Dr. Chau "substituted his own opinion as to the significance of Plaintiff's conditions and ignored both surgeons' recommendations while downgrading the length of expected recovery time clearly indicated in both . . . post-operative plans." *Id.* at 21.

John Doe #2, a correctional sergeant, was on duty at the RJD TTA on the evening that Plaintiff returned from TCMC. *Id.* at 28.  Doe #2 was stationed at a podium at the entrance of the TTA. *Id.* at 29.  He could see the nurse's station and was also "in communication with medical staff to coordinate inmate movement, including determining inmate housing assignments in accordance with CDCR policy." *Id.*  Doe #2 was also the supervisor of correctional officers assigned to the TTA.  While Plaintiff was "waiting to be cleared" by the medical staff, Doe #2 looked "into the tank and saw Plaintiff sitting in a wheelchair with a cast on his leg." *Id.*  Sepulveda states Doe #2 then spoke to both the nurse and Dr. Chau. *Id.*  Doe #2 asked Dr. Chau to order a temporary wheelchair for Plaintiff "in order to house him in D-Facility." *Id.*  According to Sepulveda, Dr. Chau agreed with Doe #2 because he believed Sepulveda's condition was not serious enough to warrant more than a temporary wheelchair. *Id.*  Doe #2 then assigned Plaintiff to a cell in D-Facility, which was unoccupied due to a broken window that had been slated for repair. *Id.* at 30.  Sepulveda states that Doe #2 "spoke to D-Facility's Program office and spoke to the attending sergeant and was made aware the cell was available." *Id.* at 31.  But Doe #2 never confirmed that the window had been repaired. *Id.*

While Sepulveda was waiting in the TTA holding tank, Correctional Officer Galindo handed him "dirty, stinky clothing and told Plaintiff to change into [it]." *Id.* at 35.  Plaintiff asked for clean clothes, but Galindo replied there was nowhere else for him to get clothes at that time, as it was late in the evening. *Id.*  At about 11:00 p.m., Galindo and another correctional officer escorted Sepulveda in his wheelchair to his newly assigned cell, #111. *Id.* at 35.  Upon arriving at the cell, Galindo looked inside.  Plaintiff told Galindo the window was broken, and the cell had no mattress, bed roll, or toilet paper. *Id.* at 35.  Galindo responded that "there was no one to ask for a mattress, bedding or toilet paper

because it was late." *Id.* Despite Plaintiff's protests about the broken window and glass, Galindo "ordered him to get up and go into the cell." Sepulveda stood up and "hopped into the cell." *Id.* at 36. Sepulveda complained to Galindo again about the condition of the cell; Galindo said nothing, and he and his partner closed the cell door and left. *Id.* As a result, Plaintiff states he was "forced to lay on the cold metal bunk without a mattress, blankets, sheets aggravating his pain running up his left leg." *Id.* at 38. He states during the night he was forced to hop and "hobble" to use the toilet and further that he had to do so without having the proper hygiene items. *Id.* The broken window was replaced the next day, on October 29, 2019. *Id.* at 17; *see also id.* Ex. C at 65.

Plaintiff saw Dr. Shakiba for a follow-up appointment the next morning, October 29, 2019. *Id.* at 23. Sepulveda states that Dr. Shakiba knew Dr. Chau "had failed to issue" a "permanent" wheelchair for Plaintiff, despite the recommendation of the Dr. Calafi, the TCMC surgeon. *Id*. at 24. Dr. Shakiba also knew that Dr. Chau had not entered a referral for Plaintiff to be seen in 20 days by Dr. Calafi. *Id.* Instead, Dr. Shakiba "elected to rely on his own non-specialized opinion and determined that Plaintiff did not require a permanent wheelchair." *Id.* Dr. Shakiba ordered Sepulveda's status be designated "DPO-Intermittent," which would give Plaintiff access to a wheelchair outside his cell. *Id.* at 25. On October 30, 2019, Plaintiff was moved to a cell in A-Facility that was not accessible for permanent wheelchair use. *Id.* at 25. Plaintiff was moved to a wheelchair accessible cell, and his status changed to "DPO" for permanent use of a wheelchair, on November 13, 2019. *Id.* at 26.

Plaintiff asserts three claims in his FAC. He contends that Defendants violated the Eighth Amendment by (1) depriving him of adequate medical care and (2) depriving him of safe and appropriate housing. *Id.* at 38–41. Plaintiff further claims Defendants Galindo and Doe #2 were negligent under California tort law. *Id.* at 41. Plaintiff seeks both compensatory and punitive damages. *Id.*

/ / /

/ / /

## III.   Analysis

### A.   Eighth Amendment Claims

Section 1983 is a "vehicle by which plaintiffs can bring federal constitutional and statutory challenges to actions by state and local officials." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).  To state a claim under section 1983, Plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Naffe v. Frey*, 789 F.3d 1030, 1035–36 (9th Cir. 2015).

The Eighth Amendment prohibits cruel and unusual punishment of a person convicted of a crime.  U.S. Const. amend. VIII.  "After incarceration, only the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (ellipsis in original) (internal quotation and citation omitted).

Plaintiff alleges Defendants violated his Eighth Amendment rights in two ways.  First, he contends Drs. Chau and Shakiba were deliberately indifferent to his serious medical needs.  FAC at 38–39.  Second, he argues Defendants Doe #2 and Galindo were deliberately indifferent when they "failed to protect his health and safety from dangerous and inhumane conditions" by assigning him to a cell that was unsafe and lacked basic necessities the night of his return from the hospital.  *Id.* at 39–40.  The Court will address each of these claims in turn.

#### 1.   Medical Care

To state a claim against Drs. Chau and Shakiba under the Eighth Amendment, Sepulveda must plead facts to plausibly suggest that they: (1) exposed him to a substantial risk of serious harm; and (2) did so with deliberate indifference.  *See Farmer v. Brennan*, 511 U.S. 825, 837, 842 (1994); *Iqbal*, 556 U.S. at 678.  Specifically, in a medical care case such as this, Plaintiff must first allege he suffered from or faced an objectively "serious medical need." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *Mendiola-Martinez v.*

*Arpai*o, 836 F.3d 1239, 1248 (9th Cir. 2016).  "A medical need is serious when the failure to treat it could result in significant injury or the unnecessary and wanton infliction of pain."  *Jett*, 439 F.3d at 1096; *see also McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) (overruled on other grounds by *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997)).

In addition, Sepulveda must allege facts sufficient to demonstrate Drs. Chau and Shakiba acted with "deliberate indifference" to his serious medical needs.  *See Erickson v. Pardus*, 551 U.S. 89, 90 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment," and this includes "indifference. . . manifested by prison doctors in their response to the prisoner's needs.")).  "Deliberate indifference is a high legal standard."  *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016) (citing *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004)).  Inadvertent failures to provide adequate medical care, mere negligence or medical malpractice, delays in providing care (without more), and differences of opinion over what medical treatment or course of care is proper are all insufficient to constitute an Eighth Amendment violation.  *Estelle*, 429 U.S. at 105–07; *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).

### a.    Dr. Chau

Sepulveda alleges that Dr. Chau was deliberately indifferent to his serious medical needs when he failed to assign Sepulveda a permanent wheelchair and failed to follow the recommendations of the surgeons and doctors who treated him at TCMC.  FAC at 20–22.  Specifically, Sepulveda alleges that when he returned to RJD from TCMC on the evening of October 28, 2019, Dr. Chau evaluated him and "determined that Plaintiff did not require a permanent wheelchair" despite being "aware of the recommendations made by both Dr. Rajamanickam, MD and Dr. Calafi, MD after their respective surgeries."  *Id.* at 20.  Sepulveda alleges that, after reviewing Sepulveda's medical reports from TCMC, Dr. Chau

"substituted his own opinion. . . and ignored both surgeons' recommendations." *Id.* at 21. Sepulveda admits, however, that when he arrived back at RJD from TCMC, Dr. Chau assigned him a temporary wheelchair, to be used for 14 days. *Id.* 20. Sepulveda also concedes that TCMC doctors recommended only that he "remain non-weight bearing until the wound is fully healed" and estimated it could take "2–6 weeks." *Id.* at 15, 20; *see also id.* Ex. I at 128.

There is nothing in the FAC suggesting that Dr. Chau's assignment of the temporary wheelchair on October 28, 2019 was insufficient to meet Sepulveda's needs at that time. Even assuming TCMC doctors recommended Plaintiff use a wheelchair for a more extended period of time, that Dr. Chau had a "difference of opinion" over the appropriateness of assigning Plaintiff a permanent wheelchair does not amount to a constitutional claim for deliberate indifference. *See Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) ("A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim."); *see also Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989) (difference of medical opinion as to the need to pursue one course of treatment over another is insufficient, as a matter of law, to establish deliberate indifference).

Sepulveda also contends that Dr. Chau was deliberately indifferent because, despite assigning him a wheelchair for 14 days, Dr. Chau did not specifically order that Plaintiff's cell be fully wheelchair accessible. FAC at 20. This, Sepulveda alleges, caused him to be placed in a cell that required him to transfer out of the wheelchair to enter and to get to the bed. But, based on Plaintiff's medical records, Sepulveda was able to perform transfers from a wheelchair to a bed. On October 26, 2020, two days before his discharge form TCMC, Sepulveda was seen by a TCMC physical therapist who noted that Sepulveda had been able to "perform bed mobility and transfers . . . with [the] use of a [four wheeled walker] and maintain non weight bearing." *Id.* Ex. I at 133. The TCMC physical therapist also noted that a wheelchair was recommended "for longer distances." *Id.* This suggests that even TCMC medical professionals were aware that Plaintiff did not need the

wheelchair when transferring and moving short distances.  Thus, Plaintiff's assignment to a cell that was not completely wheelchair accessible does not rise to the level of deliberate indifference on Dr. Chau's part. Given the information in Sepulveda's records, which Plaintiff acknowledges Dr. Chau reviewed, Dr. Chau knew that Plaintiff was able to transfer from a wheelchair to bed successfully before being released from TCMC.  Even assuming Dr. Chau had ordered a permanent wheelchair and accessible cell, Sepulveda would still have had to transfer from the chair to the bed.  Thus, the allegations contained in the FAC lack the "further factual enhancement" required to plausibly show Dr. Chau "purposeful[ly] act[ed] or fail[ed] to respond to [Plaintiff's] . . . medical need," or that any "harm [was] caused by [this] indifference." *See Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *Wilhelm*, 680 F.3d at 1122.  Therefore, Plaintiff has failed to state a claim against Dr. Chau. *See Estelle*, 429 U.S. at 106; *Toguchi*, 391 F.3d at 1060.

### b.    Dr. Shakiba

Plaintiff also claims that Dr. Shakiba was deliberately indifferent to his serious medical needs.  On October 29, 2019, the morning after he arrived back at RJD from the hospital, Sepulveda returned to the D-Facility medical clinic.  FAC at 22.  Plaintiff was originally seen by a nurse, who told Sepulveda that she would speak to Dr. Shakiba about changing his wheelchair status from temporary to permanent. *Id*. at 23.  Sepulveda alleges Dr. Shakiba ignored the nurse's suggestion and instead "elected to rely on his own non-specialized opinion and determined that Plaintiff did not require a permanent wheelchair status that would require he be housed in a wheelchair accessible cell." *Id.* at 24–25.  He also claims Dr. Shakiba failed to "enter a referral" for Sepulveda to have a follow-up appointment with Dr. Calafi at TCMC, despite Dr. Calafi's recommendation that he see Plaintiff 10 days after surgery. *Id.*

First, Plaintiff has failed to state a claim for deliberate indifference with regard to his wheelchair assignment.  As discussed above, a difference of opinion between medical professionals concerning the appropriate course of inmate treatment or care is not enough,

by itself, to support a claim of deliberate indifference. *Sanchez*, 891 F.2d at 242. Nor does a difference of opinion between the prisoner and his doctors constitute deliberate indifference. *Jackson*, 90 F.3d at 332. Here, Sepulveda's allegations amount to nothing more than a difference of opinion regarding the length of time he would require a wheelchair. As discussed above, a physical therapist saw Sepulveda on October 26, 2019 at TCMC and noted that he was "able to perform bed mobility and transfers" without needing to put weight on his leg foot. FAC Ex. I at 133. When Dr. Shakiba examined Sepulveda on October 29, 2019, he noted that "[Plaintiff] is able to stand and pivot into or out of a regular transportation vehicle" and therefore a wheelchair accessible cell was "not required." *Id.* Ex. M at 150. Furthermore, it is clear from notations left by the physical therapist that the wheelchair was recommended "for longer distances." *Id*. Thus, even the medical professionals at TCMC did not appear to think Sepulveda was wholly unable to move without wheelchair assistance. Moreover, Sepulveda himself describes Dr. Shakiba as "elect[ing] to rely on his own non-specialized *opinion* that Plaintiff did not require a permanent wheelchair." *Id.* at 24 (emphasis added). This is not enough to state a claim for deliberate indifference. *Franklin*, 662 F.2d at 1344 ("A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim."); *see also Sanchez*, 891 F.2d at 242.

In addition, Plaintiff has failed to allege sufficient facts to show he suffered "substantial harm" as a result of being assigned a temporary wheelchair for 14 days before having the status changed to permanent. *Wood*, 900 F.2d at 1335 (stating that, in order to constitute an Eight Amendment violation, a delay in treatment "must have caused substantial harm"). Plaintiff admits that on November 11, 2019 he was seen by Dr. Goyal, who changed his wheelchair status from temporary to permanent. FAC at 26. Plaintiff also was moved to a wheelchair accessible cell on November 13, 2019. *Id*. The two-week delay in getting a fully wheelchair accessible cell, when Plaintiff was able to stand and transfer from his wheelchair, did not amount to substantial harm required to satisfy the Eight Amendment. *See Wood*, 900 F.2d at 1335; *see also Mayfield v. Craven*, 433 F.2d

873, 874 (9th Cir. 1970) (per curiam) (finding an 11–day delay in treating inmate's "serious facial bone fractures" did not violate Eighth Amendment).

Second, Plaintiff has not alleged sufficient facts to show Dr. Shakiba was deliberately indifferent when he "refused to enter a referral for [Plaintiff] to be seen by Dr. Caliafi, MD by November 7, 2019" for a follow-up appointment at TCMC.  FAC at 24.  Again, Plaintiff's allegations fail to state a claim for deliberate indifference.  As noted above, "deliberate indifference" requires allegations of "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett*, 439 F.3d at 1096.  Here, Sepulveda has failed to allege facts sufficient to satisfy either element.  First, nothing in the FAC indicates that Dr. Shakiba purposely denied him a medically necessary follow-up appointment.  To the extent Dr. Shakiba determined in was unnecessary to send Plaintiff off-site to TCMC for a follow-up, that decision amounts to nothing more than a difference of opinion. *See Sanchez*, 891 F.2d at 242; *Jackson*, 90 F.3d at 332.

Sepulveda also has failed to allege facts to show he suffered "substantial harm" due to Dr. Shakiba's failure to schedule a follow-up appointment with Dr. Calafi. *See Wood*, 900 F.2d at 1335 (9th Cir. 1990) (stating that, in order to constitute an Eight Amendment violation, a delay in treatment "must have caused substantial harm").  Plaintiff had a follow-up appointment with a physician, Dr. Goyal, on November 13, 2019, during which the surgical area was examined. *See* FAC at 26; *see also id.* Ex. N at 154.  There is nothing in the FAC suggesting that Plaintiff suffered harm, much less "substantial harm," because Plaintiff's follow-up examination was performed by an RJD doctor instead of his TCMC surgeon.

In addition, Sepulveda has not shown that "the course of treatment that [Dr. Shakiba] chose was medically unacceptable under the circumstances," or that Dr. Shakiba "chose this course in conscious disregard of an excessive risk to [Sepulveda]." *See Jackson*, 90 F.3d at 332 (citations omitted).  Plaintiff was not denied follow-up, post-operative care. He simply received that care at RJD as opposed to being transferred to TCMC for the exam.

Therefore, the Court finds the allegations raised in the FAC fail to state a claim that Dr. Shakiba acted with the requisite culpable state of mind when failing to order a permanent wheelchair and declining to schedule a follow-up appointment with Dr. Calafi.

In sum, Plaintiff has failed to state a claim that Drs. Chau and Shakiba were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment. Therefore, the Court **DISMISSES** Plaintiff's first claim. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii) & 1915A(b)(1); *Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121.

### 2. Cell Assignment and Conditions

In his second claim, Sepulveda argues his Eighth Amendment rights were violated when Defendants Galindo and Doe #2 assigned him to a cell that was unsafe and lacking adequate toiletries and bedding.  FAC at 39–40.  While the Eighth Amendment does not mandate that prisons be comfortable, they cannot be inhumane.  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006).  To that end, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotations and citations omitted).

To state an Eighth Amendment claim with regard to prison conditions, a prisoner must satisfy both an objective prong and a subjective one.  *Id.* at 834.  First, the plaintiff must make an objective showing that the deprivation was "sufficiently serious" and resulted in the denial of the "minimal civilized measure of life's necessities." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (quoting *Rhodes*, 452 U.S. at 347).  Second, the plaintiff must adequately allege the prison official subjectively had a "sufficiently culpable statement of mind" by showing he or she was "deliberately indifferent" to the inmate's health or safety in allowing the deprivation to take place.  *Farmer,* 511 U.S. at 834; *Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1248 (9th Cir. 2016).  Finally, plaintiffs alleging deliberate indifference must also "demonstrate that the defendants' actions were

/ / /

both an actual and proximate cause of their injuries." *Lemire v. Cal. Dep't Corr. & Rehab.*, 726 F.3d 1062, 1082 (9th Cir. 2013).

### a.   Doe #2

Plaintiff alleges Doe #2 was deliberately indifferent when he assigned Plaintiff to a cell in D-Facility on October 28, 2019, that was (1) not adequately wheelchair accessible and (2) unsafe because of a broken window.  FAC at 28–34.  When Sepulveda returned to RJD from TCMC on October 28, 2019, Doe #2 was on duty at the RJD TTA.  *Id.* at 28. Doe #2 saw Plaintiff in the TTA that night, "in the tank . . . sitting in a wheelchair and with a cast on his left leg."  *Id.* at 29.  Sepulveda states that Doe #2 spoke to Dr. Chau about Plaintiff's housing and asked Dr. Chau to issue an order for a temporary wheelchair in order to "house [Plaintiff] in in D-Facility."  *Id.*  Sepulveda further alleges Doe #2 assigned him to a cell that was unsafe because it was inappropriate for his needs and had a broken window.  *Id.* at 31–32.

First, Plaintiff has not sufficiently alleged that Doe #2 objectively deprived him of something "sufficiently serious" when Doe #2 assigned Plaintiff to the cell in D-Facility. *See Foster v. Runnels*, 554 F.3d 807, 812 (9th Cir. 2009).  When considering whether a deprivation is sufficiently serious, courts look to the totality of the conditions of confinement, including "circumstances, nature, and duration of [the] deprivation." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000).  For instance, a deprivation of a basic necessity that lasts only a few days may rise to the level of an Eighth Amendment violation, while more "modest deprivations can also form the objective basis of a violation, but only if such deprivations are lengthy or ongoing."  *Id.* at 731–32 (citing *Keenan v. Hall*, 83 F.3d 1083, 1090–91 (9th Cir. 1996)).

Here, Plaintiff admits he was only in the cell assigned to him by Doe #2 for 7.5 hours, from 11:00 p.m. to 6:30 a.m., when most inmates would be sleeping.  FAC at 17, 20; *see also id.* Ex. A at 47.  While doctors had advised Plaintiff to avoid putting weight on his left foot after having his fourth and fifth toes amputated, Plaintiff was not unable to move without the wheelchair.  Sepulveda had been evaluated by a physical therapist at

TCMC, who noted that Plaintiff could perform transfers from his wheelchair to a bed.  *Id.* Ex. I at 133.  And Plaintiff admits he was able to transfer from the wheelchair to the cell bunk that night.  *Id.* at 19.  The only deprivation Plaintiff points to as a result of being placed in the cell is that he was forced to hop from the wheelchair into the cell, "despite being in extreme pain," and had to put weight on his left foot at one point in order to use the toilet.[3]  *Id.* at 20.

Such brief deprivations do not amount to a denial of the "minimal civilized measure of life's necessities."  *Wilson*, 501 U.S. at 298; *see also, e.g.*, *Marlin v. Raper*, No. 2:06-cv-0004-SWW/BD, 2007 WL 779710, at *5 (E.D. Ark. Mar. 13, 2007) (stating "lack of special facilities for temporarily wheelchair-bound inmates do not objectively constitute serious deprivation"); *Serrano v. Doe*, No. 3:17-CV-01606 (CSH), 2018 WL 3315580, at *6 (D. Conn. July 5, 2018) (concluding there was no "serious deprivation" when an inmate who injured his ankle was denied a wheelchair and forced to "hop[] to the medical department on his uninjured leg").  While it may well have been more comfortable for Plaintiff to be housed in cell that was fully wheelchair accessible, the Eighth Amendment does not require prison officials to provide comfortable prisons.  *Farmer*, 511 U.S. at 832.  In sum, Plaintiff has not alleged the type of "extreme deprivation" of the "minimal civilized measures of life's necessities" required to state a claim against Doe #2 for assigning Plaintiff to a cell in D Facility.  *See Hudson*, 503 U.S. at 9.

Even assuming Plaintiff alleged a sufficiently serious deprivation, Plaintiff fails to allege sufficient facts that Doe #2 was subjectively deliberately indifferent when he made the cell assignment without first confirming that a previously broken window in the cell had been repaired.   As discussed above, the subjective component of deliberate indifference is met when a prison official "knows of and disregards an excessive risk to

---

[3] It is not clear how Plaintiff's having a wheelchair would have eliminated any risk of him having to put weight on his left foot since, presumably, Plaintiff would have still had to stand in order to transfer from the bed to the wheelchair and from the wheelchair to the toilet.

inmate health or safety." *Id.* As such, a defendant must be both "aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Id.* at 837, 842. Plaintiff contends Doe #2 was "on notice" that the cell had been "deactivated due to a broken window. . . and elected to house Plaintiff in the cell anyways." FAC at 21. But even assuming Doe #2 knew the window had been broken, there is nothing in the FAC to suggest Doe #2 drew from that an inference that assigning Sepulveda to the cell for less than 8 hours, during which time Plaintiff would presumably be sleeping, presented a "substantial risk of serious harm" to Sepulveda. Thus, Plaintiff fails to state an Eighth Amendment claim of deliberate indifference against Doe #2. *See Toguchi*, 391 F.3d at 1057.

### b.    Galindo

Plaintiff contends Galindo violated Plaintiff's Eighth Amendment rights when escorting him to, and placing him in, a cell with a broken window that was also without a mattress, bedding, clean clothing, and toilet paper for 7.5 hours from approximately 11:00 p.m. to 6:30 a.m. FAC at 22, 35. However, Plaintiff's allegations do not amount to "serious deprivations" resulting in the denial of the "minimal civilized measure of life's necessities." *See Wilson*, 501 U.S. at 298. When considering conditions of confinement, courts must consider the amount of time the prisoner was subjected to the condition. *See Hearns v. Terhune*, 413 F.3d 1036, 1042 (9th Cir. 2005). Plaintiff acknowledges he was only subjected to the alleged conditions for a single night. FAC at 22, 25. The Ninth Circuit has held claims of sleeping without a mattress for one night "insufficient to state an Eighth Amendment violation and no amendment can alter that insufficiency." *Hernandez v. Denton*, 861 F.2d 1421, 1424 (9th Cir. 1988) (vacated on other grounds by *Denton v. Hernandez*, 493 U.S. 801 (1989)).

Additionally, California district courts have held that an inmate's deprivation of toilet paper for a short time is not sufficiently serious to rise to the level of an Eighth Amendment violation. *See Mitchell v. Cate*, No. 2:11-cv-1240-JAM-AC, 2015 WL 5255339, at *6 (E.D. Cal. Sept. 9, 2015) (finding no Eighth Amendment violation when

the plaintiff alleged he was denied soap, toilet paper, toothpaste, and a toothbrush for five days); *see also Murillo v. Bueno*, No. 1:12-cv-00095-LJO-DLB (PC), 2013 WL 1731393, at \*1–2 (E.D. Cal. Apr. 20, 2013, adopted in full May 17, 2013) (concluding a prisoner not provided with toothbrush, toothpaste, soap, toilet paper, or deodorant for approximately five days while housed in holding cell failed to state a claim).  Likewise, having to wear unclean clothes for 7.5 hours does not amount to a serious deprivation.  *See Bejarano v. Allison*, 1:11-cv-0589-LJO-GBC (PC), 2012 WL 5451810, at \*2 (Nov. 7, 2012, E.D. Cal.) ("[B]eing deprived of clean clothes for three days does not amount to an objectively serious deprivation within the meaning of the Eighth Amendment.").  Finally, to the extent Plaintiff alleges the broken window in the cell made it unsafe and uncomfortably cold, these types of short-term discomforts do not amount to Eighth Amendment violations.  *See Johnson*, 217 F.3d at 729–32 (finding no serious deprivation when inmates were kept outside overnight in December in 22-degree weather); *Keenan*, 83 F.3d at 1091 (concluding allegation that temperatures were "well above" or "well below" room temperature was not sufficient to support Eighth Amendment claim).

Even when considering the allegations as a whole, Plaintiff fails to allege a serious deprivation.  *See Hebert v. Moreno*, 2016 WL 1729185, at \*4 (C.D. Cal. Mar. 29, 2016), *report and recommendation adopted*, 2016 WL 1733425 (C.D. Cal. Apr. 29, 2016) ("The Ninth Circuit and other federal courts have also found that instances of a prisoner being deprived a bed, mattress, and/or conditions conducive to sleeping for 24 hours or more do not satisfy the objective prong of an Eighth Amendment violation."); *see also Williams v. Delo*, 49 F.3d 442, 444–45 (8th Cir. 1995) (concluding placement in strip cell without water, mattress, a toothbrush, toothpaste, deodorant, soap, sheets, blankets, pillow cases, pillows, legal mail, and/or clothing for four days did not violate Eighth Amendment). Further, there is no indication Galindo knew that placing Sepulveda in the cell for 7.5 hours would present an "excessive risk" to Plaintiff's safety but disregarded said risk.  *See Farmer*, 511 U.S. at 837.

/ / /

Sepulveda alleges that he complained to Galindo about the cell and demanded to be taken back to his previous cell in E-Facility.  FAC at 33.  Galindo told Plaintiff he would speak to the sergeant and walked away.  *Id.*  When Galindo returned, he told Sepulveda that his previous bunk in E-Facility was not available and, because it was so late, Plaintiff would have to be housed in the cell in D-Facility for the night.  *Id.*

Sepulveda has failed to adequately allege Galindo subjectively had a "sufficiently culpable statement of mind."  To do so, Galindo's "conduct must have been 'wanton,' which turns not upon its effect on the prisoner, but rather, upon the constraints facing the official.'"  *Frost*, 152 F.3d at 1128 (quoting *Wilson v. Seiter*, 501 U.S. 294, 302–03 (1991)).  Here, the facts as alleged do not support the allegation that Galindo's conduct was "wanton."  As Plaintiff concedes, it was late at night, his previous cell was unavailable, and he was only assigned to the cell in question for 7.5 hours.  The facts alleged do not amount to subjective deliberate indifference on Galindo's part.

Finally, even assuming *arguendo* that placing Plaintiff in a cell with a broken window, no mattress, and no bedding amounted to deliberate indifference, Plaintiff has failed to allege facts to show that the purported indifference was both an actual and proximate cause of Plaintiff's injuries.  *See Lemire*, 726 F.3d at 1074.  Sepulveda claims he was uncomfortable during the night and suffered "anxiety attacks, dizzy spells, bouts of anguish, stress, hypertension, severe diarrhea symptoms, lack of sleep and lack of spirit."  ECF No. 38.  Sepulveda fails, however, to allege that his general discomfort and stress was "directly and proximately caused" by being placed in a cell with a broken window and not due to the fact that he was recovering from two surgeries.  *See Lemire*, 726 F.3d at 1074.

Based on the above, Plaintiff has failed to allege a "risk so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk."  *Helling v. McKinney*, 509 U.S. 25, 36 (1993); *see also Estelle*, 429 U.S. at 102.  Thus, the Court finds Sepulveda has failed to state an Eighth Amendment claim against Galindo upon which relief could be granted.  Accordingly, the Court **DISMISSES** Plaintiff's claim

/ / /

against Doe #2 and Galindo.  *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii) & 1915A(b)(1); *Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121.

### B.     State Law Negligence Claim

Finally, in his third claim, Plaintiff alleges Defendants Galindo and Doe #2 were negligent under California state law when they failed to provide him with safe and secure living conditions of confinement and "failed to use reasonable care to avoid foreseeable risk of injury" when assigning him to the cell in D-Facility on October 28, 2019.  FAC at 41.  "In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  However, "once judicial power exists under § 1367(a), retention of supplemental jurisdiction over state law claims under 1367(c) is discretionary."  *Acri v. Varian Assoc., Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997).

"The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  The Supreme Court has cautioned that, "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well."  *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).  As discussed above, the Court has found Plaintiff's FAC fails to state any plausible federal claim for relief.  Therefore, in the absence of any viable federal claim upon which relief may be granted, the Court exercises its discretion and **DISMISSES** Plaintiff's supplemental state law claim without prejudice pursuant to 28 U.S.C. § 1367(c)(3).  *Id.*

### CONCLUSION AND ORDER

For the reasons discussed above, the Court **DISMISSES** the FAC in its entirety pursuant to 28 U.S.C. § 1915A(b) based on Plaintiff's failure to state a claim upon which relief may be granted.  Because it is clear Plaintiff cannot cure the pleading defects with respect to the claims and Defendants in the FAC, the dismissal is **WITH PREJUDICE**

and **WITHOUT LEAVE TO AMEND**.  *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'") (quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012)).  The Court **DIRECTS** the Clerk of the Court to enter a final judgment of dismissal and to close the file.

　　**IT IS SO ORDERED.**

Dated:  February 7, 2022

Hon. Janis L. Sammartino
United States District Judge